1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  DEBORAH B. WADLEIGH, State Bar No. 239550
   Supervising Deputy Attorney General
3  COLIN A. SHAFF, State Bar No. 300301
   Deputy Attorney General
4    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
5    Telephone:  (213) 269-6039
     Fax:  (916) 761-3641
6    E-mail:  Colin.Shaff@doj.ca.gov
   *Attorneys for Defendants*
7  *G. Newsom, B. Cates, and C. Schuyler*

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  **ROBERT L. SANFORD,**          | Kern County Superior Court No. BCV-21-100477-BCB

14                      Plaintiff,

15           **v.**                  | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION) AND DEMAND FOR JURY TRIAL**

16  **GAVIN NEWSOM, et al.,**

17                      Defendants.

18

19       TO THE CLERK OF THE COURT AND TO PLAINTIFF:

20       PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants

21  G. Newsom, B. Cates, and C. Schuyler hereby remove this action from the Superior Court of

22  California, County of Kern, to the United States District Court for the Eastern District of

23  California.

24  **I.    THE REMOVED ACTION**

25       1.    On March 8, 2021, the removed civil action titled Robert L. Sanford v. Gavin

26  Newsom, et al., Case No. BCV-21-100477-BCB, was commenced in the Superior Court of

27  California, County of Kern, as to Defendants G. Newsom, R. Diaz, K. Allison, B. Sanders, U.

28

                                        1

Baniga, B. Cates, C. Schuyler, and S. Shiesha. A true and correct copy of the summons and Complaint is attached hereto as **Exhibit A**.

2.    Plaintiff filed a First Amended Complaint on September 14, 2021, in which he named only Defendants G. Newsom and B. Cates. A true and correct copy of the summons and First Amended Complaint is attached hereto as **Exhibit B**.

3.    Plaintiff filed a Second Amended Complaint on March 21, 2022, naming C. Schuyler, B. Cates and G. Newsom as Defendants. A true and correct copy of the summons and Second Amended Complaint is attached hereto as **Exhibit C**.

4.    Plaintiff filed the operative Third Amended Complaint on August 1, 2022. The Third Amended Complaint alleges claims under the Eighth and Fourteenth Amendments relating to Plaintiff's exposure to COVID-19 while incarcerated in a California correctional institution. A true and correct copy of the summons and Third Amended Complaint is attached hereto as **Exhibit D**.

## II.    REMOVAL IS TIMELY

5.    Following Defendants' demurrer to the Second Amended Complaint, the Court found that Plaintiff did not timely present a government claim pursuant to the California Tort Claims Act, nor did Plaintiff move to present a late claim. Accordingly, the Court sustained Defendants' demurrer to the first and second causes of action without leave to amend. However, the Court sustained Defendants' demurrer to the first cause of action is sustained with leave to amend, to the extent that Plaintiff's first cause of action alleges a claim under federal law.

6.    Service of the Third Amended Complaint, the first pleading that asserted a federal or constitutional claim, was effectuated on Defendants C. Schuyler, B. Cates and G. Newsom on August 1, 2022, via U.S. Mail. Defendants received the Third Amended Complaint on August 4, 2022. As such, this Notice of Removal is timely filed within thirty days of receipt of the pleading setting forth a federal question. 28 U.S.C. § 1446(b)(1).

## III.    GROUNDS FOR REMOVAL: FEDERAL QUESTION JURISDICTION

7.    This Court has original subject-matter jurisdiction over this action because it arises under the U.S. Constitution and laws of the United States. 28 U.S.C. § 1331. The operative Third

Amended Complaint alleges violations of Plaintiff's rights under the Eighth and Fourteenth Amendments. Removal is therefore permitted under 28 U.S.C. § 1441(a) based on federal question jurisdiction.

8.    The superior court has dismissed with prejudice any claims arising under state law; however, to the extent that such claims are alleged in the operative Third Amended Complaint, this Court has supplemental jurisdiction over any claims that arise of the same case or controversy as give rise to federal jurisdiction. 28 U.S.C. § 1367(a).

**IV.    VENUE**

9.    Venue is proper in the United States District Court for the Eastern District of California, because it is the district embracing the Superior Court of California, County of Kern, in which the removed action is pending. 28 U.S.C. § 1441(a).

**V.    UNSERVED DEFENDANTS**

10.    Defendants G. Newsom, B. Cates, and C. Schuyler have been served in this action. There are no unserved or defectively served defendants, and to the extent that such defendants exist, they are not required to join in or consent to the removal of the action under 28 U.S.C. § 1446(b)(2)(A). *See Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011).

11.    As the only properly served defendants in this action at the time of the filing of this Notice, Defendants G. Newsom, B. Cates, and C. Schuyler join in seeking removal of the action to federal court, and need not obtain the joinder or consent of any other party to comply with 28 U.S.C. § 1446(b)(2)(A).

**VI.    PAPERS FROM REMOVED ACTION**

12.    In accordance with 28 U.S.C. § 1446(a), copies of "all process, pleadings, and orders served upon" Defendants G. Newsom, B. Cates, and C. Schuyler in the removed action are attached hereto as Defendants' Exhibits E-O. The documents include: Minute Order and Order to Show Cause, June 28, 2021 (Exhibit E); Plaintiff's Objection to Demurrer, July 7, 2021(Exhibit F); Minute Order, August 26, 2021 (Exhibit G); Minute Order, September 7, 2021 (Exhibit H); Plaintiff's Ex Parte Motion Requesting an Extension of Time, October 24, 2021 (Exhibit I); Notice of Change of Address, November 3, 2021 (Exhibit J); Plaintiff's Objection to Demurrer to

3

1   First Amended Complaint, December 28, 2021 (Exhibit K); Minute Order, March 28, 2022

2   (Exhibit L); Notice of Change of Address, April 12, 2022 (Exhibit M); Objection to Demurrer to

3   SAC, May 8, 2022 (Exhibit N);  Minute Order, May 26, 2022 (Exhibit O).

4   **VII.   NOTICE TO ADVERSE PARTIES AND STATE COURT**

5       13.    In accordance with 28 U.S.C. § 1446(d), Defendants G. Newsom, B. Cates, and C.

6   Schuyler will promptly provide written notice of removal to all adverse parties and will promptly

7   file a copy of this Notice of Removal with the Clerk of the Superior Court of California, County

8   of Kern.

9

10  Dated:  August 29, 2022                          Respectfully submitted,

11                                                    ROB BONTA
                                                      Attorney General of California
12                                                    DEBORAH B. WADLEIGH
                                                      Supervising Deputy Attorney General
13

14

15                                                    COLIN A. SHAFF
                                                      Deputy Attorney General
16                                                    *Attorneys for Defendants*
                                                      *G. Newsom, B. Cates, and C. Schuyler*
17  LA2021601470
    65384322.docx
18

19

20

21

22

23

24

25

26

27

28

                                            4

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
GAVIN NEWSOM, RALPH M. DIAZ, KATHLEEN ALLISON, BRIAN CATES, C. SCHUYLER, B. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INSTITUTION, DOES 1 to 5

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Robert L. Sanford;

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
FILED
KERN COUNTY SUPERIOR COURT
03/09/2021
BY Munoz Alvarez, Sophia
DEPUTY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: SUPERIOR COURT OF CALIFORNIA<br>*(El nombre y dirección de la corte es):* 1415 Truxtun Avenue<br>Bakersfield, CA 93301-4172 | CASE NUMBER: *(Número del Caso):*<br>**BCV-21-100477** |
| --- | --- |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert L. Sanford CDCR# V-25176 (Plaintiff) California Correctional Institution Facility (B) Briggs Hall-20L, P.O. Box 107, Tehachapi, Calif. 93581

| DATE:<br>*(Fecha)* Signed: 3/9/2021 03:10 PM | Tamarah Harber-Pickens | Clerk, by<br>*(Secretario)* _(signature)_ | , Deputy<br>*(Adjunto)* |
| --- | --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

NOTICE TO THE PERSON SERVED: You are served



1. ☐ as an individual defendant.
2. ☒ as the person sued under the fictitious name of *(specify):* California Correctional Institution.
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |
| --- | --- | --- |



## SUPERIOR COURT OF CALIFORNIA
### COUNTY OF KERN
### BAKERSFIELD COURT
### 1415 TRUXTUN AVENUE
### BAKERSFIELD CA 93301

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN

MARCH 09, 2021
BY *Sophia Munoz Alvarez* DEPUTY

| PLAINTIFF/PETITIONER: ROBERT L SANFORD DEFENDANT/RESPONDENT: GAVIN NEWSOM RALPH M DIAZ KATHLEEN ALLISON | |
|---|---|
| **NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER: BCV-21-100477 |

By order of the presiding judge, the above entitled case is assigned to the Honorable David R. Lampe for all purposes. It will be managed on the direct calendar program in Bakersfield Department 11 until its conclusion. Peremptory challenges, if any, must be made within the times set out in CCP §170.6. Please include the initials **DRL** after the case number on all future pleadings filed in this case.

#### TO PLAINTIFF AND PLAINTIFF'S COUNSEL:
You are ordered to appear on **June 21, 2021** in Bakersfield Department 11 at 9:15 AM in the above entitled court to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110. All appearances are mandatory, unless the court receives the required proof(s) of service five (5) court days prior to the hearing date, and then no appearance is necessary.

#### TO EACH PARTY AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:
This case is set for Case Management Conference, by the Honorable David R. Lampe on **September 07, 2021** at 9:15AM in Bakersfield Department 11 of the above entitled court. Case management statements are to be filed at least fifteen (15) days prior to the conference in accordance with California Rules of Court, Rules 3.720 – 3.730. All parties shall comply with California Rules of Court, Rules 3.720 – 3.730.

#### NOTICE TO PLAINTIFF'S COUNSEL
**IMPORTANT:** You are required to serve this Notice of Assignment and Notice of Order to Show Cause Date and Notice of Case Management Conference Date with the Summons, Complaint [Local Rule 3.7(a)], Alternative Dispute Resolution (ADR) Information Packet, and ADR Stipulation and Order Form ( California Rules of Court, Rule 3.221).

#### NOTICE TO CROSS COMPLAINANT'S COUNSEL
**IMPORTANT:** If you are bringing a cross complaint against new parties, you are, likewise, required to serve this Notice of Assignment pursuant to California Rules of Court, Rule 3.110 and Notice of Order to Show Cause date and Notice of Case Management Conference date on the new cross defendants.

TAMARAH HARBER-PICKENS
CLERK OF THE SUPERIOR COURT

Date: March 09, 2021

By: _____*Sophia Munoz Alvarez*_____
Sophia Munoz Alvarez, Deputy Clerk

Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page 1 of 4

The Clerk of the Superior Court's office has received a civil complaint from you for filing. Pursuant to the Trial Court Delay Reduction Act, your case has been assigned to the Honorable David R. Lampe as monitoring judge.

Judge David R. Lampe has instituted a direct calendaring system for all cases assigned to him/her as the monitoring judge.

All law and motion, case management and trial setting conferences, ex parte matters and trials will be scheduled before him/her in Bakersfield Department 11. This will involve all cases in which the clerk has assigned the initials DRL to the complaint at the time of filing. Counsel is expected to make the initials of the monitoring judge a part of the case number on all pleadings and papers.

Law & Motion and Ex-Parte hearing dates must be pre-cleared by contacting the Direct Calendaring Clerk at 661-868-5414. Tentative rulings can be located by visiting "http://www.kern.courts.ca.gov/", after 4:00 pm. Click on the Non-Criminal Case Information link to enter the case number. Please note, not all departments provide tentative rulings.

At the time of filing the complaint, plaintiff's counsel will be given a Notice of Case Management Conference which sets a conference approximately one hundred eighty (180) days after filing of the complaint. This notice must be served with the summons and complaint on all defendants. Defendants must serve the notice on all cross-defendants named. The notice must also be served on interveners and lien claimants.

Telephonic appearances for case management conferences and law and motion hearings are available through Court Call. The toll free telephone number for Court Call is (888) 88-COURT. Proper procedures must be complied with under California Rules of Court, Rule 3.670. Arrangements to make appearances through Court Call must be made at least five (5) court days prior to the hearing date.

Another judge will hear settlement conferences in cases assigned to Judge David R. Lampe. However, those cases that do not settle will be set for trial before him/her.

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF KERN
### SPECIAL RULES RELATING TO CASE MANAGEMENT CONFERENCES

At least fifteen (15) days prior to the case management conference, each party shall prepare, file and serve on each other party a case management conference statement providing the Court with the following information:

1. The "at-issue" status of the case including any new parties that may be contemplated;
2. A brief statement of the type of case and the general facts or contentions;
3. A description of the discovery done to date and that contemplated to be done;
4. Estimated time for trial and whether a jury is demanded;
5. Whether or not the case is entitled to priority in trial setting and if so, the legal authority thereof;
6. An evaluation of the case for alternative dispute resolution, including arbitration (judicial or binding), mediation or private judge handling;
7. If a person injury action, a description of the injuries sustained by each plaintiff and the elements of claimed damage;
8. A statement of any settlement negotiations undertaken thus far;
9. The name of the attorney primary responsible for the case on behalf of the party filing the statement.

More than one party may join in the filing of a single statement.

The case management conference shall be attended by the attorney primarily responsible for the case on behalf of each party or a member of his or her firm or counsel formally associated in the case. The attorney attending shall be thoroughly familiar with the case, and be able to engage in meaningful discussions with court and counsel, and to enter into agreements on behalf of his or her client on the following subjects:

1. The "at-issue" status of the case including the dismissal of the unnamed doe defendants or cross-defendants by agreement of all parties;
2. Discovery conducted and remaining to be done;
3. Amenability of the case to alternative dispute resolution including, but no limited to, arbitration (judicial or binding), mediation, and private judge handling.
4. Delineation of issues including stipulation of facts not in substantial controversy;
5. Settlement prospects;
6. Setting the matter for trial, pre-trial conferences, settlement conference or further case management conference;
7. Any other matters relevant to the processing of the case to a final resolution.

Any violation of these rules shall result in the imposition of substantial sanctions which may include monetary, issue, termination, or other appropriate sanctions.

## CERTIFICATE OF POSTING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the *Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference* attached hereto on all interested parties and any respective counsel of record in the within action by posting true copies thereof, to the Superior Court of California, County of Kern, Non-Criminal Case Information Portal (https://odyprodportal.kern.courts.ca.gov/portalprod).

Date of Posting:        March 09, 2021

Place of Posting:       Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                        **TAMARAH HARBER-PICKENS**
                                        CLERK OF THE SUPERIOR COURT

Date: March 09, 2021

                                By:     _____Sophia Munoz Alvarez_____
                                        Sophia Munoz Alvarez, Deputy Clerk

Certificate of Posting - Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert L. Sanford, CDCR#V-25176, Fac (E), Briggs Hall<br>P.O. Box 107, Tehachapi, Calif 93581<br><br>TELEPHONE NO.:            FAX NO.:<br>ATTORNEY FOR *(Name):* In Propria Persona, | FILED<br>SUPERIOR COURT, METROPOLITAN DIVISION<br>COUNTY OF KERN<br>MAR 8 2021<br>BY _____ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: Kern County
STREET ADDRESS: Metropolitan Division
MAILING ADDRESS: 1415 Truxtun Avenue
CITY AND ZIP CODE: Bakersfield, Calif 93301-4172
BRANCH NAME: SUPERIOR COURT

CASE NAME: Robert L. Sanford vs. Gavin Newsom, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BCV-21-100477<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | Real Property | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [X] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | Enforcement of Judgment |
| [ ] Civil rights (08) | Unlawful Detainer | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | Miscellaneous Civil Complaint |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 22, 2021

Robert L. Sanford
_____           _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

NOTICE
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

Auto Tort
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)
Other PI/PD/WD (Personal Injury/
  Property Damage/Wrongful Death)
  Tort
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (not asbestos or
    toxic/environmental) (24)
  Medical Malpractice (45)
    Medical Malpractice—
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
Non-PI/PD/WD (Other) Tort
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (not civil
    harassment) (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (not medical or legal)
  Other Non-PI/PD/WD Tort (35)
Employment
  Wrongful Termination (36)
  Other Employment (15)

Contract
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (not unlawful detainer
        or wrongful eviction)
    Contract/Warranty Breach—Seller
      Plaintiff (not fraud or negligence)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (not provisionally
    complex) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
Real Property
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (not eminent
      domain, landlord/tenant, or
      foreclosure)
Unlawful Detainer
  Commercial (31)
  Residential (32)
  Drugs (38) (if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)
Judicial Review
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    (arising from provisionally complex
    case type listed above) (41)
Enforcement of Judgment
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (non-
      domestic relations)
    Sister State Judgment
    Administrative Agency Award
      (not unpaid taxes)
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
Miscellaneous Civil Complaint
  RICO (27)
  Other Complaint (not specified
    above) (42)
    Declaratory Relief Only
    Injunctive Relief Only (non-
      harassment)
    Mechanics Lien
    Other Commercial Complaint
      Case (non-tort/non-complex)
    Other Civil Complaint
      (non-tort/non-complex)
Miscellaneous Civil Petition
  Partnership and Corporate
    Governance (21)
  Other Petition (not specified
    above) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CIVIL CASE COVER SHEET

1  Robert L. Sanford
   CDCR#V-25176  BH 20L

2  California Correctional Institution
   P.O. Box 107

3  Tehachapi, CA 93581
        In PrOpria Persona,

FILED
SUPERIOR COURT METROPOLITAN DIVISION
COUNTY OF KERN

MAR 0 8 2021

BY_____ DEPUTY

4

5

6

7        SUPERIOR COURT OF CALIFORNIA
            FOR THE COUNTY OF KERN

8

9  Robert L. Sanford,                    CASE NO.: BCN-21-100477
        Plaintiff

10

       v.                               ] 1.) NEGLIGENCE
11 GAVIN NEWSOM; RALPH M. DIAZ; KATHLEEN ALLISON;  ] 2.) INTENTIONAL TORT
   S. CATES; C. SCHUYLER; B.SANDERS; S.SHIESHA;    ] 3.) DEPENDENT ADULT/ABUSE/
12 U.BANICA; CALIFORNIA CORRECTIONAL INSTITUTION;  ] NEGLECT COMPLAINT, UNLIMITED
   DOES 1 TO 5.                                    ] CIVIL ACTION.
13       Defendants,                               ] 4.) UNLIMITED ACTION EXCEEDING
                                                   ] $25,000. CCP §§ 85(a),86(a)
14                                                 ] 5.) GROSS NEGLIGENCE

15           TRIAL BY JURY DEMANDED
        COMPLAINT FOR MONEY DAMAGES AND INJUNCTION
16

17              I. JURISDICTION
18 1.     Plaintiff now brings this lawsuit pursuant to California Constitution,
   Article VI, § 10; ART. VI, §11; and ART. I, §15. Section 395
                    II. VENUE
19 2.     Section 395, County in which the defendants reside: Personal injury;
20 The injury involved with filing this Civil Action Tort occurred within this
   the County of Kern, The Defendants listed are all employees of the California
21 Department of Corrections, except Governor Newsom who is the head of the
   Executive Branch of Government in California, and CDCR, and this is proper Venue.

22 3.           III.  LIST OF PARTIES TO THE ACTION

   3.     Plaintiff: Robert L. Sanford, CDCR# V-25176 was at all times relevant
23 to this action a prisoner incarcerated at the California Correctional Institu-
24 tion, which is located in the District of Kern County.

25 4.     Defendant: GAVIN NEWSOM, was at all times relevant to this action as the
   GOVERNOR OF THE STATE OF CALIFORNIA and was acting under the color of state and
26 federal law. By statute and his own, and Presidential executive orders for
   ensuring the safety and welbeing of prisoners along with citizens of California
27 under his supervision.

5.    Defendant:  RALPH M. DIAZ was at all times relevant to this action from March 2020, until October 2020, as the SECREATARY OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, hereinafter (CDCR), and CALIFORNIA CORRECTIONAL INSTITUTION, and was acting under the color of State and Federal law. By statute and executive orders by himself, Gov. of Cal. and U.S. President as he is responsible for ensuring the safety and well-being of prisoners under his supervision.

6.    Defendant: KATHLEEN ALLISON was at all times relevant to this action up until the retirement of Defendant RALPH M. DIAZ on October 1, 2020, where she has replaced him as SECRETARY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, hereinafter (CDCR), and CALIFORNIA CORRECTIONAL INSTITUTION, and was acting under the color of State and Federal law. By Statute and executive orders by herself, Gov. of Cal, and U.S. President she is responsible for ensuring the safety and well-being of prisoners under her supervision.

8.    Defendant: B. CATES was at all times relevant to this action  THE (A) WARDEN at CALIFORNIA CORRECTIONAL INSTITUTION and was acting under the color of State and Federal law. By statute and the executive orders of U.S. PRESIDENT; CALIFORNIA STATE GOVERNOR; AND CDCR SECRETARY, he is responsible for ensuring the safety and well-being of of prisoners  under its supervision or within the confines of CALIFORNIA CORRECTIONAL INSTITUTION, hereinafter CCI.

9.    Defendant: C. SCHUYLER was at all times relevant to this action The CHIEF DEPUTY WARDEN at CALIFORNIA CORRECTIONAL INSTITUTION, hereinafter CCI, and was acting under the color of State and Federal law. By Statute and executive orders  of the U.S. PRESIDENT; CALIFORNIA STATE GOVERNOR; SECRETARY OF CDCR; AND (A) WARDEN CCI, he is responsible for ensuring the safety and well-being of prisoners under his supervision or within the confines of CCI.

10.    Defendant: B. SANDERS, was at all times relevant to this action as The ASSOCIATE WARDEN at CCI and was acting under the color of State and Fedral law. By Statute and the executive orders of U.S. PRESIDENT; CALIFORNIA SATTE GOVERNOR; SECRETARY OF CDCR; AND WARDEN CCI, he is responsible for ensuring the safety and well-being of prisoners under his supervision or within the confines of CCI.

11.    Defendant: S. SHIESHA was at all times relevant to this action as The CHEIF MEDICAL OFFICER at CCI, and was acting under color of State and Federal law. By Statute and executive orders by himself, U.S. PRESIDENT; Gov. of Cal; CDCR Secretary; Warden CCI; he is responsible for ensuring the safety and well-being of prisoners under his supervision or within the confines of CCI.

12.    Defendant: U. BANIGA was at all times relevant to this action as the CHIEF PHYSICIAN SURGEON at CCI was acting under color of State and Federal law. By Statute and the executive orders of U.S President; Gov. of Cal; Secretary of CDCR; Warden CCI;, he is responsible for ensuring the safety and well-being of prisoners under his supervision or within the confines of CCI.

13.    Defendant: CALIFORNIA CORRECTIONAL INSTITUTION Was at all times relevant to this action, a PRISON INSTITUTION CORPORATION and was acting under the color of State and Federal law at all times. By Statute California Correctional Institution hereinafter ("CCI") and by executive orders  of U.S. President; Gov. of Cal. ; Secretary of CDCR; Warden at CCI; he is responsible for ensuring the safety and well-being of prisoners under his supervision or within the Confines

1 | of CCI.

2 | 14.    Defendant: DOE DEFENDANT 1 To 5, are unknown actors that had partic-
3 | ipated in violating Plaintiff's rights, and at all times relevant to this
action, are unknown at this time actors who were acting ubder the color of
4 | State and Federal Law. By Statute and executive orders of the U.S. President;
Gov. of Cal.; Secretary of CDCR. They are responsible for ensuring the safety
and well-being of prisoners under their supervision.

5 |

6 | 15.    AT ALL TIMES RELEVANT TO THIS ACTION, ALL THE DEFENDANTS LISTED ABOVE
ARE SUED INDIVIDUALLY AND OFFICIALLY, THEY ARE SUED SEVERALLY AND INDIVIDUALLY
IN THIS ACTION.

7 |

8 |                    IV. EXHAUSTION OF REMEDIES

9 | 16.  On or about July 31, 2020, Plaintiff, filed a GOVERNMENT TORT CLAIMS, re-
garding the issues raised in this complaint. Plaintiff had prepared his
10 | GOVERNMENT TORT CLAIM FORMS, WITH EXHIBITS ATTACHED. And they have addressed it
to the GOVERNMENT CLAIMS PROGRAM. OFFICE OF RISK AND INSURANCE MANAGEMENT
11 | DEPARTMENT OF GENERAL SERVICES P.O. BOX 989052, MS 414. West Sacramento, CA
95798-9052. Claim #19005866, as this claim is timely, on or about February
12 | 2021, Plaintiff Robert L. Sanford mailed letters to GAVIN NEWSOM THE GOVERNOR
OF CALIFORNIA, RALPH M. DIIAZ/KATHLEEN ALLISON SECRETARY OF CDCR, B.CATES THE
13 | WARDEN (A) CCI, regarding demands to be released or to comply with the safety
protocols in response to COVID-19 be made. The overcrowding in the Prison makes
14 | it impossible to social distance, and that releasing Plaintiff from prison
bnecause he posese no unreasonable risl to public safety, his CDCR CASE RISK
15 | ASSESSMENT SCORE (CSRA) is a 1/low, he has completed the full term of his primary
offense and is only serving enhancement term pursuant to Penal Code §667(a)(1)
16 | and is eligible for parole, as for his asfety, as this was not responded to as
well from the letters. Additionally Plaintiff filed an 602 HC Appeal GRIEVANCE
17 | regarding Plaintiff having health conditions that make him a higher risk to
COVID-19 and asked the Warden B. Cates at CCI to perform a commitment recall
18 | to release Plaintiff, who has now contracted COVID-19 not once but twice,
meaning two (2) times, on July 11, 2020, and again tested positve in October
19 | 2, 2020, Plaintiff requested Warden in grievance to make the prison a safer
enviornment. The appeal was returned, with CCI refusal to comply with the facts
20 | inmates/prisoners are contracting COVID-19 at CCI, and they are trying to
avoid liability of the injury their causing. EXHIBIT "A"

21 |               V. FACTUAL ALLEGATIONS OF THE COMPLAINT

22 | 17.  Beginning or about the Month of March 2020, California Governor Gavin
Newsom made an executive order regarding COVID 19 new STAY AT HOME order and
23 | practice social distancing at SIX FEET APART, and wearing face masks and con-
stantly washing your hands.

24 |

25 | 18. On or about the end of March through the middle of June 2020, SIERRA
CONSERVATION CENTER hereinafter SCC, where Plaintiff was housed until June
18, 2020, where Plaintiff was transferred to CALIFORNIA CORRECTIONAL INSTITUTION
26 | CCI, at Tehachapi State Prison, as both of these prisons/institutions had been
"failing" to take adequate safety measures regarding the Presidential and Gov-
27 | ernor's Executive Orders to practice such measures as social distancing,

1 | enforcement Of adequate face masks , providing continuous hand sanitizers too
all inmates, and wear gloves when searching inmates and cells/ dorm living
2 | areas.   The Correctional Officers here at CCI refused to wear wear their masks
and goves, making a BAD EXAMPLE on how the Institutional Officials  and inmates
3 | should be practicing safety protocols which are mandated by Presidential,
Governor's, and Ralph M. Diaz/ Kathleen Allison (Secretary of CDCR) orders to
4 | carrry-out safety protocols to ensure institutional safety from the outbreak
of COVID-19.

5

6 | 19. On June 18, 2020 through July 11, 2020, and ongoingly, CALIFORNIA CORREC-
TIONAL INSTITUTION (CCI) had been  creating a dangerous enviornment, that has
7 | caused Plaintiff injury, by deliberately disregarding the Executive Orders
to practice social distancing (Six Feet Apart), and placed this Plaintiff in
8 | an extremely dangerous enviornment to the exposure of COVID-19, where Plaintiff
was tested positive two different times, so causing Plaintiff injury without
9 | being able to smell or taste, coughing up blood clots, and shortness of breath
has been some of the symptoms that has diminished Plaintiff's quality of life.
10 | The cause that exposed Plaintiff to be exposed to COVID-19, by:
1.) PACKING INMATES WITHIN CDCR INTO CROWDED CONDITIONS, to the point inmates
11 | are so tightly packed together its like being in a sardine can. The dorms and
housing units are so crowded there is no possible way to social distance, in
12 | any way, without lowering the amount of inmates housed in these dorms.

13 | 20) On June 18, 2020, Plaintiff Robert D. Sanford arrived at CCI, after being
transferred from SCC in Jamestown, California, where he had filed complaints
14 | regarding the overcrowded conditions of the dorms at SCC that continuously put
inmates in an unreasonable risk of danger of contracting COVID-19, by not
15 | complying with social distance protocols. However, Plaintiff was removed from
one dangerous enviornment at SCC, right into another at CALIFORNIA CORRECTIONAL
16 | INSTITUTION in TEHACHAPI, California CCI, upon arrival on 06/18/20, Plaintiff
was housed in Van Weston Up, a (two-man cell), and only housed there beacuse
17 | we were new arrivals and suppose to have 14-Day quarantine. On June 21, 2020
only two days after arriving a major outbreak occurred here at CCI, infecting
18 | inmates and staff with more than 60 cases that I'm aware of, this number could
be and likely is much higher.  Plaintiff was tested on 6/21/20 for COVID-19
19 | although he was tested before arriving  at CCI once on 6/5/2020, 6/10/20, and
6/15/20, this Plaintiff was tested atleast four times in the month of June 2020,
20 | before Plaintiff even was housed at CCI. Plaintiff was moved from Van Weston
Upper on CCI (E-Facility) to aanother housing unit approximately 10 days from
21 | arriving at CCI, to CLARK HALL LOW bed 1-low. At this time there was more than
100 to 120 inmates housed in this unit at CCI, inmates were stacked on top of
22 | each other with six inmates sharing less that Three-Feet-Of-Distance between
on side of the bunk/bed area, inmates constantly complaining about fever, coughing,
23 | headaches, being forced to line up for temperature checks, no masks enforcement
No disenfectant, No ventilation, the dorm so overly crowded, that inmates  are
24 | bumping into each other , being able to use  only 6 of the working-toilets,
hwere more than 100 inmates with less than 14 day quarantines, traveling from
25 | CDCR Prison to CDCR Prison, SCC, CCI, In Plaintiff's .
3.)  The chow hall at CCI is a mess, the inmates assigned to clean the tables
26 | are wiping the tables with watered down cleaning fluid, not bleach, or another
cleaning agent designated specifically to sanitize an kill COVID-19 virus,
27 | where CCI crowds into a waiting area, approxrately 100 inmates at the same
time , there is absolutely no possible way for you not to touch one another,
inmates are then seated inchs apart to eat their meal, this is a all time high

1  of the inmate-every-day-to-day, to eat the scheduled morning and evening meals
   and e extreely crowded area with the massive population here at CCI

2

3  4.) On July 10, 2020, the whole dorm in CLARK LOW, was told to pack their
   property the whole dorm, is moving to REX DEAL, where CCI was "Playing a
   musical Building-to-Building game" moving more than 100 inmates at a time, being

4  forced to comply with these administrative decisions, moving contaiminated
   conditions into another contamination, only amounts to another infected

5  contamination, as is what, infected Plaintiff on the date July 10,2020, as
   how Plaintiff, washing clothes on the 11, of July, that following morning

6  after trying to clean my new living area in REX DEAL DORM, with no disenfactant,
   during that morning we all had temperature checks. Upon discovering I could

7  not smell the cloths I was washing, afterwards I tried to eat something only
   to realize , can't taste, I have to come to the real possibility I have been

8  infected with this deadly virus of COVID-19, I immediately inform these two
   nurses, there only  take temperatures on July 11, 2020 at approx 9 amn

9  JANE DOE #1 and JANE DOE #2, in REXDEAL DORM on FACILITY E. After expressing
   the symptoms I was [I] Plaintiff experiencing, being unable to smell or taste.

10 JANE DOE #1 and JANE DOE #2 left Rex DEAL, and returned within the hour with
   a COVID-19 test applicator and bottle, inserting the stick into my left nostril

11 and then told me I will be moving from Rex Deal to another housing unit.
   Plaintiff was moved to Van Weston low, tank bed #1, I was the only person in

12 this tank. I was now being temperature checked two times a day along with having
   vitals checked, where I was still unable to smell or taste, having shortness

13 of breath, and coughing up blood clots. Plaintiff was not told at any time
   for five days, that I was confirmed positive with COVID-19, until July 16, 2020,

14 where at this time Plaintiff was informed he had to move to Clark Hall low again
   this is where infected inmates had to be housed for 14 day quarantine at CCI.

15

16 5.) Inmates are being constantly shifted from one building to another, where
   one infected inmate is replaced with another, there is no cleaning supplies
   provided that ensure the fact it kills the COVID-19 virus, and to now be put

17 right back into another dangerous envionment of infected inmates in CLARK
   HALL Low, where Plaintiff believes he originally contracted the deadly virus,

18 and then was transferred to REX DEAL DORM, and Then To VAN WESTON TANK, back
   to Clark Hall, all within one week, where these Dorms housed over 100 inmates

19 that were continuously being infected on a daily basis, these overcrowded dorms
   put inmates at CCI in an unreasonable risk of danger from contracting COVID-19.

20

21 PLAINTIFF GIVES NOTICES, TO DEFENDANTS ABOUT DANGEROUS CONDITION.

22 20.  On July 14, 2020, Plaintiff filed a HC-602, expressing the danger of the
   overcrowded dorms he was forced to be housed in at CCI. For the fact this is
   not just a CCI problem but also a systemic problem throughout CDCR, where SCC

23 was also put on notice of this dangerous condition of overcrowded dorms on
   April 28, 2020 (#SCC-HC-200000129) Exhibit A, where all 602's filed regarding

24 the dangers of overcrowded dorms.  Plaintiff also gave notices of these dangers
   to J. Clark Kelso, the Federal appointed Receiver over medical issues within

25 CDCR, his response to Plaintiff's concerns, were that he was aware of the pre-
   existing medical issues Plaintiff was suffering from on  5 / 15 /2020, these

26 facts are outlined with the CALIFORNIA CORRECTIONAL HEALTH ACRE SERVICES
   located  P.O. Box 588500 Elk Grove, CA 95758-8500. Plaintiff outlined facts

27 that  continue to exist to this current day, there is no social distancing
   available at all here at CCI, and at SCC, which is also a CDCR jurisdiction,

21. Plaintiff made every effort possible to administratively address his concerns , regarding the dangerous conditions he was forced to live in that continued to put him in an unreasonable risk of danger of contracting the covid 19 that has ultimately infected Plaintiff Robert L. Sanford, on two different occasions due to overcrowd doors that are a dangerous enviorment.

22. Plaintiff gave absolut notice at every step of this dangerous condition that was no doubt inevitable to happen, with the conditions that inmates are subjected to Day-to-day, 24 hours . As Defendants where aware or should have been aware of the dangers that happened and continues to happen here at this prison facility CCI, and killing inmates under their supervision, due to the Actions of CDCR Staff, being allowed to transfer inmates from prison to prison not being proerly quarantined, as the 14 day protocols call for in the executive Orders issued by Governor Newsom, and CDCR Secretary (Ralph M. Diaz/Kathleen Allison) and due to these actions that put inmates at an unreasonable risk of harm and danger of cotracting Covid-19, certainly constitutes an intentional tort , and General Negligency along with Gross Negligence, to the health and safety of Plaintiff, even after being carefully warned of the dangers , these defendants and their agents within CDCR [SCC and CCI] had opportunity to prevent the spread of Covid-19 here at the CCI facility that has caues injury and death of.... These Defendants could have acted with releasing Plaintiff, or placing him in a safer enviornment to prevent him from now suffering the lingering effects of Covid-19, as outlined earlier Plaintiff poses no unecessary risk of danger to the public in any way, by being a level (I) inmate with a case risk score of 1/low, along with the fact he has completed the full term of his primary offense, and is only serving prior enhancement terms under (Penal Code 667(a)(1)), has completed all his rehabilitation needs (GED, College, NA/AA and much more...)

23.)Because Gov Newsom Defendant in this action, issued forth executive orders to practice Safety protocals, while at the same time he failed to enforce these protocals within the prisons, and delib-erately refused to employ these safety measures for the protection of inmates at/in prison. There was no actions made to enforce his own executive orders, as it is clearly noted he has himself not complied fully with his own protocals, thus he had an obligation as Governor of this state to enforce Executive Orders that was issued by the U.S. President and himself. Instead he did nothing and now Plaintiff is suffering physical and mental effects, that diminshes the quality of Plaintiff's life, now being unable to smell, taste, couhing up blood clots, severe joint pain, constant headaches not able to sit up for a period of time to read a book, fatigue, and these conditions continue to injure plaintiff to this very moment.

24. Plaintiff mailed a letter to DEFENDANT RALPH M. DIAZ/KATHLEEN ALLISON (Secretary of the California Department of Corrections and Rehabilitation), at their headquarters located at 1515 S. street, P.O. Box 942883, Sacramento, CA 94283-0001) This Defendant[s] were at all times being notified to the facts that CCI and its agents continues to refuse to follow safety measures in line the Presidential and Governor executive orders regarding Covid-19. Even after Ralph M. Diaz issued a CDCR institutional wide TV broadcast on prison channel, he outlined the plan that instructed prisons to practice social distancing wear masks, and be provided constant hand sanitizers, and disefectants to be used constantly in restrooms, showers, tables and everywhere inmates are, Plaintiff informed Defendants in this action, their are still factors being overlooked such as inmates with pre-existant medical conditions that are at a substantial higher risk of contracting Covid-19.

§ 5

25. Plaintiff made every possible effort avilable to him administratively, and pro-actively to address his concerns of being infected with this very deadly virus of covid-19, due to his pre-existing medical conditions that put him at a higher risk of danger, with the da[ngerous]conditions he was forced to live in that continues to put inmates in extremeely overcrowded dorms, that are not in compliance with the protocals set out in the executive orders issued by the President and the Governor, where these, living conditions are to create social distance, where its a fact CCI, and SCC, never complied with this directive iss.ued in the executive orders by Diaz, Allison or Bates, and resulted in a dangerous condition that injured and infected Plaintiff with Covid-19, where he now suffers[s] a diminishing quality of life, not being able to smell, taste, coughing up blood clots, shortness of breath, severe joint pain, headaches, that can now be contributed to Covid-19 and the recent medical study that identifies these symptoms as "Long Haulers Effect" there are other contributing factors that are of major concern.

26. These symptoms include the fact, of the risk of increased hypertension that increases the chance of cardiomyopathy, whereas Plaintiff also suffers from depression and mental anguish, primarily due to the loss of family members from this deadly Covid-19 disease by name (uncle Arthur"Tuggy" Sanford, uncle, Leonard Jones, uncle Mark Lampkins, aunt Judy Jones) their loss to our family is a huge lost of family support and community support. This has had a devastating effect upon me because, I can't be there, and now I am suffering from the same fate that has caused their deaths, has a deep impact on my depression with the very likely possibility I will have to face this delimma absolutely alone without my family, just as they have felt with me not being able to be there for them in their time of need, is a hard fact to face.

27. Plaintiff has been unable to have any physical visiting whatsover since the Covid-19 epidemic occurred, and this fact continues to this very day, and this is another certain fact that contributes to my depression and now having to be concerned with the diminishing quality of life I am now suffering from day-to-day, having to be forced to live in dangerous conditions that don't provide adequate disenfectant supplies, social distance in bed areas with six (6) Feet distance between each inmate and petitions, that are suppose to be used to help prevent the spread of social distance in the prison dorm setting is not , I repeat not being used as posted in memorandums, and directives as measures being taken by the Department CDCR have not done. See Exhibit B, that shows how the bed positioning is not in compliance with executive orders as Plaintiff has been continue to outline every point and adding drawings of dorms at SCC, and CCI that shows there is no way of providing social distance and puts inmates at an unreasonable risk of danger of contracting Covid-19, where, it has infected Plaintiff and now prevents him from enjoying basic quality of life.

28. Defendants mentioned herein all failed to take their responsibility serious and ignored their duties to provide a safe enviorment to Plaintiff, that ultimately infected him with the Covid -19 virus at this facility CCI, two diffent times, while Plaintiff is still being subjected to an on-going - - - dangerous condition.

29. Its a fact CDCR Secretary Ralph M. Diaz/Kathleen Allison owes a duty to take measures to make the prison a safer enviorment, where they have the authority to to enforce them at CCI was not acting on the executive orders and mandates to practice social distancing , and even after the constant warnings of these facts associated with being infected by this deadly disease Plaintiff was told by the medical staff at SCC when he first brought this matter to the attention of the medical staff in :"HC 602 Appeal # SCC PHCI 2000013 : stated ; 'Facility and living conditions are not health care services issues over which California Correctional Health Care Services has

1  no jurisdiction. As to your concerns should be addressed through the appropriate custody channels
   at your institution" See supporting facts of this document submitted by the Health Care Services
2  , where there is no identifiable signature to who is held liable as the Health Care Representative
   therefore, Plaintiff has had to write another letter to identifying this Doe Defendant1 thru-5
3  by addressing this matter to S. Gates the Health care Supervisor located at P.O. Box 588500, Elk
   Grove, CA 95758, See Letter giving notice , and HC 602 and Response::on May 15, 2020 at Exhibit
4  "B"

5  Medical Conditions:
   30. Plaintiff : Robert Sanford, has a history of ashtma, thalasemia, and anemia, he has been under
6  treatment by the CDCR Department regarding these medical conditions, by being provided , inhalers
   Xopenex HFA 45 MCG, Asmanex HFA 100 MCG, and montelukast sdium 10 MG tablet, and Ibuprofen for
7  headaches and pain.

8  31. These are pre-existant medical factors that that puts Plaintiff at a higher
   risk of contracting Covid -19 due to the unsafe dangerous conditions he is forced
9  to live in with no social distance, no masks being worn, no bleach or disenfectant
   that is approved by FDA or other protective agencies as a active substance that
10 kills the Covid-19 virus on surfaces, inmates  not being quarantined for the
   required 14 day protocals before being placed in with inmates that have tested
11 negative for the Covid-19 virus, there is another factor not being addressed by
   staff here at CCI, as they allow inmates to refuse the test of Covid-19 when they
12 test the population here at CCI, then placing them or allowing them to remain in
   population with no accountability they may be infected or  have become in fected
13 that now puts Plaintiff at an unreasonable risk of dager of being re-infected
   with Covid -19 for a third time, that could increase the injury Plaintiff is
14 currently suffering, due to contracting the Covid-19 virus twice (2) July 11,
   2020, qnd Octber 2, 2020.

15
   32.DEFENDANTS: U. BANIGA, S. SHIESTA, B. CATES, B. SANDERS, C. SCHYULER, RALPH
16 DIAZ, KATHLEEN ALLISON, GAVIN NEWSOM, CALIFORNIA CORRECTIONAL INSTITUTION, DOES
   1 THROUGH 5, as Plaintiff has clearly pointed out these deadly dangerous con-
17 ditions, have put him in a unreasonable risk of danger due to his pre-existant
   medical issues that  places Plaintiff at a higher risk of danger if becoming
18 infected with Covid-19, as this certainly happened as Plaintiff warned would
   happen, if he was forced to remain in the unsafe overcrowded conditions at CCI
19 and at (SCC), that are both under the direct supervision of Secretary of CDCR
   DEFENDANT RALPH M. DIAZ/KATHLEEN ALLISON, and the Defendant agents employed
20 under their supervision and authority.

21 LONG HAULERS EFFECT:
   33. Descibes how Plaintiff now suffers ongoing joint pains, headaches, fatigue
22 shortness of breath, to the point I have trouble going to sleep, waking up with
   excrutiating pain, coughing up blood clots, headaches that seem to never go away,
23 these medical injuries  were not evident until Plaintiff contracted Covid-19
   and now Plaintiff cannot smell, or taste and the quality of his life has greatly
24 diminished from this injury caused from effects of the Covid-19 infection.

25 34. Plaintiff is only able to possibly get maybe four (4) hours of sleep on a
   good day, usually it is much less, due to the pain that is unrelenting, as  I
26 have been suffering inexhaustable fatigue. It has affected me so bad to the point
   I have difficulties conducting normal activities, like walking to the bathroom,
27 trying move personal items to clean up, showering, sitting up to read college
   materials, standing for long periods of time causes unbearable pain on my joints.

35. The excruciating pain and suffering that Plaintiff has been going through due to becoming infected with Covidl-19, since July 11, 2020, and October 2, 2020, has caused him considerable mental anguish, that can now be contributed to the Long haulers Effect.

VACCINE AND ITS RECENT SIDE EFFECTS:

36.   The vaccine that has recently been made availble for the inmate population here at CCI to take, as a new memorandum was circulated to all inmates within CDCR jurisdiction, dated December 18, 2020. This Memorandum; was signed by DEFENDANT: KATHLEEN ALLISON SECRETARY  OF CDCR, and J. Clark Kelso, the appointed Federal Receiver.

37. Plaintiff was given the vaccine on February 10, 2020, as Plaintiff was more than willing to receive the vaccine due to his high risk factors of being infected for a third time was extremely high, as now the CCI facility is now acting as if the Covid-19 virus has went away, because they are distributing the vaccine here at this facility. Although they say California Department of Public Health has rules, stating most high risk from Covid -19 will get the vaccine first, they also state taht inmates with high Covid risk scores are also included. Plaintiff is not sure what category CDCR holds his situation in high risk, or high risk score. However, upon taking this vaccine on February 10, 2021 at approx 10:00 am, I was not given any disclosure to sign as what side effects I may be subjected to.

38. At approximately 2:00 pm, I began having a overwhelming headache, and the whole right side of my body was having a burning sensation, the arm that I was given the shot in was extremely painful, I felt fatigued, so I lay, in assigned bed area, thinking the pain would go away, this was not the case, I unable to lay on my right side at all, and every time I tried, I had to scream in agony, This pain was even worse the next day February 11, 2021, where my whole body was aching all over every joint in my body was in pain, this was absolutely a side-effect that I was having from the Maderna vaccine shot from 2/10/21, the pain has not left and today is the 15th of February, Plaintiff has notified medical here at CCI with a Medical Request slip  CDCR 1782 Form explaining the side-effects plaintiff is suffering from.

39. Plaintiff described the excruciating headaches that refuses to go a way that is so painful, I have to grit my teeth all day from the pain, my right side is still in pain and sore from the shot, I have joint pains, and still cannot smell or taste, from the effects I was suffering when I got infected with the Covid virus is July 2020, and October 2020.

40. And now Plaintiff is being warned in the Memorandum thateven after taking this vaccine that has also caused Plaintiff pain and suffering, is still not a guarantee Plaintiff wont be subject to be re-infected again with Covid-19. As Defendants continue to operate the living conditions with reckless disregard not providing social distance of at least six-feet, still only provoding watered down disenfectant that has no FDA approval for killing Covid 19 on surfaces the living areas in the dormsetting here at Briggs hall has less than 3 feet of distance between the next inmate on one or both sides, there are no petitions between bunks, or double bunk beds, these conditions are clearly a unreasonable risk of danger of re-infecting Plaintiff, even after taking the Covid vaccine where there is a likely possiblity of srious injury and imminent death.

41. There is also another major concern that DEFENDANTS are ignoring that continues to put Plaintiff in an unreasonable risk of imminent danger of being re-infected with Covid -19, even though they are dispensing the vaccine here at CCI, this fact is there are more inmates refusing to take the vaccine, than those that actually take it. Therefore, leaving the population still at an unreasonable risk of harm or danger, with this airborne disease, that can only be prevented from spreading is by having at least 6 feet of social distance in every direction, this is absolutely impossible here within the dorms at CCI that only allow for less than 3 feet between double bunk beds with four inmates on one side or both in most areas the way the beds are positioned ( see Exibit "C "

42. Plaintiff has also witnessed when inmates are given the Covid-19 test, the majority of inmates refuse, particulary the inmates that don't speak english, so there is no way as to know [is] infected in the dorm, this is a absolute fact and Defendants at CCI, still allow these inmates to intermingle with the tested inmates, not separating them to prevent the spread of the Covid-19.

43. For these facts described above, Defendants: GAVIN NEWSOM, RALPH M. DIAZ/ KATHLEEN ALLISON, had a slight diligence of care in their duty to provide a safe enviornment to Plaintiff, they performed their duties with a concious, voluntary act or ommission in reckless disregard of their legal duties and due to the lack of their responsibilities, Plaintiff suffers from the consequences now being caused injury from their recklessness. By This DEFENDANTS Newsom, Diaz, and Allison, have demonstrated Gross Negligence. Because they where all directly informed by the Plaintiff of the dangers at both institutions CCI and SCC, refusing to practice safety protocols and to decrease the risk of the spread of Covid -19. Yet they did nothing.

44. Defendents: GAVIN NEWSOM, RALPH M. DIAZ, KATHLEEN ALLISON, where also negligent by their failure to excercise the standadrd of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm , except for the conduct that intentionally, wantonly, or willing-disregardful of others rights. A tort is grounded in this failure.

45. Defendants: GAVIN NEWSOM, RALPH M. DIAZ, KATHLEEN ALLISON, executed an intentional tort against Plaintiff Robert L. Sanford. By committing a civil wrong by their breech of duty that the law imposes on persons who who stand in a particular relation to one another. Intentional tort as a tort committed by Defendants Newsom, Diaz, and Allison, acting with the general or specific intent; because, they were specifically informed by letters by the Plaintiff that involved the violations that injured Plaintiff, even after warning them and their agents these injuries would occur if they did not act, and they were the ones who issued the executive orders in which they intentionally did not enforce at CCI Tehachapi State Prison, where Plaintiff was injured and now continues to suffer a diminshed quality of life, from the violations alleged in this civil complaint.

46. Defendant: CALIFORNIA CORRECTIONAL INSTITUTION, is a dangerous enviornment, and its employees had failed in its responsibilities to comply with the laws, and rules of the State of California and the United States, it has a duty to follow executive orders also by Defendants: GAVIN NEWSOM, RALPH M.DIAZ/KATHLEEN ALLISON and to follow Presidential Order Donald Trump, and Joseph Biden, instead CCI refused to enforce safety procedures regarding Covid-19, and thereby, was grossly negligent to its duty, obligations, and responsibility to maintain a safe functioning institution.

47. DEFENDANT: BRIAN CATES, breached his duty of care to Plaintiff, by and through his failure ensure that CCI was a safer enviornment. he failed to ensure that all CORRECTIONAL OFFICERS AND STAFF, wear their mask and gloves at all time.

48. DEFENDANT: Brian Cates breached his duty to maintain a safe enviornment by failing to isolate inmates instead of allowing them to be MIXED IN ALL TOGETHER, Crowding them into Dormitories at CCI with this virus being uncontrolled, is just like packing inmates in a incubator of death. Bunking inmates in these dorms in Double Bunk beds with absolutely no possible way of social distance where each bunk bed is less than three feet apart from each other. CCI is constantly shifting crowds of inmates from one building to the next building where infected inmates are moved out of a housing unit at CCI, and then the CCI staff are then transferring an entire building (consisting of 10 to 100) inmates , right behind these infected inmates building that was transferred, not sterilizing the infected contaminated building before replacing them with a crowd of inmates from another building. This alone is how Plaintiff became infected on July 11, 2020, here at CCI that now has injured him to the point where Plaintiff cannot smell or taste, is now suffering from headaches, severe joint pain, coughing up blood clots, and other medical complications that has been described above herein.

49. Brian Cates, failed in his duty and responsibility to provide a safe en-viornment where from the time Plaintiff was transferred to CCI from SCC on June 18, 2020, to July 2020, where officers at this facility and SCC refused to wear their face masks and to wear gloves, while having contact with inmates person-to-person as this is a fact how this airborne virus is spread.

50. Brian Cates, had specific knowledge of the institution (failures) as stated above, because: 1) Brian Cates is the (A) warden at CCI, and his duty is to provide a safe enviornment; 2.) he has officials under his supervision that keeps him informed about this issue involved with the prison, and 3.) he had made an order to prevent all inmate grievances HC 602 complaints from being processed, and that all inmates that tried, was denied the right to appeal, by CCI returning the appeal unprocessed. And officers threatening retaliation, if inmates complain, by conducting searches of housing units tearing up and destroying personal items, and then saying they came in because inmates are writing up 602's against the facility.

51.) B. Cates, has a duty to know, and to stay informed about all functions in the prison, he is the HEAD SUPERVISOR and his responsibilities require him to know about the violations that is taking place under his watch. And if he did not know, then he had been grossly negligent to his duty of care of all inmates that was and is under his Custody; including Plaintiff Robert L. Sanford.

52. Inmates in CCI had been and are being improperly quarantined, on on about June 18, 2020 until what Plaintiff has absolute knowledge of February 2021, as Plaintiff outlined and described the facts in paragraph 19 above, where its a fact Plaintiff was not properly quarantined himself on 6/18/20 and moved within 10 days on the 26th of June to Clark Hall low at CCI, even after being transferred from SCC, while this institution CCI was fully aware a major outbreak was occurring at the facility and infecting inmates on a daily basis these inmates were still housed in the same units, using the same bathrooms, showeres, sinks, sharing the same television area, and were all tested positive for COVID-19.

1   All the while inmates here at CCI were crammed into these housing units, to
    the point they were so full, inmates are stacked on top of each each other
2   Double bunked , with less than 3-feet of distance apart, Plaintiff described
    the unsafe condition herein above at (paragraphs 20, 21), Plaintiff also
3   oulined every account regarding these overcrowded conditions that put Plaintiff
    at an unreasonable risk of being infected with Covid-19, through letter's,
4   602's, government claims, CDCR 1782 forms, inmate request forms, and any
    administrative process available for Plaintiff to warn against the dangers
5   that the overcrowded conditions have.

6   53. CCI dorms are not properly equipped with adequate ventilation system,
    in the dorms, Clark Hall,Up and Low, Rex Deal Dorm, Briggs Hall Dorm, Van
7   Weston, Up and Low, Davis Hall Up, as these are all the dorms Plaintiff has
    been housed in since arriving here from SCC on june 18, 2020, these dorms are
8   Doubled Bunk situated were there is less than 3-feet apart from each other.
    there is no enforcement of along with the fact, its practically impossible
9   to sleep with a mask on, with inmates coughing and sneezing right next to you,
    right above you, on both sides, these same conditions exist in the Showers, and
10  just trying to brush your teeth in the sinks that are less than 18" inches
    apart, the heat in these dorms, during the months of June andJuly, August, and
11  September, has easily reached triple digits here at CCI, that makes it even
    harder to breath with a mask on. Their is no air conditioning, in these housing
12  dorm units, there is no way you wear a mask at all times in these conditions,
    even the Officers say, ; "You guys don't have to wear your mask but when you
13  see seargeants and the Audit coming through the housing units, put your mask
    on. DON'T PUT MY UNIT ON BLAST." If there were cameras, or other measures to
14  enforce wearing face masks, becaues the officers themselves don't want to wear
    them at all, and several have expressed this at CCI.
15
    54. CCI fails to establish an adequate protective monitoring system (cameras
16  or surveillance in strategic areas) or even to be aware of occurrences in the institution
    such as these described herein above. Instead CCI ignored its duties , and so did its warden by their
17  express Negligence to their duties, responsibilities, and their obligations to provide a safe
    enviornment.
18
    55. THE DEFENDANTS: GAVIN NEWSOM, RALPH M. DIAZ/KATHLEEN ALLISON, BRIAN CATES,
19  C. SCHYLER, B. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INSTI-
    TUTION, DOES 1 THROUGH 5 (Collectively Defendants) had breached their duty
20  under contract to provide a safe enviornment, by executing the executive orders
    by the U.S. President, and The California Governor, and Secretary of CDCR, to
21  practice safety protocols in response to covid-19. such as:
    1) ORDERING AND ENFORCING THAT ALL CDCR OFFICIALS AND STAFF AND OFFICERS ARE
22  PRACTICING AND ENFORCING THAT ALL CDCR OFFICIALS ENFORCE THE COVID 19 PRO-
    TOCOLS. LIKE SOCIAL DISTANCING PRISON INMATES, INSTEAD OF CROWDING THEM TOGETHER;
23  2) Wear and enforce wearing masks, and wearing gloves, when having contact with
    inmates, like searches, and escorts;
24  3.) To ongoingly provide sanitary supplies to each and every prison inmate,
    for hand sanitizing, and disinfectant for their use after restrooms, and their
25  living areas; and
    4.) BUNK INMATES 6-feet apart instead of less than 3-feet.
26
27  56. In the event that social distancing is impossible, due to PRISON OVERCROWD-
    ING release inmates that are eligible for parole that don't pose any unreasonable

1  risk to public safety, that have CDCR case risk assesment scores of 1/low,
   or 2, these are scores CDCR deems safe risk factors to public safety. There
2  are other measures that can be used by CDCR/CCI to utilize, such as 1170(d)(1)
   Special Directive for Los Angeles County inmates within CDCR SD-20-14, that
3  qualifies inmates that are at risk of being infected with Coyid-19, and have
   served more than 15 years of their term. Plaintiff certainly qualifies for all
4  mentioned here.

5  57. It is cruel and unusual punishment to deliberately , or grossly be negligent
   to prisoner safety. All of the DEFENDANTS in this lawsuit are under contract
6  to ensure public safety, and prisoner/inmate safety. The Defendants (ALL THE
   DEFENDANTS) of this action breached contract to ensure safety to this Plaintiff
7  and caused him irrepairable damage and injury that infected him with COVID-19
   and now he can no longer smell, or taste, suffering headaches, joint pain,
8  and a true quality of his life completely dimished.

9  58. Defendants: Ralph M. Diaz, Kathleen Allison, Brian Cates, California
   Correctional Institution, and Does 1 through 5, have a duty to enforce laws
10 (EXECUTIVE ORDERS) and regulations. All employees of the department shall be
   responsible to enforce laws, regulations, and procedures which govern  the
11 actions and activities of inmates, parolees and of persons who come into con-
   tact with inmates and parolees who are not designated as peace officers, whose
12 normal assigned job duties do not require custody and supervision of inmates
   and parolees, or in situations where it would be inappropriate or unsafe to
13 intervene in unauthorized actions or activities. All employees shall respond
   as directed by proper authorities. (Calif. Code of Regs. title 15. Art. 2
14 § 3291 and Art. 4. § 3301; § 3303.)

15 59.  Institution heads shall maintain procedures for controlling and to sucess
16 fully meet the challenges and discharge the responsibilities of the department.
   each institution and parole region requires a skilled and dedicated staff of
17 employees working in close cooperation with a high degree of morals. The depar-
   tment will encourage a high esprit de corps by enabling employees to improve
18 their skills through training, by constant effort to make working conditions
   safe and pleasant, and by protecting the rights and privileges of employees
19 under civil service laws and rules. Calif. Code of Regs. Art. 4 §3430.

20 60.  The Warden Brian Cates of the California Corrections Institution, is the
   cheif executive officer of CCI institution, and is responsible for the custody,
21 treatment, training and discipline of inmates under his charge. Title. 15, Art
   5.  § 3380(a).

22 61. Defendants, GAVIN NEWSOM, RALPH M. DIAZ, KATHLEEN ALLISON, BRIAN CATES,
   C. SCHUYLER, P. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INS_
23 TITUTION, DOES 1 THOUGH 5, are all defendants collectively, and all have
   committed a battery against this Plaintiff as  a dependent adult in violation
24 of Cal. Penal. Code §243.25 as follows:
   "When a battery is committed against a person of an elder or a dependent adult
25 as defined in Penal Code. §368 with knowledge that he or she is an elder or
   dependent adult the offense shall be punishable by  a fine not to exceed two
26 thousand dollars ($2000.00) or imprisonment in the county jail not to exceed
   one year, or by both that fine and imprisonment.
27

62. § 368 (A) is defined as follows; The Legislature finds and declares that crimes against elders and dependent adults are deserving of special consider-ation and protection, not unlike the special protections provided for minor children, because elders and dependent adults may be confused, on various medications, mentally or physically impaired, or incompetent, and therefore less able to protect themselves, to undersatnd or report criminal conduct, or to testifyin court proceedings on their own behalf. .

63. §368 (b)(1) Any person who knows or reasonably should know that a person is a elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffer[ing], or having the the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in asituation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6000.00), or by both that fine and imprisonment, or by the imprisonment, or by the im-prisonment in the state prison for two, three, or four years.

64. Pursuant to §368(h-i) states the following: As used in this section, "dependent adult" means any person who is between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities or who physical or mental abilities have diminished because of age. "dependent adult" includers any person between the ages of 18 and 64 who is admitted as an inpatient to a 24-hour health facility, as defined in sections 1250, 1250.2, and 1250.3 of the Health and Safety Code. (i) As used in this section, "caretaker" means any person who has the care, custody, or control of, or who stands in a position of trust with, an elder or a dependent adult.

65. DEFENDANTS: GAVIN NEWSOM, RALPH M. DIAZ, KATHLEEN ALLISON, BRIAN CATES, C. SCHUYLER, B. SANDERS, S. SHIEGHA, U. BANIGA, CALIFORNIA CORRECTIONAL INSTITUTION, DOES 1 THROUGH 5;(collectively "DEFENDANTS" hereinafter) had violated Plaintiff Robert L. Sanford's rights to remain in a safe enviornment The DEFENDANTS knew or should have known as a custodian/caretaker of Plaintiff and Prison inmates, that they knew would suffer physical or mental injury under the circumstances poor conditions likely to produce great bodily harm or death. The Dedendants WILLFULLY CAUSED AND/OR permitted the DEPENDENT ADULT Robert L. Sanford the Plaintiff in this action, to suffer and inflicted thereon unjustifiable physical pain and mental suffering, with causing Plaintiff to be infected with COVID-19, now suffering a diminished quality of life, described above.

66. The unsafe conditions in which Plantiff the dependent adult, where he was is an enviornment reasonably beleived would produce physical and mental harm, as what this enviocnment eventually caused physical harm to Plaintiff with infecting him with Covid-19  two different times, as this is a result of deliberate negligence of the DEFENDANTS.

67. Robert L. Sanford is in fact a DEPENDENT ADULT upon the custodian and all the DEFENDANTS. Plaintiff now suffers a ongoing diminishing quality of life

1  where Plaintiff was infected with Covid -19 and now physical injuries, of not
being able to smell or taste, severe constant headaches, joint pain, coughing
2  up blood clots, not even mentioning what it has done to me psychologically, the
unsafe enviornment was and is the cause of how plaintiff was infected with
3  Covid-19, where these overcrowded dorms Plaintiff is forced to live in that has
no ability to social distance, due to the DEFENDANTS negligence and deliberate
4  tort acts and ommissions regarding how they allowed these dormitories at CCI
to be so overly packed with inmates, where they failed to enforce protocols such
5  as wearing masks, wearing gloves, and providing hand sanitizers and disenfectants
on a ongoing daily basis for each inmate/dependent adult.

6
68. As Plaintiff being a dependent adult he is physically incapacitated to
7  provide for hiself, to obtain PPE and to social distance in the absence of
control and direction of the DEFENDANTS/custodians/caretakers.

8
69. Due to the DEFENDANTS failure to adequately take care of the dependent adult
9  /Plaintiff, as Plaintiff continues to suffer a ongoing an unreasonable mental
state of emotional infliction, as he does not know what his fate may be with
10 being infected again with Covid-19, where Plaintiff did all that was humanly
possible within the confines of the custodians/caretakers care, to warn that
11 the overcrowded conditions have not only caused psychological damage and just
how this impacted Plaintiff with severe anxiety of getting infected with Covid
12 19, and then to actually get infected now suffering with this diminished
quality of life ; and is worsening with the likely, possiblity being re-infected
13 with a new variant strain of the virus, that not even the Maderna, Pfizer, and
vaccines related can even combat. As medical experts from the CDC and Medical
14 prfessional warn, how much more contagious this varient of COVID-19 is, my
imminent chance of death, if Plaintiff, becomes reinfected with Covid 19 the
15 third time, under these unsafe conditions, with no available social distance,
not even with the current vaccines, is an unreasonable risk of dangerous  con-
16 ditions, that is ongoingly causing Plaintiff pain and suffering.

17 70. The DEFENDANTS had always been not following the protocols, and had been so wreckless in their
negligence toward the plaintiff's, health end safety, as DEFENDANTS created a more unreasonable
18 dangerous enviornment by the following facts: Standard medical care and mental health have been
beligerentyly disregarded. Robert L. Sanford Plaintiff in this civil cation tort, where on two
19 occasins the psychologist refused to treat for counseling therapy, from the depression and long
haulers effect, with pysical trauma  from contracting COVID-19, now reminds me of helplessness
20 as I can only think "I will die in prison , witout another chance to see my family, my mommy
daughter's, nobody, because I'm now serving a new sentence of COVID-19 death." The DEFENDANTS
21 refuse to  stop over-crowding the Dorms, they refuse to comply with protocols issued by executive
orders. DEFENDANT : U. BANIGA, stated in a  602 " Plaintiff was only infected one day with COVID..."
22 SEE(EXHIBIT  "D  "") , and the symptoms that became evident first not being able to smell, the
test was returned positive for Plaintiff on 07/16/2020, five whole days passed after the first
23 symptom, and Plaintiff, is  still injured with inability to smell, taste, coughing blood clots,
severe headaches, joint pains, and these , and this is the Cheif Physcian Surgeon at CCI, DEFENDANT
24 U. BANIGA, knowing of the unsafe condition that has infected Plaintiff on 7/11/2020, or should
have known that this dangerous enviornment, placed Plaintiff at an unreasonable risk of imminent
25 danger of great bodily injury or even death. This is not the only questionable matter
related to DEFENDANT U. BANIGA on February 16,2021 on HC 602# CCI HC-20001082
26 Defendant U.Baniga, chose agin to ignore the risk factors and risk Plaintiff
is in with the contracting of Covid-19 at this facility CCI, while knowing
27 Plaintiff, is suffering from pre-existing medical complications, such as anemia,

1 asthma, and alpha thalasemia, that is a sickle cell trait, where Defendant
  is aware Plaintiff has been infected twice here at CCI, as Plaintiff has
2 clearly stated in the administrative HC-602, the overcrowded conditions has
  been the contributing factor, that has caused Plaintiff this injury that now
3 has diminished his quality of life of being able smell, taste, severe headaches,
  joint pain, where there is no way for Plaintiff to enjoy the quality of life
4 he was able to enjoy before being infected with COVID-19 on July 10, and  October
  2nd, 2020. Defendant U, Baniga, had no comment as to Plaintiff coughing up Bloc:,
5 ood, and the fact Plaintiff remains at an unreasonable risk of being reinfected
  with the virus. His silence on the facts outlined in the 602, is in fact an
6 agreement that he, does not address in his report on 2/16/21, and for the
  fact he does not deny the fact the dorms are overcrowded here at CCI, is
7 gross negligent account of his duty as Chief Surgeon, where he knows of the
  imminent dangers Plaintiff a dependent adult is in and he fails to act.
8
  71. There is no excuse, given the fact the DEFENDANTS KNOWINGLY AND INTELLIGENTLY
9 continue to sbject Plaintiff to this absolute dangerous condition and dangerous
  enviornment, knowing Plaintiff is a dependant adult, aware that the threat of
10 harm amounts to battery in violation of civil and criminal laws.

11 72. The DEFENDANTS have an obligation as custodians and caretakers to protect
  the interest and the health and safety of the Plaintiff/Dependent Adult. The
12 DEFENDANTS , breached their obligation and duty to ensure Plaintiff's safety
  thereby subjecting plaintiff to the imminent threat of danger.
13
  73. The Defendants obligation as custodians/caretakers of Plaintiff is to pre-
14 vent or reduce the risk or threat of mental and emotional injury, or the likely
  possiblity of Plaintiff suffering physical lininjury, again, under the circumst-
15 ancesaand poor conditions that are likely to produce great bodily harm  (Covid
  19) or death. Thir obligations are to protect the Plaintiffs from the suffering
16 herein, as described how the DEFENDANTS HAD FAILED in their duties and obligat-
  ions to comply with their responsibility to protect the health and safety of
17 dependent adult of this lawsuit.

18 74. On February 2½, 2021, the Plaintiff Robert L. Sanford , filed  a complaint
  in the U.S. Postal Mail, here at CCI, addressed to the California  Department
19 of Justice , Office of the Attorney Ge neral in Sacramento, CA, a criminal
  complaint against Defendants in regards to pursuing prosecution against all
20 of the DEFENDANTS in this lawsuit. On the same day , the Plaintiff then filed
  a letter to Office of Internal affairs in Rancho Cucomonga, California which
21 is a a duplicate of the above complaint. The Plaintiff seeks criminal prose-
  cution of the DEFENDANTS for criminal negligence and battery with the intent
22 to commit great bodily harm under California Penal Code §³ 243,25 and 368(a).
  To date

23

24

25

26

27

COUNT 1, CAUSE OF ACTION- GENERAL NEGLIGENCE    PAGE

Robert L. Sanford plaintiff in this action

DEFENDANTS: GAVIN NEWSOM, RALPH M. DIAZ, KATHLEEN ALLISON, BRIAN CATES, C. SCHUYLER, B. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INST-ITUTION, DOES 1 THROUGH 5.   (COLLECTIVELY "DEFENDANTS")

Plaintiff incorporates paragraphs 1-74 As though they were stated fully herein.

Defendants violated Plaintiffs right  to remain  free from a dangerous enviornment. And Defendants  negligence subjected Plaintiff to cruel and unusual punishment violations of the United States Constitutional Eighth Amendment; and California I, § 17. "Excessive Bail Shall not be required , nor excessive fines , nor cruel and unsual punishments inflicted." [Ratified Dec. 15. 1791]. The Executive orders by the United States President Donald Trump, and New President Joseph Biden. and Governor Gavin Nesom, and Secretary of CDCR Ralph M. Diaz/kathleen Allison, are the Defendants described herein paragraphs 1-74 that specifically and deliberately disregarded placing the Plaintiff's life in danger that did infect Plaintiff with Covid-19. And Defendant Brian Cates failed to take protective measures , by following the safety protocols in response to Covid-19, and allowed CCI to become infected by and through his failure to: ENFORCE SAFETY PROTOTOLS PURSUANT TO THE EXECUTIVE ORDERS; ENFORCE FACE MASKS; ENFORCE WEARNING GLOVES WITH ANT AND ALL OFFICIALS, STAFF; AND EMPLOYEES; AND PROVIDING ONGOTNGLY DAY TO DAY HAND SANITIZER, AND DISENFE CTANT FOR EACH INMATE. Instead the enforcement of Face Mask had not been enforced  still to date. No hand sanitizer in the bathroom, and never issued gloves for inmates to wear; and no disenfectant that the EPA approved to kill the Covid-19 on contact, there has been nothing issued for day to day use by each inmate here at CCI.

By this, The DEFENDANTS had deliberately and negligently created a dangerous enviornment, because of their failure to follow the Executive orders of the First President Donald Trump, and the second President Joseph Biden, and also the California Governor Gavin Newsom, ordering to Practice social distancing and safety protocols for Covid-19 (Cal. Code. of Regs. Art.2. §§ 3270 and 3271. The RESPONSIBILITY Of EMPLOYEES: "every employee, regardless or he assignment, is responsible for the custody of the inmate confined in the institutions of the department." (Former Dp-4202)

As a proximate result of said Defendants and each of them , knew of the need to comply with the laws applicable  to the ownership, operation, management and/or supervision of CCI and further knew  thatnon-compliance with such laws would put health and safety and the welfare of the Plaintiff unreasonably at risk. DEFENDANTS also knew that continual failure or refusal to discharge their fiduciary duties to PLAINTIFF would likely result in injury and/or death to them.  The conduct  of the said DEFENDANTS, as alleged above,  constitutes "Physical abuse" and  "Neglect" , as those terms are defined in W&IC §15610.63 & 15601.57, and other sections of the law, in that  DEFENDANTS failed to exercise the degree and responsiblity of care that a reasonable person having custody of Plaintiff would exercise.  The continuing  pattern of abuse, as alleged above, was in accordance with the above-descibed plan of DEFENDANTS  TO train supervise staff, supply and equip their facilities at adequate levels so as to wrongfully maximize the business profits.  DEFENDANTS' actions were wreckless,

16

1   intentional, malicious, fraudulent and oppressive, and also constitutes a breach of DEFENDANTS fiduciary duties.

2

3   As the above-described conduct on the part of the DEFENDANTS and each of them was a direct cosequence of the motive and plan to elevate profits at CCI, said DEFENDANTS are guilty of malice, fraud, wrecklessness and oppression in the

4   commission of the abuse that caused Plaintiff pain suffering and a diminished quality of life from the violations alleged herein. Thus under the Elfare

5   and Institutions Code W&IC § 15657(a)-(d), said that DEFENDANTS are liable to the Plaintiff for damages related to personal injury, mental and emotional

6   injury, incidental expenses, plus attorney fees, and costs of the lawsuit. Furthermore, the DEFENDANTS are liable to the Plaintiff each of them for

7   treble damages pursuant to Code of Civil Procedure Section 3345.

8   As alleged above in this Civil Tort action, where the above described conduct on part of the DEFENDANTS and DOES 1 Through 5, inclusive and each of them,

9   was a direct absolute consequence of the motive and plan to elevate profits above the Plaintiff's care and safety, Defendants engaged in and/or ratified

10  or approved by high level managerial agents and said DEFENDANTS are guilty of malice, fraud, wreckleasness, despicable conduct, and oppression in the

11  commission of the abuse and violations alleged herein. In committing the above -described wrongful acts said DEFENDANTS Acted intentionally, maliciously, and

12  with conscious, disregarded Plaintiff's rights, safety and welfare.

13  //

14

15

16  //

17

18

19

20  /

21

22

23

24

25

26

27

COUNT 2: CAUSE OF ACTION- Intentional Tort         Page

Robert L. Sanford: Plaintiff in This action.

DEFENDANTS: GAVIN NEWSOM, RABPH M. DIAZ/KATHLEEN ALLISON, BRIAN CATES, CSC. SCHUYLER, B. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INSTITUTUON DOES 1 THROUGH 5. (COLLECTIVELY "DEFENDANTS")

Plaintiff, incorporates paragraphs 1-74, as though they were stated fully herein.

Plaintiff Robert L. sanford, did file a criminal complaint against the above DEFENDANTS on February 2?, 2???        , this complaint was sent to the California Department of Justice and to the Office of the Internal Affairs in Rancho Cucomonga against the DEFENDANTS who are the DEFENDANTS for criminal conduct: battery and the unjustifiable affliction of physical pain and suffering and mental injury. the DEFENDANTS have willfully caused and/or Permitting the dependent adult/Plaintiff to suffer the infliction of unjustifiable pain and suffering where Plaintiff was infected with Covid 19, and no longer has the ablity to smell or taste, severe headaches, joint paimsuffering a diminished quality of life. From the DEFENDANTS willfully causing or Permitting the Plaintiff's health and safety to be placed under jeopardy with the looming threat of imminent dangger. Additionally, the DEFENDANTS not only placed Plaintiff in danger, but also contributed to causing an unreasonable increase in danger where they continuously denied adequate medical care. Additionally, pursuant to California Penal Code § 368 (H-I) AS pLAINTIFF is physically restrained and incapacitated and is unable to fend for himself. Plaintiff is at the absolute mercy of DEFENDANTS as an dependent adult.
The Defendants had been negligent in providiing the required thorough duty of care that was issued by executive order for standard protocols to protect health and safety with the following:

A) Stop overcrowding, shifting and mixing inmates between and across housing units causing cross contamination increasing the risk of Covid-19 exposure, that ultimately injured and infected Plaintiff causing severe pain and suffering.

B) Stop Double bunking and stop bunking inmates with less than three(3) feet apart, and stacking them on top of each other in double bunks, in dormitories that are now incubators of death for the Covid -19 virus. Because there is no available social distancing of 6 feet apart in the dangerous dorm housing units:

C) Enforcing all Institutional personnel including prison inmates to wear masks;

D) Enforcing vigorous and thourogh hand washing by providing adequate and effective hand sanitizers and disenfectants for the restrooms and living quarters be issued on a daily basis per inmate;

E) To wear gloves when officers are performing cell/dorm searches and come in contact with prison inmates;

It is impossible to social distance due to the over-crowded crisis in the prison, it is so bad due to the amount of inmates they have noe choice but to house inmates less than 3-feet apart, along with stacking inmates on top of

1  of each other through the constant double bunking, its like being crammed
   into a sardine can. Due to these over-crowded conditions plaintiff is still
2  being subjected to this dangerous enviornment that has infected Plaintiff on
   two different occassiona where he continues to suffer injury, as DEFENDANTS
3  are unable to provide PPE, hand sanitizers, adequate medical care, along with
   providing a safe enviornment for protecting Dependent Adult/Plaintiff from
4  being infected a third time, injuring him further with pain and suffering and
   the likely danger of imminent death from Covid-19. Plaintiff is suffering phy-
5  sical and mental pain. (EADACPA) SUB. SEC. (h) and (i) W&IC § 15610.63(d);
   W&IC § 15610.57; W&IC §15657 (a)-(b), Breach of their fiduciary duties, with
6  malice, and pppression. DEFENDANTS conduct was intentional and wreckless to
.  Plaintiff's Safety and Health.
7

8  //

9

10

11

12  //

13

14

15

16  /

17

18

19

20

21

22

23

24

25

26

27

1          COUNT 3:   CAUSE OF ACTION "        " NEGLIGENCE   Page

2 Robert L. Sanford: Plaintiff in this action.

3 DEFENDANTS: GAVIN NEWSOM, RALPH M. DIAZ/KATHLEEN ALLISON, BRIAN CATES, C. SCHU
  YLER, B. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INSTITUTION,
4 DOES 1 THROUGH 5. (COLLECTIVELY "DEFENDANTS")

5 Plaintiff, incorporates paragraphs 1-74, as though they were stated fully herein.

6  This cause of action three: Dependent adult, abuse/neglect.  In owning, oper-
   ating controlling, managing, supervising, and or workingat at California Corr-
7 ectional Institution CCI, DEFENDANTS: GAVIN NESOM, RABBH M. DIAZ/KATHLEEN ALLISON,
  BRIAN CATES, C. SCHUYLER, B. SANDERS, S.SHIESHA, U.BANIGA, CALIFORNIA CORRECTIONAL
8 INSTITUTION, DOES 1 THROUGH 5., were all required  to provide a safe  a safe
  enviornment without the threat of danger as described above so as to ensure
9 the Plaintiff's health, safety, and welfare. It is well known and has been
  expressly recognized by the California Legislature, through Welfare and Inst-
10 itution COde section § 15600 (a-d), and other laws, that dependent adults may
   be subject to "abuse, neglect, or abandonment and that this state has a respon-
11 sibility to protect these[ ], persons". Physical restraint and some with mental
   and emotional impairments, and the inability to fend for themselves, like those
12 experienced by Plaintiff, that now has infected Plaitiff two times with Covid-
   19, where Plaintiff was placed in an  vulnerable position not being able to
13 fend for himself and was  incapable of protecting himself.  wheee Plainff was
   recognizing the dangerous problem, and outlining the facts in the preceeding
14 paragraphs, the Califorbia Legislature has enacted the elder abuse and dependent
   adult  Civil Protection Act (EADACPA). This act is codified in the Wefare and
15 Institutions Code sections 15600 et. seq. The purpose and intent of EADACPA was
   made clear with subsections (h) and (i)  of the Welfare and institutions Code
16 §15600. As reflected therein, the California Legislature found and declared that
   infirm and dependent adults are a disadvantaged class, and that few civil cases
17 are brought in connection with their  abuse and neglect due to problems of proof
   and delays, plug the lack of incentive to prosecute such suits. Welfare and
18 Institutions Code section § 15610.23  defines an "Dependent Adult" as any person
   between the ages of 18 and 64 years of age who has physical or mental limitations
19 that restrict his or her ability to catry out normal activities or to protect
   his or her rights.
20 At the time [of]  the actual injury to Plaintiff, described herein, was in fact
   at all times relevant to this action a "Dependent adult".
21
   Abuse under the EADACPA claim includes "physical abuse", as defined in the
22 Welfare and Institutions Code section §15610.63(d), as well as " neglect" as
   defined in Welfare and institutions Code § 15610.57.
23
   DEFENDANTS: and each of them, knew and understood or reasonably should have
24 known, and understood, that the Plaintiff of this civil action required special
25 equipment, care and attention to the pre-existent medical conditions in re-
   sponse to dangers of the Covid-19 pandemic crisis.
26 During the Plaintiff's committment  and deliberate transfer from SCC to CCI
   on 6/18/20, where he is currently housed at California Coreectional institution
27 at all times mentioned herein this civil action complaint is a dependent adult
   as defined under EADCPA. Accordingly the DEFENDANTS were at all times relevant

1 in this action as "caretakers" as defined in the welfare and institutions
 Code section § 15610.1. This means that said DEFENDANTS owed a duty of utmost
2 goodfaith and fairness to Plaintiff Robert L. Sanford, regarding all matters
 pertaining to his health, care, comforts, basically in other words the DEFEN-
3 DANTS were fiduciaries and stood in a position of trust and confidence with
 respect to the Plaintiff that is now suffering from thier lack of responsib-
4 ility.

5 For the fact Plaintiff being a inmate dependent adult at CCI, the DEFENDANTS
 and each of them failed with all their duties to provide for plaintiff the
6 appropriate services as described, that would have protected him from becom-
 ing injured with two infections of Covid-19 that has now caused Plaintiff
7 to suffer a diminished quality of life.

8 In owning, operating, controlling, managing, and/or supervising CCI including
 Does 1-5 and each of them. Defendants and each of them held themselves out
9 to the general public and to Plaintiff, as being in compliance with all app-
 licable federal and state laws and executive orders thereto, upon information
10 and belief, DEFENDANTS, ABSOLUTELY KNEW, that the subject facility (CCI) was
 not designed, equipped, administered , staffed, trained, supervised, monitored,
11 or funded to comply with the responsibilities to provide care to Plaintiff,
 hwere it could prevent him from becoming infected with Covid 19 on two
12 different occassions, that continues to cause him pain and suffering. For thje
 failures of DEFENDANTS each of them, to provide adequate care, along with
13 ]their short-comings does the repeated failures on the part of said DEFENDANTS
 to have adequate supplies, equippment, staffing levels to satisfy the minimum
14 legal standards, and lack of staff training, protocols, and supplies to care

15 for person[s] such as Plaintiff. including but not limited to being found in
 violation of California laws applicable by California Department of public
16 Health in response to Covid-19 protocols, administered through the executive
 orders.
17 DEFENDANTS falsely advertised and misrepresented that California Correctional
 Institution to be a facility which provided skilled custody supervision.
18 This proved to be wrong as plaintiff is currenly suffering from the mis
 represented claims by DEFENDANTS, and still remains under an unreasonable risk
19 of being infected for the third time, due to the overcrowded conditions that
 exist within the dorms Plaintiff is forced to live in.
20
 The DEFENDANTS should have responded to the Plaintiff's letters and administr-
21 ative 602's taht clearly outlined the dangers Plaintiff was in that:
 AO
22 A) Bring CCI to compliance in response to the Covid-19 executive orders re-
 garding safety and health protocols or ; B0) release the Plaintiff pursuant
23 to 1170(d)(1), as Plaintiff meets the criteria, along with the recent Los
 Angeles County Sppecial Directive -20-14 issued by the LA. Bistrict Attorney
24 , as CDCR has numerous options to cure this matter that is continuing to
 place Plaintiff in an unreasonable risk of being infected with Covid for a
25 third ime.

26 As a proximate result of said DEFENDANTS and each of them, knew of the needd
 to comply with the laws applicable to the ownership , operation, management,
27 and/or supervision of California Correctional Institution and further knew

1 that non-compliance with such laws would put health and welfare of Plaintiff at an unreasonable risk of being infected with Covid-19. DEFENDANTS also knew
2 that the continual failures or refusal to discharge their duties would more than likely result in injury and or death. Whereas Plaintiff described these
3 injuries that has diminshed his quality of life above.

4 The conduct of said Defendants, as alleged above and herein, constitutes "physical" abuse and "neglect", as those terms are clearly defined in the
5 Welfare and Institutions Code section 15610.63 and 15610.57, and other sections of the law, in that DEFENDANTS failed to exercise the degree of care that a
6 reasonable person having custody of Plaintiff would exercise.

7 This continual pattern of abuse, as alleged above,   was in accordance with the above-described plan of DEFENDANTS to train, supervise, staff, supply
8 and equip their facilities at adequate levels so as to wrongfully maximize the business profits.

9
DEFENDANTS' actions were wreckless, intentional, malicious, fraudulent and
10 oppressive, and also constitutes  a breach of DEFENDANTS' fiduciary duties.

11 As the above -described conduct on the part of the DEFENDANTS each of themm was a direct consequence of the motive and plan toe elevate profits at CCI.
12 Said Defendants are guilty of malice, fraud, wreckless, and oppression in the commission of the abuse alleged herein. Thus, under the Welfare and Institution
13 Code section 15657(a)-(b), said DEFENDANTS are liable  to the Plaintiff for damages related to personal injury, mental and emotional injury, incidental
14 expenses, plus attorney fees, and the costs of the law suit. Furthermore, the DEFENDANTS  are liable to  the  Plaintiff each of  them for treble damages
15 pursuant to Civil Code Section §3345.

16 As alleged above, the above-described conduct on the part of DEFENDANTS and DOES 1-5, inclusive , and each of them, was a direct consequence of the motive
17 and Plan to elevate the profits above Plaintiff's care, engaged in and/or ratified or approved by high level managerial agents and said DEFENDANTS are
18 guilty of malice, fraud, wrecklessness, despicable conduct, and oppression of the commission of the abuse alleged herein, that caused actual injury to
19 Plaintiff. in committing the above-described wrongful acts said DEFENDANTS acted intentionally, maliciously, and with conscious disregarded the concerns
20 of Plaintiff and his safety, and caused the Plaintiff Robert L. Sanford, injury that is causing severe pain and suffering that is irreparable. Plaintiffs
21 rrights and welfare has been compromised from the callous acts of said DEFENDANTS and/or directed , authorized and ratified said acts. Therefore,
22 Plaintiff Robert L. Sanford is entitled to recover punitive damages from said DEFENDANTS pursuant to Civil Code section § 3294, in a sum that will be
23 requested  and proven at trial.

24

25

26

27

1    EXEMPLARY DAMAGES                                      Page

2    Plaintiff: Robert L.Sanford , is The Plaintiff in this action.

3    DEFENDANTS:   GAVIN NEWSOM, RALPH M. DIAZ/KATHLEEN ALLISON, BRIAN CATES, C. SCHU
4    YLER, B. SANDERS, S. SHIESHA, U. BANIGA, CALIFORNIA CORRECTIONAL INSTITUTION,
     DOES 1 THROUGH 5. (COLLECTIVELY "DEFENDANTS").

5    Plaintiff, incorporates paragraphs 1-74 as though they were stated fully herein.

6
7    The Facts in support of plaintiff's action are as follows:

8    Due to said DEFENDANTS, and their total and deliberate disregard for Plaintiff
     Health and Well being after being made fully aware, by letters ,.complaints,
9    they still refused to take any corrective measures.
     In fact, Plaintiff Robert L. Sanford, was forced to move to a infected.build-
10   ing at CCI on July 10, 2020, with no disenfectant, no ventilation, no social
     distancing, no face mask; as a result of this action forcing Plaintiff to move
11   into this clearly unreasonable dangerous enviorment, Plaintiff was infected
     with Covid-19, where he loss his ability to smell or taste, coughing up blood
12   clots, severe headaches, joint pain, and this all satrted when Plaintiff was
     placed in a clearly known unreasonable risk of life threatening danger.

13   The DEFENDANTS above had acted with malice, because they were made absolutely
     aware of the facts as established in the complaint, and knew of or should
14   have known that they were endangering the Plaintiff Robert L. Sanford, by
     forcing him to move into a known infected enviorment, housing dorm and dangerous
15   contaminated area, that had not been cleaned or sterilized, and made it abso-
     lutely impossible to practice any sort of social distancing at all, where now
16   Plaintiff is suffering a diminished quality of life, that has not returned,
     from the injury DEFENDANTS causeo....
17
18   DEFENDANTS conduct was with a deliberate disregard for their FIDUCIARY DUTY
     to protect and care for the dependent adult Robert L. sanford and to ensure
19   that he is placed into a safe enviornment.

20   These DEFENDANTS have deliberately refused to exercise and enforce the executive
     orders of the United States President, The California Governor and the Secretary
21   of CDCR, They committed a knowingly assualt/battery upon Plaintiff that has
     and still injure's Plaintiff day-to-day, and the injury is continuing, as
22   DEFENDANTS fail to act.

23

24

25

26

27

POINTS AND AUTHORTITIES

The early stages of Covid-19, and what scientist were doing to collect data where mass amounts of people were suddenly becoming hospitalized, and then started having extreme numbers of deaths, it had become so bad in the United States, as they were recording numbers, where 90% percent of the persons hospitaliz ed, were usually diagnosed with having pre-existing underlying medical conditions. Most of these reports came from within the Center for Disease Control and Prevention, CDC.

Here, in this civil action complaint, Robert Sanford was and is diagnosed with 1) Asthma, Alpha Thalasemia, Anemia, as to what made Plaintiff now have to suffer foom these pre-existing unlying conditions is 2) Plainff was infected with Covid 19, on July 10, 2020, where he immediately discovered he could not smell or taste, the test taken on July 11, 2020 proved POSITIVE for Covid-19. The other contributing factor that has complicated Plaintiff's Asthma, as the infection from Covidl-19, as he now suffers from shortness of breath, and the coughing of blood clots, as Plaintiff is under Chronic care by the Department of Corrections, also identified as CDCR (see supporting documents at EXHIBIT # "E" ).

With the underlying medical conditions, and the infection of Covid-19 whoi is already being treated for chtonic care, that places him in a problematic situation, where Plaintiff is at an extremely "high risk" of being re-infected with Covid-19 where he, is forced to be housed in a dorm at CCI, where he lives amongst 100 to 120 inmates, with less than 3-feet of social distancing where inmates have to share the same restroom, sinks, that are less tham 18 inches apart, and only enough room for inmates to shower with 4 inmates without bumping into each other naked. Theses conditions are truly unsafe with preventing the spread Covid-19 see United States vs. Zukerman 16 Cr. 194 at, 2020 U.S. Dist. Lexis 59588 (S.D.N.Y. Apr.3 2020), Plaintiff in this civil action has been subjected to massive circumstances of overcrowded conditions here at CCI, at Briggs Hall, Rex Deal Dorm, Clark Hall,[up%low], Van Weston [up%low], Davis Hall [up&Low], as Plaintiff has been moved and shited to this many housing units and dorms on CCI, where Plaintiff was subjected to mass amounts of inmates exposed to the Covid-19, where plaintiff had to share restrooms, showers, dining areas, tv, areas, with infected inmates during the months of June 18, 2020 (The day Blaintiff arrived from SCC), July, 2020, is when Plaintiff first contracted Covid =19 after being shifed from one contaminated building to abother, Van Weston upper, to Clark Hall loœer, to Rex Deal all occurred from 6/18/2020 to 7/11, 2000,

Plaintiff was then shifted again to another housing unit, that was now designated as the Covid-19 quarantine building Van,Weston, Low, from there Plaintiff was transferred again to Clark Hall low again, and after 13 days was placed in Clark Hall upper, this is where Plaintiff became infected again with Covid -19, on October 2, 2020, after coming from the dentist, who tested Plaintiff with a rapid covid test, Plaintiff was given a second Covid Test the same day, and both proved to be POSITIVE again for Covid-19 a second time, as Plaintiff was still unable to smell or taste. The overcrowded conditions that Plaintiff was forced to live in that ultimately infected him not once but twice, can is "like being in a incubator of Covid death, just waiting on its turn to kill you" Theses living conditions are truly a hardship and inadequately insuffi-cient, along with being deficient of constitutional demensions, as toilets are

1   often malfunctional and broken, the faucets are not in operational condition
    as well, even the drinking fountains are broken, and any reasonable person
2   could reasonably see the living areas in these dormitories at CCI are clearly
    breedigh    - grounds for the Covid-19 to spread as it did at this facility
3   in June, 2020, and if Plaintiff is subjected to contracting Covid-19 for
    the Third time there is a likely matter he will need ICU intervention, where
4   just in the month of February 2021 at (C-facility) next door to E-Facility
    seven (7) inmates have died and one is currently on a ventilator, according
5   to the Librarian that works on all facilities at CCI, and is fully aware of
    the data with the Covid-19 deaths here at CCI.

6   As theses facts stated herein, this civil action, where plaintiff describes
    the facts as to how there is no ability whatsoever to social distance himself
7   Plaintiff cannot follow the directives odf the Center for Disease Control and
    Prevention hwere they issued an interim Guidance on management of Corona-
8   Virus Disease 2019, in Correctional and Detention Facilities. This was posted
    on the CDC. website, where CDC has gotten its science; stating: The corner-
9   stone for preventing the Covid-19 from spreading in correctional settings is
    social distancing, defined as six (6)-feet = apart according to the CDC.
10  The Prison law office, and the Prisoner Legal Representatives, stated: CDCR
    has promised to create eight person groups, separerted from each other by at
11  least six-feet "  Yet in its own literature that CDCR submitted to the Prison
    lawyers reflected that they cannot create social distancing, and this is al
12  ready admitted by CDCR, Furthermore Plaintiff described these very facts and
    issues to the Prison Law Office, with extensive dialogue concerning these
13  detailed facts, Please see EXHIBIT " F."          " now attached, where Plaintiff
    has been contacting their office with this issue for months, starting in April
14  2020, up until Plaintiff's arrival here at CCI, from SCC.

15  The Secretary for CDCR Ralph M. Diaz and his representatives, including the
    new Secretary who replaced Diaz after retiring on Octoberl 1, 2020. Ms Kathleen
16  Allison, who is also aware of the fact CCI, stated: they are practicing social
    distancing, all the while they knew these were inaccurate statements, and were
17  absolutely aware this is impossible at this facility. It is also a fact, that
    Plaintiff and inmates housed at CCI are forced to live in quarters that do
18  not provide social distancing at all, as being a dependent adult here at this
    facility, whereas, as being a dependent adult I am under the direction of the
19  custodian, Warden Brian Cates, to begin with, and squarely falls on the shoulders
20  of the Secretary Ralph M. Diaz, and Kathleen Allison.

21  Due to the Covid-19 killing inmates within the jurisdiction of CDCR" That puts
    inmates lives here at CCI under imminent danger of serious danger or worse
22  death" For this is the primary reason Plaintiff has filed complaints, andnw
    now has no other remedy other than this civil tort action, because CCI
23  administration refuses to act by a continual circumventing of the process
    with his appeals to correct the dangerous condition, "as the dangers of
24  Covid-19 are real and proximate" see Wilson v. Beard ( 2018)   Lexis U.S.
    Dist, Lexis 182744.   Administration and correctional supervisors repeatedly
25  downplay the severity of Covid-19 at the California Correctional Institution,
    and The California Department of Corrections and Rehabilitation (CDCR), and
26  while supervisors are aware of the virus, avoiding prisoners on the yard (Fac-
    ility E) they deny the existence of Covid-19, California Correctional Peace
27  OFFicers Association CCPOA, and the CDCR administration diresti supervisor's
    to ignore symptoms and direct their staff to do the same. Now they refer

1  to the corona-virus as a "glorified flu" that is why they do not care for
   Plaintiff's or any inmates safety and well-being here at CCI (Facility E).
2  While the administration are aware or have every reasonable reason to be aware
   that the threat posed by Covid-19 is undoubtedly medical, the particular risk
3  the disease poses to prisoners are primarily a function of the contagiousness
   of the virus and the nature of the incarceration... Thus far, the only way to
4  stop its spread is through preventive measures- principle among them maintain-
   ing PHYSICAL DISTANCING sufficient to hinder airborne person-to-person trans-
5  mission. (CDC, Interim Guidance on Manangement of Corona virus Disease 2019
   COVID 19 in correctional and Detention Facilities).
6
.    Farmer v, Brennan 511 U.S. 825, 828 (1994), is the leading precedent case
7  that addressed cruel and unusual punishments, that occur within the prison
   setting, as what constitutes a unsafe condition, need not wait on a tragic
8  event  before it raises to an ultimate violation of the Eighth Amendment.
   The Covid -19 pandemic is one of these unexpected events, that shows that
9  the overcrowding conditions of inmates into dorms at CCI, with no social distancing,
   and with the time that was available for CCI does not provide any excuse,
10 to provide, as to how dangerous the overcrowding conditions are with the  pot-
   ential harm posed by Covid-19 is certainly attributable to the constitutional
11 violations outlined in Farmer v. Brennan, <u>Supra</u> .

12  The Governor Newsom, has enacted Gov. Code §8658, due to the uncontrolled
   Pandemic of Covid-19, as he declared an emergency, enaabling "the "the person
13 in charge of the institution... to release inmates" particulary thoser with
   underlying medical conditions, to protect them from the imminent perels of
14 death with the Covid-19, However, CDCR and CCI, refuse to comply with order
   and get in compliance with adequate social distancing of six-feet CDC Interim
15 Guidance on Management; <u>Supra,</u>  (Above)

16  The failure on the part of CDCR, has already caused a catastrophic "gross
   negligent" event, where they transferred inmates, from CIM to San Quentin,
17 that resulted in infecting 100's of inmates, and caused imminent death, from
   contracting Cpvid-19. Plaintiff, was shortly placed in the same predictament
18 with being transferred from SCC on June 18, 2020, to CCI where Plaintiff was
   ultimately infected with Covid-19, the same way they mixed inmates at San
19 Quentin, as Avenal, Wasco and other CDCR institutions where having outbreaks
   of Covid-19 due to the over-crowded dorms and lack of social distancing, as
20 CCI, is also included for this same reason, where they had a massive break-out
   of Covid-19 on June-20, 2020, and Plaintiff was injured with being infected  on
21 July 11, 2020, after being mixed in with positive infected inmates, from one
   contaminated enviornment to another. And for CCI to claim they are doing an
22 effective job of social distancing, is far from the truth. Plaintiff is
   suffering pain, and a diminished quality of life from the actions of said
23 DEFENDANTS, this is certainly cruel and unusual punishment, in accordance to
   the Eighth Amendment.

24
   The sufficiency of causation is apparent in that the three relevant factors
25 that contribute to exposure are all factualk : 1) Frequency, 2) Regularity,
   3) Proximity". see Linea Weaver v. Plant Insulation Co. (1995) 31 Cal. App
26 4th 1409, 1416; Kesner v. Superior Court (2016) ! Cal. 5th 1132, 1144, Id.
   at pp. 1144, 1145; 1598, 1155; rest. 2d. Torts  §§ 243.25, 368 (a).
27 //

1  Where Plaintiff is forced to be housed in these overcrowded conditions under
   the direction of the Custodian and head caretaker;

2  These custodian/caretakers, could clearly see the foreseeable danger that
   Plaintiff/dependent adult was in of becoming infected with Covid-19, where he
3  is directly effected by the negligence in the handling of protocols, and
   executive orders, from the Department odf CDCR. Has caused Plaintiff pain and
4  suffering from being infected with Covid-19, two (2) diffent times, under the
   conditions described through out this civil action, that still exist, and has
5  injured Plaintiff Robert L. sanford, with a diminished quality of life, and
   in continues to get worse, along with the danger of being re-infected for
6  a third time that has a high probaility of imminent death.

7  And for any contrary or reading of what it means to describe what 6-feet
   of social distancing means, in order to prevent the spread of Covid-19 would
8  be absurd to say the least. Negligence per se" is a evidentiary doctrine
   codified as Evidence. Code § 699 (A).
9
   Where this clearly falls in line with the contemporary standandard of decency
10 is what guides the Eighth amendment, in this-- instance, "Social Distancing
   as outlined in the mainsteam society through tv, and other public announcements
11 and outlets, including the presentments by Governor Newsom, and Mayros of
   respected cities, and communities throughout California, has had this same
12 concept of what it is to social distance according to the "CDC" with preventing
   the spread of Covid-19 and infecting individuals, where its required through
13 authority of the CDC who is the agency designated to protect and control dis-
   ease prevention in the United States. Rhodes v. Chapman, 42 U.S. 377 (1981),
14 provides public attitudes toward certain punishments, or what society is will-
   ing to tolerate in its prisons, is the appropriate guage of comtemporary
15 standards; as a result of the outbreak of Covid-19 in the United States on
   or about March, that was later discovered was here since January.    There
16 was a public outcry from the public right here at CCI, upon Plaintiffs
   arrival here at CCI June 18, 2020,       ,   , ...' where the people/electors
17 and public citizens, along with inmates family members, and fellow human-beings
   who, all voiced concerns for the inmates being housed at CCI, that were not
18 being able to social distance, where these electors demanded CCI provide
   "social distancing" for the inmates housed at CCI or release them.
19 It was so evident as to how the people were voining thier concerns, the
   spokesperson had to address the crowd from CCI Ms. Erwin stated: " CCI is
20 practicing social distancing" in her attempt to de-esculate the public out-
   cry at CCI, she failed to admit that due to the lack of social distancing
21 and the natural probable consequences that inmates in the overcrowded dorms at
   CCI are contracting Covid 19, and this virus is spreading in the prison enviro-
22 rnment, Where at this time, Plaintiff was being infected with Covid-19. from
   the lack of  social distancing.
23
   The deliberate, gross negligence, and negligence to achieve social distancing
24 and not releasing or reaching enough inmates to release with underlying,
   medical conditions is the nexus that constitutes a negligence and gross negligence,
25 that injured Plaintiff, and now holds DEFENDANTS in this civil action liable
   for failure to act in the capacity of their duty pursuant to executive orders
26 of Gavin Newsom under Gov. Code §8658. Here , Plaintiff Robert L. Sanford, is
   placed in an unreasonable risk of dying from the deadly Covid-19, because he
27 has undeelying conditions, of Anemia, Asthma, and Alpha Thalasemia (sickle cell

1  trait), See EXHIBIT " E "        "

2  Under the recent enactment of the CARES ACT, inmates are absolutely a
   vulnerable class to getting infected with this Covid-19 ar considered  high
3  risk for severe injury of illness from complications of being infected with
   Covid-19, that can and will cause death. Thi[s] clearly demonstrates an extra-
4  ordinary reason for compassion to release Plaintiff; as 18 U.S.C. §3582 (c),
   (1)(A), that prompted the District Court to reduce the Plaintiff's sentence,
5  as this has been stipulated for Plaintiff, at this point of his total prison
   termposes no unreasonable risk tp public safety and society, Plaintiff is
6  classified as a low/1 under CDCR Case Score Risk Assesment", has "0" points
   score, has fully completed his primary offense, under Cal. Const. Section
7  32(a)(1)(A), where the, In re Mohammad 42 Cal. App. 5th 719 (2019) court
   ruled: " CDCR's Regulations w hich Focus on the Offender and Not the Offense,
8  are inconsistent with the Constitutional text." The Mohammad court further
   ruled in its disposition: " The petition for   writ of habeas corpus is granted,
9  CDCR is directed to treat a void and repeal California Code of regulations,
   title 15, section 3490, subdivision (a)(5( and to thereafter make further
10 changes as necessary to make sure its Proposition 57 implementing regulations,
   are consistent with this opinion." In re Mohammad 42 Cal, App. 5th 719.

11

12 Wherefore Plaintiff qualifies for this, as he is only serving Penal Code 667
   (a)(1) enhancements, that are excluded under, section 32(a)(1)(A), there is
13 other, tools that can be utilized by CDCR to release Plaintiff, due to the
   unsafe condition, that places Plaintiff in an unreasonable risk of being infected
14 with Covid -19 for the third time here at CCI, as this department can use the
   1170) (e), or the 1170(d)(1), as where inmates can be released statutorily
15  if subject to mortality within 6-months, Here in this instant case plaintiff
   is clearly subjected to imminent death within days, if not weeks,  if Plaintiff
16 is re-infected for a third time, given the facts of him being infected two
   times already, along with his underlying conditions, puts Plaintiff at a very
17 high risk.

18 For the above reasons DEFENDANTS are grossly negligent, by not releasing
   Plaintiff, even being fully aware, he is suffering from the infections of
19 Covid -19, and has loss hissense of smell, Taste, Severe headaches, JOINT
   PAIN, and couhing up blood clots, the medical staff here at CCI, has been
20 notifiedm  and they have diagnosed Plaintiff only explaining that Plaintiff's
   injury due to the infection, is to new for them to determine what can be done
21 to cure his pain and suffering because, there is no cure for Covid-19.

22 Plaintiff has plead sufficient legal authorities that clearly give rise to
   cruel and unusual punishment in violation of the Eighth amendment, as Plaintiff
23 has no other remedy to address these deliberate actions of said DEFENDANTS
   Collectively and individually, each of them, including Does 1-5, these negligent,
24 and gross negligent acts, caused Plaintiff injury of pain and suffering, from
   becoming infected with Covid-19, and for the above stated facts mentioned and
25 relevant authorities, Plaintiff now files this civil tort action invoking
   the absolute relevant power and authority of the California Constitution that
26 reflects State and Federal decisional authority within this Memorandum of
   Points and Authorities; and request this Court liberally adjudicate this
27 pleading as justice and law demands.

## REQUEST FOR RELIEF

WHEREFORE, . Robert L. Sanford, now prays for judgement as follows:

A) Injunctive Relief;

B) Declaratory Relief;

C) General Damages According To Proof;

D) For All Expenses of This Lawsuit;

E) For Treble Damages Pursuant To Civil Code 3345;

F) For Punitive Damages Pursuant To Civil Code 3294;

G) For Damages For Dependent Adult Abuse;

H) For Attorney Fees;

I) For Pre-Judgement Interest Allowable By Law;

J) For Such Other And Further Relief This Court May Deem Proper.

February 22, 2021

By Robert L. Sanford.

DECLARATION

1

2  I, Robert L. Sanford, Declarant under the penalty of perjury under the laws

3  and Constitutions of the United States and California that the foregoing is
   true and correct.

4
   California Correctional Institution (CCI), and its OFFICERS, STAFF, EMPLOYEES

5  and AGENTS, refuse to adhear to the executive orders, to wear and enforce

6  wearing face masks, refuse to provide hand sanitizers,  disinfectants, and

7  or gloves to each inmate.

8  CCI and its Officers, Staff, Employees, and Agents, have been making CCI  a

9  very dangerous enviornment, by mixing an enormous amount of inmates, with
   shifting them from one infected housing unit into another infected housing

10 dorm unit. DEFENDANTS refuse to allow declarant and inmates at CCI to social

11 distance with at least 6- feet, declarant is completely unable to depend on

12 himself and has absolutely no other choice but to rely on the CCI programs,
   and officials, employees, and correctional officials for protection. Declarant

13 is told where and when to eat, when to sleep, when and when not he can use the

14 restroom, when he can shower, declarant is told when and where he is allowed

15 to go any-where, declarant is absolutely dependent upon the custodians and

16 their subordinates for protection, for food, clothing, bed lenin (Sheets and
   blankets), cosmetics that includes shavers, soap, toothbrushes and tooth paste,

17 on top of the fact, declarant in this action is unable to move any where —

18 without the express permission of the custodian and their subordinates.
   Declarant is at all times at the mercy of  custodians and their subordinates.

19 These custodians are the ones that provide declarant his medical care and

20 treatment, and are to assist him with any mental health issues. Declarant can-

21 not do anything without the permission of his CARE TAKERS.

22
   I, the declarant in this action has personally witnessed with my own eyes

23 officers here at CCI, telling other officers and inmates C/O Dahl, C/o Wiggins,

24 and C/O Emory as believed, (the regular C/O assined to Clark Hall low), made

25 regular comments: "I don't give a fuck if I get Covid-19, I'm not going to
   stay wearing no damn mask all day long!..." With these out landish statements

26 only allowed the inmates to follow there lead, in result no one is practicing

27 any of the safety protocols in reponse to Covid-19.

1  Declarant is competent as to the testimony and stated facts herein, along

2  with the facts established in the complaint paragraphs 1-74. Declarant in
   this civil action is suffering from pain due to the injury he was subjected
3  to by DEFENDANTS, with being placed in a dangerous enviorment that infected
4  declarant with Covid -19, Once on July 10, 2020, and again on October 2, 2020,
5  as a result of becoming infected with Covidl , declarant can no longer regain
   his sense of smell or taste, has severe headaches, joint pain, and coughs up
6  blood clots, declarant's quality of life has greatly depreciated since getting
7  infected with Covid-19, including the fact CCI refused to care at all, as I,
8  continue to suffer, where they wont provide any mental health care at all
9  regarding the severe trauma I'm going through, as I asked for counseling and
   cognitive therapy where my request has remained unanswered.
10

11 Declarant, is continuing to suffer Physical, mental, and emotional injury
12 being forced, to living in constant fear of being infected again for a third
   time, for this have contant anxiety, and constant stress regarding me contrac-
13 ting Covid-19 and dying from it, on account of the negligence, incompetence,
14 and wrecklessness of the custodians/care-takers that are making declarants
15 living enviorment even more dangerous every that passes by.
   I, decalre under the penalty of perjury the foregoing is true and correct.
16 Date : February 22, 2021.

17

18                                Robert L. Sanford, Declarant.

19

20

21

22

23

24

25

26

27

<u>PROOF OF SERVICE</u>

(Cal. Rules of Court, Rules 1.218.50.)

I, Robert L. Sanford, declare that I am over the age of 18 years of age and the Party Plaintiff in this Civil Tort Action Claim, at all times; I am a inmate prisoner in the California Correctional Institution, in the County of Kern, city of Tehachapi, California 93581, where the mailing occurs; and Plaintiff's address is: California Correctional Institution. P.O. Box107 Tehachapi, CA 93581

I, further declare that I am readily familiar with the business practices for collection and processing of correspondences for mailing with the United States Postal service, this same day in the ordinary course of business, On

On this, 27 day of February 2021, I the Plaintiff in the above mentioned complaint caused to be served the following document[s] ; A Civil Cover Sheet, Civil Claim that incorporates 1-74, Cause of Action 1-3, Exemplary Damages, Declaration, Points and Authorities, in a civil tort action, by placing a true copy of each document; in a separate envelope addressed respectively, as follows:

OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA. 1300 "I" Street Sacramento, CA 94244

I, declare under the penalty of perjury under the laws of the United States Constitution and the State of California Constitution that the foregoing is true and correct to the best of my knowledge. Executed on this 22nd day, of February 2021.

By: Robert L. Sanford

EXHIBIT "A"

EXHIBIT "A"

 CALIFORNIA DEPARTMENT OF
GENERAL SERVICES

Governor Gavin Newsom

12/16/2020

Robert Sanford V25176
P.O. Box 107
Tehachapi, CA 93581

RE:  Claim 20006799 for Robert Sanford V25176 against Department of Corrections
and Rehabilitation (CDCR)

Dear Robert Sanford,

Government Claims Program (GCP) staff completed its investigation of your claim
and rejected it for the following reasons.

The claim involves complex issues that are beyond the scope of analysis and legal
interpretation typically undertaken by the GCP.  Claims involving complex issues are
best determined by the courts.  Therefore, staff did not make a determination
regarding the merit of the claim, and it is being rejected so you can initiate court
action if you choose to pursue this matter further.

If you choose to pursue court action in this matter, it is not necessary or proper to
include the GCP in your lawsuit unless the GCP was identified as a defendant in your
original claim.  Please consult Government Code section 955.4 regarding proper
service of the summons.

If you have questions about this matter, please feel free to contact GCP by phone,
mail, or email using the contact information below.  Please remember to reference
the assigned claim number (20006799) in your communication.

Sincerely,

Kelli Miyata, Program Analyst
Government Claims Program
gcinfo@dgs.ca.gov

WARNING:  Subject to certain exceptions, you have only six (6) months from the
date this notice was personally delivered or deposited in the mail to file a court action
on this claim. See Government Code Section 945.6.  You may seek the advice of an
attorney of your choice in connection with this matter.  If you desire to consult an
attorney, you should do so immediately.



**DGS** CALIFORNIA DEPARTMENT OF
GENERAL SERVICES

Governor Gavin Newsom

## DECLARATION OF SERVICE BY U.S. MAIL

Name of Claimant: Robert Sanford
GCP File no.: 20006799

I am employed by the Government Claims Program. I am 18 years of age or older. I am familiar with the business practice at the Government Claims Program for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Government Claims Program is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business. On 12/16/2020, I served the attached letter by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Government Claims Program, located at 707 Third Street, West Sacramento, CA 95605, addressed as follows:

Robert Sanford V25176
P.O. Box 107
Tehachapi, CA 93581

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on 12/16/2020, at West Sacramento, California.

Daniel Averitt



**DGS** CALIFORNIA DEPARTMENT OF
**GENERAL SERVICES**

Governor Gavin Newsom

10/21/2019

Robert L Sanford V25176
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

Re:  Claim 19005866 for Robert L Sanford V25176

Dear Robert L Sanford,

Government Claims Program (GCP) staff completed its review of the application for
leave to present a late claim that you submitted with claim number 19005866 on
06/27/2019.

The late application is denied for failure to meet the requirements of Government
Code section 911.6.

Your recourse, should you wish to pursue the matter further, is to file a petition in
court for relief from the requirements of Government Code Section 945.4. You will
have six months from the date of this notice to file a petition. If the courts grant the
petition, you will have 30 days from the date the petition is granted to file suit on the
cause of action to which this claim relates.

If you have questions about this matter, please feel free to contact GCP by phone,
mail, or email using the contact information below. Please remember to reference the
assigned claim number (19005866) in your communication.

Sincerely,

Kelli Miyata
Program Analyst
gcinfo@dgs.ca.gov

**WARNING:** If you wish to file a court action on this matter, you must first petition the
appropriate court for an order relieving you from the provisions of Government Code
945.4 (claims presentation requirement).  See Government Code Section 946.6.
Such petition must be filed with the court within six (6) months from the date your
application for leave to present a late claim was denied. You may seek the advice of
an attorney of your choice in connection with this matter.  If you desire to consult an
attorney, you should do so immediately.  Additionally, it is not necessary or proper to
include the Government Claims Program (GCP) in your court action unless the GCP
was identified as a defendant in your original claim.  Please consult Government
Code Section 955.4 regarding proper service of the summons.

**DGS** CALIFORNIA DEPARTMENT OF
GENERAL SERVICES

Governor Gavin Newsom

## DECLARATION OF SERVICE BY U.S. MAIL

Name of Claimant: Robert L Sanford
GCP File no.: 19005866

I am employed by the Government Claims Program. I am 18 years of age or older. I am familiar with the business practice at the Government Claims Program for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Government Claims Program is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business. 10/21/2019, I served the attached letter by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Government Claims Program, located at 707 3rd Street, West Sacramento, CA 95605 addressed as follows:

Robert L Sanford V25176
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on 10/21/2019, at West Sacramento, California.

_Kelli Miyata_

Kelli Miyata

EXHIBIT "B"

EXHIBIT "B"

# Placement When Positioning Beds 6 feet or more is NOT Possible:

## For single beds:
- Ensure the person's laying position is head to toe.



## For bunkbeds:
- Ensure the person's laying position is head to toe on each separate bunk bed, including positioned head to toe on adjacent bunks.



## For rooms with more than 10 beds:
- Include partitions to separate beds to the fullest extent possible.



## IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.





# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institutional Level Rejection Notice

**Date:** April 28, 2020

**To:** SANFORD, ROBERT (V25176)
# A 001B2017013L
Sierra Conservation Center
5100 O'Byrnes Ferry Rd
Jamestown, CA 95327

**Tracking #:** SCC HC 20000129

Your health care grievance submitted for institutional level review does not comply with health care grievance procedures established in California Code of Regulations, Title 15, Chapter 2, Subchapter 2, Article 5, and is rejected for the following reason(s):

**Not Health Care Jurisdiction:** California Code of Regulations, Title 15, Section 3999.226(a)(4) states, "The grievant shall not submit a health care grievance for issues outside the health care jurisdiction."

Your concerns regarding housing conditions, and dorm populations should be addressed through the appropriate channels or explain why you believe this issue is within the health care jurisdiction.

You may file a CDCR 602 Inmate/Appeal and submit to the Institution Appeals Office.

Take the necessary corrective action provided in this notice, and resubmit the health care grievance to the Health Care Grievance Office where you are housed within 30 calendar days.

*C. Smith*

Health Care Grievance Office Representative
Sierra Conservation Center



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



## Patient Health Care Inquiry Response

**Date:**  MAY 1 5 2020

**To:**  SANFORD, ROBERT (V25176)
Sierra Conservation Center
5100 O'Byrnes Ferry Rd
Jamestown, CA 95327

**From:**  California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:**  SCC PHCI 20000013

The Health Care Correspondence and Appeals Branch, California Correctional Health Care Services, has received your correspondence regarding the health care you are receiving while incarcerated within the jurisdiction of the California Department of Corrections and Rehabilitation.

Refer to the attached correspondence for full details regarding your concerns.

Your correspondence, health record, and health care grievance history, and pertinent departmental policies and procedures were reviewed. Records indicate you are enrolled in the Chronic Care Program, where your medical conditions and medication needs are closely monitored. Progress notes indicate there is a plan of care in place and the primary care provider has discussed the plan of care with you. Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider.

If you have health care needs, you are advised to utilize the approved processes to access health care services in accordance with California Correctional Health Care Services policy.

The California Department of Corrections and Rehabilitation and California Correctional Health Care Services have protocols in place that follow recommendations for quarantines set forth by the California Department of Public Health and the Centers for Disease Control and Prevention. Any patient who shows symptoms of COVID-19 will be tested for COVID-19 as appropriate.

Due to the unique factors of each institution and the population each institution houses, California Department of Corrections and Rehabilitation and California Correctional Health Care Services remain agile in our response to any potential case of COVID-19 based on the factors and risk related to that case, with the top priority being the safety and protection of staff, volunteers, and patients.

Patients with confirmed COVID-19 will be continuously assessed and monitored by institution health care staff. When possible, the patient will be assigned dedicated health care staff to provide care and their movements to different parts of the institution will be limited to decrease the risk of staff spreading COVID-19 to other parts of the institution.

R.SANFORD, V25176
SCC PHCI 20000013
Page 2 of 2

Facility and living conditions are not health care services issues over which California Correctional Health Care Services has jurisdiction. As such, your concerns should be addressed through the appropriate custody channels at your institution.

While the Patient Health Care Inquiry process is an administrative process to set forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

I hope this information has been helpful to you.

Health Care Services Representative
Health Care Correspondence and Appeals Branch

Robert L. Sanford
V-25176 BH-20L
California Correctional Institution
P.O. Box 107
Tehachapi, CA 93581
         In Propria Persona,

February 15, 2021


California Correctional
Health Care Services
Cheif; S. Gates
P.O. Box 588500
Elk Grove, CA 95758

RE: Requesting Signature Verification of Document Dated May 15, 2020 Tracking #
        SCC PHCI 20000013.


This letter for Cheif ;  S. Gates at the California Correctional Health Care Services
is now being sent to your office for the verifying of the signinature , needing to be identified as to
who is to be held accountable for the statements and related subject matter transcribed within the document
that is in question.

If your office cannot provide the person who needs to be identified by their signature, in this notice,
there is no other alternative to resolve this matter other than naming you as the party, who is now
held liable , for the statements transcribed and stated as facts in violation of Cal. Penal Code § 134 –

This letter now serves as notice, you have ten (10) days after receipt; this letter to return the
name of the person who singed this document dated May 15, 2020, Tracking #SCC PHCI 20000013.

There will be no further attempts to identify this individual, and This writer will continue the process
of setving litigation upon you as the Chief of California Correctional Health Care Services; S. Gates.

I, Robert L. Sanford , Declare under the penalty of perjury under the laws of the United States and
the State of California , that this letter now serves as a notice , and the information stated herein is
true and correct.


        Sincerely;


Robert L. Sanford

EXHIBIT "C"

EXHIBIT "C"

**California Correctional Institution**

Name: Robert L. Sanford

CDC #: 11-25-726

Facility _E_ Building _CHU_ Bed _112L_

P.O. Box _107_

Tehachapi, CA 93581

To: Office of Appeals
Department of Corrections and Rehabilitation

P.O. Box: 942883

Sacramento, CA

95811

$ 000.50°

CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION INDIGENT INMATE MAIL

Facility Post Office Boxes
Facility A - P.O. Box 1902
Facility B - P.O. Box 1906
Facility C - P.O. Box 1905
Facility D - P.O. Box 608
Facility E - P.O. Box 107
Administration - P.O. Box 1031

Legal Mail

**UNAUTHORIZED ITEMS WITHIN INMATE MAIL**

If mail contains these items, it will result in an issuance of a CDC Form (819) Notification of Disapproval

- No padded envelopes, cardboard, bubble wrap.
- No musical greeting cards, video's, CD's, or cassette tapes.
- No cash, No pens, pencils, or markers.
- No identification cards, credit cards, bank cards, phone cards, etc.
- No polaroid photographs, negatives, sticks, or photo albums. No photos depicting drugs and/or gang paraphernalia. No photos drawings, magazines, and/or pictorials displaying frontal nudity of either gender. Nothing which depicts, displays or describes sexual penetration or sexual acts.
- No gang affiliated material, hand gestures, or signs.
- No items of clothing, food, hard plastic, metal, wood items, magnets, rubber, glue and/or glitter.
- No tattoo patterns or tracing patterns. No jewelry.
- No mail containing unknown substance, any powder, liquid and/or solids.
- No unauthorized correspondence between inmates/parolees.
- No lipstick, perfume, cologne, and scents on the contents or envelope.
- No items which may be deemed a threat to the safety and security of the institution, or any correspondence deemed circumvention of the mail policies and procedures.
- All incoming mail must have full return address.

This envelope is sent as legal mail / privileged, and Confidential. If the contents do not pertain to any of the categories identified, it may not of handled as Confidential / legal mail. Mark as Confidential — California Correctional Institution P.O. Box 1911, Tehachapi, CA 93581

**AUTHORIZED ITEMS WITHIN INMATE MAIL**

- 40 postage stamps/40 envelopes.
- Letters/greeting cards
- 10 photographs
- Check/money order with inmate's name and CDC#
- Writing paper (white/yellow lined only)
- Publications (books, magazines, newspapers) MUST come directly from vendor
- For funds to be mailed directly to inmates account, send through www.jpay.com or (800) 574-5729

EXHIBIT "C"

EXHIBIT "C"

 CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES


### Institutional Level Response

Closing Date:  **SEP 1 4 2020**

To:  SANFORD, ROBERT (V25176)
E CHU 2000118L
California Correctional Institution
P. O. Box 1031
Tehachapi, CA 93581

Tracking #:  CCI HC 20000476

## RULES AND REGULATIONS

The rules governing these issues are:  California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE SUMMARY

In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | | Description |
|---|---|---|
| Issue: | Non-Medical/Custody ( Housing ) | You state you feel dorm settings here at CCI are overcrowded and social distancing for COVID-19 is not being followed which puts you at risk for contracting the virus. |

## INTERVIEW

Pursuant to California Code of Regulations, Title 15, Section 3999.228(f)(1), an interview was not conducted as you did not request one by initialing the appropriate box on the CDCR 602 HC, Health Care Grievance.

## INSTITUTIONAL LEVEL DISPOSITION

[X] No intervention.     [ ] Intervention.

## BASIS FOR INSTITUTIONAL LEVEL DISPOSITION

Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed.  These records indicate:

- CCI is following all COVID-19 pandemic protocols put into place by Headquarters in Sacramento. You tested positive for COVID-19 with cough and headache for 1 day, however, no additional symptoms were documented in EHRS.

The California Department of Corrections and Rehabilitation and California Correctional Health Care Services have protocols in place that follow recommendations for quarantines set forth by the California Department of Public Health and the Centers for Disease Control and Prevention. Any patient who shows symptoms of COVID-19 will be tested for COVID-19 as appropriate.

Note 1:  The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3:  Permanent health care grievance document.  Do not remove from the health care grievance package.

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# CLAIMANT APPEAL CLAIMS DECISION RESPONSE

Re: Appeal Claims Decision Response

**Offender Name:** SANFORD, ROBERT LIONEL
**CDC#:** V25176
**Current Location:** CCI-Facility E

**Date:** 12/23/2020

**Current Area/Bed:** E BH 1 - 000020L

Log #: 000000018808

---

**Claim # 001**
**Institution/Parole Region of Origin:** California Correctional Institution      **Facility/Parole District of Origin:** CCI-Facility E
**Housing Area/Parole Unit of Origin:**
**Category:** COVID-19                    **Sub-Category:** Social Distancing

The California Department of Corrections and Rehabilitation (CDCR) Office of Appeals received this claim on 08/21/2020.

California Code of Regulations, title 15, provides the Office of Appeals 60 calendar days to complete a response. Due to the expiration of time, this response by the Office of Appeals will be the only response.

You do not need to resubmit this claim to the Office of Grievances or to the CDCR Office of Appeals.

**Decision: Time Expired**

STATE OF CALIFORNIA
HEALTH CARE GRIEVANCE ATTACHMENT
CDCR 602 HC A (10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**

Tracking #: CCI HC 20001082

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used. Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, MI): Sanford, Robert L

CDCR Number: V-25776

Unit/Cell Number: BH-202

**SECTION A** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

facilities in CDCR's jurisdiction. Appellant has already contracted the COVID-19 virus twice since being transferred to CCI on June 18, 2020 I was positive for Covid in July, 2020 and again in October 2020. Appellant is now suffering from injury of not being able to smell or taste, and have been recently catching up dry blood clots in the morning. Appellant's conditions are on going And, his pre-existing medical conditions, place him in a high risk category, of becoming terminally ill. From this COVID-19 pandemic, he poses no unnecessary danger to public safety, and qualifies for early release, as Appellant has served his full primary term, and now only has 667(e)(1) enhancements. I am a high risk inmate, that can't social distance to protect myself from contracting Covid-19. And should be medically released for high risk exposure.

Grievant Signature: _____ Date Submitted: 12-10-2020

**SECTION B** Staff Use Only: Grievants do not write in this area. Grievance interview Clarification. Document issue(s) clarified during interview.

Name and Title: _____ Signature: _____ Date: _____

RECEIVED CCI DEC 14 2020 HCGO    COMPLETED CCI FEB 16 2021 HCGO    STAFF USE ONLY

STATE OF CALIFORNIA
APPEAL OF GRIEVANCE
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| STAFF USE ONLY | Appeal #: | Date Received: |
| | Date Due: | |
| | Categories: | |
| | Grievance #: _18808_ | |

Claimant Name: _Robert L. Sanford_          CDCR #: _V25126_

Current Housing/Parole Unit: _CHU  118L_   Institution/Facility/Parole Region: _CCI_

☐ There are no claims that can be appealed.

☐ The following claims cannot be appealed:

Claim #s: _001_

_Now being Appealed To The Next level. Appellant is_
_dissatisfied with decision made on 8-7-2020_

*This is the process to appeal the decision made regarding a claim that is not listed above.*

Claim #: _001_

Explain the reason for your appeal of any claims not listed above. Be as specific as you can.

*I am dissatisfied with the response I was given because* _This is  A  New  Process_
_I'm not clear, as to how this process of Appeal_
_Works This is not clear, For I filed the grievance_
_due to the continuous over-crowded conditions at CCI_
_Facility 4 yard, in Dorm Rev Deal and Clark Hall Low_
_and upper. That has resulted in me contracting CoviD_
_19 And testing positive. The dorms do not provide_
_6 feet of social distance And is clearly A unsafe_
_condition. That allows inmates in CDCR Custody_
_to be subjected to unreasonable risk of injury_
_and suffering._

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have the documents, identify them as best you can below:

_The document I originally attached is Case_
_# 401-CV-01351-JST  Document 3261 (Page) 8.0F 15._
_However This Exhibit was removed, or not_
_attached. This is The Supporting Evidence._
_Line #23-28"_

DISTRIBUTION    Original: Claimant's File    Copies: DAI, DAPO, and Claimant

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

Claim #: OO 1

Explain the reason for your appeal. Be as specific as you can.

I am dissatisfied with the response I was given because: There is No Social distancing in the dorms at CCI. The dorms are over crowded. With upper and lower bunks filled with people. There is only 2½ feet of room between 4 people. With 83 bunks in the building. These bunks Need to be removed from the dorms that don't Need to be used, in order to keep CCI Administration From using them. The only bunks that should be in the dorms For social distance of 6 feet. Along with only minimum lower bunks Activated. Inmates are being injured Constantly with Contracting COVID-19 in these Conditions that currently exist at CCI. I'm extremely dissatisfied with the decision made on my Appeal 3-7-20

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have the documents, identify them as best you can below:

The documents mentioned on page (1) of This Appeal. 41 01-CV-01357 Document 826 Filed 4-04-20 -(8 of 15)

Reminder: Please attach all documents in your possession that support your claim(s).

Please note that this form and supporting documents will not be returned to you.

Claimant Signature: _____                                      Date Signed: _____

MAIL TO:              Office of Appeals
            Department of Corrections and Rehabilitation
                    P.O. Box 942883
                   Sacramento, CA 95811

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 08/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☒ No | Institution: | Tracking #: |
|---|---|---|---|

E. Christensen, RN

CCI HC 20000176

Staff Name and Title (Print)          Signature          7-20-20

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, only one CDCR 602 HC A Health Care Grievance Attachment will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Section 3087 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, MI):  Sanford, Robert L        CDCR #: V-25176   Unit/Cell #: Rec Deal 012

SECTION A: Explain the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health and welfare for which you seek administrative remedy.

Pursuant to CCR Subsection 3084.9(a)(1)(B), and CCR 3271, this Appellant now submits this CDCR-HC-602. Due to the continuous overcrowded conditions of 'doems here at CCI facility E, where CDR Secretary Ralph M. Diaz, CCI (A) Warden B. Cates, Chief Deputy Warden, C. Schuyler, Associate Warden B. Sanders and Chief Medical officer, S. Shiesta. Where they fail to create or maintain physical distancing of (6ft) in all directions to hinder Airborne. (HC 602 A) no

If you need more space, use Section A of the CDCR 602 HC A

☒ Supporting Documents: Refer to CCR 3087.2. List supporting documents attached: unable to get copies of original while in Isolation (1:40 1-cv06135 1-)ST document 3261 (4-04-20) (8 of 15)

☐ No, I have not attached any supporting documents. Reason:

Grievant Signature:          Date Submitted: 7-14-2020

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only    Is a CDCR 602 HC A attached? ☐ Yes ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____

☐ Withdrawn (see section C)

☐ Accepted    Assigned To: _____ Title: _____ Date Assigned: _____ Date Due: _____

Interview Conducted?  ☐ Yes ☐ No   Date of Interview: _____ Interview Location: _____

Interviewer Name and Title (print): _____ Signature: _____ Date: _____

Reviewing Authority Name and Title (print): _____ Signature: _____ Date: _____

Disposition: See attached letter ☐ Intervention ☐ No Further Intervention ☐ No Intervention

If dissatisfied with Institutional Level Response, complete Section B.

HCGO Use Only: Date closed and mailed/delivered to grievant:

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DCP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached |
| ☐ Not Applicable | ☐ Other | *See chrono/notes |
| 4. Comments: | | |

RECEIVED
CCI
JUL 2 0 2020
4060

STAFF USE ONLY

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
CDCR 602 HC A (06/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**

Institution: CCI HC 2000001716

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| Sanford, Robert L | V-25576 | Rex Deal 01 L |

**SECTION A** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the decision, action, condition, omission, policy or regulation that has had a material adverse effect upon your health and welfare for which you seek administrative remedy):

Person-To-Person transmission of CovID-19 virus in the Living areas of Dorms (see supporting document Attached) (referencal) Puts over crowded condition of dorms "is "No doubt" "A medical issue. Due to the Recent spread of COVID-19 Now infecting inmates here at CCI, at an Alarming rate. I was transferred here to CCI on 6-18-2020, and on 6-19-2020 the out break began due to the over crowded conditions of Dorms, where inmate are housed on double bunk beds with less than 2½ feet of Distance. There is clearly "No" social distance available with the Amount of inmates housed in these doems, that operates with reckless disregard and Puts inmates at An Unreasonable Risk of contracting the COVID-19 virus.

Grievant Signature: _____    Date Submitted: 7-14-2020

**SECTION B** Continuation of CDCR 602 HC, Health Care Grievance Appeal, Section B only (Dissatisfied with Health Care Grievance Response):

Wrong form

Grievant Signature: _____    Date Submitted: _____

RECEIVED
CCI
JUL 20 2020
HCGO

**STAFF USE ONLY**

**CALIFORNIA DEPARTMENT of**
**Corrections and Rehabilitation**

# CLAIMANT GRIEVANCE CLAIMS DECISION RESPONSE

Re: Grievance Claims Decision Response

Offender Name: SANFORD, ROBERT LIONEL

CDC#: V25176

Current Location: CCI-Facility E

Date: 08/07/2020

Current Area/Bed: E CHU 2 - 000118L

Log #: 000000018808

Claim #: 001

Institution/Parole Region of Origin: California Correctional Institution

Facility/Parole District of Origin: CCI-Facility E

Housing Area/Parole Unit of Origin:

Category: COVID-19

Sub-Category: Social Distancing

## I. CLAIM

Claimant says due to overcrowding in Clark Hall Low Dorm at Facility E, he cannot maintain social distancing and this creates a medical issue and puts inmates at an unreasonable risk of contracting Covid-19.

## II. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

California Code of Regulations (CCR), Title 15, Section 3383 State of Emergency.

### B. DOCUMENTS CONSIDERED

Statement of California Executive Order N-36-20 dated March 24, 2020Director's COVID-19 Memorandum dated April 7, 2020 (REVISED COVID-19 MANDATORY 14-DAY MODIFIED PROGRAM)Director's COVID 19 Memorandum dated May 11, 2020 (COVID-19 GUIDANCE FOR DAILY PROGRAM REGARDING SOCIAL DISTANCING FOR CELL OR ALTERNATIVE /DORM STYLE HOUSING OF EIGHT PERSON COHORTS) California Health Care Services Memorandum dated May 22, 2020 (COVID-19 PANDEMIC-ROAD MAP TO REOPENING OPERATIONS)

## III. REASONING AND DECISION

On March 24, 2020, Governor G. Newsom implemented Executive Order N-36-20 due to the COVID-19 pandemic. On April 7, 2020, each institution was ordered to implement a 14-day modified program in an effort to limit the spread of COVID-19. Since then CDCR has issued Memorandum dated May 11, 2020, specifically addressing almost every aspect of inmate programming. To date, those restrictions remain in place to protect staff &amp; inmates alike. CDCR Memorandum dated May 22, 2020, discusses the progression of CDCR to Phase 2 of Governor Newsom's Executive Order to Reopen California. However, out of an abundance of caution, the restrictions implemented on May 11, 2020, will remain in effect. Additionally, with the recent identification of active COVID-19 cases amongst the inmate population, it is even more critical that these directives are adhered to. The CDCR and CCI are committed to the safety of the community, staff, and those in its care. Executives and staff at CDCR and California Correctional Health Care Services (CCHCS) are working closely with infectious disease control experts to minimize the impact of COVID-19 on our operations. CDCR and CCHCS are dedicated to the safety of everyone who lives in, works in, and visits our state prisons. The Department has longstanding outbreak management plan in place to address communicable disease outbreaks such as influenza, measles, mumps, norovirus, and varicella, as well as preparedness procedures to address a variety of medical emergencies and natural disasters. All CDCR institutions have been instructed to conduct additional deep-cleaning efforts in high-traffic, high-volume areas, including visiting and health care facilities. Additional hand sanitizer dispensing stations are being procured and will be placed inside adult institution entrances and visiting areas. The incarcerated population is being provided extra soap when requested and hospital-grade disinfectant that meets Centers for Disease Control and Prevention (CDC) guidance for COVID-19.On July 28, a physical inspection of Clark Hall Up was completed by Lieutenant Bramiley and found to be in compliance with all CDCR social distancing guidelines.

**Decision: Disapproved**

After a thorough review of all documents and evidence presented at the Office of Grievances Level, it is the order of the Office of Grievance to DISAPPROVE the claim.

If you are dissatisfied with the decision of this claim, you may file a 602-2, appeal with the California Department of Corrections and Rehabilitation Office of Appeals.

| Staff Signature | Title | Date/Time |
|---|---|---|
| P. Horn [HOPA011] | cdw | 08/06/2020 |

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| **STAFF USE ONLY** | Appeal #: _____ Date Received: _____ |
|---|---|
| | Date Due: _____ |
| | Categories: _____ |
| | Grievance #: _16608_ |

Claimant Name: _Robert L. Sanford_      CDCR #: _V25126_

Current Housing/Parole Unit: _CHU  118L_      Institution/Facility/Parole Region: _CCI_

☐ There are no claims that can be appealed.

☐ The following claims cannot be appealed:

RECD BY CCA
AUG 21 20

Claim #s: OOI

No.1 being Appealed To The Next Level. Appellant is
dissatisfied with decision made on 8-7-2020

*This is the process to appeal the decision made regarding a claim that is not listed above.*

Claim #: OOI

Explain the reason for your appeal of any claims not listed above. Be as specific as you can.

I am dissatisfied with the response I was given because This is a new process.
I'm not clear, as to how this process of Appeal
Works This is not clear, For I filed the grievance
due to the continuous over crowded conditions at CCI
Facility 9. Yard, in Dorm Rev Deal, and Clark Hall Low
and upper. That has resulted in me contrasting CoViD
19. And testing positive. The doams do not provide
6 feet of Social distance And is clearly a unsafe
condition. That allows Inmates in CDCR Custody
to be subjected to unreasonable risk of injury
and Suffering.

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have
the documents, identify them as best you can below:
The document I originally attached is Case
# 401-CV-01351-UST Document 3261 (Page) 8.0 F 15.
However This exHibit was removed, or not
attached. This is The Supporting Evidence.
Line #23-28"

DISTRIBUTION    Original: Claimant's File.    Copies: DAI, DAPO, and Claimant

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

Claim #: 00 1

Explain the reason for your appeal. Be as specific as you can.

*I am dissatisfied with the response I was given because* There is No Social
distancing in the dorms at CCI. The dorms are
over crowded. With upper and lower bunks filled
There is only 2½ feet of room between 4 people
with 83 bunks in the building. These bunks
Need to be removed from the dorms - that don't Need
to be used, in order to keep CCI Administration From using
them. the only bunks that should be in the dorms
for Social distance of 6 feet. Along with only
bottom Lower bunks Activated. Inmates are being
injured Constantly with Contracting COVID-19 in
these conditions that currently exist at CCI.
I'm extremely dissatisfied with the decision made
on my Appeal 3-7-20.

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't have
the documents, identify them as best you can below:
The documents mentioned on page (1) of This
appeal. 4: 01 - CV - 01351 Document 3261
Liled 4-04-20 ~ (8 of 15)

Reminder: Please attach all documents in your possession that support your claim(s).

Please note that this form and supporting documents will not be returned to you.

Claimant Signature: _____

Date Signed: 2-16-21

MAIL TO:
Office of Appeals
Department of Corrections and Rehabilitation
P.O. Box 942883
Sacramento, CA 95811

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 06/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☒ No | Institution: CCI HC 2000176 |
|---|---|---|
| E. Christensen, RN | | Section: 7-20-20 |
| Staff Name and Title (Print) | Signature | Date |

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, only one CDCR 602 HC A Health Care Grievance Attachment will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Section 3087 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): Sanford Robert L | CDCR #: V-25176 | Unit/Cell #: Rex Deal 012 |
|---|---|---|

**SECTION A:** Explain the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health and welfare for which you seek administrative remedy.

Pursuant to CCR Subsection 3084.9(a)(1)(B), and CCR 3271, this Appellant now submits this CDCR-HC-602. Due to the continuous overcrowded conditions of dorms here at CCI facility E, where CDCR Secretary Ralph M. Diaz, CCI (A) Warden B. Cates, Chief Deputy Warden C. Schuyler, Associate Warden B. Sanders and Chief Medical officer, S. Shiesha, where they fail to create, or maintain physical distancing of (6Ft) in all directions to hinder airborne (HC 602 A) no

*If you need more space, use Section A of the CDCR 602 HC A*

Supporting Documents: Refer to CCR 3087.2. List supporting documents attached: unable to get copies of original while in Isolation (: 4:01-cv-01351-)5T document 3261 (4-cv-20) (# of 15)

☐ No, I have not attached any supporting documents. Reason:

| Grievant Signature: | Date Submitted: 7-14-2020 |
|---|---|

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL [ ]

| HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | | Is a CDCR 602 HC A attached? ☐ Yes ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____

☐ Withdrawn (see section C)

☐ Accepted    Assigned To: _____ Title: _____ Date Assigned: _____ Date Due: _____

Interview Conducted? ☐ Yes ☐ No    Date of Interview: _____ Interview Location: _____

Interviewer Name and Title (print): _____ Date: _____

Reviewing Authority Name and Title (print): _____ Signature: _____ Date: _____

*(handwritten across: Wrong Form)*

Disposition: See attached letter    ☐ Intervention    ☐ No Further Intervention    ☐ No Intervention

*If dissatisfied with Institutional Level Response, complete Section B.*

HCGO Use Only: Date closed and mailed/delivered to grievant:

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one! |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached |
| ☐ Not Applicable | ☐ Other: | *See chronotes |
| 4. Comments: | | |

RECEIVED
CCI    STAFF USE ONLY
JUL 2 0 2020
HCGO

i

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
CDCR 602 HC A (06/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**

Institution: CCI HC 20000176

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| Sanford, Robert L | V-25176 | Rex Deal 01 L |

**SECTION A** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the decision, action, condition, omission, policy or regulation that has had a material adverse affect on your health and welfare for which you seek administrative remedy):

Person - To - Person transmission of CovID-19 virus in the Living areas of Dorms (See supporting document Attached) (referrenced) Dis over crowded condition of dorms is "No doubt" "A" medical issue. Due to the Recent spread of CoviD-19 Now infecting inmates here at CCI, at an Alarming rate. I was transferred here to CCI on 6-8-2020 and on 6-19-2020 the out break began due to the over crowded conditions of Dorms, where inmate are housed on double bunk beds with less than 2½ feet of Distance. There is clearly "No" social distance available with the Amount of inmates housed in these doems, that operates with reckless disregard and puts inmates at An unreasonable Risk of Contracting the COVID-19 virus.

Grievant Signature: _____    Date Submitted: 7-14-2020

**SECTION B** Continuation of CDCR 602 HC, Health Care Grievance Appeal, Section B only (Dissatisfied with Health Care Grievance Response):

_wrong form_

RECD BY CCI

Grievant Signature: _____    Date Submitted: _____

RECEIVED
CCI
JUL 2 0 2020
HCGO

STAFF USE ONLY

**California Correctional Institution**
Name: ~~Robert L Sandford~~
CDC #: 1125126
Facility 6 Building CHU Bed 1182
P.O. Box 167
Tehachapi, CA 93581

CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION INDIGENT INMATE MAIL

Facility Post Office Boxes
Facility A - P.O. Box 1902
Facility B - P.O. Box 1906
Facility C - P.O. Box 1905
Facility D - P.O. Box 608
Facility E - P.O. Box 107
Administration - P.O. Box 1031

Legal Mail

$ 000.50

To: Office of Appeals
Department of Corrections and Rehabilitation
P.O. Box. 942883
Sacramento, CA
95811

## UNAUTHORIZED ITEMS WITHIN INMATE MAIL

If mail contains these items, it will result in an issuance of CDC Form 1819 Notification of Disapproval

- No padded envelopes, cardboard, bubble wrap.
- No musical greeting cards, video's, CD's, or cassette tapes.
- No cash. No pens, pencils, or markers.
- No identification cards, credit cards, bank cards, phone cards, etc.
- No polaroid photographs, negatives, slides, or photo albums. No photos depicting drugs and/or drug paraphernalia. No photos drawings, magazines, and/or pictorials displaying frontal nudity or other gender.
- Nothing which depicts, displays or describes sexual penetration or sexual acts.
- No gang affiliated material, hand gestures, or signs.
- No items of clothing, food, hard plastic, metal, wood items, magnets, rubber, glue and/or glitter.
- No tattoo patterns or tracing patterns. No jewelry.
- No mail containing unknown substance, any painted, liquid and/or solids.
- No unauthorized correspondence between inmates/parolees.
- No lipstick, perfume, cologne, and scents on the contents or envelope.
- No items which may be deemed a threat to the safety and security of the institution, or any correspondence deemed circumvention of the mail policies and procedures.
- All incoming mail must have full return address.

This envelope is sent as Legal/ Privileged, and Confidential. If the contents do not meet the requirements or is not of: ... [signature block] ...
California ___ ___ Institution
... ___, CA 93___
... Sergeant

## AUTHORIZED ITEMS WITHIN INMATE MAIL

- 50 postage-stamps-40 envelopes
- Letters/greeting cards
- 10 photographs
- Checks/money order with inmate's name and CDC#
- Writing paper (white/yellow lined only)
- Publications (books, magazines, newspapers) MUST come directly from vendor
- For funds to be mailed directly to inmates account, send through www.jpay.com or (800) 574-5729



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# CLAIMANT APPEAL CLAIMS DECISION RESPONSE

Re:  Appeal Claims Decision Response

**Offender Name:**  SANFORD, ROBERT LIONEL          **Date:**  12/23/2020
**CDC#:** V25176
**Current Location:**  CCI-Facility E                **Current Area/Bed:** E BH 1 - 000020L

Log #: 000000018808

---

## Claim # 001

**Institution/Parole Region of Origin:** California Correctional Institution     **Facility/Parole District of Origin:** CCI-Facility E
**Housing Area/Parole Unit of Origin:**
**Category:** COVID-19                **Sub-Category:**  Social Distancing

The California Department of Corrections and Rehabilitation (CDCR) Office of Appeals received this claim on 08/21/2020.

California Code of Regulations, title 15, provides the Office of Appeals 60 calendar days to complete a response. Due to the expiration of time, this response by the Office of Appeals will be the only response.

You do not need to resubmit this claim to the Office of Grievances or to the CDCR Office of Appeals.

**Decision: Time Expired**



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# CLAIMANT GRIEVANCE CLAIMS DECISION RESPONSE

Re:  Grievance Claims Decision Response

Offender Name:  SANFORD, ROBERT LIONEL

CDC#:  V25176

Current Location:  CCI-Facility E

Date:  08/07/2020

Current Area/Bed:  E  CHU 2 - 000118L

Log #:  000000018808

Claim #:  001

**Institution/Parole Region of Origin:** California Correctional Institution

**Housing Area/Parole Unit of Origin:**

**Category:**  COVID-19

**Facility/Parole District of Origin:**  CCI-Facility E

**Sub-Category:**  Social Distancing

## I. CLAIM

Claimant says due to overcrowding in Clark Hall Low Dorm at Facility E, he cannot maintain social distancing and this creates a medical issue and puts inmates at an unreasonable risk of contracting Covid-19.

## II. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

California Code of Regulations (CCR), Title 15, Section 3383 State of Emergency.

### B. DOCUMENTS CONSIDERED

Statement of California Executive Order N-36-20 dated March 24, 2020Director's COVID-19 Memorandum dated April 7, 2020 (REVISED COVID-19 MANDATORY 14-DAY MODIFIED PROGRAM)Director's COVID 19 Memorandum dated May 11, 2020 (COVID-19 GUIDANCE FOR DAILY PROGRAM REGARDING SOCIAL DISTANCING FOR CELL OR ALTERNATIVE /DORM STYLE HOUSING OF EIGHT PERSON COHORTS) California Health Care Services Memorandum dated May 22, 2020 (COVID-19 PANDEMIC-ROAD MAP TO REOPENING OPERATIONS)

## III. REASONING AND DECISION

On March 24, 2020, Governor G. Newsom implemented Executive Order N-36-20 due to the COVID-19 pandemic. On April 7, 2020, each institution was ordered to implement a 14 day modified program in an effort to limit the spread of COVID-19. Since then CDCR has issued Memorandum dated May 11, 2020, specifically addressing almost every aspect of inmate programming. To date, those restrictions remain in place to protect staff &amp; inmates alike. CDCR Memorandum dated May 22, 2020, discusses the progression of CDCR to Phase 2 of Governor Newsom's Executive Order to Reopen California. However, out of an abundance of caution, the restrictions implemented on May 11, 2020, will remain in effect. Additionally, with the recent identification of active COVID-19 cases amongst the inmate population, it is even more critical that these directives are adhered to. The CDCR and CCI are committed to the safety of the community, staff, and those in its care. Executives and staff at CDCR and California Correctional Health Care Services (CCHCS) are working closely with infectious disease control experts to minimize the impact of COVID-19 on our operations. CDCR and CCHCS are dedicated to the safety of everyone who lives in, works in, and visits our state prisons. The Department has longstanding outbreak management plan in place to address communicable disease outbreaks such as influenza, measles, mumps, norovirus, and varicella, as well as preparedness procedures to address a variety of medical emergencies and natural disasters. All CDCR institutions have been instructed to conduct additional deep-cleaning efforts in high-traffic, high-volume areas, including visiting and health care facilities. Additional hand sanitizer dispensing stations are being procured and will be placed inside adult institution entrances and visiting areas. The incarcerated population is being provided extra soap when requested and hospital-grade disinfectant that meets Centers for Disease Control and Prevention (CDC) guidance for COVID-19.On July 28, a physical inspection of Clark Hall Up was completed by Lieutenant Bromiley and found to be in compliance with all CDCR social distancing guidelines.

**Decision: Disapproved**

After a thorough review of all documents and evidence presented at the Office of Grievances Level, it is the order of the Office of Grievance to DISAPPROVE the claim.

If you are dissatisfied with the decision of this claim, you may file a 602-2, appeal with the California Department of Corrections and Rehabilitation Office of Appeals.

| Staff Signature | Title | Date/Time |
|---|---|---|
| P. Horn [HOPA011] | cdw | 08/06/2020 |

EXHIBIT "D"

EXHIBIT "D"

# HEALTH CARE SERVICES



### Institutional Level Response

**Closing Date:** FEB 1 6 2021

**To:**     SANFORD, ROBERT (V25176)
        E BH 1000020L
        California Correctional Institution
        P. O. Box 1031
        Tehachapi, CA 93581

**Tracking #:**   CCI HC 20001082

## RULES AND REGULATIONS
The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | | Description |
|---|---|---|
| Issue: | COVID-19 ( Expedited Release ) | You state you are seeking an early release due to COVID-19. You have tested positive twice (July & October 2020) and have lost taste, unable to smell, and recently started coughing up dry blood clots. You are considered high risk in which you suffer from asthma, anemic disorder, and alpha thalassemia. |

## INTERVIEW
Pursuant to California Code of Regulations, Title 15, Section 3999.228(f)(1), an interview was not conducted as you did not request one by initialing the appropriate box on the CDCR 602 HC, Health Care Grievance.

## INSTITUTIONAL LEVEL DISPOSITION

[X] No intervention.     [ ] Intervention.

## BASIS FOR INSTITUTIONAL LEVEL DISPOSITION
Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:
- That all of your medical concerns are being monitored and are stable at this time. You were seen and assessed by RN for grieved symptoms.

The California Department of Corrections and Rehabilitation developed a COVID-19 Risk Score based upon the likelihood of a person developing serious COVID-19 related illness. Conditions and diagnoses that contribute to a person's COVID-19 Risk Score include: Moderate or severe asthma; Cystic fibrosis, pulmonary

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

**HEALTH CARE SERVICES**

fibrosis, chronic obstructive pulmonary disease, or other chronic lung disease; Diabetes; Congestive heart failure and other serious heart disease; HIV/AIDS; Aplastic anemia, histiocytosis, and other immunocompromising conditions; Severe obesity; Advanced liver disease; Chronic kidney disease; Hemoglobin disorders such as sickle-cell disease; Receiving treatment for cancer or hemodialysis treatment; Other severe chronic diseases, like connective tissue disorder, dementia, muscular sclerosis, neurological disorder, endocrine disorder, and vasculitis; and Pregnancy or age 65 or older.

All inmates have been automatically assigned a COVID-19 Risk Score based upon age and current health conditions. The risk score is updated every day. No action is required on the part of the inmate.

Inmates at highest risk of COVID-19 complications, with a COVID-19 Risk Score of 4 or higher, will undergo additional custodial screening to determine which individuals will qualify for expedited release. Because older people are more likely to have COVID-19 complications, inmates age 65 or older automatically have a COVID-19 Risk Score of 4.

If you are determined to be eligible for release, you will be notified.

Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies.

_____                    02/16/2021
U. Baniga, M.D.                                     Reviewed and Signed Date
Chief Physician and Surgeon
California Correctional Institution

---

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.

HEALTH CARE SERVICES

EXHIBIT "E"

EXHIBIT "E"

California Correctional Health Care Services

Patient Discharge Instructions

Name: SANFORD, ROBERT LIONEL     Current Date: 02/16/21 11:07:10

DOB: 11/29/63     CDCR: V25176

Immunizations Provided:

## Immunization(s) Given This Visit

| Name | Date |
|------|------|
| SARS-CoV-2 (COVID-19) mRNA-1273 vaccine | 02/10/21 13:05:00 |
| hepatitis A-hepatitis B vaccine | 09/24/20 11:21:00 |
| hepatitis A-hepatitis B vaccine | 08/27/20 08:19:00 |
| influenza virus vaccine, inactivated | 11/10/20 10:01:00 |

Reason For Visit: Alpha thalassemia trait; Anemia; Encounter for screening laboratory testing for COVID-19 virus; Immunization due; Loss of smell; Nocturia

Recommendations and arrangements for future care

Devices/Equipment:

Eyeglass Frames Permanent Other/Unknown, Do Not Dispense, Patient Already Has

Provider Comment:

## MEDICATIONS:
During the course of your visit your medication list was updated with the most current information.

## Continue taking these Medications:

EXHIBIT "F"

EXHIBIT "F"



PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Patrick Booth
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson
Shira Tevah

## LEGAL MAIL - CONFIDENTIAL

April 23, 2020

Robert Sanford, V25176
SCC
5150 O'Byrnes Ferry Rd.
Jamestown, CA 95327

Dear Mr. Sanford:

We write in response to the letter our office received on 4/22/2020, in which you report concerns regarding overcrowding in the dorms given the ongoing COVID-19 pandemic. Thank you for writing to express your concerns. We appreciate the information you shared.

Please see enclosed for information about CDCR's policies regarding COVID-19 and the status of our office's advocacy.

As the letter explains, we too believe the crowded conditions in CDCR are an unacceptable risk of harm from COVID-19. In March, we asked the three judge federal court in the Plata and Coleman class actions (about medical and mental health care in the prisons) to order CDCR to release people. On April 4, 2020, the court denied the motion, saying that we needed to ask the judges in the individual cases for orders to keep people safe before releases could be considered.

On April 8th, we filed a motion in the Plata court, asking that CDCR ensure that people at highest risk for severe complications from the virus are safe, either by housing them where they can best do physical distancing, transferring them to another facility, or releasing them. However, on April 17, 2020, the motion was denied. The Court ruled CDCR had taken adequate steps so far in response to COVID-19 and for that reason was not violating the constitutional rights of people in prison. The Court also said CDCR had now promised to follow the Court Receiver's directive to create eight-person groups, separated from each other by at least six feet, in dorms.

We were told earlier this week that CDCR has created 8-person pods in SCC dorms, to facilitate social distancing. We're asking for more information about these pods from CDCR, but if there's any information you can share with us, we would really appreciate it.

Board of Directors
Penelope Cooper, President • Margaret Johns, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Cesar Lagleva • Jean Lu • Laura Magnani • Michael Marcum
Ruth Morgan • Seth Morris • Vishal Shah • Michele Walkin Hawk

1. Have beds been re-arranged into groups of 8? If so, is there at least 6 ft of space between each pod? On April 11,2020 SCC Administration ordered its staff to implement a shifting of beds in SCC dorms. There are (16) beds in each dorm, with upper and lower bunks that house (32) inmates. This shift of these beds, in the designed living areas of this dorm setting is 42'x 20', not including the space the beds and lockers take up. There were no beds removed, this shift only allowed spacing between two(2) of the middle bun areas on one side of each bunk, the opposite side of the remaining bunks have only 2½ feet of spacing between them. SCC dorms "can not" create 6 ft of social distancing in the dorms, that have 16 beds in each dorm, with (32) inmates. It's physically, and mathematically impossible unless they down-size the dorm to only (10) bunks and only (10) inmates in each dorm. This will be the only way to create 6 ft of social distancing in SCC dorms. (Please note, these are not pods, and there is no dividers or separation.).

2. How close together are the beds in the pods? In SCC dorms that are not pods, the beds are only 2½ apart from each other, (4) beds with upper and lower bunks that have approx (8) inmates at all times are living in 2½ ft of space from each other. This is clearly no where near social distancing of 6 ft as required by the CDC, and certainly not correct as to the implied bed space they claim to have created as 8 person pods, this is absolutely incorrect, these bunks are upper and lower with only 2½ ft of spacing between them, and on the area in the dorms at SCC that was created space for, is only on one side, the opposite side has only 2½ ft. Again this is not 6 ft social distance.

3. How many bathrooms and sinks are there in the dorm? Do the pods share bathrooms/sinks? The bathroom area in each dorm at SCC is approx 18'ft x 6'ft 6"inches with (1) urinal only 1 foot away from (3) sinks that are only 8" inches apart from each other, (2)toilets that are only 1½ ft away from the urinal, and the other toilet is approx 2 ft away from the other. There is only one shower for (32) inmates to use on a daily basis, and the same for the urinal, sinks, and toilets.

4. Where are meals eaten? What, if any, precautions are being taken to prevent transmission during meals? As of April 27, 2020, SCC circulated a memorandum where we are now required to where a face mask during any movement including chow. There is approx (3) dorms released for chow at one time, we all have to sit at a table of (4) inmates per table, the distance between each seat is less that 1 ft, and the tables are less than two feet apart from each other. There is no social distance available during meals, at SCC there is no possible remedy to feed approx 70- 90 inmates for meal out of three dorms at SCC, even with the releasing of less dorms at a time during meals, there is no possible way to seat inmates in the chow hall without sitting them (4) at each table only 1 foot apart. This is not a preventive measure to COVID-19 during meals.

5. Is there anything else we should know? Yes along with the facts mentioned in this quirey Petitioner et al, also wants to make you aware that there was no PPE issued to the SCC population, regarding mask, until April 27, 2020 (see attached copy of memorandum). There is only (1) ounce of bleach being distributed to each dorm, that is clearly not enough cleaning solution to maintain the constant cleaning of over 20 inmates per dorm.

These dorms at SCC are clearly overcrowded and are a "dangerous condition" with the threat of COVID-19. these dorms are what can be considered "Incubators of death". SCC Administration is not being truthful, with you about the dorm settin here at SCC, these are not pods, they are dorms, with no petitions, or dividers between the beds of any sort. I have submitted a Health-care 602 on 4-26-2020 regarding these conditions as an emergency pursuant to CCR § 3084.9 (a)(1)(B)(2) as issue for health and safety concerns of this deadly virus COVID-19 and explaining that the over-crowded dorms are "incubators of death" and they need to lower the dorm population, and remove 4 beds from each dorm without having the upper bunks used.

We thank you in advance for your help and hope you're doing okay in these uncertain times.
    Thank you for responding, and I hope some action will be taken with regards to this issue.                Sincerely,

*Ilian Meza*

Ilian Meza-Peña
Litigation Assistant under Sophie Hart

Enclosures:  CDCR COVID Info; SASE

I have enclosed a copy of the HC-602 I submitted that has not been replied to as of May 1, 2020, if there is something more that I can do, to assist you with this matter please let me know.

                    Sincerely,

Robert L. Sanford et al.,

# ADA/Effective Communication Patient Summary

As of: 12/14/2020 09:11

## Patient Information

**NAME:** SANFORD, ROBERT
**CDCR:** V25176

### Disability Placement Program

Current DPP Code(s):

DPP Verification/Accommodation Date:

Current Housing Restrictions/Accomodations:

### Methods of Communication

SLI:

Primary Method:

Secondary Method:

Interview Date:

### Developmental Disability Program

Current DDP Code:

Effective Date:

Adaptive Support Needs:

## Testing of Adult Basic Education (TABE)

TABE Score: 11.3

TABE Date: 09/19/2017 00:00

### Learning Disabilities

Learning Disabilities:

### English Proficiency

LEP: No

Primary Language: English

### Durable Medical Equipment

Current ISSUED DME:
* Eyeglass Frames Permanent
* Knee Braces Permanent
* Wrist Support Brace Permanent

### MHSDS

MHLOC:   GP

RECEIVED
CCI
DEC 14 2020
HCGO

COMPLETE
CCI
FEB 16 2021
HCGO

# EXHIBIT B

ROBERT L. SANFORD, V-25176
CALIF. CORR. INST.
FAC. E., BH-20L
P.O. BOX 107
TEHACHAPI, CA 93581

SUPERIOR COURT OF CALIFORNIA

COUNTY OF KERN

ROBERT L. SANFORD,
Plaintiff,

v.

GAVIN NEWSOM: RALPH M. DIAZ: KATHLEEN
ALLISON; B. CATES; C. SCHUYLER; B. SANDERS;
S. SHIESHA; U. BANIGA; CALIFORNIA
CORRECTIONAL INSTITUTION; AND DOES 1-5,
Defendants.

) Case No.BCV-21-100477
)AMENDED COMPLAINT
) 1. NEGLIGENCE
) 2. INTENTIONAL
)    TORT
) 3. DEPENDENT ADULT
)    ABUSE
) 4. UNLIMITED CIVIL
)    ACTION
) 5. GROSS NEGLIGENCE

TRIAL BY JURY DEMANDED

COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

I. JURISDICTION

1. Plaintiff now brings this lawsuit pursuant to Cal. Const. art. VI, §§ 10, 11; and art. I, § 16, sec. 395

II. VENUE

2. section 305, County in which the defendants reside. All defendants are responsible for the injuries sustained in the County of Kern at the California Correctional Inst. where Plaintiff resides.

III. PARTIES

3. Plaintiff ROBERT L. SANFORD, was at all times relevant to this action a prisoner incarcerated at the California Correctional Institution located in Kern County.

4. Defendant GAVIN NEWSOM was at all times relevant to this action the Governor of the State of California and was acting under color of state and federal law. He is responsible by constitution, statute, and by his own executive order to

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 10 119947

1  ensure the safety and wellbeing of incarcerated inmates including

2  but not limited to Plaintiff here. He is sued in his personal

3  capacity for damages, and in his professional capacity for

4  injunctive relief.

5  5. Defendant Warden B. Cates was at all times relevant to this

6  action acting under color of state and federal law. He is the

7  custodian, having custody over Plaintiff who is dependent on

8  Defendant Warden B. Cates for reasonable safety from communicable

9  diseases such as Covid-19 infection and spreading within

10  Plaintiff's housing unit and prison facility by complying with

11  and implementing housing policies directed by the California

12  Department of Corrections and Rehabilitation. Defendant Warden

13  B. Cates is sued in his professional capacity for injunctive

14  relief and personal capacity for damages and equitable relief.

15                    IV. EXHAUSTION OF REMEDIES

16  6. Plaintiff exhausted all administrative grievances.

17  7. Plaintiff exhausted Government Claims form application timely.

18                    V. FACTUAL ALLEGATIONS

19  8. On or about March 2020, Defendant Gavin Newsom issued an

20  executive order mandating citizens to stay at home and practicing

21  social distancing of SIX FEET APART, while wearing face masks

22  and washing hands to mitigate the infection and spread of

23  Covid-19.

24  9. Plaintiff was transferred to the California Correctional

25  Institution on or about June 2020.

26  10. Every day the Sergeant during second watch would come

27  to visit each building to assess the status of officers

assigned to each building as to their compliance with Covid-19 safety protocols. These sergeants would also tour the facility inspeciting pill call practices, as well as custody practices during chow feeding of inmates. Sergeants during second watch which included the hours of 6:00 a.m. to 2:00 p.m. was aware of all custody practices and the failure of custody to implement Covid-19 safety protocols to prevent the infection and spreading of Covid-19 across Facility E where Plaintiff was housed.

11. Second watch Sergeants notified the Captain of the fact that each dormitory housing unit was not in compliance with the partition to separate double bunks and single bunks in dormitory housing units nor maintained any of the bunks parallel to the building walls as prescribed by CDCR's Covid-19 housing unit policy. See Exhibit A.

12. The Captain, during the Warden meeting, notified the Warden B. Cates the defendant here that the dormitory housing units were not in compliance with housing policy standards pursuant to Exhibit A. This occured each month from June 2020 to present.

13. Plaintiff resided at the Van Westin building with cell living from June 18th to June 27th of 2020.

14. Plaintiff was then transferred to Clark Hall Low June 27 of 2021 of thereabouts until July 10, 2020; A Dormitory.

15. Plaintiff was then transferred to Rex Deal July 10, 2020 to July 12th. Plaintiff was confirmed to having contracted Co Covid-19 on July 11, 2020. See Exhibit B. Rex Deal was a Dormitory.

16. Defendant Warden B. Cates was playfully juggling with

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 10 11994-7

-5

1   Plaintiff's life by transferring Plaintiff from a cell to

2   dormitory living with 150 plus other inmates, from one

3   dorm to the next within a short period of time, despite

4   knowing the stay at home mandate issued by Governor

5   Gavin Newsom.

6   17. Every dormitory building had double bunks with no

7   partitions nor were positioned to be parallel to the building

8   wall as prescribed by the CDCR building or housing unit

9   policy of bed space management. See Exhibit A.

10  18. M.A.C. Chairman Broussard and the Sergeant at Arms Inmate

11  Montanez had a meeting with Warden B  Cates the Defendant

12  here and Captain for Facility E, and reported to them that

13  none of the dormitories are in compliance with the CDCR

14  housing unit bed policy pursuant to Exhibit A. The defendant

15  Warden B. Cates said, "The beds as they are will be sufficient."

16  The Captain nodded with agreement. See Exhibit C.

17  19. Pursuant to Title 15 (CCR) § 3380, The Warden is resposible

18  for the custody... of all inmates under his or her charge."

19  The defendant Warden B. Cates having custody of Plaintiff

20  who is dependent on Defendant Warden B. Cates for reasonable

21  safety from all communicable disease such as Covid-19 and

22  maintaining housing unit bed policies directed by CDCR to

23  prevent the infection and spreading of Covid-19 in his

24  prison.

25  20. Plaintiff had underlying health conditions such as chronic

26  asthma; sickle cell trait, Alpha Thalassemia trait.

27  21. Covid-19 is recognized by CDC create dangerous conditions

1   particularly with people with underlying conditions such

2   as Plaintiff to result in a high likelihood of death

3   due to complications of contracting Covid-19.

4   Plaintiff here now suffers the Long Haulers Effect of Covid-19

5   such as loss of taste of smell, chronic and unrelenting

6   headaches, coughing up blood clots, chronic fatigue and

7   shortness of breath, along with excruciating joint pain.

8   See Exhibit D.  This condition is ongoing and unrelenting.

9   21. This complaint serves as official notice to the

10   Defendants that the housing conditions in Facility E

11   have not changed. And most importantly now, Defendant

12   Warden B. Cates is in the process of transferring Plaintiff

13   to Facility D where a present outbreak of Covid has

14   occurred in building two according to Counselor CC1

15   Gonzales, on September 7th, 2021. He expressed these

16   concerns during a court conference call in this instant

17   case, particularly since Plaintiff had already contracted

18   Covid-19.

19

20

21

22

23

24

25

26

27

CAUSE OF ACTION #1

1

2  Defendants violated Cal. Penal Code sec. 368(b) wherein

3  Defendant having custody over Plaintiff, a dependent

4  adult relationship exists. The  practices that

5  Warden B. Cates as Defendant here endangered the health

6  of Plaintiff wherein Defendant permitted dangerous

7  conditions to exist that was likely to produce great

8  bodily injury or death.

9  22. Plaintiff incorporates paragraphs 1 through 21 as

10  though they were fully stated herein.

11  23. At pill line during pill call at approximately 7:00

12  a.m., 12:00 p.m., 6:00 p.m., and 8:00 p.m. all buildings

13  are called at the same time during the Covid-19 outbreak

14  at Facility E. There were no separation of buildings. And

15  furthermore, the same batch of cups were used, with inmates

16  by their own actions would pick up water cups from the

17  same source and press the same button to activate the

18  water founttain allowing for cross contamination between

19  buildings among inmates. The Warden was made aware of this

20  by the inamte M.A.C. Chairman Broussard. See Exhibit C.

21  The Defendant Warden B. Cates took no action despite

22  being warned.  Furthermore, the correction officers habitually

23  would wear no masks from March 2020 until ongoing. These

24  officers worked in buildings that Plaintiff was housed in.

25  Because inmates normally don't leave and come back to the

26  prison, the vector of the Covid-19 contagion is normally

27  conveyed by custody  and/or staff.  Inmates are truly

1   the victim as the Plaintiff is in this case.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CAUSE OF ACTION #2

24.

Defendants violated Plaintiff's rights with wilfull and gross negligence where they intentionally subjected Plaintiff ti dangerous enviorment that ultimately caused Plaintiff injury that is ongoing As Plaintiff was sujected to a known dangerous condition where the gross negligence of defendants failed to act, where they knew or should have known that Plaintiff's pre-existing medical issues placed him at a higher rate of danger of contracting Covid-19 due to the inability of CDCR/CCI to adquately social distance inmates in their care with six feet (6 ft) of social distance See Exhibit "A", Furthermore, because the Defendant Brian Cates is the warden of this facility, and his failure to act to a known dangerous condition that causes bodily injury and imminet death constitutes violations of the United States Constitution Eitgh Amendment; and the California  I, §17. " Excessive bail Shall not be required, nor excessive fines, nor cruel and unusual punishments inflicted." [Ratified Dec. 15 1791]

25.

The Defendant brian cates failed to take protective measures, by following the safety protocols in response to Covid-19, where he failed to "ENFORCE MASK WEARING , SAFETY PROTOCOLS, HE DID NOT ENFORCE POLICY FOR WEARING GLOVES AND MASK WITH ALL OFFICIALS AND STAFF EMPLOYEES HERE AT CCI.: NEITHERR DID HE PROVIDE HAND SANITIZER IN INMATE BATHROOMS. As this Defendant deliberately and negligently created a dangerous enviornment,

26.

As a proximate result of said Defendant who knew of the need to comply with the laws applicable to the ownership, operation, management and and/or supervision of CCI as this Defendant further knew that —

COURT PAPER

1 non-compliance with such laws and protocols would put health and

2 safety and the welfare of the Plaintiff unreasonably at risk of

3 imminent death, whereas Plaintiff already has pre-existing medical

4 concerns. Defendant B. Cates knew that his continual failure or

5 refusal to discharge their/his fiduciary duties to Plaintiff would

6 likely result in injury and/or death. The conduct of the alleged

7 Defendant[s] constitutes gross negligence along with Physical

8 abuse" and "Neglect", as those terms are defined in W& IC§ 15610.63

9 and 15601.57, and other sections of the law, in that Defendant[s]

10 failed to exercise the degree of the responsibility of care that a

11 reasonable person having custody of plaintiff would excercise.
27.

12 The ongoing and contiuning pattern of defendant[s] alleged above

13 -described plan of abuse and Defendant failed to train, supervise

14 staff, supply and equip this facility, was not toi protect the welfar

15 and circumstances of the inmates, but where to wrongfully maximize

16 the Prison business profits. Defendant[s] actions were and continue

17 to be wreckless, intentional, malicious, fraudulent, and oppressive,

13 and also constitutes a breach of Defendant[s] fiduciary duties.

19

20

21

22

23

24

25

26

27

COURT PAPER
STATE OF CALIFORNIA
STD 113 (REV 3-95)

28.    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2  Here, in this Amended Complaint, Robert L. Sanford was and is

3  diagnosed with pre-existing medical issues, Ashma, Alpha thalasemia,

4  Anemia, where as due to teh gross negligence of Defendant[s]

5  Brian cates the (^) warden at CCI, where this Defendant, failed to

6  act with CDCR protocols for Covid-19, where he was  aware  that

7  Plaintiff and other inmates under his jurisdiction also suffered

8  from pre-existing medical issues, Therefore placing them at a

9  much higher risk of contracting Covid-19. As a result of this

10  wardenss failure to act with following protocols issued by his

11  own Department policy makers as outlined in the amended compalint

12  See Exhibit "A".

29.Plaintiff was infected at CCI-E facility with the  Covid-19

14  virus on two seperate occassions, once being found positive for

15  on or about July 10, and 11th when plaintiff first experienced he

16  was unable to smell or taste, safter being forced to move during  .

17  the height of the Covid outbreak here at CCI, as Plaintiff was moved

18  from dorm Clark hall low on (CCI  E-facility) to Dorm Rex Deal, this

19  mass movement of inmates within the facility that was already

20  contaminated was dangerous, and certainly contributed to the fact

21  this plaintiff was injured by being infected with Covid-19, where

22  plaintiff continues to suffer even to this day with lack of smell,

23  taste, shortness of breath, coughing of blood clots, excrutiating

24  headaches, and joint pain.

30.

25  The warden of this facility B. cates was fully aware of the fact

26  CCI could not provide adequate social distancing aas required by

27  The Center od Disease Control (CDC), therfore CDCR implemented its

16

1  own policy with placing partions between bunks that had more
2  than 10 beds in a room/dorm. CCI has failed to comply with this
3  policy protocol, and continued to operate with the bed positioning
4  as they always have, knowing this created a dangerous condition
5  with the imminent threat of death from the Covid-19, where the
6  Clark hall low, and Rex deal dorm housed over 100 inmates to 120
7  inmates with les than 3ft of social distance and no partitions
8  as implemented by policy .

9  These conditions are truly unsafe considering the imminent danger
10 of Covid-19 and how it spreads, see United States vs. Zukerman 16
11 Cr. 194 at 2020 U.S. Dist. Lexis 59588 (S.D. N.Y. Apr. 3, 2020).,
   31.
12 Whereas, plaintiff has been intentionally subjected to massive
13 circumstances of overcrowded conditions here at CCI, where Plaintiff
14 was deliberately palced in an enviornment whre mass amounts of
15 inmates who were already exposed and infected with Covid-19, where
16 Plaintiff had to share the same restroom, showers, dining, areas, .
17 during the months of June til now and the same conditions  continue
18 even with the new varients of the Covid-19, as thre is no protection
19 even for the vaccinated inmates, the vaient strain of Covid-19
20 is still threatening the safety and well-being of inmates such
21 as myself with pre-existing medical issues, and now suffering from
22 the "Long Haulers Effect of Covid-19)" where my  headaches are so
23 frequent and painful, and can hardly do daily functions of daily
24 living.
   37.
25 I was exposed to Covid-19 a second time here at CCI on or about
26 October 2nd, 2020, it was less than 90 days that  I was exposed
27 after being positive in July 2020. See EXHIBIT (Medical Records).

1  Plaintiff Robert L. Sanford , is injured due to the deliberate, gross negligence,

2  , and negligence of Defendant[s]  and its failure to act by not following the

3  Covid Protocols outlined by the Department in order to prevent the spread of

4  Covid-19 (by placing partitions in the dorms that had 10 beds or more, as for

5  this failure to act by Defendant B. Cates is the nexus that constitutes a

6  negligence and gross negligence, that injured Plaintiff, and now holds Defendant[s

7  in this civil action liable for failure to act in the capacity of their duty

8  pursuant to CDCR protocols and executive orders of gavin Newsom Gov. Code §

9  8658.

10  33.  Plaintiff Robert L. sanford, is placed in a unreasonable risk of danger

11  whereas, the Defendant B. Cates Warden (A), is aware of the risk that inmates

12  with pre-existing medical conditions are at a much higher rate of danger of

13  contracting Covid-19 and dying from the deadly virus.

14  34. Plaintiff has made numerous attempts to notify the Administartors and

15  Defendant cates as to the dangers that continue to exist here at CCI, with

16  the mass outbreaks that continue to occur at each facility here at CCI,

17  where the most recent outbreaks has occurred on D-facility where now this

18  Defendant B. cates acting Warden is adversly housing level one inmates on

19  a level two yard in order to move ahead of the scheduled closing of this

20  facility on E-yard, that has a deadline of June 2022. His hastly move of

21  forcing  inmates into crowed dorms already on facility D, is only evident

22  of his deliberate mass moves that occurred in June and July of 2020, where it

23  resulted in Plaintiff being injured with Covid-19. Now the same senario is

24  happening again, as it has recently been confirmed there is now a Covid-19

25  out break of the Delta varient strain now on D-yard and Plaintiff is now

26  being forced to move from facility -E to facility -D, and B. cates has made

27  actual statements to the point with his own I.A.C. Chairman and Seargent of

1  Arms  see Affidavits of these stated facts at Exhibit "C" and the written

2  policy questions that are related to the fact B. Cates has failed to adhere

3  to the policy issued by CDCR to place Partions in dorms with 10 beds or more.

4  as his only response to this implementation by CDCR on January 2021 was"

5  "We are no longer under Covid-19 Protocols therefore the bed positioning

6  is a irrellevant issue"  See Exhit "C" to these facts.

7  35. Plaintiff is now being placed in another dangerous condition deliberately

8  by this Defendant's failure to act in a capaity that will be in compliance

9  with Covid-19 protocols, is now continuing to Place Plaintiff in another dangerous

10 condition where the more deadly strain of Covid has already infected the inmate

11 population, just as it did in June/July 2020 where Plaintiff now suffers from

12 "Long Haulers Effect" See Exhibit "  " , This Amended Memorandum of Points and

13 Authorities, is now updated stating the facts as Plaintiff outlined in the first

14 complaint but its still the same acts by the same acting warden here at CCI

15 B.Cates who's willful deliberate acts with forcing inmates to mass move within

16 the CCI facility, deliberately creating a unreasonably dangerous condition that

17 is causing inmates to contract this new deadlier strain of the Covid-19

18 virus, along with the fact he has failed to enforce mask mandates of the staff

19 Correctional Officers here at CCI, along with the fact less than half of the

20 correctional staff here refuse to be vaccinated, and this in fact the main

21 contributing factor as how the vector of this varient is spread, The Defendant

22 continues to force mass amounts of inmates to be housed in dorms from building,

23 -to- Building, now from Yard-to-Yard, where there is no emergency to do so this

24 as this (A) warden has until June 2022 to close this E-facility, but he insist

25 on housing inmates adversly and placing them in a known dangerous condition;

26 this constitutes gross negligence, and dependant adult abuse where this

27 Defendant is aware of pre-existing medical concerns and a known dangerous enviornment.

36.

1  The facts that have ultimately injured Plaintiff twice here at CCI ar now

2  a ongoing and deliberate act orchestrated by the (A) warden here at CCI,

3  Where now Plaintiff has plead suffient legal authorities that clearly give rise

4  to cruel and unusual punishment in violation of the Eighth Amendment, as

5  Plaintiff has no other remedy to address theses deliberate actions of said

6  Defendant[s Collectively and individually, each of them, including Does 1-5

7  these negligent and gross negligent acts have caused plaintiff injury and

8  suffering, from becoming infected with Covid-19, and for the above stated facts

9  mentioned  herein this Amended Complaint and Memorandum of Points and Authorities

10  as there is now a likely chance this Plaintiff can be infected with the strain

11  of Covid-19 because the (A) Warden is no longer in or has never been in active

12  compliance with Covid protocols either fron CDC, or CDCR, where Plaintiff now

13  files this civil tort action that is now Amended, invoking the absolute relevant

14  power and authority of the California Constitution that reflects State and

15  Federal decisional authority within this Memorandum of points and Authorities;

16  and request this Court liberally adjudicate this pleading as justice and law

17  demands.

18

19

20

21

22

23

24

25

26

27

104

REQUEST FOR RELIEF

WHEREFORE, . Robert L. Sanford, now prays for judgement as follows:

A) Injunctive Relief;

B) Declaratory Relief;

C) General Damages According To Proof; $300,000.00 .

D) For All Expenses of This Lawsuit;

E) For Treble Damages Pursuant To Civil Code 3345;

F) For Punitive Damages Pursuant To Civil Code 3294; $300,000.00

G) For Damages For Dependent Adult Abuse: $300,000.00

H) For Attorney Fees;

I) For Pre-Judgement Interest Allowable By Law;

J) For Such Other And Further Relief This Court May Deem Proper.

September 9th, 2021

By: [signature]

Robert L. Sanford.

PROOF OF SERVICE

(Cal. Rules of Court, Rules 1.218.50.)

I, Robert L. Sanford, declare that I am over the age of 18 years of age and the Party Plaintiff in this Civil Tort Action Claim, at all times; I am a inmate prisoner in the California Correctional Institution, in the County of Kern, city of Tehachapi, California 93581, where the mailing occurs; and Plaintiff's address is: California Correctional Institution. P.O. Box107 Tehachapi, CA 93581

I, further declare that I am readily familiar with the business practices for collection and processing of correspondences for mailing with the United States Postal service, this same day in the ordinary course of business, On this, __9th__ day of September 2021 I the Plaintiff in the above mentioned complaint caused to be served the following document[s] ; Amended Complaint Civil Claim that incorporates 1-36 Cause of Action 1-2.r. . Memorandum ofPoints and Authorities, in a civil tort action, by placing a true copy of each document; in a separate envelope addressed respectively, as follows:

OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA. Colin Chaff 300 S. Spring Street, Suite 1702, Los Angeles, CA 90013

I, declare under the penalty of perjury under the laws of the United States Constitution and the State of California Constitution that the fore-going is true and correct to the best of my knowledge. Executed on this 22nd day, of February 2021.

Robert L. Sanford

EXHISIT "A"

EXHIBIT "A"

# Placement When Positioning Beds 6 feet or more is NOT Possible:

### For single beds:
- Ensure the person's laying position is head to toe.



### For bunkbeds:
- Ensure the person's laying position is head to toe on **each separate bunk bed**, including positioned head to toe on adjacent bunks.

 

### For rooms with more than 10 beds:
- Include partitions to separate beds to the fullest extent possible.



## IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.



EXHIBIT "E"

19

EXHIBIT "E"

Patient: **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male    CDCR: V25176

---

| *Virology Results* |
|---|

**Result Comments**
f17:    SARS CoV 2 RNA (COVID19)
        Additional information about COVID-19 can be found
        at the Quest Diagnostics website:
        www.QuestDiagnostics.com/Covid19.
        Lab test performed by:
        Lab Mnemonic:  05D0642827
        QUEST DIAGNOSTICS-WEST HILLS
        8401 FALLBROOK AVENUE
        WEST HILLS, CA 91304-3226
        TAB TOOCHINDA

| Specimen Type | Accession Number | Collected Date/Time | Ordering Provider | Received Date/Time |
|---|---|---|---|---|
| Nasopharyngeal Swab | 20-195-03518 | 7/13/2020 05:00 PDT | Kongara,Nanditha P&S | 7/14/2020 22:57 PDT |

| Procedure | Result | Units | Reference Range | Verified Date/Time | Verified By |
|---|---|---|---|---|---|
| SARS CoV 2 RNA (COVID19) | DETECTED @ f18 | | [NOT DETECTED] | 7/15/2020 18:08 PDT | QUEST CONTRIBUTOR_ SYSTEM |

**Result Comments**
f18:    SARS CoV 2 RNA (COVID19)

        A Detected result is considered a positive test result
        for COVID-19.  This indicates that RNA from SARS-CoV-2
        (formerly 2019-nCoV) was detected, and the patient is
        infected with the virus and presumed to be contagious.
        If requested by public health authority, specimen will
        be sent for additional testing.

        Please review the "Fact Sheets" and FDA authorized
        labeling available for health care providers and
        patients using the following websites:
        https://www.questdiagnostics.com/home/Covid-19/HCP/QuestIVD/fact-
        sheet.html
        https://www.questdiagnostics.com/home/Covid-19/Patients/
        QuestIVD/fact-sheet.html

        This test has been authorized by the FDA under an
        Emergency Use Authorization (EUA) for use by authorized
        laboratories.

        Due to the current public health emergency, Quest

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:   42502998

Print Date/Time:   6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Patient:                    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /   57 years    /    Male         CDCR: V25176

## Assessment Forms

*Any Recent Changes to Medication :*  No
*Compliance with the Medication/Treatment :*  Yes
*Medications Taken Today :*  Yes
*Medication Compliance :*  Medications (4) Active
Scheduled: (3)
+1-montelukast 10 mg Tab  10 mg 1 tab, Oral, qPM-KOP
+mometasone 100 mcg/inh Aerosol 120 puffs  100 mcg 1 puff, Oral, BID-KOP60
hepatitis A-B vaccine (Twinrix) 1 mL Susp-Inj syringe (0815-52)  1 mL, IM, Once
Continuous: (0)
PRN: (1)
+levalbuterol 45 mcg/puff Aerosol 15 gm  45 mcg 1 puff, Oral, q6hr-KOP90

                                        Chisum, Geneva RN - 12/8/2020 11:29 PST
                                            (As Of: 12/8/2020 13:08:31 PST)

<ins>Allergies (Active)</ins>
No Known Allergies
                        *Estimated Onset Date:*  Unspecified ; *Created By:*  Manglicmot,
                        Lina RN; *Reaction Status:*  Active ; *Category:*  Drug ;
                        *Substance:*  No Known Allergies ; *Type:*  Allergy ; *Updated By:*
                        Manglicmot, Lina RN; *Reviewed Date:*  12/8/2020 11:33 PST

**HEENT**
<ins>HEENT Nose Grid</ins>

| | |
|---|---|
| *Left Nostril* Signs/Symptoms : | Loss of smell (Comment: POSITIVE FOR COVID 19 6/20 AND 10/2020 [Chisum, Geneva RN - 12/8/2020 11:29 PST] ) |
| *Right Nostril* Signs/Symptoms : | Loss of smell |
| Comment | (Comment: POSITIVE FOR COVID 19 IN JUNE 2020 AND OCT 2020 [Chisum, Geneva RN - 12/8/2020 11:29 PST] ) |
| | Chisum, Geneva RN - 12/8/2020 11:29 PST |

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998
                                        Print Date/Time:  6/7/2021 12:46 PDT

**<ins>WARNING:</ins>** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Patient:                          **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male          CDCR: V25176

## *Assessment Forms*

### Patient Encounter Information

*ENCTR Information :*  Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN: 1000000031126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

### Subjective                                                                    Chisum, Geneva RN - 10/29/2020 12:20 PDT

*Arrival to Clinic :*  10/29/2020 11:33 PDT
*Mode of Arrival :*  Ambulatory
*Appointment Type :*  Follow-Up

<u>7362 Symptom Grid</u>                                                          Chisum, Geneva RN - 10/29/2020 12:20 PDT

| | |
|---|---|
| *Chief Complaint :* | " I have not gotten 100% of my smell or taste back from testing possitive x2 for Covid 19". |
| *Situation of Onset :* | Started in July 2020, first time tested + for Covid 19. |
| *Complaint Frequency :* | Recurrent (Comment: Has had little to none sense of smell and taste. [Chisum, Geneva RN - 10/29/2020 12:20 PDT] ) |
| *Chief Complaint Onset :* | 10/28/2020 06:30 PDT |
| Comment | (Comment: Pt indeed tested possive for Covid 19--PT IS ANEMIC. [Chisum, Geneva RN - 10/29/2020 12:20 PDT] ) |

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998

Print Date/Time:  6/7/2021 12:46 PDT

<u>**WARNING:**</u> **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

Patient: .
DOB/Age/Birth Gender:  11/29/1963 / 57 years    /  Male

**SANFORD, ROBERT LIONEL**

CDCR: V25176

---

## *Assessment Forms*

| | |
|---|---|
| Immunization due | *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z00.00 *Date:* 11/3/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Immunization due ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z23 |
| Loss of smell | *Date:* 12/8/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Loss of smell ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R43.0 |
| Nocturia | *Date:* 9/9/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Nocturia ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R35.1 |

**Assessment**
FTF-Nursing Diagnosis Grid

| NANDA Nursing Diagnosis : | Deficient Knowledge |
|---|---|
| Related To : | "I still can't smell anything after 2 months" |
| As Evidenced By : | 2 positive Covid 19 results in 5 months |
| | Chisum, Geneva RN - 12/8/2020 13:05 PST |

**Plan**
*Patient Presentation: :*  Consistent with nursing protocol powerplans

Chisum, Geneva RN - 12/8/2020 13:05 PST

**Follow-up/Disposition**
*Follow-up Required :*  No
*Disposition To: :*  Return to housing
*Mode of Disposition Via: :*  Ambulatory
*Release to Custody :*  Yes
*Released Time :*  12/8/2020 10:30 PST

Chisum, Geneva RN - 12/8/2020 13:05 PST

---

**Nursing Face-to-Face / 7362 Entered On:  10/29/2020 12:40 PDT**
**Performed On:  10/29/2020 12:20 PDT by Chisum, Geneva RN**

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998

Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

Patient:    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male    CDCR: V25176

| *Assessment Forms* |
|---|

; *Comments:*

**Loss of taste (SNOMED CT :61644018 )**

10/29/2020 12:36 - Chisum, Geneva RN
PT TESTED + X 2 SINCE JULY 2020 FOR COVID 19. PT STATES ONLY S/S IS LOSS OF SMELL AND TASTE.
*Name of Problem:* Loss of taste ; *Recorder:* Chisum, Geneva RN; *Confirmation:* Confirmed ; *Classification:* Nursing ; *Code:* 61644018 ; *Contributor System:* PowerChart ; *Last Updated:* 10/29/2020 12:37 PDT ; *Life Cycle Date:* 10/29/20 ; *Life Cycle Status:* Active ; *Vocabulary:* SNOMED CT
; *Comments:*

**Mod-severe rt knee (medial) Posttraumatic arthropathy (SNOMED CT :1231813011 )**

10/29/2020 12:37 - Chisum, Geneva RN
PT TESTED + X2 FOR COXID 19 SINCE JULY 2020. PT STATES ONLY S/S OF COVID IS LOSS OF TASTE AND SMELL.
*Name of Problem:* Mod-severe rt knee (medial) Posttraumatic arthropathy ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Medical ; *Code:* 1231813011 ; *Contributor System:* PowerChart ; *Last Updated:* 4/4/2017 12:09 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

**Periodontitis (SNOMED CT :69332012 )**

*Name of Problem:* Periodontitis ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Dental ; *Code:* 69332012 ; *Contributor System:* PowerChart ; *Last Updated:* 5/24/2017 09:24 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

**Pre DM (SNOMED CT :259356011 )**

*Name of Problem:* Pre DM ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Medical ; *Code:* 259356011 ; *Contributor System:* PowerChart ; *Last Updated:* 4/4/2017 12:09 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

**Refractive error (SNOMED CT :1229482013 )**

*Name of Problem:* Refractive error ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Medical ; *Code:* 1229482013 ; *Contributor System:* PowerChart ; *Last Updated:* 5/24/2017 09:24 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

Diagnoses(Active)

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998    Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

214

Patient:                **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963  /  57 years    /  Male        CDCR: V25176

| *Therapeutic Notes* |
|---|

## Group Comments

Completed COVID-19 Quarantine rounds. No unexplained, new, or worsening cough or shortness of breath reported or noted. No temperature >100F noted.

## Individual Details For: **SANFORD, ROBERT LIONEL**

**AGE:** 56 Years

                                **DOB:** 11/29/1963

**MRN:** V25176

**Diagnosis:**

                                **Participation:**

**Problem:**

                                **Affect:**

**Goal Addressed:**

                                **Behavior:**

**Goal Status:**

                                **Mood:**

**Individual Duration:**  0 Minutes

                                **Attendance:**  Full session attendance

**Start Time:**  10-Jul-2020 22:44

                                **End Time:**  10-Jul-2020 22:44

## Individual Comments

Document Type:
Document Subject:               Therapeutic/Intervention Note
Service Date/Time:              Therapeutic Intervention/Group Progress Note
Result Status:                  7/9/2020 10:38 PDT
Perform Information:            Auth (Verified)
Sign Information:               DeLuna,Rachel LVN (7/9/2020 10:38 PDT)
Authentication Information:     DeLuna,Rachel LVN (7/9/2020 10:38 PDT)

## Therapeutic Intervention/Group Progress Note
## Therapy Name: **NSG COVID-19 Quarantine Rounding**

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998

                                Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

STATE OF CALIFORNIA
**REFUSAL OF EXAMINATION AND/OR TREATMENT**
CDCR 7225 (Rev. 03/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE 1 OF 1

## REFUSAL OF EXAMINATION AND / OR TREATMENT

| PATIENT NAME *(TYPE OR PRINT CLEARLY)* | CDCR NUMBER | INSTITUTION |
|---|---|---|
| Sanford, Robert | V25176 | CCI |

Having been fully informed of the risks and possible consequences involved in refusal of the examination and/or treatment in the manner and time prescribed for me, I nevertheless refuse to accept such examination and/or treatment. I agree to hold the Department of Corrections and Rehabilitation, the staff of the medical department and the institution free of any responsibility for injury or complications that may result from my refusal of this examination and/or treatment, specifically:

Describe the examination and/or treatment refused as well as the risks and benefit of the intervention:

REFUSED COVID-19 SWAB

Detected 7/18/200

V25178
SANFORD, ROBERT LIONEL          AS/RT
CCI E CHU 2 009 - 009148
18SEP20 0500
29NOV63
20-262-5778A
COVID19-364                         9/18/2020
1.00EA    VCM    Quest Diag

| PATIENT SIGNATURE | DATE 9/18/2020 | PATIENT REFUSES TO SIGN | DATE 9/18/20 |
|---|---|---|---|
| **NAME OF WITNESS (PRINT/TYPE)** Kristle Woods, RN | | **WITNESS** NAME OF WITNESS (PRINT/TYPE) M. Menendez, CNA | |
| WITNESS SIGNATURE Krystle Woods, RN | DATE 9/18/2020 | WITNESS SIGNATURE Minni Menendez | DATE 9/18/20 |

**1. Disability Code:**
- [ ] TABE SCORE ≤ 4
- [ ] DPH  [ ] DPV  [ ] LD
- [ ] DPS  [ ] DNH
- [ ] DNS  [ ] DDP
- [✓] NOT APPLICABLE

**4. Comments:**

**2. Accommodation:**
- [✓] Additional Time
- [ ] Equipment  [ ] SLI
- [ ] Louder  [✓] Slower
- [✓] Basic  [ ] Transcribe
- [ ] Other

**3. Effective Communication:**
- [✓] P/I Asked Questions
- [✓] P/I Summoned Information

Please check one:
- [ ] Not Reached*  [✓] Reached
   *See chrono/notes

CDCR #: V25176
Last Name: Sanford
First Name: Robert          MI:
DOB: 11/29/63

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state law.*



CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

**CCI - California Correctional Institution**
24900 Highway 202
Tehachapi, CA 93581-

**Patient:**      **SANFORD, ROBERT LIONEL**
DOB/Age/Sex:   11/29/1963  57 years      Male
Encounter Date:  6/18/2020
Attending:

CDCR #:      V25176
PID #:        11126329
Referring:

| *Mental Health - Nursing* |
| --- |

No data exists for this section

| *Mental Health Documentation* |
| --- |

Document Type:                    MHMD Progress Note
Document Subject:                 Free Text Note
Service Date/Time:                6/20/2020 16:26 PDT
Result Status:                    Auth (Verified)
Perform Information:              Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT)
Sign Information:                 Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT)
Authentication Information:       Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT)

MHMD notes:

New arrival. GP LOC.

R. MOUSTAFA, MD
Covering Psychiatrist

**Encounter Info:** Patient Name: ROBERT SANFORD,DOB: 11/29/1963,CDCR: V25176,FIN: 1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Document Type:                    MHPC Consult Routine Progress Note
Document Subject:                 7362
Service Date/Time:                7/17/2020 20:42 PDT
Result Status:                    Auth (Verified)
Perform Information:              Montes,Valerie Social Worker (7/17/2020 20:53 PDT)
Sign Information:                 Montes,Valerie Social Worker (7/17/2020 20:53 PDT)
Authentication Information:       Montes,Valerie Social Worker (7/17/2020 20:53 PDT)

**Inmate's Program and Level of Care**
GP, E YARD, CHL, LEVEL 1

**New Issues/Complaints**
 IP was seen in housing unit in dayroom, per COVID-19 regulations IP is currently under isolation. IP was seen for a 7362 he submitted. IP reported having anxiety due to COVID-19. iP was since moved to isolation building. IP shared his concerns about "staying healthy." Ip reported begin upset as he reported he was tested for COVID-19 3 times at previous institution and was negative. He tested positive for COVID-19 at CCI. IP

**Active Consult Orders**
MHPC Consult Routine - Completed
 -- 07/17/20 13:00:00 PDT, 07/14/20 11:26:00 PDT, IP requests to see PC, 7 days, Schedule once within 5 business days, 07/11/20, 07/21/20 23:59:00 PDT

**Subjective/History of Present Illness**
N/A

Report Request ID:   42500485                          Print Date/Time:   6/7/2021 12:12 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

2 3

Patient:                    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male    CDCR: V25176

---

### *Assessment Forms*

*ENCTR Information :* Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN: 1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Shinko, Cynthia SRN - 10/18/2020 11:36 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :*  No
*Temperature Route :*  Temporal
*Temperature Temporal :*  36.4 DegC(Converted to: 97.5 DegF)
*Peripheral Pulse Rate :*  68 bpm
*Respiratory Rate :*  17 br/min
*Systolic/Diastolic BP :*  135 mmHg
*Systolic/Diastolic BP :*  81 mmHg
*Mean Arterial Pressure, Cuff :*  99 mmHg
*SpO2 :*  98 %
*SpO2 Location :*  Right hand
*O2 Therapy :*  Room air
*Pain Present :*  No actual or suspected pain
*Complications of COVID-19 :*  Other: decreased sense of smell

Shinko, Cynthia SRN - 10/18/2020 11:36 PDT

---

**COVID-19 Isolation Surveillance Rounding Entered On:  10/17/2020 15:27 PDT**
**Performed On:  10/17/2020 15:25 PDT by Self, Cherie RN**

**Patient Encounter Information**
*ENCTR Information :* Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN: 1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Self, Cherie RN - 10/17/2020 15:25 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :*  No
*Temperature Route :*  Temporal
*Temperature Temporal :*  36.5 DegC(Converted to: 97.7 DegF)
*Peripheral Pulse Rate :*  91 bpm
*Systolic/Diastolic BP :*  128 mmHg
*Systolic/Diastolic BP :*  90 mmHg
*Mean Arterial Pressure, Cuff :*  103 mmHg
*SpO2 :*  97 %
*SpO2 Location :*  Right hand
*O2 Therapy :*  Room air
*Pain Present :*  No actual or suspected pain
*Are previously documented symptoms worsening :*  No

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                    Print Date/Time:  6/7/2021 12:46 PDT

<u>**WARNING:**</u> **This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.**

28

**CCI - California Correctional Institution**

Patient: **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender: 11/29/1963 / 57 years   /   Male     CDCR: V25176

## Assessment Forms

*Are previously documented symptoms resolving :* No
*Complications of COVID-19 :* None

Adigheji, Omude RN - 10/19/2020 9:34 PDT

### COVID-19 Isolation Surveillance Rounding Entered On: 10/18/2020 16:16 PDT
### Performed On: 10/18/2020 16:15 PDT by Kramer, Deshire RN

**Patient Encounter Information**
*ENCTR Information :* Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN:
1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Kramer, Deshire RN - 10/18/2020 16:15 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :* No
*Temperature Route :* Tympanic
*Temperature Tympanic :* 36.5 DegC(Converted to: 97.7 DegF)
*Peripheral Pulse Rate :* 65 bpm
*Respiratory Rate :* 18 br/min
*Systolic/Diastolic BP :* 143 mmHg (HI)
*Systolic/Diastolic BP :* 92 mmHg (HI)
*Mean Arterial Pressure, Cuff :* 109 mmHg
*SpO2 :* 99 %
*SpO2 Location :* Right hand
*O2 Therapy :* Room air
*Pain Present :* No actual or suspected pain
*Are previously documented symptoms worsening :* No
*Are previously documented symptoms resolving :* Yes
*Complications of COVID-19 :* None

Kramer, Deshire RN - 10/18/2020 16:15 PDT

### COVID-19 Isolation Surveillance Rounding Entered On: 10/18/2020 11:36 PDT
### Performed On: 10/18/2020 11:36 PDT by Shinko, Cynthia SRN

**Patient Encounter Information**

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 42502998     Print Date/Time: 6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

29

EXHIBIT "C"

EXHIBIT "C"

<u>AFFIDAVIT</u>

I, Parvin Tanner due declare under the penalty of perjury under the state of California and its Constitution and laws, and the United States Constitution and its laws, that the following statements of facts are true and correct:

1.) I due declare that I currently hold the position as Seargeant of Arms in the inmate Advisory Counsel here at California Correctional Institution (CCI), my CDCR # is AL1023.

2. I due declare that I am a direct eye-witness to the fact, that during a meeting with I.A.C. Chairman Richard Brousard with the Warden and facility Captain in or about January 2021, we proposed a inmate population concern to the (A) warden and Captain who were both in attendance.

3. I due declare after Chairman Brousard asked about the policy procedure issued by CDCR regarding the positioning of the beds in the dorms here at CCI, the (A) warden B. Cates stated: " We are no longer under any Covid Protocols and the beds positioning of bunks are in compliance"

4. I due declare that it was a fact during the month of January 2021, there were several reported cases of Covid-infected inmates here at CCI and I personally found it premature to say this facility is no longer following Covid-19 protocols and procedures.

As stated above I due declare under the penalty of perjury under the State of California's Constitution and its laws, and under the United States Constitution and its laws, that the foregoing is true and correct.

Date; Executed on September 9th, 2021

Parvin Tanner  CDCR#AL1023, Declarant.

## AFFIDAVIT

I, Richard Brousard CDCR#J98678    , due declare under the penalty of
perjury under · the California Constitution and its laws, and United
States Constitution and its laws that the    following statements are true
and correct.

1. I due declare that I Richard Brussard holds the position at CCI-E
facility in· Tehachapi, CAlifornia, as the Inmate Advisory Counsel
I.A.C. Chairman. E-Facility

2. I declare that as I.A.C. chairman, I am scheduled to meet with the
warden and Captain Facility Administrator's, and give any and all up-
dated policy, inmate concerns, program changes, etc. this meeting is
usually scheduled once a month;

3. I due declare on or about May or June of 2020, there was a mass
outbreak of Covid-19 at CCI.

4. I due declare during one of the meetings, during the mass out-break
of Covid-19, I was able to ask a verbal question to the Warden and
Captain of the facility, related to the positioning of the beds in the
dorms on E-Facility, in accordance to CDCR policy. The only response
I received verbally from the Warden(A) B. Cates"The beds are sufficient
and in line with protocols and there wont be any changes to the bed
positioning at all,"in the"dorms"."

5. I due declare that after that meeting with the Warden and facility
Captain during June of 2020, That I was constantly being asked by the
inmate population as to what protocols are CCI following  if they are
not following CDCR policy with bed positioning, so I also  submitted
my question in writting ... two seperate memorandums to the facility
Captain and warden.

6. I due declare I also sumitted a memorandum to this policy issue regarding the bed positioning to The CEO Health Care Services CCI: Rhonda Litt, where There was no written or verbal response as to why this CDCR Covid-19 protocol was not being adherd to by The Medical Staff or the custody Administrators including the Warden B. cates and his facility Captain and other Administrators under the direct supervision of B. Cates.

7. I due declare that, as I.A.C. Chairman followed up with this same question during a meeting with the Warden and Captain during the month of January 2021, where I was told personally by the Warden" We are no longer under Covid-19 protocol so that issue of bed positioning is not relevant".

I due declare that the facts stated herein this Affidavit are true and correct to the best of my ability, where I declare under the penalty of perjury of the laws and constitution of California, and the laws and Constitution of the United States. There is also supporting facts attached to this Affidavit showing that memorandums where submitted to the Warden, captain, and Rhonda Litt the CMO at CCI.

Date: Executed September 9th, 2021

Richard Brousard, Declarant

# Inmate Advisory Council

SCANNED

RECEIVED
FEB 1 8 2021
BY:

California Correctional Institution
P.O. Box 107, Tehachapi, CA  93581

## MEMORANDUM

DATE: 8 FEBRUARY 2021

TO: Mrs./Ms./Miss. LITT, CEO MEDICAL

SUBJECT: MASKS SUPPLIES VERY LIMITED

The Inmate Advisory Council (I.A.C.) Executive Body has prepared this agenda for you to view before our next Captain's meeting.

Inmates are not receiving masks N95 on a daily basis. We are handed one, maybe two masks every three to six weeks. The Center for Disease Control (CDC) recommends the changing of masks daily. Furthermore, the used masks are identified as a bio-hazard and are being placed in regular trash cans instead of bio-hazard containers specifically designed to secure bio-hazard material wastes.

BROUSARD, RICHARD, J98678
I.A.C. CHAIRMAN
CCI, FACILITY E

CC: B. Cates, Warden CCI
S. Jacob, Ombudsman
D. Spector, Prison Law Office
R. Lesina, Facility E Captain &
I.A.C. Coordinator

34

# *Inmate Advisory Council*

California Correctional Institution
P.O. Box 107, Tehachapi, CA  93581

## MEMORANDUM

DATE:       21 January 2021

TO:          R. LESINA, FACILITY E CAPTAIN, IAC COORDINATOR

SUBJECT:   CAPTAINS AGENDA

The Inmate Advisory Council (I.A.C.) EXECUTIVE Body has prepared this agenda for you to view before our next scheduled meeting.

NEW BUSINESS:

• The P.A. System, particularly the one on top of Van Westin is NOT working. This could be a potential security issue. Inmates are not able to discern instructions from the tower or movement.

• CARES Act Economic Impact Payments: Why are PRISONERS not receiving their stimulus checks? It was Reported that there were over 2300 checks received at the mailroom in November 2020. There is a multitude of inmates that have not received their checks, with only a few receiving. Please confirm when inmates will receive checks from the first stimulus amount of $1,200? It is our understanding that Restitution is not supposed to be deducted from

1 of 6 pages

36

(2)

these checks, Please confirm under federal due process provisions.

○ Inmate Welfare Fund: Please provide the facility with the IWF budget and expenses for the fiscal year.

○ SB542: Please ask the Warden to provide the actual dollar amount assigned in the budget under SB542 for CCI, and provide an expense report reflecting how much of the SB542 funds were appropriated for each department or item expensed.

○ Housing Units Covid-19 Safety Protocols pursuant to CDCR Sacramento Headquarters titled "Placement when positioning Beds 6 feet or more is NOT Possible." Clark Hall Low and Up, Rex Deal, Briggs Hall dormitory setting are not compliant with CDCR Protocols for double bunk positioning and partitions use between double bunks and single bunks, in the face of a COVID-19 Pandemic wherein CCI is experiencing a second outbreak with now 3 inmates dead Facility "C" (Charlie Yard). Please make sure all housing units in dormitory settings are in "strict compliance" with double bunk positioning and partitions separating double bunks and single bunks.

36

# Placement When Positioning Beds 6 feet or more is NOT Possible:

## For single beds:
- Ensure the person's laying position is head to toe.



## For bunkbeds:
- Ensure the person's laying position is head to toe on **each separate bunk bed**, including positioned head to toe on adjacent bunks.



## For rooms with more than 10 beds:
- Include partitions to separate beds to the fullest extent possible.



## IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.



o Medical: Why are inmates not receiving masks KN95 masks on a daily basis? The masks that we do have do not last long. The CDC recommer the changing of masks daily. Furthermore, the used masks are identified as a bio-hazard and are being placed in regular trashcans instead of bio-hazard containers specifically designed to secure bio-hazard material wastes.

o Medical, COVID-19 Shots: Is there an ETA for when COVID-19 vaccinations will be implemented for inmates at CCI?

o COVID-19 Disinfectants: Sani-Guard is the disinfectant to kill Covid-19. However, none of the housing units use Sani-Guard. In fact, the housing units use Cell Block-64 which is an EPA Registered disinfectant, but does not kill COVID-19 according to the label on the product, so the cleaning and disinfecting of common use areas in the inmate housing units are illusory, maintaining a false state of peace of mind.

o Title 15: The Spanish population is wanting a spanish version of Title 15 distributed to all housing units.



GYM: Requesting bunk beds and lockers be removed from Facility "E" Gym so it can be used by the population for it's intended purpose.

• Cullinary and food safety concerns: There is an abundance of fecal matter droppings from the birds in the triangle area. The trees are serving vectors to facilitate bird gathering. The fecal matter is dropping on inmates with high frequency, and these inmate are also Kitchen workers who then hang their jackets, as an example, in the Kitchen area, or, have fecal matter on their shirts and clothing. This is a health hazard.

○ We do not have an adequate amount of Form GA22 "Request for Interview" for the population because they are not available. Please make sure housing units have their ample supple of GA22 Forms. It amounts to a due process issue.

○ Legal Mail letters are consistently not being sealed with tape after they are signed to maintain confidentiality. Please ensure this becomes a policy to be used in front of inmates, ensuring it is sealed, if it is not already policy.

○ CANTEEN: Canteen is phasing out canned goods. The canned goods are being replaced by pouched packaging and the pricing is exorbitantly higher. For Example, Bushy Creek Breast Chicken is now $3.50 for 4.5 ounces, while chicken in a can was $1.15 for 5 ounces. Essentially the price of chicken has more than doubled, while the ounces have actually fallen. Pursuant to our third request to the canteen department, The MAC is requesting a meeting to discuss suggestions on item changes in canteen. (see ATTACHMENT A MEMORANDUM dated June 16, 2020)

○ The I.A.C. Office would like to know the status on the typewriter we have been requesting since August 2020.

Thank you for your time and consideration in advance.

R.BROUSARD, J98678
I.A.C Chairman
Facility E, CCI

Attachment "A" (6)

# Inmate Advisory Council

California Correctional Institution
P.O. Box 107, Tehachapi, CA  93581

## MEMORANDUM

DATE:  June 16, 2020

TO:  S. Sainz, Prison Canteen Manager II

SUBJECT:  Annual Canteen Product Exchange

The Facility "E" I.A.C. Executive Body would like to formally request a meeting with you to discuss and submit our suggestions to exchange items within the canteen. The following items are listed for exchange by catagory and are the most popular requests made by the yard as a whole.

-Microwave Items
  1) Corn Dogs
  2) Cheeseburgers

-Food Items
  1) 12" Flour Tortillas
  2) Tostada Shells (Guerrero)
  3) Chinese Style Sausage

-Condiments
  1) Cajun Hot Sauce
  2) Hoisin Sauce

-Chips
  1) Flaming Hot Fritos
  2) Lays B.B.Q. Chips

-Sodas
  1) Sierra Mist
  2) Sports Drink(s)

-Pastries & Snacks
  1) Variety of Donuts
  2) Red Velvet Cupcakes

-Miscellaneous
  1) Alcohol Free Hand Sanitizer
  2) Liquid Dish Soap
  3) Sports Water Bottle
  4) Loofa (Body Sponge)
  5) Toilet Paper
  6) Colored Pencils
  7) Plastic Hooks
  8) L-Shaped Coaxil Adapter
  9) Sun Glasses
  10) Earbuds (Skull Candy ((JIB))
  11) Headphone Extention 6'

J. Townsend
Lieutanant
I.A.C. Coordinator
Facility "E"

R. Brousard    J98678
I.A.C. Chairman
Facility "E"

P. Smith
I.A.C. Secretary
Facility "E"

MRS/MS/MISS  F. Hernandez

The following Staff members are
Requested to attend:

CMO

C. Renner                     Medical
C. Stephens                   Accounting Dept.
C. Thara                      Mailroom
                              Canteen Manager II

Thank you in advance.

R. Brousard, J98678
I.A.C. Chairman

Warden's First Quarter Inmate Advisory Council Meeting-Facility E

February 18, 2021, 11 a.m.

1) Why are inmates not receiving masks (KN95 masks) on a daily basis? The masks that we do have do not last long. The CDC recommends the changing of masks daily. Furthermore, the used masks are identified as a biohazard and are being place in regular trash cans instead of bio-hazard containers specifically designed to secure bio-hazard material wastes.

- *Recommendation is not a mandate and the department has not issued a mandate on the number that should be issued. KN95s are distributed once a month to each yard to distribute 5 masks per inmate to be used in conjunction with PIA Cloth masks which should be laundered weekly. In the event a mask is torn or soiled, the inmates can make a request of a mask from the Sergeant or facility CO. For specific process, see attached Donning and Doffing Document.*

2) COVID-19 Shots: Is there an ETA for when COVID-19 vaccinations will be implemented for inmates at CCI.

Response:

- Due to the shortage of vaccine in the community and nationally, all allotments received were prioritized as follows (in the appropriate order, bold/italicized indicates populations are either completed OR are current populations served):
  - ○ *High Risk, Naïve (never infected) Populations -this refers to a combination of factors inclusive of age, chronic illnesses, etc. We prioritized COVID risk factors 3+ and greater.*
  - ○ All Critical Workers-any person working directing with people or in close quarters.
  - ○ Naïve with COVID risk factors below 3+
  - ○ Resolved inmates, 90 days out
  - ○ Resolved inmates, less than 90 days out

*Keeping in mind that all vaccinations are contingent upon Inventory and also contains the need to prioritize and incorporate any second doses before first doses are given. It is the intent to vaccinate all inmates desiring the vaccine and will be done so according to availability of inventory and prioritization, at CCI.*

3) COVID-19 Disinfectant Question- Cell Block 64 is adequate and can be used against COVID. See attachment from PIA.

Submitted by: *Rhonda Litt, CEO Health Care Services-CCI*

EXHIBIT "ת"

During the course of your visit your medication list was updated with the most current information.

## Start Taking These Medications:

**montelukast 10 mg Tab (montelukast 10 mg)**
- *For Asthma:* Take 1 tab (Total Dose = 10 mg), by mouth every evening on your own
- Start Date: March 23, 2021
- Take for: 120 day(s)

*Comments: This medication does not work immediately and should not be used when quick relief is needed for acute asthma attacks. Warning: This medication WILL NOT stop an asthma attack once it has started. Call your doctor immediately if you have mental/mood changes like confusion, new/worsening feelsing of sadness/fear, thoughts of suicide, or unusual behavior.*

**MVI w/Minerals Tab (National) (0400-50) (Multiple Vitamins with Minerals)**
- *For Head ache:* Take 1 tab, by mouth once a day on your own
- Start Date: April 06, 2021
- Take for: 60 day(s)

*Comments: Take with food or milk. May discolor urine or feces.*

**naproxen 500 mg Tab (Naprosyn)**
- *For Head ache:* Take 1 tab (Total Dose = 500 mg), by mouth twice a day on your own as needed for headache
- Start Date: April 05, 2021
- Take for: 14 day(s)

*Comments: best taken with food*

**propranolol**
- *For Head ache:* Take 1 tab (Total Dose = 20 mg), by mouth twice a day on your own
- Start Date: April 07, 2021
- Take for: 60 day(s)

*Comments: May cause drowsiness. Alcohol may intensify this effect. Use care when operating dangerous machinery. It is very important that you take or use this exactly as directed. Do not skip doses or discontinue unless directed by your doctor. Some non-prescription drugs may aggravate your condition. Read all labels carefully. If a warning appears, check with your doctor before taking.*

## Continue taking these Medications:

**levalbuterol 45 mcg/puff Aerosol 15 gm (Xopenex HFA 45 mcg/inh inhalation aerosol)**
- *For Asthma:* Take 1 puff (Total Dose = 45 mcg), by mouth every 6 hours on your own as needed for shortness of breath or wheezing
- Start Date: August 25, 2020
- Take for: 360 day(s)

*Comments: Request refill*

**mometasone 100 mcg/inh Aerosol 120 puffs (Asmanex HFA 100 mcg/inh inhalation aerosol)**
- *For Asthma:* Take 1 puff (Total Dose = 100 mcg), by mouth 2 times a day on your own
- Start Date: August 25, 2020
- Take for: 360 day(s)

*Comments: Request refill*

## Completed Medications:

**acetaminophen-codeine 300-30 mg Tab (03701) (Tylenol with Codeine #3 (DENTAL))**
- *For COVID-19,Anemia,Alpha thalassemia trait:* Take 2 tab, by mouth 3 times a day from a nurse as needed for pain and fever
- Start Date: March 11, 2021
- Take for: 5 day(s)

Last Name SANFORD

First Name ROBERT
04/5/2021 09:36:47

CDCR (Encounter Alias) V25176
2 of 10

Patient:
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /    Male

**SANFORD, ROBERT LIONEL**

CDCR: V25176

| *Request for Service* |
|---|

**2nd/3rd Level Review**
*Physician Manager :*  Approved

Baniga, Ulysses CP&S - 4/6/2021 12:08 PDT

*RFS Order Details :*  Requested Services for Pulmonology:Pulmonology Evaluation

Primary Diagnosis:Head ache (R51.9)
Secondary Diagnosis:Generalized body aches (R52)
Tertiary Diagnosis:Cough with hemoptysis (R04.2)
Shortness of breath with exposure to COVID-19 virus (R06.02)
Ordering Provider:Nanditha Kongara
Requested Start Date and Time:04/05/21 0:01:00 PDT
Priority:Medium Priority (15-45 days)
Reason For Request:hx covid , sob post covid , xr wnl, c/o hemoptysis qam. needs evaluation, no wt loss or night sweats
Requested End Date/Time:05/20/21 23:59:00 PDT

Shinko, Cynthia SRN - 4/6/2021 9:55 PDT

**Problem_List**
*Problem_List Reviewed :*  Yes
*Problem :*  Adjustment disorder with mixed disturbance of emotions and conduct: Intended DSM V Dx of Adjustment Disorder
with mixed emotions and conduct. 309.3
Alpha thalassemia trait
AR (allergic rhinitis)
Breast pain in male
Loss of smell: PT TESTED + X 2 SINCE JULY 2020 FOR COVID 19. PT STATES ONLY S/S IS LOSS OF SMELL AND
TASTE.
Loss of taste: PT TESTED + X2 FOR COXID 19 SINCE JULY 2020. PT STATES ONLY S/S OF COVID IS LOSS OF TASTE
AND SMELL.
Mod-severe rt knee (medial) Posttraumatic arthropathy
Periodontitis
Pre DM
Refractive error

Baniga, Ulysses CP&S - 4/6/2021 12:08 PDT

**Offsite/Consultant Note**
*Include Note for Offsite/Consultation Provider :*  Yes
*Thank you for providing care to our patient. :*  In the interest of patient continuity, could you please provide preliminary
instructions for future care while your final consultation/report is being generated?
*Any Medication Changes :*  X_____
X_____,
xx_____
_____

*Requested Diagnostic Imaging and/or Lab Testing :*
X_____,
X_____,
xx_____,
_____

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                          Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

4b

Patient: **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:   11/29/1963 / 57 years   /   Male         CDCR: V25176

## *Assessment Forms*

| | |
|---|---|
| Alpha thalassemia trait | *Date:* 9/9/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Alpha thalassemia trait ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* D56.3 |
| Anemia | *Date:* 9/9/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Anemia ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* D64.9 |
| COVID-19 | *Date:* 3/8/2021 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* COVID-19 ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* U07.1 |
| Encounter for screening laboratory testing for COVID-19 virus | *Date:* 10/19/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Encounter for screening laboratory testing for COVID-19 virus ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z11.59 |
| Generalized body aches | *Date:* 2/16/2021 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Generalized body aches ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R52 |
| Health care maintenance | *Date:* 8/27/2020 ; *Diagnosis Type:* Working ; *Confirmation:* Confirmed ; *Clinical Dx:* Health care maintenance ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z00.00 |
| Immunization due | *Date:* 11/3/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Immunization due ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z23 |
| Loss of smell | *Date:* 12/8/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Loss of smell ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R43.0 |
| Nocturia | *Date:* 9/9/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Nocturia ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R35.1 |

**Assessment**

FTF-Nursing Diagnosis Grid

| NANDA Nursing Diagnosis : | Acute pain |
|---|---|

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998

Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

DOCKETING
RECEIVING

2021 SEP 13  PM 12: 11

ATTORNEY GENERAL
LOS ANGELES

RECEIVED

2021 SEP 13  AM 10: 39

ATTORNEY GENERAL
LOS ANGELES

Robeat L Sanford
V-25172   BH-20L
California Correctional Institution
P.o.Box 167
Tehachapi, CA  93581

U.S. POSTAGE >> PITNE
ZIP 93561  $ 002
02 1W
0001384585 SEP  1

Office of Attorney General
Attn: Colin A. Shaff. Deputy Attorney Gen
300 S. Spring Street. Suite 1702
Los Angeles, CA  90013

This envelope is sent as Unprivileged, Privileged, or Confidential mail. If the contents do not pertain to the addressee or is not of a privileged or confidential nature, please return to:
California Correctional Institution
P.O. Box 1031
Tehachapi, CA 93561
ATT: Mailroom Sergeant



# EXHIBIT C

Robert L. Sanford
V-25176
1  Sierra Conservation Center
   5150 O'Byrnes Ferry Road
2   Jamestown, CA 95327
              In Peopria Persona,

3

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA
9                         COUNTY OF KERN

10  Robert L. Sanford
            Plaintiff,
11                                       Case No. BCV-21- 100477
       vs.
12                                   AMENDED COMPLAINT
                                     1. NEGLIGENCE
                                     2. INTENTIONAL TORT
13  GAVIN NEWSOM, ET AL.,            3. DEPENDENT ADULT ABUSE
                                     4. GROSS NEGLIGENCE
14                                   5. UNLIMITED CIVIL ACTION
15  ─────────────────────────────────────────────────────────
                         TRIAL BY JURY DEMANDED
16        COMPLAINT FOR MONEY DAMAGES AND INJUNCTION RELIEF
                              I. JURISDICTION
17  1. Plaintiff now brings this lawsuit pursuant to Cal. Const. Art. VI, §§ 10,

18  11; and art. I, § 16, sec. 395

19                              II. VENUE

20  2. Section 395, County in which the defendants reside. All defendants are

21  responsible for the injuries sustained in the County of Kern at the California

22  Correctional Institution, where Plaintiff now and then resided.

23                              III.  PARTIES

24  3. Plaintiff Robert L. Sanford, was at all times relevant to this action a

25  prisoner incarcerated at the California Correctional Institution located in

26  Kern County.

27  4. Defendant Gavin Newsom was at all times relevant to this action the Governor

28  of the State of California and was acting under the color of state and federal

1   law. He is responsible by constitution, statute, and by his own executive
2   ordert to ensure the safety and wellbeing of incarcerated inmates including
3   but not limited to Plaintiff here. He is sued in his personal capacity for
4   damages, and in his professional capacity for injunctive relief.
5   5. Defendant: Warden, Brian Cates wasat at all times relevant to this action acti
6   under the color of state and federal law. He is the custodian, having -custody
7   over Plaintiff who isd a deependent adult, whereas, Plaintiff is dependent upon
8   defendant Warden B. Cates for reasonable safety from communicable diseases such
9   as the Covid-19 virus, and to priovide protection from infection and spreading
10  within Plaintiff's housing unit and prison facility, by complying with and
11  implementing housing policies directed by the California Department of
12  Corrections and Rehabilitation. Defendant B. Cates is sued in his professional
13  capacity for injunctive relief and in his personal capacity for damages and
14  equitable relief.
15  Defendant: C. Schyuler, the Associate Warden at CCI, was at all times relevant
16  to this action acting under the color of state and federal law. He is the
17  Associate Warden who is also responsible for the custodian, and having custody
18  over Plaintiff who is a dependent adult, where plaintiff is dependent upon
19  C. Schuyler for reasonable safety from communicable diseases such as Covid-19
20  along with protecting Plaintiff from infection and spreading this disease within
21  Plaintiff's housing unit and prison facility by complying with and implementing
22  housing policies directed by the California Department of Corrections and
23  Rehabilitation. Defendant C. Schuyler is sued in his professional capacity for
24  injunctive relief and in his personal acpacity for damages and equitable relief.
25                      IV. EXHAUSTION OF REMEDIES
26  6.   Plaintiff exhausted all administrative grievances.
27  7.   Plaintiff exhausted Governmental Claims form application timely.
28  8.
                        V. FACTUAL ALLEGATIONS

                                2

1  On or about March 2020, Defendant Gavin Newsom issued an executive order
2  mandating citizens in California to stay at home andpractice  social distancing
3  ofSi SIX FEET APART, while wearing facs masks andwashing hands to mitigate the
4  infection and spreading of the deadly virus Covid-19.

5  9. Plaintiff was transferred from Sierra Conservation Center to California
6  Correctional Institution on June 19, 2020.

7  10. Plaintiff was initially palced in a so called isolation dorm Van Westen
8  Uppper at California Correctional institution, hereinafter CCI, on June 20, 2020,
9  a mass outbreak of Covid-19 began to occur, and inmates in all dorms at CCI
10 were being infected including Van Westen upper, at this time there was a Center
11 for Disease Control, hereinafter CDC order that stated inmates in detention
12 centers were not supposed to be moved in large groups,, and a mandated 14  day
13 quarantine was put in place when new arrival inmates were introduced to new
14 facilities to be housed.

15 11. However, this 14 day quarantine was not the case with Plaintiff, where ,
16 T was told by the third watch officer that T had to move to Clark Hall Low,
17 this was on or about June 28, 2020, well short of the 14 day required quarantine,
18 before I was forced to mix with the infected population, where this Plaintiff
19 voiced his concern to the third Watch Correctional officer, who told him that
20 he was only following orders from the warden Brian Cates, and if T had any
21 complaints, [I] would have to addres my concerns to the warden, about being
22 moved, the correctional officers name T believe is Massterfer or something to
23 that sounding degree, at this time I can only refer to him as[    ].

24 12. B. Cates deliberately ordered Plaintioff,to be housed in a known dangerous
25 condition at CCI- E- facility, where he was absolutely aware of the Couvid-19
26 outbreak that was occurring on his yard, that was infecting inmates by the
27 hundreds, and he was still ordering inmates to be mass moved around to be mixed
28 in with inmates that refused to test and were already infected, in dorms that

1  were severely overcrowded, poor ventilation, not being properly sanitized in
2  accordance to CDC, or CDCR cleaning and disinfectent protocols, along with the
3  fact this warden refused to act with the CDCR policy of installing "Partitions"
4  between the bunk beds in rooms (dorms) with 10 beds or more, knowing this will
5  possibly prevent the spread of Covid-19, for this warden was without excuse
6  regarding the known dangers of Covid19 at CCI, where his Sergeants.
7  13. Would come to each buielding on CCI to asses the status of each building
8  correctional officer assigned to each building's as to their compliance with
9  Covid-19 safety protocols, These Sergeants were also authorized by warden Cates
10 to tour the facility inspecting pill call practices, aswell as custody practices
11 regarding chow feeding of inmates, Sergeants during second watch which included
12 the hours of 6:00 a.m. to 2:00 p.m. was aware of all custody practices and the
13 failures of oustody to implement covid 19 safety protocols in order to prevent
14 the infection and spreading across the facily E', where Plaintiff was housed.
15 14. The chain of command follows as such the Sergeants that are daily inspecters
16 are to report to the facility Capatain, of the facts and conditions of each
17 dorm dormitory housing unit, and what was not in compliance with the Covid-19
18 protocols including but not limited to the policies of CDC and CDCR where
19 "Partitions" and bed positioning of beds with 10 beds or more See Exhibit "A"
20 15. During the Wardens meetings The Captain has to report and notify the
21 warden B. Cates , in what condition and status the dorms are during this mass
22 outbreak of Covid-19, where its no dout that B. Cates was notified to the over
23 crowded conditions, the facts C/O's were not wearing masks, the cleaning policy
24 was not being adherd to with moving mass amounts of inmates from dorm to dorm.
25 16. On or about July 5, 2020, while housed in Clark Hall Low Dorm that was so
26 overcrowded we were like sardines in a can. Plaintiff encountered the Associate
27 Warden C. Schuyler was walking through the unit at Clark Hall Low with another
28 Person I can only identify as Jane DOE, on this day, but Plaintiff did approach

4

1   the associate warden C. Scuyler on this day in Clark low dayroom, where [I]
2   specifiaccly asked him, " Why you and this warden allowwing this ultra hazardous
3   unsafe condition to go on placing inmates here at CCI in a known dangerous
4   condition, along with the fact this dorm is severely overcrowded to the point
5   inmates and dependent adults as such myself, cannot enen move in here without
6   touching in any direction, and there are no partitions betwen the bunks, there
7   in poor ventilation, no disenfectant, no soap dispensers, no training of how to
8   clean according to CDCR and CDC protocols; where at this time the C/O for Clark
9   Hall/low tried to interfere the conversation c/o Edmonds (CHL Officer JULY
10  however, the warden Schuler ., replied, me, and the warden are working on this
11  sit:[uation], there should be something done the next week or so" at this time
12  the C/O escorted Schuyler to other parts of the dorm, and warned me to stop asking
13  questions about the well-being and safety of my life, or I would be shown his
14  type of discipline in the dorm. .`

15  17. On July 10, 2020 all the inmates in Clark Hall low were moved into Rex Deal
16  Dorm that evening between 2:00 p.m and 4:00 p.m count, we were all told we had
17  to immediately pack all our belongings and move to Rex Deal, where they had
18  just moved over a Hundred inmates earlier form this dorm to Davis Hall Dorm,
19  this occurred between 11: a.m and 2:00 p.m. July 10, 2020, there was no Covid
20  19 sanitation or disinfecting of the dorm before forcing Clark Hall inmates to
21  move in-to REX DEAL Dorm, with filth, and debre scattered every where, soiled
22  towels and bankets, sheets still in assigned bed areas, that now Ckark Hall
23  inmates were assigned to, mattresses not sanitized, where they just moved a
24  mass amount of inmates to one dorm to another, as a result of this arbitrary and
25  deliberate act of B. Cates and C. Schuyler, plaintiff, was infected with the
26  Covid-19 virus. where he was unable to smell or taste, he immediately notified
27  nurses Jane Doe 1, and Jane Doe 2, regarding the symptoms, she performed a test
28  for Covid in Rex deal day room on July 11, and on July 12, 2020, I was confirmed

1   positve for having contracted Covid-19 in this known dangerous condition that

2   Warden B, Cates and C. Schuyler failed to act in order to prevent that amounts

3   to cruel and unusual punishment, where they were fully aware of the unsafe

4   and hazardous condition of a un-sanitized dorm along with the mass movement of

5   inmates within the facility was a definate recipe for immenent harm of inmates

6   conteracting Covid-19. See exhibit "B"

7   18. Plaintiff was again injured with being re-infected with Covid-19 whereas,

8   inmates, that were now housed in Clark Hall Upper, were sleeping on the so

9   called Covid Bed, where Plaintiff was assigned to Clark Hall Upper bed (14)

10  a bed that was suppose to remain empty for this alleged 8 man cohort in CHU,

11  Plaintiff, again was infected under the overcrowded conditions and unsanitary,

12  poor ventilation, asbestos, mold, and other hazrdous issues of violations that

13  involved bed positioning along with "partitions" that never were implemented

14  by the warden B. Cates, who was absolutely aware of this condition and the

15  fact he was aware his actions were causing the spreading of Covid-19 at the

16  B-Facility that continued to create a hazrdous work enviornment for Plaintiff,

17  who also worked as a ADA Worker for CCI, where I had to go into the known

18  unsafe enviornment of the Dorms at CCI to help disabled inmates with paper

19  work, in these exceptionally crowded dorms and unsanitized enviornments with

20  poor ventilation, as a result of this situation Plaintiff was found to be

21  positive again for Covid 19 on or about October 2, 2020, Plaintiff brought this

22  matter, to the attention of his supervisor at CCI, who was the cage Officer,

23  on CCI who I reported in the mornings, at CCI Administration building  C/O

24  Bliss, who also toured daily the unsafe dorm conditions, that Plaintiff wsa

25  forced to work in order to be in compliance with his work performance and

26  work incentive program status, inorder to recieve earned credit and work in-

27  centive benefits etc.  "the warden refuses to do patch work due to early closing of prison"

28  19. After being infected the second time Plaintiff is still unable to smell

1  or taste, coughing up blood, body aches, joint pain, shortness of breath,

2  and his health is greatly depreciating due to the effects of the infections

3  of Covid-19 at CCI where they were aware of the known hazrdous conditions,

4  that continue to spread and outbreak at this facility, where the warden  B.

5  Cates and associate Warden C. Schuyler who is a direct eyewitness to the

6  dangerous condition as oulined above.

7  20. The Inmate Advisory Council hereinafter IAC, Chairman Richard Broussard

8  who is a direct eyewitness to the fact that in a Wardens meeting that is held

9  once a month with the Warden and facility Captain, in order to be updated

10  about inmate concerns regarding the facility and policies, this meeting also

11  was attended by a IAC member Sergeant of Arms Parvin Tanner who is another

12  direct eyewitness to the account of B. Cates, admitting in a Wardens meeting,

13  that he was not complying with the Bed Positioning  policy of CDCR, because

14  he felt it was not necessary, although he had multiple outbreaks and spreading

15  of Covid-19 on June 20, 2020, that injured Plaintiff, and againg in October

16  2020, where he continue[d] to act with reckless disregard for the safety and

17  Qellfare of dependent adults in his custodial care, that ultimately injured

18  plaintiff to the point his quality of life has greatly diminished, fromthe

19  affects of the Covid- 19 now called "Long Hauler effect", B. cates was aware

20  of the CDC protocols regarding the movement[s] of inmates  within his facility

21  that placed them at an unreasonable rik of h arm and danger. S

22  21. Richard Brussard and Parvin Tanner, Both wrote sworn affidavits, that

23  give direct and absolute eyewitness to the account that B. Cates was aware

24  of the known danger that existed and failed to act, therfore, allowing plaintif

25  to be subjected to a known dangerous condition that infected him with Covid-19

26  not once but twice.   See Affidavits at Exhibit "C ", also 602 at "D"

27  22. Plaintiff then filed another 602 in 2021, August      , regarding the

28  dangerous work conditions at CCI that led to plaintioff being infected with

7

1  moreover with B. Cates failing to act to this known  dangerous condition that

2  amounts to a known danger  . where it puts great weight on the subsequent facts

3  noting " it is obduracy and wantonness, not inadvertance or error in good faith

4   that characterize the conduct by the Cruel and Unusual punishments Clause.

5  whether that conduct occurs in connection with establishing conditions of con-

6  finement, supplying medical needs, or equipment such as partitions that could

7  have helped prevent the spreading of Covid-19 at east facility CCI, where its

8  the circumstances of this known dangerous  condition have been ongoing and

9  causing the spreading of this deadly disease that has killed hundreds if not

10  thousands of inmates since March 2020, and B. Cates ordered movements within

11  CCI-E- Facility, of mass amounts of inmates during out breaks of this virus

12  to be mixed in with other inmates, ultimately contributing to the spreadingof

13  of this deadly Covid-19, he also contributedto the cause of spreading this virus

14  by ordering plaintintiff to move into a known unsafe dorm on July 10, 2020,

15  Rex-Deal, that was not pre-cleaned or sanitized according to Covid-19  safety

16  protocols  outlined in CDC Guidelines for Detentention Centers and Prisons

17  where they warned that movements would contribute to the sreading, including

18  failing to C lean and disinfect,  (4), Cates, failed to adhere to any of the

19  safety protocols that resulted in plaintiff now suffering injury of contracting

20  Covid19, where he still can't smell, taste, headaches, joint pain, coughing of

21  blood, shortness of breath, now being diagnosed with "Long Haulers Effect"  where

22  plaintiff's suffering is on going the next, week, the next month or year.

23  B, Cates, and C. Schuyler the associate warden at CCI,who personally at CCI

24  informed plaintiff he was at Clark hall low on July 5, 2020, on behalf of Cates

25  in order to inspect the conditions of the known dangerous dorms that where putting

26  inmates at an unreasonable risk of harm and danger, inorder to try and stop the

27  spread of Covid-19 within CCI-East facility, admitting him and Cates where

1   Covidel9, where there was no reason for B. Cates not to follow the guidlines

2   of CDC, and CDCR regarding Bed Positioning and Partitions, Covid-19 cleaning

3   procedures, and training, along with ensuring his officer's follwed masks

4   protocols, for its a fact that the officers are the main vectors who bring and

5   introduce this Covid-19 and its varients into the facility, whereas, inmates

6   are not allowed to leave and come back after being exposed to these visruses

7   and their varients that are constantly being spread within the facilities.

8   25. The fact that B. cates was absolutely aware and had knowledge of the risk

9   that was occurring on his yard as warden now hold him responsible for failing

10  to act To a known dangerours condition that placed Plantiff in a unreasonable

11  risk of harm and imminent death, that has ultimately injured plaintiff where

12  now his quality of life has been greatly diminshed due to the infections of

13  Covid-19, this amended complaint now shows clear and precise detail as to how

14  bbe Warden B. Cates at CCI, along with his associate Warden C. Schuyler who,

15  ]T] Robert L. Sanford CDCR V-25176 a Dependent adult under the custodial care

16  of B, Cates, and C. Schuyler and Kathleen Allison the Secretary of CDCR and,

17  Defendant Gavin Newsom, who is the Governor of California, and the cheif

18  Executive Officer of the Executive Branch of California's government who is

19  in charge of the CDCR who is also an entity under the executive branch of

20  Governmenet, therefore holding the said and named parties herein this civil

21  tort complaint to stand trial before a jury regarding the cruel and unusual

22  punishment plaintiff has been forced to endure , because defendants failed to

23  act to a known dangerous condition.

24  26. Plaintiff now swears under the penalty of perjury that the foregoing facts

25  stated herein are true and correct pursuant to the United States Constitution

26  and its laws, and the California Republic Constitution and its laws, but most

27  importantly too the "osy"High GOD in heaven and His Laws.

28

7

CAUSE OF ACTION 1

2 27. Defendants violated United States Constitution, under the Eighth Amendment
3 and the Fourteenth Amendment, and Cal. Constituution Article. VI, §§ 10, 11;
4 and Art. I, § 16, 17, sec 395

5 28. Whereas, Defendants in this Amended Complaint have acted with gross negligence
6 where they intentionally subjected Plaintiff to a known dangerous enviornment
7 that ultimately caused Plaintiff injury that is ongoing.

8 29. Plaintiff was subjected to a known dangerous condition that defendanys were
9 clearly and absolutely aware of, where due to their gross negligence with failing
10 to act, where they knew  or should have known that plaintiff's pre-existing
11 medical issues where these known dangerous conditions  placed him at an  un-
12 reasonable risk of imminent harm and danger with contracting Covid-19 due  to
13 the inability of CDCR/CCI  to  adequately  social distance inmates in their
14 care  with six feet (6ft) of socialdistance, See Exhibit : "A"8", "C 4(1)"
15 30. Furthermore, because Brian Cates  is the warden of this facility, and his
16 failure to act to a known danferous condition that caused  bodily injury and
17 possible imminent death constitutes a violation  of the United States Constitution
18 Eighth Amendment;  and Fourteenth Amendment, and the Cal. Const. Art. I, § 17
19 " Excessive bail shall not be required, nor excessive fines, nor cruel and un-
20 usual punishments inflicted." Ratified Dec. 15, 1791.
21 Defendant B, Cates failed to take protective measures, by failing to adhere to
22 following Safety protocols in response to Covid-19, where he failed to "enforce
23 mask wearing with staff, He did not enforce safety protocols with wearing gloves
24 with the offocials and staff at CCI; neither did he provide hand sanitizer  in the
25 inmates bathroom at CCI =East Facility, including the fact he refused to comply
26 with the CDC Guidelenes, and CDCDR  own policy with "Bed Positioning " and
27 "partions" between bunks wheee social distancing is not possible; defindants are

1  aware of the known dangerous conditions that continued to exist at this facility
2  that was infecting inmates with Covid-19 at an alarming rate.

3  1. For the fact plaintiff personally noticed C. Schuyler to the known dangers, that
4  obviously existed in the dorm, that put Plaintiff and other inmates at an un-
5  reasonable risk of danger and imminent death, due to the severely overcrowded
6  dorms, that they continued and deliberately mixed in with each other, knowing
7  this was a known contributing factor that was causing the spreading of the Covid
8  19 out breaks, including the fact they were now creating the known dangerous
9  condotion, that resulted in injuring Plaintiff on July 10, 2020, with mass
10 movement, mixing inmates, and un-cleaned or sanitized dorms in accordance to
11 Covid-19 protocols, and Safety Policies, issued by , CDC, CDCR, the Three Panel
12 Judges, (case management hearings) addressing the issues of Covid-19 at institutions
13 under CDCR jurisdiction.  See: Declaration attached Robert L. Sanford.

14 2. This cause of action demonstrates the gross negligence and willful deliberate
15 acts of defendants Cates and Schuyler, with failing to act to a known dangerous
16 condition, that resulted in injury to plaintiff that resulted in pain and suffering
17 the next, week, the next month or year.

18 3. The Second time plaintiff was  injured with contracting Covid-19 was on or
19 about July October, 2, 2020, due to un-safe work conditiohs as outlined in facts
20 there Plaintiff gave notice to his supervisor C/O Bliss during the months of
21 august and september 2020, Where his reply to my concern on mutiple occassions
22 was " The warden is aware of the conditions of the dorms not having safety
23 protocols put in place such as bed positioning and partitions and said, hés not
24 spending dollars on this at this facility, because he is planning on closing this
25 facility ahead of schedule that is June 2022"  This certainly demonstrates that
26 B. Cates placed other matters above, his fiduciary duty to protect and adhere
27 to safety protocols that could protect Plaintiff from known dangerous condition.

CAUSE OF ACTION #TWO

34.

2  Defendants violated Cal. Penal Code. Sec. 368(b) wherein, Defendant[s] having

3  custody over Plaintiff, a dependent adult relationship exist. The practices

4  that warden B. Cates as Defendant here endangered the health and safety of

5  Plaintiff wherein, he permitted a known dangerous condition to exist that

6  was likely to produce great bodily injury or death.

7    Plaintiff now incorporates paragraphs  1 through 26 as though they were

8  fully stated herein.

35.

9  Dependent Adult abuse, relates in statutes and other legal context, where

10 this phrase ordinarily conveys a requirement for actual or constructive know-

11 ledge. Generally constructive knowledge means knowledge that one using reason-

12 able care or diligence should have, and therefore is attributed by law to

13 a given person, and encompasses a variety of mental states, ranging from

14 one who is diliberately indifferent in the face of an unjustifiably hifh

15 risk of harm... or who should know of a dangerous condition, was obviios

16 and because Cates admission he was aware of the known dangerous condition

17 that existed at CCI-E facility, where the existence of constructive knowledge

18 to a known dangerous condition existed and resulted in injuring Plaintiff

19 who is a dependent adult pursuant to Welfare & Institutions Code §15610.30

20 (b) where Cates knew or should have known that plaintiff was at an unreason-

21 able risk of harm and danger, his improper conduct with failing to act to

22 the knwon dangerous condition constitutes gross negligence, when he informed

23 The IAC Chairman R. Broussard this facility was no longer under Covid protocol

24 and the Bed positioning was adequate where he was not going to comply with

25 CDCR policy, or CDC, and the Three Panel Judges recommendations regarding

26 the preventive measures in order to prevent the spreading of Covid within

27 the CCI-E-facility.

36. Furthermore at pill line at approx 7:00a.m. to 12:00p.m., 6:00p.m and 8:00p.m. all buildings are called at the same time during Covid-19 Outbreak at CCI E-Facility. There is no separation of buildings, and the same batch of cups were used, with inmates by their own actions would pick up water cups from the same source and press the same button to activate the water fountain allowing for cross contamination between buildings amongst inmates. The Warden was made aware of this known danger as well by the IAC Chairman Broussard. see Exhibit " B " The Defendant took no action despite being warned. Furthermore, the correctional officers would habitually not wear their masks from March 2020 until ongoing. These officers worked in buildings that Plaintiff was housed in. Because inmates don't normally leave and come back to prison, the vector of Covid-19 contagion is normally conveyed and/or staff. Inmates are truly the victim as the plaintiff is in this case. Paslay v. State Farm General Ins,Co, 248 Cal. App. 639.

Please see also, attached Declaration of Robert L. Sanford.

MEMORANDUM OF POINTS AND AUTHORITIES

37. Here in this amended complaint Robert L. Sanford was and is diagnosed with pre-existing medical issues, Ashma, alpha thalasemia, anemia, where as due to the gross negligence of Defendant[s] Brian Cates(A) warden at CCI, and C. Schuyler associate warden at CCI, where defendants failed to act to a known dangerous condition, where they refused to enact CDCR and CDC protocol for Covid-19, that would have help prevent the Covid-19 outbreaks, and spread-of this known deadly virus that was infecting inmates at CCI, and resulted in injuring Plaintiff, with contracting this COvid Virus, where, he is not able to smell or taste, where defendant[s] herein were aware of the high risk dangers, regarding inmates with pre-existing medical conditions, plaint-iff is now suffering from "Long Haulers Effect" constant headaches, coughing of blood, joint pain.

38. Plaintiff was infected at CCI-E- facility with Covid-19 virus on two seperate occassions, once being found positive for  on July 10, and 11th, when plain-tiff first realized he was having symptoms on or about July 11, 2020, when he was unable to smell or taste, after being forced to move into a known dangerous condition of a un-cleaned or sanitized dorm (Rex Deal), during the height of the outbreak on CCI-E-Facility, see Declaration now attached

CCI Warden B. Cates was certainly aware that cross contaminated areas, could contribute to the spread of Covid-19, especially if the CDC Guidelines for Detention Centers and Prisons, (4) non-disinfection, and sanitization, and mass movement of inmates from dorm to dorm would increase the danger of spreading this deadly disease, whereas, Cates ordered this move to known dangerous condition that placed plaintiff in a unreasonable risk of harm and danger. where plaintiff now suffers, from a diminishing quality of life with not being able to smell, taste, headaches, joint pain, the next, week, the next

14

1   month and year.

2   39. The Warden at this facility was well aware and was on notice to the known

3   dangerous condition, knowing full well there was no possible way to provide

4   adequate social distancing at CCI-E- facility during the months of March

5   2020, through the month of June 2021. Defendant Cates, was aware the policies

6   that were not being adherd, to by him due to his wanting to close the CCI-

7   E facility ahead the June 2022 schedule, whereas, he deliberately ignored

8   the Covid-19 protocols that help prevent the spreading because it required

9   spending of funds, that implemented him to comply with the "bed positioning"

10  and "partitions" due to the fact there was no possible way to create 6ft

11  oof social distancing at E- Facility.

12  40. These conditions are truly unsafe considering the imminent danger of Covid-

13  19and how it spreads, see United States vs. Zukerman 16 Cr. 194 at 2020 U.S.

14  Dist. Lexis 59588 (S.D. N.Y. Apr. 2020).

15  Whereas, Plaintiff has been intentionally subjected to massive circumsatances

16  of overcrowded conditions at CCI, where mass amounts of inmates were already

17  exposed and infected with Covid -19, where Plaintiff had to share the same

18  bathroom, showers, dining areas, sinks , as there is no protection even with

19  the varients of the Covid-19, that is a known danger to inmates with pre-

20  existing medical conditions and issues, where Plaintiff now is suffering

21  from injury with contracting this deadly virus two times, at [ ] due the

22  the same dangerous conditions that CCI-E facility warden B. Cates refused

23  to act and correct in accordance to CDC Guidelines, and CDCR policies, that

24  were issued in compliance with the Three Panel Judge Case management Conf-

25  erence Case No. 4:01-CV-01351-JST, due to Cates failing to act to a known

26  dangerous condition that put Plaintiff at an unreasonable risk of harm and

27  danger, he is now suffering , the next, week, the next month or year.

41.
1  With  B. Cates failing toact t  known dangerous conditions that were allowed
2  to continue up until the closing of E-Yard in September 2021.
3  Whereas, Plaintiff was infected the second time at CCI-E, due ~ the un-safe
4  work conditions that continued to exist at Plaintiffs assigned work  areas,
5  that put plaintiff in danger, where [T] followed the chain of command, and told
6  my immediate supervisor for American Disability Assistants (ADA Workers)
7  where we assist disabled inmates with daily task that they cannot do on there
8  own, this required us ADA workers to enter these known dangerous conditions
9  in the CCI-E facility dorms, that provided no possible social distancing due to
10 the excessive overcrowded conditions,the un-sanitized bed areas, that were less
11 than three feet apart from 3 other inmates that were double bunked. Plaintiff
12 brought these known dangerous conditions to the attention of his Supervisor
13 C/O Bliss on several occassions during the months of August and September 2020,
14 where I was told that: "The warden is aware of the Bed Positioning, and lack of
15 partitions, but has decided he's not going to spend any more money on doing any
16 patch work to this facility because he plans to close this facility ahead of
17 the scheduled closing date of June 2022."  Plaintiff then complained to the
18 I.A.C. Chairman, who was responsible to bringing, these type of problems to the
19 attention of the facility Warden, and his Captain, via memorandum and once a
20 month during the wardens meeting. These known dangerous conditions were brought
21 to the attention of the warden B. Cates in IAC Memorandum in June 2020, January
22 2020, and February 2021, where it addressed the "Bed positioning" and "partititions"
23 "due to the population increase in June 2020, during the outbreak that did
24 contribute to the spreading of this disease,that was leading to a high increase
25 of confrontations between inmates, stress, tension, communicable disease
26 see "Toussaint v. Yockey (9th Cir. 1994), in which the court affirmed a deter-
27 mination  of an eighth amendment violation due to overcrowding when it "endangers

1 violence, tension,and psychiatric problems: i.d. at Toussaint v. Yockey 1492.

2 see also Akao v. Shimoda (1987) 832 F. 2d 119 . See also: Declaration

3 These ultra-hazardous conditions existed in the work place at CCI- E - Facility

4 that ultimately led to Plaintiff being infected with covid-19 a second time

5 where it was detected in October 2020,where plaintiff continues to suffer from

6 this injury, and diminshing qualitty of life with out being able to smell, taste,

7 headaches, joint pain, and coughing of blood, the next, week, the next month or

8 year.   Defendants had previous knowledge of the known dangerous conditions that

9 put plaintiff who was a critical/worker ADA at CCI-E, that was operating a high

10 risk enviornment with the known dangers that Cates, refused to act on, inorder

11 to save money, on his own reason to close the E-facility ahead of the scheduled

12 June 2022 date, issued by the Governor himself. The matter of closing this

13 facility ahead of the June 2022 deadline, was clearly finance related, due to

14 effect it caused on the facility with such an unexpected effect that can only

15 be described, as adversly negative amongst staff and inmates.. His failure to

16 act and adhere to protocols that would require spending were deliberately and

17 specifically motivated to cost and finance, and he delierately ignored his

18 fiduciary Duty to , act reasonably to a known dangerous condition , where a

19 known deadly disease such as Covi-d-19, was constantly outbreaking at E-facility

20 and spreading, where it injured Plaintiff with pain and suffering, the next,

21 week, the next month and year. Where in this case if law did not put official[s]

22 on notice to the known dangers of the enviornments that clearly and obviously

23 existed at CCI- E-- facility dorms CHU-and Rex Deal Dorm, where Plaintiff was

24 deliberately  subjected to a known danger that put him as High Risk, for bein

25 infected with the virus. Saucier v. Katz 533 U.S. 194,201 150 LEd. 2d 272 S. Ct.

26 2151(2001) " The relevant inquiry...is whether, it be clear to reasonable

27 [official] that his conduct was lawful or unlawful in the situation he confronted.

43.

1  Star v. Baca 652 F.3d 1202, 1207 (9the Cir. 1989) " Rather the requisite cauy

2  causal connection is established when the supervisor set[s] in motion a series

3  of acts by others' or knowingly refuses to terminate a series of acts by others

4  which the [supervisor] may also be held liable for his own culpable action or

5  in-actionin the training, supervision or control of his subordinates..."

6  Whereas, in this instant matter the existence of actual injury is indisputable,

7  where CDCR/CCI continues to operate a ultra-hazardous condition, where the

8  doctrine of the ultra hazardous activity provides that one who undertakes an

9  ultra-hazardous activity is liable to every person who is injured a a proximate

10  result of that activity, regardless of the amount of care he uses." see

11  Pierce v. Pacific Gas& Electric Co. (1985) 166 Cal. App. 3d. 69, 95.

44.

12  CCI and B. Cates, C. Schuyler, and Governor Newsom, was at all times aware of this

13  ultra-hazardous conditrion, that ultimately caused plaintiff pain and suffering

14  the next, week, the next month and year. The wanton disregard of the policy and

15  covid-safety protocols, are noted in the staement of facts where, Plaintiff,

16  described the conversation with Associate warden C. Schuyler, who aknowledged

17  he wasthere on behalf of Warden b. cates, and it was obvious to the known

18  dangerous condition, that he and [I] personally observed and agreed upon, was

19  a unreasonable risk of harm and danger, that was contributing to the spread of

20  of the disease instead of preventing it,that caused Plaintiff unecessary pain

21  and suffering the next, week, the next month and/or year.

22

23  //

24

25

26

27

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

CONCLUSION

Plaintiff beleives he has now staed sufficient facts and authorities in the Memorandum of Points and Authorities, in this amended complaint and now prays to this court render relief in favor of this Plaintiff for pain and suffering and damages equitable to the injury Plaintiff has been harmed with the next, week, the next month and/or year.

March 21, 2022.

Respectfully Submitted,

By

Robert L. Sanford, In Propria Persona

# REQUEST FOR RELIEF

WHEREFORE, Robert L. Sanford, now prays for judgement as follows:

A.) Injunctive Relief;

B.) Declaratory Relief;

C.) Geneneral Damages According to proof;

D.) For All Expenses of This Lawsuit;

E.) For Treble Damages Pursuant To Civil Code§3345;

F.) For punitive Damages Pursuant to Civil Code§3294;

G.) For Damages For Dependent Adult abuse:

H.) For Attorney Fees;

I.) For Pre-Judgement Interest Allowable by Law

J.) For Such Other and Further Relief This Court May Deem Proper;

K.) For a Total of : $1,500,000.00

Executed on : March 21, 2022

By: _____

Robert L. Sanford

Amended Civil Tort Complaint

1                  <u>CERTIFICATE OF SERVICE</u>

2     I, Robert L. Sanford deposited a Amended Complaint in the United

3 States Mail at: Sierra Conservation Center, 5150 O'Byrnes Ferry Rd, Jamestown,

4 CA 95327, Pre-Paid Postage to the Following Parties/person[s] listed below.

5 On this   21   day of March 2022.

6

7                                 Robert L. Sanford

8

9

10

·11

12

13

14 Office of the Attorney General

15     Attn: Colin A Shaff
    300 S. Spring Street, Suite 172

16   Los Angeles, CA 90013

17

18

19

20

21

22

23

24

25

26·

27

EXHIBIT "A"

# Placement When Positioning Beds
# 6 feet or more is NOT Possible:

### For single beds:
- Ensure the person's laying position is head to toe.



### For bunkbeds:
- Ensure the person's laying position is head to toe on **each separate bunk bed** including positioned head to toe on adjacent bunks.



### For rooms with more than 10 beds:
- Include partitions to separate beds to the fullest extent possible.



## IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.



Exhibit B

$2$ of

Exhibit "B"

Patient:        **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /   57 years     /    Male        CDCR: V25176

## *Virology Results*

Result Comments
f17:     SARS CoV 2 RNA (COVID19)
      Additional information about COVID-19 can be found
      at the Quest Diagnostics website:
      www.QuestDiagnostics.com/Covid19.
      Lab test performed by:
      Lab Mnemonic: 05D0642827
      QUEST DIAGNOSTICS-WEST HILLS
      8401 FALLBROOK AVENUE
      WEST HILLS, CA 91304-3226
      TAB TOOCHINDA

| Specimen Type | Accession Number | Collected Date/Time | Ordering Provider | Received Date/Time |
|---|---|---|---|---|
| Nasopharyngeal Swab | 20-195-03518 | 7/13/2020 05:00 PDT | Kongara,Nanditha P&S | 7/14/2020 22:57 PDT |

| Procedure | Result | Units | Reference Range | Verified Date/Time | Verified By |
|---|---|---|---|---|---|
| SARS CoV 2 RNA (COVID19) | DETECTED @ f18 | | [NOT DETECTED] | 7/15/2020 18:08 PDT | QUEST CONTRIBUTOR_ SYSTEM |

Result Comments
f18:     SARS CoV 2 RNA (COVID19)

      A Detected result is considered a positive test result
      for COVID-19. This indicates that RNA from SARS-CoV-2
      (formerly 2019-nCoV) was detected, and the patient is
      infected with the virus and presumed to be contagious.
      If requested by public health authority, specimen will
      be sent for additional testing.

      Please review the "Fact Sheets" and FDA authorized
      labeling available for health care providers and
      patients using the following websites:
      https://www.questdiagnostics.com/home/Covid-19/HCP/QuestIVD/fact-
      sheet.html
      https://www.questdiagnostics.com/home/Covid-19/Patients/
      QuestIVD/fact-sheet.html

      This test has been authorized by the FDA under an
      Emergency Use Authorization (EUA) for use by authorized
      laboratories.

      Due to the current public health emergency, Quest

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:   42502998             Print Date/Time:   6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Patient:                **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male        CDCR: V25176

## Assessment Forms

*Any Recent Changes to Medication :*  No
*Compliance with the Medication/Treatment :*  Yes
*Medications Taken Today :*  Yes
*Medication Compliance :*  Medications (4) Active
Scheduled: (3)
+1-montelukast 10 mg Tab  10 mg 1 tab, Oral, qPM-KOP
+mometasone 100 mcg/inh Aerosol 120 puffs  100 mcg 1 puff, Oral, BID-KOP60
hepatitis A-B vaccine (Twinrix) 1 mL Susp-Inj syringe (0815-52)  1 mL, IM, Once
Continuous: (0)
PRN: (1)
+levalbuterol 45 mcg/puff Aerosol 15 gm  45 mcg 1 puff, Oral, q6hr-KOP90

                                                Chisum, Geneva RN - 12/8/2020 11:29 PST
                                                    (As Of: 12/8/2020 13:08:31 PST)

Allergies (Active)
No Known Allergies          *Estimated Onset Date:*  Unspecified ; *Created By:*  Manglicmot,
                            Lina RN; *Reaction Status:*  Active ; *Category:*  Drug ;
                            *Substance:*  No Known Allergies ; *Type:*  Allergy ; *Updated By:*
                            Manglicmot, Lina RN; *Reviewed Date:*  12/8/2020 11:33 PST

HEENT
HEENT Nose Grid

| | |
|---|---|
| *Left Nostril* Signs/Symptoms : | Loss of smell (Comment: POSITIVE FOR COVID 19 6/20 AND 10/2020 [Chisum, Geneva RN - 12/8/2020 11:29 PST] ) |
| *Right Nostril* Signs/Symptoms : | Loss of smell |
| Comment | (Comment: POSITIVE FOR COVID 19 IN JUNE 2020 AND OCT 2020 [Chisum, Geneva RN - 12/8/2020 11:29 PST] ) |
| | Chisum, Geneva RN - 12/8/2020 11:29 PST |

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                    Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

7.1        2C

Case 1:22-cv-01200-JLS-CDB    Document 1    Filed 08/29/22    Page 167 of 380

Patient:    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:   11/29/1963 / 57 years  / Male       CDCR: V25176

| *Assessment Forms* |
|---|

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN:
1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Chisum, Geneva RN - 10/29/2020 12:20 PDT

**Subjective**
*Arrival to Clinic :*  10/29/2020 11:33 PDT
*Mode of Arrival :*  Ambulatory
*Appointment Type :*  Follow-Up

Chisum, Geneva RN - 10/29/2020 12:20 PDT

**7362 Symptom Grid**

| | |
|---|---|
| Chief Complaint : | " I have not gotten 100% of my smell or taste back from testing possitive x2 for Covid 19". |
| Situation of Onset : | Started in July 2020, first time tested + for Covid 19. |
| Complaint Frequency : | Recurrent (Comment: Has had little to none sense of smell and taste. [Chisum, Geneva RN - 10/29/2020 12:20 PDT] ) |
| Chief Complaint Onset : | 10/28/2020 06:30 PDT |
| Comment | (Comment: Pt indeed tested possive for Covid 19--PT IS ANEMIC. [Chisum, Geneva RN - 10/29/2020 12:20 PDT] ) |

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                      Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

7.2        27

Patient:               **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:   11/29/1963 / 57 years   /   Male          CDCR: V25176

---

## *Assessment Forms*

| | |
|---|---|
| Immunization due | *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z00.00
*Date:* 11/3/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Immunization due ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z23 |
| Loss of smell | *Date:* 12/8/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Loss of smell ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R43.0 |
| Nocturia | *Date:* 9/9/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Nocturia ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R35.1 |

**Assessment**
FTF-Nursing Diagnosis Grid

| | |
|---|---|
| *NANDA Nursing Diagnosis :* | Deficient Knowledge |
| *Related To :* | "I still can't smell anything after 2 months" |
| *As Evidenced By :* | 2 positive Covid 19 results in 5 months |
| | Chisum, Geneva RN - 12/8/2020 13:05 PST |

**Plan**
*Patient Presentation: :* Consistent with nursing protocol powerplans

Chisum, Geneva RN - 12/8/2020 13:05 PST

**Follow-up/Disposition**
*Follow-up Required :* No
*Disposition To: :* Return to housing
*Mode of Disposition Via: :* Ambulatory
*Release to Custody :* Yes
*Released Time :* 12/8/2020 10:30 PST

Chisum, Geneva RN - 12/8/2020 13:05 PST

---

**Nursing Face-to-Face / 7362 Entered On: 10/29/2020 12:40 PDT
Performed On: 10/29/2020 12:20 PDT by Chisum, Geneva RN**

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 42502998                    Print Date/Time: 6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

7-3   28

Patient:              **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male        CDCR: V25176

| *Assessment Forms* |
|---|

; *Comments:*

Loss of taste (SNOMED CT :61644018 )

10/29/2020 12:36 - Chisum, Geneva RN
PT TESTED + X 2 SINCE JULY 2020 FOR COVID 19. PT STATES ONLY S/S IS LOSS OF SMELL AND TASTE.
*Name of Problem:*  Loss of taste ; *Recorder:*  Chisum, Geneva RN; *Confirmation:*  Confirmed ; *Classification:*  Nursing ; *Code:*  61644018 ; *Contributor System:*  PowerChart ; *Last Updated:*  10/29/2020 12:37 PDT ; *Life Cycle Date:*  10/29/20 ; *Life Cycle Status:*  Active ; *Vocabulary:*  SNOMED CT
; *Comments:*

Mod-severe rt knee (medial) Posttraumatic arthropathy (SNOMED CT :1231813011 )

10/29/2020 12:37 - Chisum, Geneva RN
PT TESTED + X2 FOR COXID 19 SINCE JULY 2020. PT STATES ONLY S/S OF COVID IS LOSS OF TASTE AND SMELL.
*Name of Problem:*  Mod-severe rt knee (medial) Posttraumatic arthropathy ; *Recorder:*  Javate, Rosana P&S; *Confirmation:*  Confirmed ; *Classification:*  Medical ; *Code:*  1231813011 ; *Contributor System:*  PowerChart ; *Last Updated:*  4/4/2017 12:09 PDT ; *Life Cycle Status:*  Active ; *Responsible Provider:*  Javate, Rosana P&S; *Vocabulary:*  SNOMED CT

Periodontitis (SNOMED CT :69332012 )

*Name of Problem:*  Periodontitis ; *Recorder:*  Javate, Rosana P&S; *Confirmation:*  Confirmed ; *Classification:*  Dental ; *Code:*  69332012 ; *Contributor System:*  PowerChart ; *Last Updated:*  5/24/2017 09:24 PDT ; *Life Cycle Status:*  Active ; *Responsible Provider:*  Javate, Rosana P&S; *Vocabulary:*  SNOMED CT

Pre DM (SNOMED CT :259356011 )

*Name of Problem:*  Pre DM ; *Recorder:*  Javate, Rosana P&S; *Confirmation:*  Confirmed ; *Classification:*  Medical ; *Code:*  259356011 ; *Contributor System:*  PowerChart ; *Last Updated:*  4/4/2017 12:09 PDT ; *Life Cycle Status:*  Active ; *Responsible Provider:*  Javate, Rosana P&S; *Vocabulary:*  SNOMED CT

Refractive error (SNOMED CT :1229482013 )

*Name of Problem:*  Refractive error ; *Recorder:*  Javate, Rosana P&S; *Confirmation:*  Confirmed ; *Classification:*  Medical ; *Code:*  1229482013 ; *Contributor System:*  PowerChart ; *Last Updated:*  5/24/2017 09:24 PDT ; *Life Cycle Status:*  Active ; *Responsible Provider:*  Javate, Rosana P&S; *Vocabulary:*  SNOMED CT

Diagnoses(Active)

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                    Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

24      29

Patient:                    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male           CDCR: V25176

---

| *Therapeutic Notes* |
|---|

## Group Comments

Completed COVID-19 Quarantine rounds. No unexplained, new, or worsening cough or shortness of breath reported or noted. No temperature >100F noted.

---

## Individual Details For: **SANFORD, ROBERT LIONEL**

**AGE:** 56 Years

**DOB:** 11/29/1963

**MRN:** V25176

**Diagnosis:**                              **Participation:**

**Problem:**                                **Affect:**

**Goal Addressed:**                         **Behavior:**

**Goal Status:**                            **Mood:**

**Individual Duration:**  0 Minutes         **Attendance:**  Full session attendance

**Start Time:** 10-Jul-2020 22:44           **End Time:** 10-Jul-2020 22:44

---

## Individual Comments

Document Type:                    Therapeutic/Intervention Note
Document Subject:                 Therapeutic Intervention/Group Progress Note
Service Date/Time:               7/9/2020 10:38 PDT
Result Status:                   Auth (Verified)
Perform Information:             DeLuna,Rachel LVN (7/9/2020 10:38 PDT)
Sign Information:                DeLuna,Rachel LVN (7/9/2020 10:38 PDT)
Authentication Information:

**Therapeutic Intervention/Group Progress Note**

**Therapy Name: NSG COVID-19 Quarantine Rounding**

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                        Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

30

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**REFUSAL OF EXAMINATION AND/OR TREATMENT**

CDCR 7225 (Rev. 03/19)

PAGE 1 OF 1

## REFUSAL OF EXAMINATION AND / OR TREATMENT

| PATIENT NAME (TYPE OR PRINT CLEARLY) | CDCR NUMBER | INSTITUTION |
|---|---|---|
| Sanford, Robert | V25176 | CCI |

Having been fully informed of the risks and possible consequences involved in refusal of the examination and/or treatment in the manner and time prescribed for me, I nevertheless refuse to accept such examination and/or treatment. I agree to hold the Department of Corrections and Rehabilitation, the staff of the medical department and the institution free of any responsibility for injury or complications that may result from my refusal of this examination and/or treatment, specifically:

Describe the examination and/or treatment refused as well as the risks and benefit of the intervention:

REFUSED COVID-19 SWAB

Detested 7/3/2020

```
V25178
SANFORD, ROBERT LIONEL    AS/RT
CCI E CHU 2 050-050145
                          1031 FLOOR 0500
                          22NOV63
20-262-5778A
COVID19-394            9/18/2020
1.25EA    VCU    Quest Help
```

| PATIENT SIGNATURE | DATE | ☞ PATIENT REFUSES TO SIGN | DATE |
|---|---|---|---|
| | 9/18/2020 | | 9/18/20 |

### WITNESS

| NAME OF WITNESS (PRINT/TYPE) | NAME OF WITNESS (PRINT/TYPE) | |
|---|---|---|
| Krystle Woods, RN | M. Jenaro Je | CNVA |
| WITNESS SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
| Krystle Woods, RN | 9/18/2020 | M. Jenaro Je | 9/18/20 |

**1. Disability Code:**
☐ TABE SCORE ≤ 4
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DNH
☐ DNS ☐ DDP
☑ NOT APPLICABLE

**4. Comments:**

**2. Accommodation:**
☑ Additional Time
☐ Equipment ☐ SLI
☐ Louder ☑ Slower
☑ Basic ☐ Transcribe
☐ Other

**3. Effective Communication:**
☑ R/I Asked Questions
☑ R/I Sentenced Information
*Please check one:*
☐ Not Reached* ☑ Reached
*See chrono/notes

CDCR #: V25176
Last Name: Sanford
First Name: Robert          MI:
DOB: 11/29/63

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state law.*



**CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES

CCI - California Correctional Institution
24900 Highway 202
Tehachapi, CA 93581-

| | |
|---|---|
| **Patient:** | **SANFORD, ROBERT LIONEL** |
| DOB/Age/Sex: | 11/29/1963·57 years     Male |
| Encounter Date: | 6/18/2020 |
| Attending: | |

| | |
|---|---|
| CDCR #: | V25176 |
| PID #: | 11126329 |
| Referring: | |

---

## Mental Health - Nursing

No data exists for this section

---

## Mental Health Documentation

| | |
|---|---|
| Document Type: | MHMD Progress Note |
| Document Subject: | Free Text Note |
| Service Date/Time: | 6/20/2020 16:26 PDT |
| Result Status: | Auth (Verified) |
| Perform Information: | Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT) |
| Sign Information: | Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT) |
| Authentication Information: | Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT) |

MHMD notes:

New arrival. GP LOC.

R. MOUSTAFA, MD
Covering Psychiatrist

Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,CDCR: V25176,FIN: 1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

---

| | |
|---|---|
| Document Type: | MHPC Consult Routine Progress Note |
| Document Subject: | 7362 |
| Service Date/Time: | 7/17/2020 20:42 PDT |
| Result Status: | Auth (Verified) |
| Perform Information: | Montes,Valerie Social Worker (7/17/2020 20:53 PDT) |
| Sign Information: | Montes,Valerie Social Worker (7/17/2020 20:53 PDT) |
| Authentication Information: | Montes,Valerie Social Worker (7/17/2020 20:53 PDT) |

**Inmate's Program and Level of Care**
GP, E YARD, CHL, LEVEL 1

**New Issues/Complaints**
IP was seen in housing unit in dayroom, per COVID-19 regulations IP is currently under isolation. IP was seen for a 7362 he submitted. IP reported having anxiety due to COVID-19. IP was since moved to isolation building. IP shared his concerns about "staying healthy." Ip reported begin upset as he reported he was tested for COVID-19 3 times at previous institution and was negative. He tested positive for COVID-19 at CCI. IP

**Active Consult Orders**
MHPC Consult Routine - Completed — 07/17/20 13:00:00 PDT, 07/14/20 11:26:00 PDT, IP requests to see PC, 7 days, Schedule once within 5 business days, 07/11/20, 07/21/20 23:59:00 PDT

**Subjective/History of Present Illness**
N/A

---

| | |
|---|---|
| Report Request ID:  42500485 | Print Date/Time:  6/7/2021 12:12 PDT |

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

72        32

CCI - California Correctional Institution

| | | |
|---|---|---|
| Patient: | **SANFORD, ROBERT LIONEL** | |
| DOB/Age/Birth Gender: | 11/29/1963 / 57 years / Male | CDCR: V25176 |

---

## *Assessment Forms*

*ENCTR Information :*  Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN:
1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Shinko, Cynthia SRN - 10/18/2020 11:36 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :*  No
*Temperature Route :*  Temporal
*Temperature Temporal :* .36.4 DegC(Converted to: 97.5 DegF)
*Peripheral Pulse Rate :*  68 bpm
*Respiratory Rate :*  17 br/min
*Systolic/Diastolic BP :*  135 mmHg
*Systolic/Diastolic BP :*.  81 mmHg
*Mean Arterial Pressure, Cuff :*  99 mmHg
*SpO2 :*  98 %
*SpO2 Location :*  Right hand
*O2 Therapy :*  Room air
*Pain Present :*  No actual or suspected pain
*Complications of COVID-19 :*  Other: decreased sense of smell

Shinko, Cynthia SRN - 10/18/2020 11:36 PDT

---

**COVID-19 Isolation Surveillance Rounding Entered On: 10/17/2020 15:27 PDT
Performed On: 10/17/2020 15:25 PDT by Self, Cherie RN**

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN:
1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Self, Cherie RN - 10/17/2020 15:25 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :*  No
*Temperature Route :*  Temporal
*Temperature Temporal :*  36.5 DegC(Converted to: 97.7 DegF)
*Peripheral Pulse Rate :*  91 bpm
*Systolic/Diastolic BP :*  128 mmHg
*Systolic/Diastolic BP :*  90 mmHg
*Mean Arterial Pressure, Cuff :*  103 mmHg
*SpO2 :*  97 %
*SpO2 Location :*  Right hand
*O2 Therapy :*  Room air
*Pain Present :*  No actual or suspected pain
*Are previously documented symptoms worsening :*  No

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                          Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

EXHIBIT "C"

21   34

AFFIDAVIT

I, Parvin Tanner due declare under the penalty of perjury under the state of California and its Constitution and laws, and the United States Constitution and its laws, that the following statements of facts are true and correct:

1.) I due declare that I currently hold the position as Seargeant of Arms in the inmate Advisory Counsel here at California Correctional Institution (CCI), my CDCR # is AL1023.

2. I due declare that I am a direct eye-witness to the fact, that during a meeting with I.A.C. Chairman Richard Brousard with the Warden and facility Captain in or about January 2021, we proposed a inmate population concern to the (A) warden and Captain who were both in attendance.

3. I due declare after Chairman Brousard asked about the policy procedure issued by CDCR regarding the positioning of the beds in the dorms here at CCI, the (A) warden B. Cates stated: " We are no longer under any Covid Protocols and the beds positioning of bunks are in compliance"

4. I due declare that it was a fact during the month of January 2021, there were several reported cases of Covid-infected inmates here at CCI and I personally found it premature to say this facility is no longer following Covid-19 protocols and procedures.

As stated above I due declare under the penalty of perjury under the State of California's Constitution and its laws, and under the United States Constitution and its laws, that the foregoing is true and correct.

Date; Executed on September 9th, 2021

_____    _____
                                       Parvin Tanner  CDCR#AL1023, Declarant.

## AFFIDAVIT

I, Richard Brousard CDCR#J98678    , due declare under the penalty of
perjury under · the California Constitution and its laws, and United
States Constitution and its laws that the   following statements are true
and correct.

1. I due declare that I Richard Brussard holds the position at CCI-E
facility in · Tehachapi, CAlifornia, as the Inmate Advisory Counsel
I.A.C. Chairman. E-Facility

2. I declare that as I.A.C. chairman, I am scheduled to meet with the
warden and Captain Facility Administrator's, and give any and all up-
dated policy, inmate concerns, program changes, etc. this meeting is
usually scheduled once a month;

3. I due declare on or about May or June of 2020, there was a mass
outbreak of Covid-19 at CCI.

4. I due declare during one of the meetings, during the mass out-break
of Covid-19, I was able to ask a verbal question to the Warden and
Captain of the facility, related to the positioning of the beds in the
dorms on E-Facility, in accordance to CDCR policy. The only response
I received verbally from the Warden(^) B. Cates"The beds are sufficient
and in line with protocols and there wont be any changes to the bed
positioning at all,"in the dorms"."

5. I due declare that after that meeting with the Warden and facility
Captain during June of 2020, That I was constantly being asked by the
inmate population as to what protocols are CCI following  if they are
not following CDCR policy with bed positioning, so I also  submitted
my question in writting .. two seperate memorandums to the facility
Captain and warden.

6. I due declare I also sumitted a memorandum to this policy issue regarding the bed positioning to The GEO Health Care Services CCI: Rhonda Litt, where There was no written or verbal response as to why this CDCR Covid-19 protocol was not being adherd to by The Medical Staff or the custody Administrators including the Warden B. cates and his facility Captain and other Administrators under the direct supervision of B. Cates.

7. I due declare that, as I.A.C. Chairman followed up with this same question during a meeting with the Warden and Captain during the month of January 2021, where I was told personally by the Warden" We aee no longer under Covid-19 protocol so that issue of bed positioning is not relevant".

I due declare that the facts stated herein this Affidavit are true and correct to the best of my ability, where I declare under the penalty of perjury of the laws and constitution of California, and the laws and Constitution of the United States. There is also supporting facts attached to this Affidavit showing that memorandums where submitted to the Warden, captain, and Rhonda Litt the CMO at CCI.

Date: Executed September 9th, 2021

_____
Richard Brousard,   Declarant

74   37

# *Inmate Advisory Council*

RECEIVED
FEB 18 2021
BY:

SCANNED

California Correctional Institution
P.O. Box 107, Tehachapi, CA 93581

## MEMORANDUM

DATE: 8 FEBRUARY 2021

TO: Mrs./Ms./Miss. LITT, CEO MEDICAL

SUBJECT: MASKS SUPPLIES VERY LIMITED

The Inmate Advisory Council (I.A.C.) Executive Body has prepared this agenda for you to view before our next Captain's meeting.

Inmates are not receiving masks N95 on a daily basis. We are handed one, maybe two masks every three to six weeks. The Center for Disease Control (CDC) recommends the changing of masks daily. Furthermore, the used masks are identified as a bio-hazard and are being placed in regular trash cans instead of bio-hazard containers specifically designed to secure bio-hazard material wastes.

BROUSARD, RICHARD, J9867B
I.A.C. CHAIRMAN
CCI, FACILITY E

CC: B. Cates, Warden CCI
S. Jacob, Ombudsman
D. Specter, Prison Law Office
R. Lesina, Facility E Captain &
        I.A.C. Coordinator

28        38

# Inmate Advisory Council

California Correctional Institution
P.O. Box 107, Tehachapi, CA  93581

## MEMORANDUM

DATE:    21 January 2021

TO:    R. LESINA, FACILITY E CAPTAIN, IAC COORDINATOR

SUBJECT:    CAPTAINS AGENDA

The Inmate Advisory Council (I.A.C.) EXECUTIVE Body has prepared this agenda for you to view before our next scheduled meeting.

NEW BUSINESS:

o The P.A. System, particularly the one on top of Von Westin is not working. This could be a potential security issue. Inmates are not able to discern instructions from the tower or movement.

o CARES Act Economic Impact Payments: Why are PRISONERS not receiving their stimulus checks? It was Reported that there were over 2300 checks received at the Mailroom in November 2020. There is a multitude of inmates that have not received their checks, with only a few receiving. Please confirm when inmates will receive checks from the first stimulus amount of $1,200? It is our understanding that Restitution is not supposed to be deducted from

1 of 6 pages

(a)

these checks, please confirm under federal due process provisions.

Inmate Welfare Fund: Please provide the facility with the IWF budget and expenses for the fiscal year.

SB542: Please ask the Warden to provide the actual dollar amount assigned in the budget under SB542 for CCI, and provide an expense report reflecting how much of the SB542 funds were appropriated for each department or item expensed.

Housing Units Covid-19 Safety Protocols pursuant to CDCR Sacramento Headquarters titled "Placement when Positioning Beds 6 feet or more is NOT Possible." Clark Hall Low and Up, Rex Deal, Briggs Hall dormitory setting are not compliant with CDCR Protocols for double bunk positioning and partitions use between double bunks and single bunks, in the face of a COVID-19 Pandemic wherein CCI is experiencing a second outbreak with now 3 inmates dead Facility "C" (Charlie Yard). Please make sure all housing units in dormitory settings are in "strict compliance" with double bunk positioning and partitions separating double bunks and single bunks.

27- 39

# Placement When Positioning Beds 6 feet or more is NOT Possible:

## For single beds:

- Ensure the person's laying position is head to toe.



## For bunkbeds:

- Ensure the person's laying position is head to toe on **each separate bunk bed**, including positioned head to toe on adjacent bunks.

 

## For rooms with more than 10 beds:

- Include partitions to separate beds to the fullest extent possible.



### IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.



Medical: Why are inmates not receiving masks KN95 masks on a daily basis? The masks that we do have do not last long. The CDC recommend the changing of masks daily. Furthermore, the used masks are identified as a bio-hazard and are being placed in Regular trashcans instead of bio-hazard containers specifically designed to secure bio-hazard material wastes.

Medical, COVID-19 Shots: Is there an ETA for when COVID-19 vaccinations will be implemented for inmates at CCI?

COVID-19 ① Disinfectants: Sani-Guard is the disinfectant to kill COVID-19. However, none of the housing units use Sani-Guard. In fact, the housing units use Cell Block-64 which is an EPA Registered disinfectant, but does not kill COVID-19 according to the label on the product, so the cleaning and disinfecting of common use areas in the inmate housing units are illusory, maintaining a false state of peace of mind.

Title 15: The Spanish population is wanting a spanish version of Title 15 distributed to all housing units.

GYM: Requesting bunk beds and lockers be removed from Facility "E" Gym so it can be used by the population for it's intended purpose.

○ Cullinary and food safety concerns: There is an abundance of fecal matter droppings from the birds in the triangle area. The trees are serving vectors to facilitate bird gathering. The fecal matter is dropping on inmates with high frequency, and these inmate are also kitchen workers who then hang their jackets, as an example, in the kitchen area, or, have fecal matter on their shirts and clothing, This is a health hazard.

○ We do not have an adequate amount of Form GA22 "Request for Interview" for the population because they are not available. Please make sure housing units have their ample supple of GA22 Forms. It amounts to a due process issue.

○ Legal Mail letters are consistently not being sealed with tape after they are signed to maintain confidentiality. Please ensure this becomes a policy to be used in front of inmates, ensuring it is sealed, if it is not already policy.

6, 42

CANTEEN: Canteen is phasing out canned goods. The canned goods are being replaced by pouched packaging and the pricing is exorbitantly higher. For example, Bushy Creek Breast Chicken is now $3.50 for 4,5 ounces, while chicken in a can was $1.15 for 5 ounces. Essentially the price of chicken has more than doubled, while the ounces have actually fallen. Pursuant to our third request to the canteen department, The MAC is requesting a meeting to discuss suggestions on item changes in canteen. (see ATTACHMENT A MEMORANDUM dated June 16, 2020)

The I.A.C. Office would like to know the status on the typewriter we have been requesting since August 2020.

Thank you for your time and consideration in advance.

R. BROUSARD, J98678
I.A.C. Chairman
Facility E, CCI

# Inmate Advisory Council

California Correctional Institution
P.O. Box 107, Tehachapi, CA  93581

## MEMORANDUM

DATE:     June 16, 2020

TO:       S. Sainz, Prison Canteen Manager II

SUBJECT:  Annual Canteen Product Exchange

The Facility "E" I.A.C. Executive Body would like to formally request a meeting with you to discuss and submit our suggestions to exchange items within the canteen. The following items are listed for exchange by catagory and are the most popular requests made by the yard as a whole.

-Microwave Items
  1) Corn Dogs
  2) Cheeseburgers

-Food Items
  1) 12" Flour Tortillas
  2) Tostada Shells (Guerrero)
  3) Chinese Style Sausage

-Condiments
  1) Cajun Hot Sauce
  2) Hoisin Sauce

-Chips
  1) Flaming Hot Fritos
  2) Lays B.B.Q. Chips

-Sodas
  1) Sierra Mist
  2) Sports Drink(s)

-Pastries & Snacks
  1) Variety of Donuts
  2) Red Velvet Cupcakes

-Miscellaneous
  1) Alcohol Free Hand Sanitizer
  2) Liquid Dish Soap
  3) Sports Water Bottle
  4) Loofa (Body Sponge)
  5) Toilet Paper
  6) Colored Pencils
  7) Plastic Hooks
  8) L-Shaped Coaxil Adapter
  9) Sun Glasses
  10) Earbuds (Skull Candy ((JIB))
  11) Headphone Extention 6'


J. Townsend
Lieutanant
I.A.C. Coordinator
Facility "E"


R. Brousard   J98678
I.A.C. Chairman
Facility "E"


P. Smith
I.A.C. Secretary
Facility "E"

44

Mrs/Ms/Miss  F. Hernandez

The following Staff members are
Requested to attend:

CMO                    Medical
C. Renner              Accounting Dept.
C. Stephens            Mailroom
C. Thara               Canteen Manager II

Thank you in advance.

R. Broussard, J98678
I.A.C. Chairman

45

Warden's First Quarter Inmate Advisory Council Meeting-Facility E

February 18, 2021, 11 a.m.

1) Why are inmates not receiving masks (KN95 masks) on a daily basis? The masks that we do have do not last long. The CDC recommends the changing of masks daily. Furthermore, the used masks are identified as a biohazard and are being place in regular trash cans instead of bio-hazard containers specifically designed to secure bio-hazard material wastes.

- *Recommendation is not a mandate and the department has not issued a mandate on the number that should be issued. KN95s are distributed once a month to each yard to distribute 5 masks per inmate to be used in conjunction with PIA Cloth masks which should be laundered weekly. In the event a mask is torn or soiled, the inmates can make a request of a mask from the Sergeant or facility CO. For specific process, see attached Donning and Doffing Document.*

2) COVID-19 Shots: Is there an ETA for when COVID-19 vaccinations will be implemented for inmates at CCI.

Response:

- Due to the shortage of vaccine in the community and nationally, all allotments received were prioritized as follows (in the appropriate order, bold/italicized indicates populations are either completed OR are current populations served):
    - *High Risk, Naïve (never infected) Populations -this refers to a combination of factors inclusive of age, chronic illnesses, etc. We prioritized COVID risk factors 3+ and greater.*
    - *All Critical Workers-any person working directing with people or in close quarters.*
    - *Naïve with COVID risk factors below 3+*
    - Resolved inmates, 90 days out
    - Resolved inmates, less than 90 days out

*Keeping in mind that all vaccinations are contingent upon inventory and also contains the need to prioritize and incorporate any second doses before first doses are given. It is the intent to vaccinate all inmates desiring the vaccine and will be done so according to availability of inventory and prioritization, at CCI.*

3) COVID-19 Disinfectant Question- Cell Block 64 is adequate and can be used against COVID. See attachment from PIA.

*Submitted by: Rhonda Litt, CEO Health Care Services-CCI*

FD? 46

Exhibit "D"

47

Exhibit "D"

# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institutional Level Rejection Notice

**Date:**    AUG 2 4 2021

**To:**    SANFORD, ROBERT (V25176)
# E BH 1000020L
California Correctional Institution
P. O. Box 1031
Tehachapi, CA 93581

**Tracking #:**    CCI HC 21000699

Your health care grievance submitted for institutional level review does not comply with health care grievance procedures established in California Code of Regulations, Title 15, Chapter 2, Subchapter 2, Article 5, and is rejected for the following reason(s):

**Not Health Care Jurisdiction**: California Code of Regulations, Title 15, Section 3999.226(a)(4) states, "The grievant shall not submit a health care grievance for issues outside the health care jurisdiction."

Your concerns regarding [Workman's Compensation due to COVID] should be addressed through the appropriate channels or explain why you believe this issue is within the health care jurisdiction.

Take the necessary corrective action provided in this notice, and resubmit the health care grievance to the Health Care Grievance Office where you are housed within 30 calendar days.

- Per Sgt. – this is custody related issue.  Sent to custody for processing.

Health Care Grievance Office Representative
California Correctional Institution

Note: Permanent health care grievance document.  Do not remove from the health care grievance package.
CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

| STAFF USE ONLY | Expedited? ☐ Yes ☒ No | Tracking #: CCHC 2700006099 |
|---|---|---|

J. Burgos RN

_Staff Name and Title (Print)_      Signature Jann B A RN     Date 8-24-21

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): Sanford, Robert | CDCR #: V25176 | Unit/Cell #: BH·20L |
|---|---|---|

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

SEE ATTACHED
CDC-1824/602

| Supporting Documents Attached. Refer to CCR 3999.227 ☐ Yes ☐ No | | |
|---|---|---|
| Grievant Signature: | Date Submitted: 8·20·21 | |

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

**SECTION B:** HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only    Is a CDCR 602 HC A attached? ☒ Yes   ☐ No

This grievance has been:

☒ Rejected (See attached letter for instruction): Date: **AUG 24 2021**   Date: _____

☐ Withdrawn (see section E)

☐ Accepted    Assigned To: _____   Title: _____   Date Assigned: _____   Date Due: 10·27·21

Interview Conducted? ☐ Yes ☐ No   Date of Interview: _____   Interview Location: _____

Interviewer Name and Title (print): _____   Signature: _____   Date: _____

Reviewing Authority
Name and Title (print): _____   Signature: _____   Date: _____

| Disposition: See attached letter | ☐ Intervention | ☐ No Intervention |
|---|---|---|

HCGO Use Only: Date closed and mailed/delivered to grievant: **AUG 24 2021**

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

RECEIVED   REJECTED
CCI    CCI
AUG 24 2021   AUG 24 2021   STAFF USE ONLY
HCGO    HCGO

4. Comments:

49

STATE OF CALIFORNIA                                               DEPARTMENT OF CORRECTIONS AND REHABILITATION
**HEALTH CARE GRIEVANCE**                                                                                    Page 2 of 2
CDCR 602 HC (Rev. 10/18)                                          Tracking #: (01 HC 21000 1079)

| SECTION C: | Health Care Grievance Appeal. If you are dissatisfied with the Institutional Level Grievance Response, explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758. |
|---|---|

Grievant Signature:                                           Date Submitted:

| SECTION D: | HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☐ Yes ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction):    Date: _____    Date: _____

☐ Withdrawn (see section E)    ☐ Accepted

☐ Amendment    Date: _____

Interview Conducted?    ☐ Yes  ☐ No    Date of Interview: _____    Interview Location: _____

Interviewer Name and Title (print): _____    Signature: _____    Date: _____

| Disposition: See attached letter    ☐ Intervention    ☐ No Intervention |
|---|

*This decision exhausts your administrative remedies.*

HQ Use Only: Date closed and mailed/delivered to grievant:

| SECTION E: | Grievant requests to WITHDRAW health care grievance: I request that this health care grievance be withdrawn from further review. Reason: |
|---|---|

Grievant Signature:                                           Date Submitted:

Staff Name and Title (Print):                    Signature:                    Date:

# S T A F F   U S E   O N L Y

Distribution: Original - Returned to grievant after completed; Scanned Copy - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

56

STATE OF CALIFORNIA                                                                        DEPARTMENT OF CORRECTIONS AND REHABILITATION
HEALTH CARE GRIEVANCE ATTACHMENT                                                                                    Page 1 of 2
CDCR 602 HC A (10/18)

STAFF USE ONLY

Tracking #: CEI HC 210001099

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| Sanford, Robert L. | V-25176 | BH-20L |

SECTION A: Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

I was diagnosed with Covid-19 on July 13, 2020 here at facility E- CCI, after being moved in a mass movement on July 10, 2020 from dorm Clark Hall low to Rex Deal dorm on facility E, after being ordered to move from the direct order of Brian Cates the Warden at CCI, the following morning I was unable to smell or taste, and immediatly reported symptoms to the CCI nursing staff on 7/11/2020 on 7/13/2020 the virus was detected. After being assigned to ADA Position # ADI.001.001 on August 1, 2020, I was authorized to work , however the conditions that subjected me to being infected with Covid-19 was not adherd to by B. Cates or his staff as to the dangerous living conditions within the dorm settings and enviornment where there is no available social distancing as a matter of fact, and my employer CDCR/via CCI has allowed a known dangerous condition to exist within the living conditions that I am forced to work in that absolutely maintains de facto zero social distancing policies in the housing units I work in where I take care of disabled inmates. After voicing my concerns for theses dangerous conditions relating them in 602's and letters to Cates, and from being infected with Covid-19 I contracted Covid-19 a second time at CCI, while working as a resident ADA Worker, and even after being diagnosed for the Covid-19 Virus, while employed I was not given my workman's Compensation Claim Form, for the injury that I am now sustaining ongoing. Further more, the dangerous living conditions continue in my work enviornment where I reside in Briggs Hall and given previous complaints I have filed, the Warden B. Cates has continued to permit or willfully has allowed my health to be endangered all the more with Delta varient of the Covid -19 virus now finding its way into B-yard here at CCI, and the recent Covid-19 infection just weeks ago with a inmate testing positive for Covid -19 in Van Westen Builiding on facility E I know suspect that I will contract the Covid-19 virus for a third time while working as a ADA worker because the residents' living enviornment remains with no social distancing whatso- ever , and for the fact this CCI institution does not comply with the housing units bed positioning policies set forth in the EXHIBIT Attached to this appeal. My health is endangered

Grievant Signature: Rc:                                        Date Submitted: August -20-2021

SECTION B: Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

Name and Title: _____   Signature: _____   Date : _____

RECEIVED
CCI
AUG 24 2021
HCGO

REJECTED
CCI
AUG 24 2021
HCGO

STAFF USE ONLY

STATE OF CALIFORNIA    Case 1:22-cv-01100-KES-CDB    Document 1    Filed 08/29/22    DEPARTMENT OF CORRECTIONS AND REHABILITATION
HEALTH CARE GRIEVANCE ATTACHMENT                                                                                          Page 2 of 2
CDCR 602 HC A (10/18)

Tracking #: HC 2000699

| SECTION C: | Continuation of CDCR 602 HC, Health Care Grievance Appeal, Section C only (Dissatisfied with Health Care Grievance Response): |
|---|---|

Grievant Signature: _____    Date Submitted: _____

| SECTION D: | Staff Use Only: Grievants do not write in this area. Grievance Appeal Interview Clarification. Document issue(s) clarified during interview (if necessary at HQ Level). |
|---|---|

Name and Title: _____    Signature: _____    Date : _____

# STAFF USE ONLY

Distribution: Original - Returned to grievant after completed, Scanned Copy - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

51

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
**HEALTH CARE GRIEVANCE ATTACHMENT**                                         Page 1 of 2
CDCR 602 HC A (10/18)

| STAFF USE ONLY |
| --- |
| Tracking #: CA HC 21000699 |

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
| --- | --- | --- |
| Sanford, Robert  L. | V-25176 | BH-20L |

**SECTION A** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

AS a ADA worker for the department having to assist disabled inmates with medical conditions I as well ; as the residents who live in my work enviornment are dependant adults protected as a special class by Cal. Penal Code Section 368(b) by operation of law under civil action You CCI and the Medical Department have been given NOTICE I am also a dependant adult, living and working in a dangerous living conditions, with my health being endangered,as I have not regained smell and taste since , July of 2020, and now the respiratory specialist has now deemed the symptoms I having of constant headaches, shortness of breath, fatigue, not being able to sit or stand for long periods of time , joint pains, coughing up blood clots, has all been contributed to the infections of the Covid =19 in what is now being called the "Long Haulers Effect" , with the continous endangering of inmates here at CCI which is permitted or willfully allowed , and until recent discovery I was made aware I could apply for workmans Comp due to the injury I have sustained while working, CCI and its staff fail to train supervisors of this fact, and now that I still suffer from these conditions, I have no other remedy to bring these facts to light other than this document which now serves a  an official Notice that custodians off CCI are permitting  dangerous conditions that endanger the health of residents ADA dependants.

Grievant Signature: _Robert Sanford_        Date Submitted: _August  20, 2021_

**SECTION B** Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

Name and Title: _____        Signature: _____        Date : _____

RECEIVED
CCI
AUG 2 4 2021
HCGO

REJECTED
CCI
AUG 2 4 2021
HCGO

STAFF USE ONLY

55

HEALTH CARE GRIEVANCE ATTACHMENT
CDCR 602 HC A (10/18)

Tracking #: HC 21000699

| SECTION C: | Continuation of CDCR 602 HC, Health Care Grievance Appeal, Section C only (Dissatisfied with Health Care Grievance Response): |
|---|---|

Grievant Signature: _____     Date Submitted: _____

| SECTION D: | Staff Use Only: Grievants do not write in this area. Grievance Appeal Interview Clarification. Document issue(s) clarified during interview (if necessary at HQ Level). |
|---|---|

Name and Title: _____     Signature: _____     Date : _____

## STAFF USE ONLY

Distribution: Original - Returned to grievant after completed, Scanned Copy - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

54

# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institutional Level Response

**Closing Date:**  SEP 1 4 2020

**To:**    SANFORD, ROBERT (V25176)
E CHU 2000118L
California Correctional Institution
P. O. Box 1031
Tehachapi, CA 93581

**Tracking #:**  CCI HC 20000476

## RULES AND REGULATIONS
The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | Description |
|---|---|
| Issue:    Non-Medical/Custody ( Housing ) | You state you feel dorm settings here at CCI are overcrowded and social distancing for COVID-19 is not being followed which puts you at risk for contracting the virus. |

## INTERVIEW
Pursuant to California Code of Regulations, Title 15, Section 3999.228(f)(1), an interview was not conducted as you did not request one by initialing the appropriate box on the CDCR 602 HC, Health Care Grievance.

## INSTITUTIONAL LEVEL DISPOSITION

[X] No intervention.    [ ] Intervention.

## BASIS FOR INSTITUTIONAL LEVEL DISPOSITION
Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:
- CCI is following all COVID-19 pandemic protocols put into place by Headquarters in Sacramento. You tested positive for COVID-19 with cough and headache for 1 day, however, no additional symptoms were documented in EHRS.

The California Department of Corrections and Rehabilitation and California Correctional Health Care Services have protocols in place that follow recommendations for quarantines set forth by the California Department of Public Health and the Centers for Disease Control and Prevention. Any patient who shows symptoms of COVID-19 will be tested for COVID-19 as appropriate.

Note 1: The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3: Permanent health care grievance document. Do not remove from the health care grievance package.



**HEALTH CARE SERVICES**





# Placement When Positioning Beds 6 feet or more is NOT Possible

**For single beds:**
- Ensure the person's laying position is head to toe.




**For bunkbeds:**
- Ensure the person's laying position is head to toe on **each separate bunk bed**, including positioned head to toe on adjacent bunks.




**For rooms with more than 10 beds:**
- Include partitions to separate beds to the fullest extent possible.



## IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.

RECEIVED
CCI
AUG 2 4 2021
HCGO

REJECTED
CCI
AUG 2 4 2021
HCGO



CCI - California Correctional Institution

Patient: **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /   Male        CDCR: V25176

---

### *Discharge Documentation*

---

**Reason For Visit:** Alpha thalassemia trait; Cough with hemoptysis; Generalized body aches; Head ache; Loss of smell; Shortness of breath with exposure to COVID-19 virus

**Recommendations and arrangements for future care**

**Devices/Equipment:**

**Eyeglass Frames Permanent** Other/Unknown, Do Not Dispense, Patient Already Has

Provider Comment:

## MEDICATIONS:
During the course of your visit your medication list was updated with the most current information.

## Start Taking These Medications:
**montelukast 10 mg Tab (montelukast 10 mg)**
- *For Asthma:* Take 1 tab (Total Dose = 10 mg), by mouth every evening on your own
- Start Date: March 23, 2021
- Take for: 120 day(s)

*Comments: This medication does not work immediately and should not be used when quick relief is needed for acute asthma attacks. Warning: This medication WILL NOT stop an asthma attack once it has started. Call your doctor immediately if you have mental/mood changes like confusion, new/worsening feelsing of sadness/fear, thoughts of suicide, or unusual behavior.*

**MVI w/Minerals Tab (National) (0400-50) (Multiple Vitamins with Minerals)**
- *For Head ache:* Take 1 tab, by mouth once a day on your own
- Start Date: April 06, 2021
- Take for: 60 day(s)

*Comments: Take with food or milk. May discolor urine or feces.*

RECEIVED
CCI
AUG 2 4 2021
HCGO

REJECTED
CCI
AUG 2 4 2021
HCGO

**naproxen 500 mg Tab (Naprosyn)**
- *For Head ache:* Take 1 tab (Total Dose = 500 mg), by mouth twice a day on your own as needed for headache

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                          Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

5-7

off

DECLARATION OF Robert L. Sanford

I, Robert L. Sanford, due declare under the penalty of perjury that the following statements are true under the United States Constitution and its laws, the State of California Constitution and its laws.

On June 18, 2020, I Robert L. Sanford was transferred to CCI-E facility from SCC in Jamestown, CA 95327;

On June 2020, after arriving at CCI-E-facility an outbreak of Covid-19 was already occurring at E-facility that was infecting multiple amounts of inmates

I was only quarantined at CCI-E-Fac. for about 9 days, instead of the 14 days I was suppose to be in quarantine at CCI- before being mixed in with already infected population;

On or about June 28, 2020, I was moved from Van Westen Upper to Clark Hall Lower (CHL)dorm, where it was said by medical staff that the outbreak on CCI-E-Facility happened in CHL dorm;

Where they had recently housed some inmates from Delano Reception Center, during the height of this known dangerous pandemic;

I asked the correctional staff at Van Westen before I moved, "Why am I being moved before my 14 day quarantine is up" C/O Masteriff stated: That decision is way above my pay grade and this came directly from the warden, so you would have to take your complaint up with him";

I then talked to other inmates leaving CHL dorm now moving into Van Westen they were all infected with Covid-19, the halls where in pandomonium with all the movement and mixing of inmates, my concern now was that I was in a more dangerous condition than I was at SCC dorms;

After moving into the excessively over-crowded dorm where there was less than 3 feet of distance, the dorm was deplorable with inadequate ventilation exposed asbestos, mold in the shower, rusted out beds, and soiled mattresses,

1

where it was clearly evident CCI- was refusing to comply with the CDCR
Bed Positioning and Partitions when there is no possible way to social dis-
tance, and there are more than 10 beds in a room/dorm;

On July 5, 2020, I was in the dayroom when I noticed to officials entering
the back door to CHL dorm, the male identified himself as C. Schuyler the
Associate Warden of CCI, the other was a female name unknown JANE DOE;

this declarant at this time voiced his concerns as to the obvious clearly
unsafe dangerous condition that I was being deliberately subjected to at
CCI-E-Facility, where I personally explained to C. Schuyler: " Why are you
and the warden subjecting me and other inmates with pre-existing medical
issues to this known dangerous condition, that is injuring inmates daily
with being infected, you guy's are not following the protocols, with  cleaning
and disinfecting, there is no social distance, its extremely overcrowded
to the point I can't even move without touching somebody in my own bed area(01
we are unsafe here in these known dangerous conditions."

C. Schuyler replied: I'm here this morning on behalf of the Warden, in order
to try and stop the spreading of the Covid-19 on this facility, we should
have something done within a week,"

The conversation was interrupted before the Associate Warden Schuyler could .
finish explaining what him and the warden were planning, by C/O Edmonds the
regular officer in CHL dorm, he escorted Schuyler from the dayroom and then
said to declarant this statement: "I will show you later how I deal with
inmates that approach officials coming into my dorm about their health conc-
erns" (Meaning he would issue some type of discipline).

On July 10, 2020, the whole CHL dorm was told to pack all their personall
property and move to Rex Deal dorm by C/O Edmonds we were all told the move
had to be done before 4:00 p.m. count, and who ever delays count will be
written a RVR report,;

the Rex Deal (RD)dorm was in total shambles and in such a deplorable condition
it was obviously a known dangerous condition for cross contamination of Covid-
19, due to earlier that same day July 10, 2020, they just moved all the inmate

2

from RD dorm to Davis Hall dorm and Briggs Hall Dorm both located on E- Fac-
ility, where this mass movement is a known contributing factor to spreading
the Covid-19 virus within the facility, the inmates left the dorm with bed
linen that was dirty and soiled in the bed areas, clothing that was soiled,
matresses not cleaned or dis-infected, there was no ventilation, and again
absolutely no possible way to social distance the beds were less than 3 feet
apart, and the dorm had not been pre-sanitized before moving mass amounts
of inmates to this dorm was ceratinly a known dangerous condition;

the C/O in RD-dorm had little to no disinfectant to clean, his name unknown
at this time JOHN DOE, said:" The other inmates must have taken the cleaning
supplies when they moved earlier, and there was nothing more he could do
about that matter" ;

On July 11, 2020, this declarant awaken to injury without being able to smell
or taste, due to being deliberately subjected to a known dangerous condition
where cross contamination, was certainly one of the contributing factors
to increasing the spread of Covid-19 at this facility;

I the declarant immediately reported the symptoms to the nurse[s] JANE DOE
1 and JANE DOE 2, that morning, where I was given a Covid-19 test, and moved
that day to an isolation dorm;

in Van Westen low, where I was found to be POSITIVE for the Covid-19 on July
13, 2020, I was then moved again to Clark Hall low CHL, which now was the
Covid dorm, where this was known as the Covid dorm all alone due to the orgin
of of the outbreak, where declarant was deliberately subjected to a known
dangerous condition, where the warden and associate warden were absolutely
aware of the cross contamination of mixing inmates from other institutions
was putting declarant in a unreasonable risk of harm and danger of being
caused pain and suffering, the next, week, the next month or year;

This declarant filed 602 greivances, and administrative notices, warning
of these dangers that put him at an unreasonable risk of harm and danger,
whereas, he was ultimately injured a second time with being in infected at
CCI, even after Warden was put on notice declarant was a high risk medical

with pre-existing medical issues, and now having to be deliberately subjected
to a known dangerous work enviornment that resulted in again injuring dec-
larant for the second time, where declarant (I), was employed as a "American
Disability Worker" where my job duties, consisted of helping disabled inmates
with understanding legal documents, and general task they cannot perform
due to their disability;

furthermore, the job duties required that I enter the known dangerous condi-
tions, that allowed for mixing with overcrowded dorms, no bed positioning,
no partitions, inadequate ventilation, asbestos exposed, dirt and filth,
in the un-sanitized dorms;

I [declarant] brought these known dangerous conditions to the attention of
of immediate supervisor on multiple occasions during the months of August
and September C/O Bliss who said: " The warden is aware of the lack of bed
positioning, and other un-safe conditions, but he's not going to spend any
excess money on patch work, because he is planning on closing this facility
a-head of the scheduled closing date of June 2022.";

I also brought this matter to the attention of the Inmate Advisory Council
I.A.C., where the warden and facility administrators rely on these I.A.C.mem-
bers issued memorandums, and reports to situations and issues related to
the facility, where they had a once a month meeting with B. Cates the Warden
at CCI and his facility Capatain;

On or about January 2021, the Chairman, and Sergeant of Arms, Richard Bruos-
sard,the Chairman, and Parvin Tanner, the Sgt of Arms, both were in attend-
ence at this meeting with the warden, where they were both direct eye-witness-
es, to the statements made by Warden B. Cates, saying: CCI-E- Facility is
no longer under Covid-19 protocols, and the Bed positioning and partitions
in the dorms, are adequate, and I'm not dealing with that issue...";

there is no doubt that Warden Cates, was not aware of the known dangerous
conditions that existed at his facility, was not contributing to the spreading
of this virus, but was being created by his failure to act, with policy and
protocols, that he refused to adhere to inorder to save cost so he could
move forward with his plan for closing this facility ahead of the June 2022

4

deadline, issued for closure by Defendant Governor Gavin Newsom;

This declarant, was put in a ureasonable risk of harm and danger because this warden, wanted to cut cost, with implementing Covid-19 preventive measures, that resulted in this declarant now suffering with lack of smell, taste, coughing of blood, headaches, joint pain, all contributed to his being infected with Covid-19 "Long Haulers Effect", where declarant is now suffering aa diminished quality of life, the next, week, the next month or year.

The affidavits of Richard Bruossard and Parvin Tanner are in declarants amended complaint, to which this declaration is now incorporated, including test results that support the fact declarant suffers the injury stated herein.

I, Robert L. Sanford due declare under the penalty of perjury that the foregoing statements are true and correct.

Executed on this 21st, day of March 2022

Robert L. Sanford, Declarant

5

RECEIVED

2022 MAR 28 PM 4:19

ATTORNEY GENERAL
LOS ANGELES

CURRENT C. SANTORA
V-25712  A-15-12L
Sierra Conservation-Center
5150 O'Byrnes Ferry Rd
Jamestown, CA 95327

SIERRA CONSERVATION CENTER
CA STATE PRISON GENERATED MAIL



US POSTAGE
ZIP 95327  $ 003.16⁰
02 4W
0000353643 MAR    2022

MAR 22 2022

To: Office of the Attorney General
Attn: Colin A. Shaff
    300 S. Spring Street, Suite 17
    Los Angeles, CA 90013

Legal Mail

# EXHIBIT D

Robert L. Sanford
V-25176 Bed#55
Growlersburg Conservation Camp#33
5440 Longview Lane
Georgetown, CA 95634
     In Propria Persona,

SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN

Robert L. Sanford
     Plaintiff,

v.

Gavin Newsom, et al.,
     Defendant,

Case No:BCV-21-100477-BCB

PLAINTIFF'S AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
1) EIGHTH AND FOURTEENTH AMENDMENT
   VIOLATION
Date: September 27, 2022
Time: 8:30 A.M.
Dept: Div. H
Judge: Bernard C. Barman

TRIAL BY JURY DEMANDED
COMPLAINT FOR MONEY DAMAGES AND INJUNCTION RELIEF
I. JURISDICTION

1. Plaintiff now brings this lawsuit pursuant to Cal. Const. Art.VI, §§ 10, 11, and Art. I § 16, Sec 395,

II. VENUE

2. Section 395, County in which the defendants reside. All defendanats are responsible and liable for the injuries sustained in the County of Kern at the California Correctional Institution, Where Plaintiff did reside when the injury occurred.

III. PARTIES

3. Plaintiff Robert L. Sanford, was at all times relevant to this action a prisoner that was incarcerated at the California Correctional Institution located

1

AMENDED CIVIL COMPLAINT

1 in Kern County.

2   4. Defendant Gavin Newsom was at all times relevannt to this civil action
3 as the governorof the State of california and was acting under the color of
4 State and Federal law. He is responsible by constitution, statute, and by his
5 own executive order to ensure the safety and well-being of incarcerated inmates
6 including but not limited to Plaintiff here.  He is sued in his personal
7 capacity for damages, and his professional capacity for injunctive relief.
8 5. Defendant: Warden, Brian Cates was at all times relevant to this action under
9 the color of State and Federal law. He is the custodian, having custody over
10 Plaintiff, who is a incarcerarted dependent adult, whereas, Plaintiff being
11 dependent upon Defendant Warden, B. Cates for reasonable safety prevention of
12 a known dangerous communicable disease now identified as Covid-19 and/or SARS
13 CoV-2virus and its varients, along with providing protection from infection
14 and spreading within the housing unit dorms, and the CCI-E_ facility, by
15 complying with and implementing Covid-19 safety protocols directed the Calif-
16 ornia Department of Corrections and Rehabilitation, the Center for Disease Con-
17 trol (CDC), and the Receiver. Defendant  Brian Cates is now being sued in his
18 personal capacity for damages and equitable relief, and his professional
19 capacity for injunctive reief.

20 6.  Defendant: C. Schuyler, the Associate Warden at CCI, was at all times
21 relevant to this action under the color of State and Federal law. He is the
22 Associate Warden is responsible for the custodian care, and having custody over
23 Plaintiff who is a incarcerated dependent adult, where Plaintiff is dependent
24 upon C. Schuyler for reasonable safety from a communicable disease such as
25 Covid-19, along with protecting Plaintiff exposure of infection and the
26 spreading of this deadly disease within the housing unit dorms at CCI-E- facility
27 where he was to comply with all laws policies directed by California

2

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1. Corrections and Rehabilitation, Center of Disease Control, the Receiver

2. C. Schuyler is now sued in his personal capacity for damages and equitable

3. relief, and in his professional capacity for injunctive relief.

4.                                IV. FACTUAL ALLEGATIONS

5. 7. Now comes Robert L. Sanford, the Plaintiff in this civil action now submitting

6. this amended complaint regarding the constitutional violations of prisoners

7. Right to be free from certain conditions of his confinement that caused cruel

8. and unusal punishment that violates the Eighth and Fourteenth Amendments.

9. 8. Plaintiff in his second amended complaint, submitted a declaration of the

10. facts to this Court, describing the challenged conditions at the CCI-E-facility

11. dorms that caused this Plaintiff injury the next, week, the next month or year.

12. 9. Regarding the fact that defendants/authorities at California Correctional

13. Institution (CCI) even after notification of the known dangerous condition

14. failed remedial action in regards to the safety prevention of a known dangerous

15. disease now identified as Covid-19 and/or SARS CoV-2 virus.

16. 10.       Plaintiff Now Request This Court Take Judicial Notice of

17.                     attached Declaration of Robert L. Sanford,

18. where the facts of this declaration describe the facts that brought rise to this

19. complaint, that caused Plaintiff on-going injury from this known dangerous

20. condition that placed me in a high risk of danger with noted medical and pre-

21. existing medical issues,

22. 11. Whereas, the Constitution of the United States and California, warrants

23. under the Eighth and Fourteenth Amendments, that prisoners have a clearly

24. established right under the Eighth Amendment to be free from heightened ex-

25. posure to a serious communicable disease.

26. 12. The defendants listed herein this civil action complaint are liable for

27. causing plaintiff cruel and unusual punishment that has now injured Plaintiff

3

1. the next week, the next month or year.

2. 13. Where plaintiff is no longer able to smell or taste, constant headaches, joint and muscle pain, shortness of breath, coughing of blood, all contributed to the heightened exposure of the Covid-19 in the unsafe overcrowded dorms, with inadequate ventilation, absolutely no posssible way to social distance with six feet, the dorms not being cleaned or disinfected ceratainly placed Plaintiff at  heightened exposure to a seoius disease at CCI, that has now greatly diminished Plaintiffs quality of life.

9. 14. Plaintiff gave personal and verbal notice to Defendant C. Schyuler on July 5, 2020, in the Clark Hall low dorm (dayroom), where C. Schyuler confirmed he was touring the facility on behalf of Defendant Brian Cates', reagarding the mass outbreak that was occurring in the dorms at CCI where they allowed for mass overcrowding of infected inmates mixed in with non-infected inmates were certain contributing factors that heightened the exposure of this serious disease that resulted in infecting Plaintiff on July 11, 2020, at CCI-E Facility dorm (Rex Deal Dorm) where Plaintiff was tested anfound positive for Covid-19 on July 13, 2020, after reporting symptoms of no smell or taste.

18. 15. As Stated in the orginal complaint and amended complaints, Plaintiff did outline the facts that Defendant C. Schyuler was a direct eyewitness to the unsafe dorm conditions in Clark Hall, whereas Plaintiff on July 5, 2020 did clearly notice him that Plaintiff was being deliberartely exposed to a heigh- tened exposure of a known deadly disease and he only interated he was aware of the conditions and was there to see what could be done. See Plaintiff's Request For Judcial Notice of attached Declaration of Robert L. Sanford, outlining the details of the notice to C. Schyuler' and B. Cates who he was there on behalf of. See Exhibit "A" (Supporting medical documents)

27. 16. Therefore, giving Cates direct notice as to the known dangerous condition

4.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1  that he continued to allow happening at CCI-E_ facility with failing to  act
2  to the known dangers that clearly existed in Dorms, Van Westen Up, Clark hall
3  Upper and Lower dorms, Briggs hall dorm, Rex Deal Dorm, all dorms that plaintiff
4  was housed in during the Covid-19 outbreak at this facility that put him at
5  an unraesonable risk of heightened exoposure to this serious deaily virus, that
6  has caused inmates death, within several institutions in California including
7  CCI.

8  17. Plaintiff was able to point out several facts to C. Schyuler regarding the
9  obvious dangers that existed with the unsafe ultra-hazrdous condition of the
10  extreme overcrowded dorms, including the fact Plaintiff arrived at CCI on
11  June 18, 2020, and the outbreak at CCI occurred on June 20, 2020, whereas,
12  Plaintiff was initially housed in Van Westen Upper, regarding Covid-19 for
13  14 days, however, I was moved before the 14 day required protocol from Van
14  Westen to the hot bed Covid-19 outbreak dorm on or about June 26, or 27, 2020.
15  18. This Plaintiff explained this fact to C. Schyuler on July 5, 2020, giving
16  him direct notice that CCI was not following safety guidelines that could
17  prevent Plaintiff from being exposed to a known airborne pathogen that is now
18  being transmitted from person -to-person along with the fact Staff at this CCI
19  facility were refusing to wear mask while its a known fact that these staff  ~
20  are the main vectors to transmitting and introducing this virus to the facility
21  whereas, this is another contributing factor that caused plaintiff' s injury.
22  19. Defendant C. Schyuler absolutely acknowledged that the condition was un-
23  safe. On July 10, 2020, after moving mass amounts of inmates from Rex Deal
24  earlier that day, the defendants then orderd CHL dorm to move into Rex Deal,
25  before it was pre-cleaned and disinfected where defenadants ignored protols
26  of this communicable disease, that resulted in Plaintiff being infected with
27  being forced to a known contaminated dorm, with mass movement and mixing inmates

1 that were exposed with symptoms and refusing to test.

2 To Defendant whom are the authorities at CCI who have an obligation to provide

3 for those whom it is punishing by incarceration, an imate must rely on prison

4 authorities to treat his medical needs, and provide preventive measures to

5 exposure of serious communicable disease; if the authorities fail to do so,

6 those needs will not be met.

7 Furthermore, because defenadnts were deliberately indifferent to Plaintiff's m

8 needs as a inmate at CCI-E- facility, while aware that communicable disease was

9 actively infecting inmates at an alarming rate during the months of June 2020,

10 and October 2020, as Plaintiff was tested positive for Covid-19 two (2x) at CCI

11 facility, that provided absolutely no possible social distancing of six feet.

12 22. Defendants deliberate indifference / negligence, with protecting and providing

13 reasonable safety- or intentionally interfering with the treatment prescribed

14 Regardless of how evidenced, constitutes deliberate indifference to a prisoner's

15 illness or injury states a cause to action.

16 23. It is certain that defendants in this action were aware of the executive order

17 N-84-20 (2019 CAEO 84-20) issued in response to Covid-19 pandemic...(empahasis

18 added) Whereas, the State of California recognizes this communacable disease

19 virus, pursuant to California's official California Code of Regulations , Title

20 8 Subdivision §3205 defining the following :

21 (1) Close Contact: means being within six feet of a Covid-19 case for a cumaul

22 ative total of 15 minutes or greater in any 24 hour period within or overlapping

23 with a high risk exposure period" Defined by this section, this definition

24 applies regardless of the use of face coverings.

25 (4) Clearly identifies Covid-19 hazard: means potentially infectious material

26 that may contain SARS-CoV-2, the virus that causes Covid-19. Potentially infec-

27 tious materials include airborne droplets, small particle, aerosols, and air-

6

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1   borne droplet nuclei, which most commonly results from a person-or-persons

2   exhaling, talking, or vocalizing, coughing, or sneezing...

3   (5) Covid Symptoms: fever, chills, cough, shortness of breath, new loss of

4   taste or smell, headaches, joint and muscle pain.

24.

5   These facts listed above in accordance to 3205 of California Code of Regulations

6   are all issues that injured Plaintiff the next, week, the next month or year.

7   25.Whereas, (1)gave defendants notice that due to the overcrowded dorms at CCI

8   that there was no possible ability to create six feet of social distancing,

9   was putting prisoners at an unreasonable risk of exposure to a deadly serious

10  disease. The fact defenadnts failed to install partitions between bunks that

11  could have prevented the spreading of Covid-19, because there was no possible

12  way to social distance inmates in dorms with six feet at CCI-E_ Facility ,

13  Where defendants Cates, Schuyler, and Newsom were surely aware of.

14  26.Defendants were aware of (4) Knowing the hazard of Covid-19, where they

15  collectively  were aware of the hazard of potentially infectious material that

16  may contain SARS-CoV-2, knowing this communicable disease is airborne, where

17  Cates failed to act and failed to train his staff at CCI regarding the hazard

18  of cross contamination of soiled materials from infected inmates on July 10,

19  2020, including the hazard of moving mass amounts of infected and non-infected

20  inmates during a heightened exposure of this virus or outbreak.

21  27.The fact that Plaintiff now suffers injury: (5) Covid-19 Symptoms, that this

22  state recognizes under 3205 (1),(4), (5), that are ongoing injury to Plaintiff

23  the next, week, the next month or year. The defendants failed to comply with

24  or adhere to protocols of the federal agency Center of Disease Control (CDC),

25  Guidelines in Correctional and Detention Centers (4)outlining preventive measures

26  to stop infection within the facility, including warning facilities that a

27  Cleaning and Disinfection should have a plan in place that CCI failed to do

7

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1  whereas, this failure to act to a known dangerous condition resulted in injuring
2  plaintiff on July 10, 2020 (Plaintiff submitted supporting facts in both
3  complaints, the the original and the first and second amended complaints)
4  now requesting this Court take judicial notice of Declaration of Robert L.
5  Sanford attached., Defendants also  received orders from three panel Judges
6  in Marciano Plata v. Gavin Newsom Case #01-1351 JST, regarding the dangers of
7  dorms with overcrowded conditions, place inmates at a high risk of danger,
8  the fact Plaintiff has pre-existing medical issues, places him at a even higher
9  risk of contracting this deadly disease.

10  28. Defendants   have caused the injury, and failed to prevent the spreading of
11  this serious communicable disease to plaintiff, by failing to act, now
12  constitutes a claim of cruel and unusual punishment under the Eighth and
13  Fourteenth Amendments.

14  29. In accordance to Estelle v. Gamble, 429 U.S. 97, defendants/ authorities
15  " in this matter has a obligation to those they are punishing by incarceration
16  where inmates must rely on prison authorities to protect their clearly establ-
17  shed  right under the Eighth Amendment to be free from heightened exposure to
18  serious communicable disease. Authorities failed to do so , and Plaintiff is
19  now suffering the unnecessary and wanton infliction of pain , the next, week,
20  the next month or year. Defendants, Cates, Schuyler and Newsom are all direct
21  authorities in the State of California at CCI-E- facility and were aware of the
22  known dangerous conditions and failed to act, with preventing heightened exposure
23  to a serious disease, including the fact defendants failed to enforce mask
24  mandates upon staff at CCI, or implement installing "Partitions" between bunks
25  that have 10 beds in a dorm or more where six feet of social distancing is not
26  possible, defendants at this facility were certainly aware of this fact that
27  no possible six feet was avilable, and they deliberately heightened plaintiff

8

AMENDED CIVIL COMPLAINT

1  exposure to a serious communacable disease (Covid-19), that resulted in causing

2  Plaintiff unnecessary and wanton infliction of pain and suffering the next

3  week, the next month or year. See Exhibit "B" (CDCR memorandum).

4  30. The fact defendants deliberately avoided creating atleast six feet of space

5  at CCI-E-facility where the inmates have less tahn 3 feet of living space

6  shared between (4) inmates occupying (per bed area). This is an unnecessary

7  heightened risk of spreading serious communicable disease, defendants failed to

8  act and abate this known dangerous condition, where they were aware prisoners

9  within CDCR Jurisdiction have a federal protected right pursuant to 18.U.S.C.

10  §3626 (a) (3) (B)(i). and the ACA standards of accreditation, to be free from

11  overcrowded detention and/or confinement, "Overcrowding creates unsafe and

12  unsanitary conditions that hamper effective medical and mental health care.

13  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

14  31. Moreover, Plaintiff has exercised due diligence with giving notice to the

15  facts related to the violations caused upon him by defendants at every turn,

16  where Plaintiff was not only deliberately transmitted this known serious disease

17  at CCI; but he was infected twice, after July 13 detected test, on july 11,

18  2020, but approx, 90 day s later Plaintiff was again tested positive for con-.

19  tracting this communicable disease were he still suffers to this very day with

20  not being able to smell, taste, joint pain, headaches, coughing of blood, due

21  to the reckless deliberate disregard of defendants failing to act, now

22  constitutes a cruel and unusual punishment, where now this plaintiff has a

23  clearly established right under the Eighth Amendment to be free from heightened

24  exposure to a serious communicable disease.

25  The fact Plaintiff now suffers an injury where medical professionals deem

26  that effects of infection from Covid-19 also called "Long Haulers Effect"

27  contributes to long lasting injury including memory loss, whereas this has

9

AMENDED CIVIL COMPLAINT

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1  ongoing injury thats has not only physically diminished Plaintiff's quality

2  of life, but also his mental capacity to now remember  short term memory

3  loss has now caused Plaintiff significant damage to his future plans in

4  earning a living that depends on memory recall for business purpose.

5  33. Plaintiff prior to being infected with this communicable disease , had

6  rehabilitated hisself, with earning a business degree certificate through

7  extensive Rehabilitative programming administered by CDCR. This opportunity

8  for rehabilitation is now jeopardized do to the memory loss I now suffer,

9  from the Long haulers effect from the Covid-19 virus, along with the on going

10  physical injury of headaches, shortness of breath, joint pain, lack of smell

11  and taste including the coughing of blood. See Exhibit "C".

12  34. Now that I have to suffer the effects of this disease, due to the fact

13  defendants listed herein, failed to act to prevent heightened exposure to a

14  serious communicable disease. The long term injury certainly caused by the

15  failure to act by defendants  clearly raises the question regarding the fact

16  that Plaintiff was absolutely reliant upon defendants to provide prevntive

17  safety measures that were at their disposal to protect inmates in the high

18  risk dorm conditions that did not have any possible way of social distancing

19  of six feet, inadequate ventilation, no disinfection during or prior to housing

20  Plaintiff in contaminated dorm, where cross contamination heightened exposure

21  to this serious communicable disease, defendants failed to act with placing

22  partitions between bunks  that could have prevented the spreading of Covid-19

23  at CCI-E-facilty, their failure to implement mandated mask wearing of staff

24  certainly contributed to the infections plaintiff contracted on July 10, 2020,

25  and October 2, 2020, along with defendants issuing orders to have plaintiff and

26  approx 100 + inmates that were infected, and mixing inmates contributed to the

27  long term injury that now injures this Plaintiff mentally and physically.

AMENDED CIVIL COMPLAINT

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1    35. The facts stated herein this complaint are true and correct under the

2    penalty of perjury.

3    //

4

5

6

7

8

9

10

11   //

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

11

AMENDED CIVIL COMPLAINT

CAUSE OF ACTION

36. Plaintiff now brings this cause of action based upon the facts, Defendants B. Cates, C. Schyuler, G. Newsom are now liable for the fact they violated United States Constitution, California Constitution Article. VI, §§10, 11; and Article I, § 16, 17, Sec 395

37. Whereas, Defendants in this amended complaint failed to act and prevent a heightened exposure to a serious communicable disease Covid-19, that resulted with Plaintiff now suffering ongoing injury the next, week, the next month or year

38. For the fact plaintiff although being an incarcerated dependent adult in the custodial care of named defendants Cates, Schyuler, Newsom, does not excuse or prisoners right to be free from certain conditions of his confinement that causes or can cause him cruel and unusual punishment that violates the Eighth and Fourteenth Amendments.

39. The fact Plaintiff has a constitutional right under the Eighth and Fourteenth Amendments not to be placed in a high risk of danger with heightened exposure to a communicable disease such as Covid-19 that has caused serious injury including death to prisoners in the custody of defendants.

39. Defendants failed  to take protective measures , by failing to adhere to a known dangerous condition that heightened the exposure of this deadly virus that caused Plaintiff bodily injury and possible imminent death, constitutes a violation of the United States Constitution  Eighth Amendment; and Fourteenth Amendment, and Fourteenth Amendment, and the Cal. Const. Art. I, § 17 " Excessive bail shall not be required, nor excessive fines, nor cruel and unusual punishments inflicted." Ratified Dec 15, 1791

40. Where defendants  failure to act amounted to deliberate indifference claim in this amened civil complaint See: Wise v. Lappin,

12

AMENDED CIVIL COMPLAINT

1  '674 F. 3d 939, 941-42 (8th Cir. 2012) The deliberate ind.ifference

2  standard can be met based upon the facts, dfendants failed to comply with

3  Covid-19 protocols that could have prevented the spreading throughout the

4  facility of this deadly communacable disease that caused Plaintiff unwanton

5  infliction of pain and suffering,  the next,week, the next month or year.

6  41. Eighth Amendment violations for prisoners can be established when exposure

7  to a sufficiently known serious communacable disease, whereas, defendant[s]

8  where clearly aware of the known risk of the heightened exposure that actually

9  exposed Plaintiff to infection of the serious communacable disease (Covid-19)

10  despite the notice, warnings, executive oders, defendants ignored the required

11  policies of the known dangerous conditions of the overcrowded dorms that had

12  no possible way of creating social distance of six feet at CCI-E- facility,

13  whereas, defendants named in this action approved moves with mixing exposed

14  inmates, to cross-contaminate, in the dorms, the dining areas, and the sick

15  call areas where all inmates from other dorms shared the same water faucet

16  touching the same rails had benches that had no disifecting was actual causes

17  to plaintiff's injury with being infected on July 10, 2020, and October 2, 2020.

18  42. The defendants insited on reckless behavior by not adhearing to policies

19  that were being implemented by CDC, CDCR, The Three Judge Court case management

20  findings or any other agency that issued governmental policies to prevent the

21  spreading of the deadly virus within detention centers and prisons. Defendants

22  failed to train at the CCI-E-Facility Covid-19  Prevention practices that

23  could have prevented Plaintiff from suffering injury,the next, week, the next

24  month or year.

25  43. Them failing to train.withrequired protocols with pre-cleaning and disinfecting

26  of dorms, failing to train regarding the dangers of moving mass amounts of

27  inmates within the facility during a Covid 19 outbreak (epidemic) that was

13

AMENDED CIVIL COMPLAINT

1  infecting inmates at an alarming rate, to the point inmates were falling out

2  and being emergency evacuated by ambulance due to Covid symptoms.

3  44. Plaintiff in CCI had been improperly quarantined on or about 06/18/2020

4  to 06/27/2020 On or about, where Plaintiff was required by policy and CDC

5  procedure to be quarantined atleast 14 days, before being mixed in with the

6  population, this was not  the case  at CCI-E Facility. The defendants at the

7  CCI_E Facility were aware that this was a dangerous enviornment, and its sataff

8  employees had failed in its responsibilities to comply with laws, rules,

9  of the State of California and the United States, Defendant[s] listed in this

10  complaint have a duty to follow executive orders also by Defendants:

11  Gavin Newsom, Ralph M. Diaz, kathleen Allison, Connie Gipson, The federal

12  Receiver appointed over CDCR, The Panel Judges, and to follow the Presidential

13  Order of Donald J. Trump. Instead CCI refused to enforce safety procedures

14  regarding Covid-19, and thereby, was grossly negligent witn deliberate in-

15  difference to its duty, obligations, and responsibility to maintain a safe

16  functioning institution during this Global pandemic.

17  45 For the reasons stated herein, this cause of action regarding the facts

18  Defendants failed to act to a known dangerous condition, that exposed Plaintiff

19  to a deadly communicable disease that now has injured Plaintiff the next, week,

20  the next month or year. Now constitutes a cause to action under the Eighth and

21  Fourteenth Amendments, for cruel and unusual punishment, where Plaintiff has

22  a constitutional right to be free from unwanton fliction of pain and suffering,

23  due to a heightend exposure to a communacble disease, that was contributed to

24  defendants failure to act to the knon dangerous condition of the dorms at

25  CCI-E- facility that caused Plaintiff injury.

26

27

AMENDED CIVIL COMPLAINT

MEMORANDUM OF POINTS AND AUTHORITIES

46. Here in this amended complaint regarding Plaintiff's Eighth and Fourteenth amendments being violated, whereas, Defendant's knew or should have known that Plaintiff was and is diagnosed with pre-existing medical issues, ashma, alpha thalasemia, anemia, the deliberate indifference regarding Plaintiff's pre-existing medical condition[s] that placed him at a higher risk of contracting the Covid-19 virus raises the question under the Eighth Amendment as to whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health" Farmer v. Brennan 511 U.S. 825, 114 S.Ct.1970.

47. The reckless disregard of defendants failing to act to a known dangerous communacble disease that placed Plaintiff in a heightened exposure to the deadly known disease that has now injured Plaintiff due to the defendants failure to act and prevent injury to Plaintiff in the unsafe dorms at CCI-E-Facility caused Plaintiff cruel and unusal punishment see Estelle v, Gamble 429.U.S. at 103-104 "Where the infliction of unmanton pain and suffering constitutes a violation of the Eighth Amendment"

48. Plaintiff was infected on two different occasions at CCI on or about July 10, 2020, and again on or about October 2nd, 2020, where Plaintiff now suffers "Long Haulers Effect" from his infection from the Covid -19 virus, where I now have on going medical complications with lack of ability to smell or taste, constant joint pain, shortness of breath, headaches, and memory loss, the unsanitized dorms at CCI certainly contributed to the exposure of the known deadly disease that has now caused Plaintiff injury, the next, week, the next month or year.

50.The Defendants Cates, Schyuler and Newsom. were aware or should have been aware that cross contaminated areas, could contribute to the spreading of

15

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1  OF Covid-19 at CCI-E-facility , whereas, defendants failed to comply with

2  CDC Guidlines for Detention Centers and prisons, their failure to provide

3  adequate non-disinfection  protocols, contributed to Plaintiff's exposure

4  to the commuuncable disease, within the over-crowded dorms , that have no

5  possible way to social distance inmates at CCI, as Plaintiff outlined facts

6  in the amended complaint pointing out how defendants refused to comply with

7  required protocols that when there is no possible way to social distance

8  with six feet, and there are more than ten (10) beds in a room "partitions"

9  are to be placed between the bunk beds in the dorms, the defendants failed

10  to comply with this policy that was implemented to prevent the spreading

11  of this deadly communacable disease.

12  51. The fact defendants also authorized or allowed to be authorized mass

13  movements of inmates that were mixed in with inmates onfected and not testing

14  for covid at the CCI-E- facility, where this heightened Plaintiff's

15  exposure to this disease that now caused Plaintiff pain and suffering the

16  next, week, the next month or year.

17  //

18

19

20  /

21

22

23

24

25  /

26

27

.16

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

CONCLUSION

Plaintiff has now submitted suffiecint facts in support of the civil complaint now showing this Court that defendants mentioned herein, have violated Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment that has injured Plaintiff the next week, the next month or year.

July 16, 2020

Respectfully Submitted

_____

Robert L. Sanford

17

AMENDED CIVIL COMPLAINT

1

PROOF OF SERVICE

2

(Cal. Rules of Court , Rules 1.218.50.)

3  I, Robert L. Sanford, declare that I am over the age of 18 years of age and
   the Party Plaintiff in this Civil Tort Action Claim, at all times; I am a
4  inmate prisoner in the California Conservation Camp #33 Growlersburg, in the
   County of Eldorado, in the city of Georgetown, California 93581, where the
5  mailing occurs; and Plaintiff's address is: 5440 Longview Lane, Georgetown,
   CA 95634

6

7  I, further declare That I am readily familiar with the business practices for
   collection and processing of correspondences for mailing with the United States
   Postal service; this same day in the ordinary course of business,

8  On this 16th day of July 2022. I the Plaintiff in the above mentioned complaint
9  caused to be served the following document[s] ; Amended Complaint; Memorandum
   of Points and Authorities of Eighth Amendment Violation. in a civil tort action
10 by placing a true copy of each document; in a separate envelope addressed
   respectfully as follows;

11 Office of the Attorney Generalfor The State of California. Colin Shaff
12 300 S. Spring Street, suite 1702, Los Angeles, CA 90013

13 I decalre under the penalty of perjury under the laws of the United  States
   Constitution and the State of California Constitution that the foregoing is
14 true and correct to the best of my knowledge. Executed on this 16th day of this
   July 2022.

15

16

17                                    Robert L. Sanford

18

19

20

21

22

23

24

25

26

27

Exhibit "A"

Exhibit "B"

Patient:          **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:   11/29/1963 / 57 years   /   Male          CDCR: V25176

---

## *Virology Results*

Result Comments
f17:     SARS CoV 2 RNA (COVID19)
         Additional information about COVID-19 can be found
         at the Quest Diagnostics website:
         www.QuestDiagnostics.com/Covid19.
         Lab test performed by:
         Lab Mnemonic: 05D0642827
         QUEST DIAGNOSTICS-WEST HILLS
         8401 FALLBROOK AVENUE
         WEST HILLS, CA 91304-3226
         TAB TOOCHINDA

| Specimen Type | Accession Number | Collected Date/Time | Ordering Provider | Received Date/Time |
|---|---|---|---|---|
| Nasopharyngeal Swab | 20-195-03518 | 7/13/2020 05:00 PDT | Kongara,Nanditha P&S | 7/14/2020 22:57 PDT |

| Procedure | Result | Units | Reference Range | Verified Date/Time | Verified By |
|---|---|---|---|---|---|
| SARS CoV 2 RNA (COVID19) | DETECTED @ f18 | | [NOT DETECTED] | 7/15/2020 18:08 PDT | QUEST CONTRIBUTOR_SYSTEM |

Result Comments
f18:     SARS CoV 2 RNA (COVID19)

         A Detected result is considered a positive test result
         for COVID-19.  This indicates that RNA from SARS-CoV-2
         (formerly 2019-nCoV) was detected, and the patient is
         infected with the virus and presumed to be contagious.
         If requested by public health authority, specimen will
         be sent for additional testing.

         Please review the "Fact Sheets" and FDA authorized
         labeling available for health care providers and
         patients using the following websites:
         https://www.questdiagnostics.com/home/Covid-19/HCP/QuestIVD/fact-
         sheet.html
         https://www.questdiagnostics.com/home/Covid-19/Patients/
         QuestIVD/fact-sheet.html

         This test has been authorized by the FDA under an
         Emergency Use Authorization (EUA) for use by authorized
         laboratories.

         Due to the current public health emergency, Quest

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:   42502998                          Print Date/Time:   6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Patient:                    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:   11/29/1963 / 57 years   /   Male        CDCR: V25176

---

## *Assessment Forms*

*Any Recent Changes to Medication :*  No
*Compliance with the Medication/Treatment :*  Yes
*Medications Taken Today :*  Yes
*Medication Compliance :*  Medications (4) Active
Scheduled: (3)
+1-montelukast 10 mg Tab  10 mg 1 tab, Oral, qPM-KOP
+mometasone 100 mcg/inh Aerosol 120 puffs  100 mcg 1 puff, Oral, BID-KOP60
hepatitis A-B vaccine (Twinrix) 1 mL Susp-Inj syringe (0815-52)  1 mL, IM, Once
Continuous: (0)
PRN: (1)
+levalbuterol 45 mcg/puff Aerosol 15 gm  45 mcg 1 puff, Oral, q6hr-KOP90

Chisum, Geneva RN - 12/8/2020 11:29 PST
(As Of: 12/8/2020 13:08:31 PST)

Allergies (Active)
No Known Allergies

*Estimated Onset Date:*  Unspecified ; *Created By:*  Manglicmot,
Lina RN; *Reaction Status:*  Active ; *Category:*  Drug ;
*Substance:*  No Known Allergies ; *Type:*  Allergy ; *Updated By:*
Manglicmot, Lina RN; *Reviewed Date:*  12/8/2020 11:33 PST

**HEENT**
HEENT Nose Grid

| | |
|---|---|
| *Left Nostril* Signs/Symptoms : | Loss of smell (Comment: POSITIVE FOR COVID 19 6/20 AND 10/2020 [Chisum, Geneva RN - 12/8/2020 11:29 PST] ) |
| *Right Nostril* Signs/Symptoms : | Loss of smell |
| Comment | (Comment: POSITIVE FOR COVID 19 IN JUNE 2020 AND OCT 2020 [Chisum, Geneva RN - 12/8/2020 11:29 PST] ) |
| | Chisum, Geneva RN - 12/8/2020 11:29 PST |

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                    Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

7.1

| Patient: | **SANFORD, ROBERT LIONEL** | | |
| DOB/Age/Birth Gender: | 11/29/1963 / 57 years / Male | CDCR: V25176 |

---

### *Assessment Forms*

---

**Patient Encounter Information**
*ENCTR Information :* Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN: 1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Chisum, Geneva RN - 10/29/2020 12:20 PDT

**Subjective**
*Arrival to Clinic :* 10/29/2020 11:33 PDT
*Mode of Arrival :* Ambulatory
*Appointment Type :* Follow-Up

Chisum, Geneva RN - 10/29/2020 12:20 PDT

7362 Symptom Grid

| | |
|---|---|
| *Chief Complaint :* | " I have not gotten 100% of my smell or taste back from testing possitive x2 for Covid 19". |
| *Situation of Onset :* | Started in July 2020, first time tested + for Covid 19. |
| *Complaint Frequency :* | Recurrent (Comment: Has had little to none sense of smell and taste. [Chisum, Geneva RN - 10/29/2020 12:20 PDT] ) |
| *Chief Complaint Onset :* | 10/28/2020 06:30 PDT |
| Comment | (Comment: Pt indeed tested possive for Covid 19--PT IS ANEMIC. [Chisum, Geneva RN - 10/29/2020 12:20 PDT] ) |

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, I=Interp Data, *=Performing Lab

Report Request ID: 42502998                          Print Date/Time: 6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

Patient:                **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:   11/29/1963 /  57 years    /   Male          CDCR: V25176

## *Assessment Forms*

Immunization due
    *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z00.00
    *Date:* 11/3/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Immunization due ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* Z23

Loss of smell
    *Date:* 12/8/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Loss of smell ; *Classification:* Nursing ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R43.0

Nocturia
    *Date:* 9/9/2020 ; *Diagnosis Type:* Discharge ; *Confirmation:* Confirmed ; *Clinical Dx:* Nocturia ; *Classification:* Medical ; *Clinical Service:* Non-Specified ; *Code:* ICD-10-CM ; *Probability:* 0 ; *Diagnosis Code:* R35.1

**Assessment**
FTF-Nursing Diagnosis Grid

| NANDA Nursing Diagnosis : | Deficient Knowledge |
|---|---|
| Related To : | "I still can't smell anything after 2 months" |
| As Evidenced By : | 2 positive Covid 19 results in 5 months |
| | Chisum, Geneva RN - 12/8/2020 13:05 PST |

**Plan**
*Patient Presentation: :*  Consistent with nursing protocol powerplans

Chisum, Gen. va RN - 12/8/2020 13:05 PST

**Follow-up/Disposition**
*Follow-up Required :*  No
*Disposition To: :*  Return to housing
*Mode of Disposition Via: :*  Ambulatory
*Release to Custody :*  Yes
*Released Time :*  12/8/2020 10:30 PST

Chisum, Geneva RN - 12/8/2020 13:05 PST

**Nursing Face-to-Face / 7362 Entered On: 10/29/2020 12:40 PDT**
**Performed On: 10/29/2020 12:20 PDT by Chisum, Geneva RN**

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                        Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

Patient: **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender: 11/29/1963 / 57 years / Male     CDCR: V25176

| *Assessment Forms* |
|---|

  ; *Comments:*

Loss of taste (SNOMED CT :61644018 )

10/29/2020 12:36 - Chisum, Geneva RN
PT TESTED + X 2 SINCE JULY 2020 FOR COVID 19. PT STATES ONLY S/S IS LOSS OF SMELL AND TASTE.
*Name of Problem:* Loss of taste ; *Recorder:* Chisum, Geneva RN; *Confirmation:* Confirmed ; *Classification:* Nursing ; *Code:* 61644018 ; *Contributor System:* PowerChart ; *Last Updated:* 10/29/2020 12:37 PDT ; *Life Cycle Date:* 10/29/20 ; *Life Cycle Status:* Active ; *Vocabulary:* SNOMED CT
  ; *Comments:*

Mod-severe rt knee (medial) Posttraumatic arthropathy (SNOMED CT :1231813011 )

10/29/2020 12:37 - Chisum, Geneva RN
PT TESTED + X2 FOR COXID 19 SINCE JULY 2020. PT STATES ONLY S/S OF COVID IS LOSS OF TASTE AND SMELL.
*Name of Problem:* Mod-severe rt knee (medial) Posttraumatic arthropathy ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Medical ; *Code:* 1231813011 ; *Contributor System:* PowerChart ; *Last Updated:* 4/4/2017 12:09 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

Periodontitis (SNOMED CT :69332012 )

*Name of Problem:* Periodontitis ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Dental ; *Code:* 69332012 ; *Contributor System:* PowerChart ; *Last Updated:* 5/24/2017 09:24 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

Pre DM (SNOMED CT :259356011 )

*Name of Problem:* Pre DM ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Medical ; *Code:* 259356011 ; *Contributor System:* PowerChart ; *Last Updated:* 4/4/2017 12:09 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

Refractive error (SNOMED CT :1229482013 )

*Name of Problem:* Refractive error ; *Recorder:* Javate, Rosana P&S; *Confirmation:* Confirmed ; *Classification:* Medical ; *Code:* 1229482013 ; *Contributor System:* PowerChart ; *Last Updated:* 5/24/2017 09:24 PDT ; *Life Cycle Status:* Active ; *Responsible Provider:* Javate, Rosana P&S; *Vocabulary:* SNOMED CT

Diagnoses(Active)

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 42502998      Print Date/Time: 6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

24

Patient:                    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:     11/29/1963 /  57 years     /  Male          CDCR: V25176

| **Therapeutic Notes** |
|---|

## Group Comments

Completed COVID-19 Quarantine rounds. No unexplained, new, or worsening cough or shortness of breath reported or noted. No temperature >100F noted.

---

## Individual Details For: **SANFORD, ROBERT LIONEL**

**AGE:** 56 Years

**MRN:** V25176

**Diagnosis:**

**Problem:**

**Goal Addressed:**

**Goal Status:**

**Individual Duration:** 0 Minutes

**Start Time:** 10-Jul-2020 22:44

**DOB:** 11/29/1963

**Participation:**

**Affect:**

**Behavior:**

**Mood:**

**Attendance:** Full session attendance

**End Time:** 10-Jul-2020 22:44

---

## Individual Comments

---

Document Type:
Document Subject:
Service Date/Time:
Result Status:
Perform Information:
Sign Information:
Authentication Information:

Therapeutic/Intervention Note
Therapeutic Intervention/Group Progress Note
7/9/2020 10:38 PDT
Auth (Verified)
DeLuna,Rachel LVN (7/9/2020 10:38 PDT)
DeLuna,Rachel LVN (7/9/2020 10:38 PDT)

**Therapeutic Intervention/Group Progress Note**

**Therapy Name:  NSG COVID-19 Quarantine Rounding**

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                         Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

STATE OF CALIFORNIA
**REFUSAL OF EXAMINATION AND/OR TREATMENT**
CDCR 7225 (Rev. 03/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE 1 OF 1

| REFUSAL OF EXAMINATION AND / OR TREATMENT | | |
|---|---|---|
| PATIENT NAME (TYPE OR PRINT CLEARLY) Sanford, Robert | CDCR NUMBER V85176 | INSTITUTION CCI |

Having been fully informed of the risks and possible consequences involved in refusal of the examination and/or treatment in the manner and time prescribed for me, I nevertheless refuse to accept such examination and/or treatment. I agree to hold the Department of Corrections and Rehabilitation, the staff of the medical department and the institution free of any responsibility for injury or complications that may result from my refusal of this examination and/or treatment, specifically:

Describe the examination and/or treatment refused as well as the risks and benefit of the intervention:

REFUSED COVID-19 SWAB

Detered 7/3/2020

V85176
SANFORD, ROBERT LIONEL    AS/RT
CCI E CHU 2 C20-000146    1SEP20 0500
                          25NOV83
20-282-5778A
COVID19-394
1.00EA    VCH    9/18/2020
                 Cmat Rcig

| PATIENT SIGNATURE | DATE 9/18/2020 | ☑ PATIENT REFUSES TO SIGN | DATE 9/18/20 |
|---|---|---|---|
| **WITNESS** | | | |
| NAME OF WITNESS (PRINT/TYPE) Kristie Woods, RN | | NAME OF WITNESS (PRINT/TYPE) M. Terence Jr CNA | |
| WITNESS SIGNATURE Krystta Woods, RN | DATE 9/18/2020 | WITNESS SIGNATURE M. Terry | DATE 9/18/20 |

**1. Disability Code:**
☐ TABE SCORE  ≤ 4
☐ DPH   ☐ DPV   ☐ LD
☐ DPS   ☐ DNH
☐ DNS   ☐ DDP
☑ NOT APPLICABLE

**4. Comments:**

**2. Accommodation:**
☑ Additional Time
☐ Equipment   ☐ SLI
☐ Louder   ☑ Slower
☑ Basic   ☐ Transcribe
☐ Other

**3. Effective Communication:**
☑ P/I Asked Questions
☑ P/I Summoned Information
Please check one:
☐ Not Reached*   ☑ Reached
*See chrono/notes

CDCR #: V85176
Last Name: Sanford
First Name: Robert          MI:
DOB: 11/29/63

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state law.*

**CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES

24900 Highway 202
Tehachapi, CA 93581-

| | | | |
|---|---|---|---|
| Patient: | **SANFORD, ROBERT LIONEL** | | |
| DOB/Age/Sex: | 11/29/1963 57 years    Male | CDCR #: | V25176 |
| Encounter Date: | 6/18/2020 | PID #: | 11126329 |
| Attending: | | Referring: | |

---

## Mental Health - Nursing

No data exists for this section

---

## Mental Health Documentation

Document Type:                     MHMD Progress Note
Document Subject:                  Free Text Note
Service Date/Time:                 6/20/2020 16:26 PDT
Result Status:                     Auth (Verified)
Perform Information:               Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT)
Sign Information:                  Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT)
Authentication Information:        Moustafa,Rocio Psychiatrist (6/20/2020 16:27 PDT)

MHMD notes:

New arrival. GP LOC.

R. MOUSTAFA, MD
Covering Psychiatrist

**Encounter Info:** Patient Name: ROBERT SANFORD,DOB: 11/29/1963,CDCR: V25176,FIN: 1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

---

Document Type:                     MHPC Consult Routine Progress Note
Document Subject:                  7362
Service Date/Time:                 7/17/2020 20:42 PDT
Result Status:                     Auth (Verified)
Perform Information:               Montes,Valerie Social Worker (7/17/2020 20:53 PDT)
Sign Information:                   Montes,Valerie Social Worker (7/17/2020 20:53 PDT)
Authentication Information:         Montes,Valerie Social Worker (7/17/2020 20:53 PDT)

**Inmate's Program and Level of Care**
GP, E YARD, CHL, LEVEL 1

**New Issues/Complaints**
IP was seen in housing unit in dayroom, per COVID-19 regulations IP is currently under isolation. IP was seen for a 7362 he submitted. IP reported having anxiety due to COVID-19. IP was since moved to isolation building. IP shared his concerns about "staying healthy." Ip reported begin upset as he reported he was tested for COVID-19 3 times at previous institution and was negative. He tested positive for COVID-19 at CCI. IP

**Active Consult Orders**
MHPC Consult Routine - Completed
— 07/17/20 13:00:00 PDT, 07/14/20 11:26:00 PDT, IP requests to see PC, 7 days, Schedule once within 5 business days, 07/11/20, 07/21/20 23:59:00 PDT

**Subjective/History of Present Illness**
N/A

---

Report Request ID:  42500485                          Print Date/Time:  6/7/2021 12:12 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

27

Patient:                    **SANFORD, ROBERT LIONEL**
DOB/Age/Birth Gender:    11/29/1963 /  57 years    /  Male        CDCR: V25176

| *Assessment Forms* |
|---|

*ENCTR Information :*  Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN:
1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Shinko, Cynthia SRN - 10/18/2020 11:36 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :*  No
*Temperature Route :*  Temporal
*Temperature Temporal :* .36.4 DegC(Converted to: 97.5 DegF)
*Peripheral Pulse Rate :*  68 bpm
*Respiratory Rate :*  17 br/min
*Systolic/Diastolic BP :*  135 mmHg
*Systolic/Diastolic BP :*.  81 mmHg
*Mean Arterial Pressure, Cuff :*  99 mmHg
*SpO2 :*  98 %
*SpO2 Location :*  Right hand
*O2 Therapy :*  Room air
*Pain Present :*  No actual or suspected pain
*Complications of COVID-19 :*  Other: decreased sense of smell

Shinko, Cynthia SRN - 10/18/2020 11:36 PDT

**COVID-19 Isolation Surveillance Rounding Entered On: 10/17/2020 15:27 PDT**
**Performed On:  10/17/2020 15:25 PDT by Self, Cherie RN**

**Patient Encounter Information**
*ENCTR Information :*  Encounter Info: Patient Name: ROBERT SANFORD,DOB: 11/29/1963,,FIN:
1000000311126329V25176,Facility: CCI,Encounter Type: Institutional Encounter

Self, Cherie RN - 10/17/2020 15:25 PDT

**COVID-19 Isolation Surveillance Rounding**
*Patient Refused Vital Signs :*  No
*Temperature Route :*  Temporal
*Temperature Temporal :*  36.5 DegC(Converted to: 97.7 DegF)
*Peripheral Pulse Rate :*  91 bpm
*Systolic/Diastolic BP :*  128 mmHg
*Systolic/Diastolic BP :*  90 mmHg
*Mean Arterial Pressure, Cuff :*  103 mmHg
*SpO2 :*  97 %
*SpO2 Location :*  Right hand
*O2 Therapy :*  Room air
*Pain Present :*  No actual or suspected pain
*Are previously documented symptoms worsening :*  No

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  42502998                    Print Date/Time:  6/7/2021 12:46 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

Exhibit B

Exhibit "B"

# Placement When Positioning Beds
# 6 feet or more is **NOT** Possible:

### For single beds:
- Ensure the person's laying position is head to toe.



### For bunkbeds:
- Ensure the person's laying position is head to toe on each separate bunk bed, including positioned head to toe on adjacent bunks.




### For rooms with more than 10 beds:
- Include partitions to separate beds to the fullest extent possible.



## IMPORTANT!

Please continue to exercise preventative measures to protect staff and inmates alike. Avoid close contact by maintaining social distancing, of at least six feet, and avoiding close contact. Cover your nose and mouth when coughing and sneezing along with consistent hand washing as it is one of the most effective ways to prevent the spread of germs. Avoid touching your eyes, nose, or mouth, and practice good health habits.



EXHIBIT 



December 11, 2018

Re: Mr. Robert Sanford, Correctional Training Facility – Inmate #V25176

Dear Parole Board Members:

We hope you find this letter helpful in answering an important question: *Is Mr. Sanford ready to reenter society and function as a law-abiding citizen?* We are proud to report that Mr. Sanford has successfully completed Defy Ventures' rigorous reentry preparation program, CEO of Your New Life ("CEO YNL").

Through CEO YNL, Mr. Sanford built employment readiness skills, engaged in character development and personal wellness introspection, planned for viable reentry, and learned fundamental entrepreneurial concepts. CEO YNL training, used nationally in prisons, specifically addresses criminal thinking errors such as lack of effort and responsibility through courses such as "Developing a Career Plan" and "Self-Limiting Beliefs," and combats closed channel thinking by building in repeated opportunities for feedback and revision. Notably, Mr. Sanford developed a resume, learned how to write a cover letter, and engaged with our diverse and influential group of regular volunteers in preparation for re-entering society and the workforce.

By taking the initiative to participate in Defy Ventures' CEO YNL program, Mr. Sanford will establish his credibility with potential employers and be supported in successful reentry. Defy's curriculum includes 100 courses taught by some of the country's leading experts.

Mr. Sanford is invited to apply to Defy Ventures' post-release program, which will provide:

- Strong accountability through continued online training and assignments
- Connection to pro-social activities
- Employment assistance and job placement
- Executive mentoring and coaching from business professionals, invitations to events, and a dedicated support network

We stand proudly behind the accomplishments of our participants. Defy's post-release recidivism rate of less than 5% demonstrates that our participants are committed to pursuing brighter futures and equipped with the tools to do so. We have high expectations for Mr. Sanford's success. Not everyone has the perseverance, discipline, and courage to engage in the deep self-reflection required to participate in CEO of Your New Life and continue to engage upon release. We know these traits will serve Mr. Sanford well.

We look forward to continuing Mr. Sanford's training and support. Defy Ventures will be there with encouragement and actionable advice from staff members and our post-release community of Executive Mentors whenever it is needed.

Thank you very much for your consideration. Please contact me directly with questions.

Sincerely,

Carrie Simon
Executive Director, Defy of Northern California



# Baylor University

### Waco, Texas

# Hankamer School of Business

## Certificate in Career Readiness

Presented to

### Robert Sanford

This First Day of October in the year
Two Thousand Eighteen



_Timothy R. Kayworth, PhD. Associate Dean_

_Andrew Glazier, President & CEO, Defy Ventures_

# DEFY

## UPON THE RECOMMENDATION OF THE STAFF AND BY AUTHORITY OF THE GOVERNING BOARD, THIS

# CERTIFICATE OF COMPLETION

IS CONFERRED UPON

# ROBERT SANFORD

FOR SATISFACTORILY COMPLETING THE REQUIREMENTS AS PRESCRIBED FOR INTRO TRAINING OF THE **CEO OF YOUR NEW LIFE** PROGRAM FROM DEFY VENTURES AND AWARDED WITH ALL THE RIGHTS AND PRIVILEGES PERTAINING THERETO.

13TH OF SEPTEMBER, TWO THOUSAND AND EIGHTEEN

Carrie Simon
Executive Director, Northern California

# DEFY

UPON THE RECOMMENDATION OF THE STAFF AND BY AUTHORITY OF THE GOVERNING BOARD, THIS

## CERTIFICATE OF COMPLETION

IS CONFERRED UPON

## ROBERT SANFORD

FOR SATISFACTORILY COMPLETING THE REQUIREMENTS AS PRESCRIBED FOR WHITE BELT OF THE CEO OF YOUR NEW LIFE PROGRAM FROM DEFY VENTURES AND AWARDED WITH ALL THE RIGHTS AND PRIVILEGES PERTAINING THERETO.

7TH OF NOVEMBER, TWO THOUSAND AND EIGHTEEN

Andrew Glazier
CEO, Defy Ventures

Declaration of Robert L Sanford

DECLARATION OF Robert L. Sanford

I, Robert L. Sanford, due declare under the penalty of perjury that the following statements are true under the United States Constitution and its laws, the State of California Constitution and its laws.

On June 18, 2020, I Robert L. Sanford was transferred to CCI-E facility from SCC in Jamestown, CA 95327;

On June 2020, after arriving at CCI-E-facility an outbreak of Covid-19 was already occurring at E-facility that was infecting multiple amounts of inmates

I was only quarantined at CCI-E-Fac. for about 9 days, instead of the 14 days I was suppose to be in quarantine at CCI- before being mixed in with already infected population;

On or about June 28, 2020, I was moved from Van Westen Upper to Clark Hall Lower (CHL)dorm, where it was said by medical staff that the outbreak on CCI-E-Facility happened in CHL dorm;

Where they had recently housed some inmates from Delano Reception Center, during the height of this known dangerous pandemic;

I asked the correctional staff at Van Westen before I moved, "Why am I being moved before my 14 day quarantine is up" C/O Masteriff stated: That decision is way above my pay grade and this came directly from the warden, so you would have to take your complaint up with him";

I then talked to other inmates leaving CHL dorm now moving into Van Westen they were all infected with Covid-19, the halls where in pandomonium with all the movement and mixing of inmates, my concern now was that I was in a more dangerous condition than I was at SCC dorms;

After moving into the excessively over-crowded dorm where there was less than 3 feet of distance, the dorm was deplorable with inadequate ventilation exposed asbestos, mold in the shower, rusted out beds, and soiled mattresses,

1

where it was clearly evident CCI- was refusing to comply with the CDCR Bed Positioning and Partitions when there is no possible way to social distance, and there are more than 10 beds in a room/dorm;

On July 5, 2020, I was in the dayroom when I noticed to officials entering the back door to CHL dorm, the male identified himself as C. Schuyler the Associate Warden of CCI, the other was a female name unknown JANE DOE;

this declarant at this time voiced his concerns as to the obvious clearly unsafe dangerous condition that I was being deliberately subjected to at CCI-E-Facility, where I personally explained to C. Schuyler: " Why are you and the warden subjecting me and other inmates with pre-existing medical issues to this known dangerous condition, that is injuring inmates daily, with being infected, you guy's are not following the protocols, with cleaning and disinfecting, there is no social distance, its extremely overcrowded to the point I can't even move without touching somebody in my own bed area(01 we are unsafe here in these known dangerous conditions."

C. Schuyler replied: I'm here this morning on behalf of the Warden, in order to try and stop the spreading of the Covid-19 on this facility, we should have something done within a week,"

The conversation was interrupted before the Associate Warden Schuyler could finish explaining what him and the warden were planning, by C/O Edmonds the regular officer in CHL dorm, he escorted Schuyler from the dayroom and then said to declarant this statement: "I will show you later how I deal with inmates that approach officials coming into my dorm about their health concerns" (Meaning he would issue some type of discipline).

On July 10, 2020, the whole CHL dorm was told to pack all their personal property and move to Rex Deal dorm by C/O Edmonds we were all told the move had to be done before 4:00 p.m. count, and who ever delays count will be written a RVR report,;

the Rex Deal (RD)dorm was in total shambles and in such a deplorable condition it was obviously a known dangerous condition for cross contamination of Covid-19, due to earlier that same day July 10, 2020, they just moved all the inmate

2

from RD dorm to Davis Hall dorm and Briggs Hall Dorm both located on E- Fac-
ility, where this mass movement is a known contributing factor to spreading
the Covid-19 virus within the facility, the inmates left the dorm with bed
linen that was dirty and soiled in the bed areas, clothing that was soiled,
matresses not cleaned or dis-infected, there was no ventilation, and again
absolutely no possible way to social distance the beds were less than 3 feet
apart, and the dorm had not been pre-sanitized before moving mass amounts
of inmates to this dorm was ceratinly a known dangerous condition;

the C/O in RD-dorm had little to no disinfectant to clean, his name unknown
at this time JOHN DOE, said:" The other inmates must have taken the cleaning
supplies when they moved earlier, and there was nothing more he could do
about that matter" ;

On July 11, 2020, this declarant awaken to injury without being able to smell
or taste, due to being deliberately subjected to a known dangerous condition
where cross contamination, was certainly one of the contributing factors
to increasing the spread of Covid-19 at this facility;

I the declarant immediately reported the symptoms to the nurse[s] JANE DOE
1 and JANE DOE 2, that morning, where I was given a Covid-19 test, and moved
that day to an isolation dorm;

in Van Westen low, where I was found to be POSITIVE for the Covid-19 on July
13, 2020, I was then moved again to Clark Hall low CHL, which now was the
Covid dorm, where this was known as the Covid dorm all alone due to the orgin
of of the outbreak, where declarant was deliberately subjected to a known
dangerous condition, where the warden and associate warden were absolutely
aware of the cross contamination of mixing inmates from other institutions
was putting declarant in a unreasonable risk of harm and danger of being
caused pain and suffering, the next, week, the next month or year;

This declarant filed 602 greivances, and administrative notices, warning
of these dangers that put him at an unreasonable risk of harm and danger,
whereas, he was ultimately injured a second time with being in infected at
CCI, even after Warden was put on notice declarant was a high risk medical

3

with pre-existing medical issues, and now having to be deliberately subjected to a known dangerous work enviornment that resulted in again injuring dec- larant for the second time, where declarant (I), was employed as a "American Disability Worker" where my job duties, consisted of helping disabled inmates with understanding legal documents, and general task they cannot perform due to their disability;

furthermore, the job duties required that I enter the known dangerous condi- tions, that allowed for mixing with overcrowded dorms, no bed positioning, no partitions, inadequate ventilation, asbestos exposed, dirt and filth, in the un-sanitized dorms;

I [declarant] brought these known dangerous conditions to the attention of of immediate supervisor on multiple occasions during the months of August and September C/O Bliss who said: " The warden is aware of the lack of bed positioning, and other un-safe conditions, but he's not going to spend any excess money on patch work, because he is planning on closing this facility a-head of the scheduled closing date of June 2022.";

I also brought this matter to the attention of the Inmate Advisory Council I.A.C., where the warden and facility administrators rely on these I.A.C.mem- bers issued memorandums, and reports to situations and issues related to the facility, where they had a once a month meeting with B. Cates the Warden at CCI and his facility Capatain;

On or about January 2021, the Chairman, and Sergeant of Arms, Richard Bruo- ssard,the Chairman, and Parvin Tanner, the Sgt of Arms, both were in attend- ence at this meeting with the warden, where they were both direct eye-witness- es, to the statements made by Warden B. Cates, saying: CCI-E- Facility is no longer under Covid-19 protocols, and the Bed positioning,and partitions in the dorms, are adequate, and I'm not dealing with that issue...";

there is no doubt that Warden Cates, was not aware of the known dangerous conditions that existed at his facility, was not contributing to the spreading of this virus, but was being created by his failure to act, with policy and protocols, that he refused to adhere to inorder to save cost so he could move forward with his plan for closing this facility ahead of the June 2022

4

deadline, issued for closure by Defendant Governor Gavin Newsom;

This declarant, was put in a ureasonable risk of harm and danger because this warden, wanted to cut cost, with implementing Covid—19 preventive measures, that resulted in this declarant now suffering with lack of smell, taste, coughing of blood, headaches, joint pain, all contributed to his being infected with Covid—19 "Long Haulers Effect", where declarant is now suffering aa diminished quality of life, the next, week, the next month or year.

The affidavits of Richard Bruossard and Parvin Tanner are in declarants amended complaint, to which this declaration is now incorporated, including test results that support the fact declarant suffers the injury stated herein.

I, Robert L. Sanford due declare under the penalty of perjury that the foregoing statements are true and correct.

Executed on this 21st, day of March 2022

Robert L. Sanford, Declarant

5

RECEIVED

2022 AUG -4  AM 11: 31

ATTORNEY GENERAL LOS ANGELES

Robert L Sanford
V-25726    Bed #55
Growlersburg Conservation Comp #33
8440 Longview Lane
Georgetown, CA 95634

SIERRA CONSERVATION CENTER
CA STATE PRISON GENERATED MAIL

US POSTAGE
ZIP 95327    $ 002.
02 4W
0000353643 AUG. 01.

To: Office of Attorney General
Attn: Colin A. Shaff.
Deputy Attorney General
300 South Spring Street, Suite 1701
Los Angeles, CA 90013-1230

# EXHIBIT E

## MAILING LIST

ROBERT L SANFORD
CDCR#V-25176 BH 20L
CALIFORNIA CORRECTIONAL INSTITUTION
PO BOX 107
TEHACHAPI CA 93581

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA 90013-1256

CALIFORNIA CORRECTIONAL INSTITUTION CCI
ATTN LITIGATION COORDINATOR
PO BOX 1031
TEHACHAPI CA 93581



**Superior Court of California**
**County of Kern**
**Bakersfield Department 10**

Date:    06/28/2021                                      Time:   8:30 AM - 12:00 PM

                                                        BCV-21-100477

SANFORD VS NEWSOM

### *Courtroom Staff*

| | | | |
|---|---|---|---|
| Honorable: | Bernard C. Barmann, Jr. | Clerk: | Steven J. Leyva |
| Court reporter: | . None | Bailiff: | Deputy Sheriff |
| Interpreter: | | Language of: | |

PARTIES:

**Present:**
SANFORD, ROBERT L  Plaintiff, Present

**Not Present:**
| | |
|---|---|
| ALLISON, KATHLEEN  Defendant | SHAFF, COLIN A  Attorney |
| BANICA, U  Defendant | SHAFF, COLIN A  Attorney |
| CALIFORNIA CORRECTIONAL INSTITUTION Defendant | |
| CATES, B.  Defendant | SHAFF, COLIN A  Attorney |
| DIAZ, RALPH M  Defendant | SHAFF, COLIN A  Attorney |
| NEWSOM, GAVIN  Defendant | SHAFF, COLIN A  Attorney |
| SANDERS, B.  Defendant | SHAFF, COLIN A  Attorney |
| SCHUYLER, C.  Defendant | SHAFF, COLIN A  Attorney |
| SHIESHA, S  Defendant | SHAFF, COLIN A  Attorney |
| CALIFORNIA CORRECTIONAL INSTITUTION (CCI) CDCR Litigation Coordinator | |

---

### NATURE OF PROCEEDINGS:  ORDER TO SHOW CAUSE - CRC 3.110

**Hearing Start Time: 8:30 AM**

The above entitled cause came on regularly on this date and time with parties and/or counsel appearing as reflected above.

Plaintiff appeared via audio/video communication.

The Court makes the following findings and orders:

Cause continued to August 26, 2021 at 8:30 a.m. in Department 10.

Reason for continuance: To allow plaintiff additional time to file proof of service or dismissal.

The Court authorizes plaintiff to appear telephonically by CourtCall or Zoom

Civil fast track clerk to notify CourtCall re: authorization of the Court for Plaintiff to appear telephonically.

Copy of minute order mailed to California Correctional Institution
Attention: Litigation Coordinator, as stated on the attached Certificate of Mailing.

Copy of minute order mailed to all parties as stated on the attached Certificate of Mailing."

**FUTURE HEARINGS:**

July 26, 2021 8:30 AM Demurrer
Bakersfield Department 10
Sheriff, Deputy
Barmann, Bernard C., Jr.

August 26, 2021 8:30 AM Order to Show Cause - CRC 3.110
Bakersfield Department 10
Sheriff, Deputy
Barmann, Bernard C., Jr.

September 07, 2021 8:30 AM Case Management Conference
Bakersfield Department 10
Sheriff, Deputy
Barmann, Bernard C., Jr.

*MINUTES FINALIZED BY:*    STEVEN LEYVA                                    *ON:*    JUNE 28, 2021

SANFORD VS NEWSOM                                                          BCV-21-100477

**SANFORD VS NEWSOM**
**BCV-21-100477**

## CERTIFICATE OF MAILING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Minutes dated June 28, 2021*** attached hereto on all interested parties and any respective counsel of record in the within action by depositing true copies thereof, enclosed in a sealed envelope(s) with postage fully prepaid and placed for collection and mailing on this date, following standard Court practices, in the United States mail at Bakersfield California addressed as indicated on the attached mailing list.

Date of Mailing:          June 28, 2021

Place of Mailing:          Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Tamarah Harber-Pickens**
CLERK OF THE SUPERIOR COURT

Date:  June 28, 2021

By:          *Steven Leyva*
            Steven Leyva, Deputy Clerk

2021 JUL 14  AM 11: 35
ATTORNEY GENERAL
LOS ANGELES

LOS ANGELES
ATTORNEY GENERAL
2021 JUL 14  AM 10: 26

RECEIVED

SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN
METROPOLITAN DIVISION
1415 TRUXTUN AVENUE
BAKERSFIELD, CA 93301-5215

RETURN SERVICE REQUESTED

neopost 
07/12/2021
US POSTAGE $000.51⁰

FIRST-CLASS MAIL

ZIP 93301
041L12205143



9001381256 C013

# EXHIBIT F

Robert L. Sanford
V-25176 BH-20L
California Correctional Institution
P.O.Box 107
Tehachapi, CA 93581
    In Propria Persona,

SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN

Robert L. Sanford
            Plaintiff,

    vs.

Gavin Newsom,et al.,

CASE NO.: BCV-21-100477(BCB)

NOTICE OF MOTION OBJECTING TO
DEFENDANTS DEMUR, PURSUANT TO CCP

    Now comes Robert L. Sanford, Plaintiff in this civil action, giving
Notice of Motion for Procedural Default.

                            FACTUAL ALLEGATIONS

1. Plaintiff filed a civil tort against defendants on  March 8, 2021;

2. All defendants in this civil action were served a Summons and Complaint,
on two different dates; Defendants gavin Newsom, Ralph M. Diaz, Kathleen
Allison were served on April 9th,2021 by the Sacramento Sheriff's Department
in Sacramento Ca, The defendants B. Cates, C. Schuyler, B. Sanders, S. Shiesha,
U. Baniga, California Correctional Institution, were all served on the 5th
day of May 2021, by the Sheriff's Department of Kern County;

3. On or about May 6, 2021, Defendants appointed attorney submitted a request
for a 30 day extention of time to file a answer/demur to the civil complaint
requesting that they be given 30 days until June 7, 2021;

On or about the 6,th day of May 2021, Plaintiff filed an objection to the
30 day time extention; as the Court found  good cause for defendants to have
the additional thirty days to respond to the complaint;

4. the Court gave defendants until June 7, 2021, to file an annswer/demur

5. Defendants failed to timely submit their demur in the United States Mail with pre-paid postage on June 7, 2021, as required by Procedural Court deadline, pursuant to Code of Civil procedure § 1013(a);

6. Plaintiff objects to defendants demur in its entirety, because the demur was mailed late;

7. Plaintiff now motions this Court for Procedural Default in accordance to Code of Civil Procedure § 473 (b);

8. Plaintiff received the late response on June 15, 2021, whereas defendants were only allowed five (5) calendar days under CCP §1013 (a), to have the demur mailed.; after service of document;

9. Defendants failed to meet this five calendar day deadline window, because it was not delivered to Plaintiff until the sixth (6) calendar day, therefore, forfeiting their demur, pursuant to CCP § 1013 (a);

10. Defendants are in Procedural Default in this civil    action, pursuant to Code of Civil Procedure § 473 (b);

11. whereas, the Defendants demur is forfeited for being untimely;

12. this Court no longer holds jurisdiction to render any decision of the defective demur filed by Defendants attorney;

13. this Court is obligated under Code of Civil Procedure § 473 (b) to grant Plaintiff's motion for Procedural Default in this civil action.


STANDARD OF REVIEW FOR TIMELY DEMUR

The Court has no jurisdiction to render a decision of Defendants demur where Defendants failed to file a timely demur. Zamora vs. Clayborn ; 28 Cal. 4th at 284, thus, for example, "The failure of counsel to meet 'procedural deadline' is ' a proper subject for motion 473 (b)relief. (Lee vs. Wells

Fargo Bank (2001) 88 Cal. App. 4th 1187). So, too, is "failure to timely respond to [a] request for admissions." Elston vs. City of Turlock (1985) 38 Cal. 3d 277.

Its clearly noted as to jurisdictional discovery pursuant to 26 U.S.C.S § 7422 (a); as a claim was not timely, so the court had  no jurisdiction over claim, as attorney was not dilligent, as in this instant case, no way the demur could have arrived by the filing deadline (as same day it was mailed) in the ordinary purposes of 26 U.S.C.S § 7422(a), as the court explained Service of process of service, the rule is well settled that if a letter oroperly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time and was received by the person it was addressed, see Sorrentino vs. IRS 383 F. 3d 1187 (2004).

The California Supreme Court recently observed the discretionary relief provision of section 473 (b) applies to "any judgement, dismissal, order or other proceedin." and as outlined above  is proper subject for section 473 (b) relief  Zamora Supra, 28 Cal. 4th 254.

The United States Constitution under the Fourteenth Amendment clearly states no state shall deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws; California Constitution Article 1 Section 7,(a),

standard of review for a demur that is untimely filed by Defendants is a violation of Procedural due process of state and Federal law, under the 14th Amendment, and Cal. Constitution Art. 1, Sec.7 (a). Where the courts have no jurisdiction to render a decision of defendants demur.

//

Argument

1

2      On June 15, 2021, I received a demur via the United States Mail from

3   Defendants attorney, however defendants failed to comply with the required

4   procedural deadline that was extended for thirty days by this Court, until

5   June 7, 2021, this demur was mailed six calendar days after being placed in

6   United States Postal service delivery system, as defendant attorney declared

7   under the penalty of perjury.  Defendants were only allowed five calendar

8   days to have demur delivered not six, therefore, these defendants failed to

9   submit their demur in a timely manner pursuant to California Code of Civil

10   Procedure § 473 (b), and § 1013 (a), where now Plaintiff is proper to move

11   with procedural default.

12      Moreover, the post mark on the envelope that contained the demur was

13   dated June 14, 2021, where this proves that defendants did not have this

14   Demur placed in the U.S. mail in a timely manner to avoid being untimely

15   see Exhibit "A". Plaintiff can further support this fact that this particular

16   document was untimely due to the letter received by the Attorney Generals

17   Office that was dated June 7, 2021, with a post mark of June 8, 2021 in

18   Case No. 34-2021-00296034 this notice fromthe Sacramento Office of the

19   Attorney General ███████████,

20      This Court has no jurisdiction to render a decision on the late and

21   defective demur filed by the defendants pursuant to Code of Civil Procedure

22   § 473(b),for this reason that the defendants demur is defective as to being

23   untimely this Plaintiff objects to the demur in its entirety and now moves

24   to default.

25                    CONCLUSION

26      Plaintiff has stated sufficiet facts to this Motion Objecting to Defendants

27   Demur pursuant to Code of Civil Procedure §473 (b), where this Court has no

1  juisdiction to render a decision of Defendants demur, where defendants failed

2  to comply with the procedural deadline therefore forfeiting their response as

3  being untimely pursuant to Code ofd Civil Procedure §473 (b) and §1013 (a),

4  as Plaintiff now prays this Court offer relief by setting this matter for

5  trial based upon the facts that caused Plaintiff injury with being infected

6  with Covid-19 and where Plaintiff now suffers from inability to smell pr

7  taste, or provide any other such remedy as to what this Court deems proper.

8  Date July  7, 2021.

9

10                              Respectfully Submitted

11                          By:

12                              Robert L.Sanford,   In Propria Persona

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

DECLARATION

2

I, Robert L.Sanford declare  under the penalty of perjury to the laws of

3

the United States Constitution and the California Constitution, that the

4

foregoing Notice of Motion for Procedural Default of Defendants Untimely

5

Filing of Demur,t is true and correct tothe best of my knowledge.

6

Defendants failed to have their demur filed in a timely manner in accordance

7

to the required procedural deadline of June 7, 2021, therefore violating

8

the California Code of Civil Procedure § 1013 (a) as this statute provided

9

five d calendar days after service to be delivered; Plaintiff in this civil

10

action did not receive the response until June 15, 2021, that made it six

11

calendar days after service, as this now is a defective response  by the

12

Defendants for failing to meet the procedural deadline. The envelope that

13

contained the defective demur was post marked June 10, 2021, showing that

14

Defendants did not file their response timely as this was also three days

15

after the response was due. These facts stated herein are true and correct

16

and Plaintiff now moves this Court to default pursuant to California Code

17

of Civil Procedure § 473(b), I the declarant in this civil action declare

18

that under the penalty of perjury all the facts stated herein are true and

19

correct .

20

Robert L. Sanford

21

22

23

24

25

26

27

1

CERTIFICATE OF SERVICE

2

I, Robert L. Sanford, deposited a copy of the Notice of Motion for Procedural

3 Default Pursuant to Cal. Code of Civil Procedure § 473(b) For failing to

4 File a Timely demur  in the United States Mail at: California Correctional

5 Institution P. O. Box 107, Tehachapi, CA 93581. Pre-Paid Postage to the

6 following listed below.On this 7 day of July 2021.

7

8                                    Robert L. Sanford

9

10

11

12

13 Office of California Attorney Generals
   Attn: Colin A. Shaff

14 300 South Spring Street,Suite 1702

15 Los Angeles, CA 90013

16

17

18

19

20

21

22

23

24

25

26

27

COURT PAPER

Exhibit "A"

Exhibit "A"

DOCKETING
RECEIVING

2021 JUL 12 AM 11:26

ATTORNEY GENERAL
LOS ANGELES

RECEIVED

2021 JUL 12 AM 10:28

ATTORNEY GENERAL
LOS ANGELES

Docketed
Los Angeles

JUL 12 2021

By: D4

# EXHIBIT G



**Superior Court of California**
**County of Kern**
**Bakersfield Department 10**

Date:    08/26/2021                                          Time:  8:30 AM - 12:00 PM

BCV-21-100477

SANFORD VS NEWSOM

*__Courtroom Staff__*

| | | | |
|---|---|---|---|
| **Honorable:** | Bernard C. Barmann, Jr. | **Clerk:** | Stephanie Lockhart |
| **Court reporter:** | . None | **Bailiff:** | Deputy Sheriff |

PARTIES:

**Present:**
SANFORD, ROBERT L  Plaintiff, Present via
CourtCall

**Not Present:**

| | |
|---|---|
| ALLISON, KATHLEEN  Defendant | SHAFF, COLIN A  Attorney |
| BANICA, U  Defendant | SHAFF, COLIN A  Attorney |
| CALIFORNIA CORRECTIONAL INSTITUTION Defendant | |
| CATES, B.  Defendant | SHAFF, COLIN A  Attorney |
| DIAZ, RALPH M  Defendant | SHAFF, COLIN A  Attorney |
| NEWSOM, GAVIN  Defendant | SHAFF, COLIN A  Attorney |
| SANDERS, B.  Defendant | SHAFF, COLIN A  Attorney |
| SCHUYLER, C.  Defendant | SHAFF, COLIN A  Attorney |
| SHIESHA, S  Defendant | SHAFF, COLIN A  Attorney |
| CALIFORNIA CORRECTIONAL INSTITUTION (CCI) | |
| CDCR Litigation Coordinator | |

**NATURE OF PROCEEDINGS:  ORDER TO SHOW CAUSE - CRC 3.110**

**Hearing Start Time: 8:30 AM**

The above entitled cause came on regularly on this date and time with parties and/or counsel appearing as reflected above.

The court orders as follows:

Order to Show Cause - CRC 3.110 is continued to September 07, 2021 at 8:30 a.m. in Department 10.

Reason for continuance: to be heard with case management conference

The Court authorizes telephonic appearance by courtcall by plaintiff on September 07, 2021 at 8:30 a.m.

MINUTES
Page 1 of 3

The civil fast track clerk to notify courtcall re: authorization of the Court for plaintiff to appear telephonically.

A certified copy of minutes mailed to California Correctional Institution (CCI) , Attention Litigation Coordinator as stated on the
attached declaration of mailing.

Copy of minutes are mailed to all parties as stated on the attached certificate of mailing


Audio streaming announced.


**FUTURE HEARINGS:**
September 07, 2021 8:30 AM Case Management Conference
Bakersfield Department 10
Sheriff, Deputy
Barmann, Bernard C., Jr.

September 07, 2021 8:30 AM Order to Show Cause - CRC 3.110
Bakersfield Department 10
Sheriff, Deputy
Barmann, Bernard C., Jr.

---

MINUTES FINALIZED BY:     STEPHANIE LOCKHART                                        ON:     AUGUST 26, 2021

SANFORD VS NEWSOM                                                                   BCV-21-100477

**SANFORD VS NEWSOM**
**BCV-21-100477**

## CERTIFICATE OF MAILING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Minutes dated August 26, 2021*** attached hereto on all interested parties and any respective counsel of record in the within action by depositing true copies thereof, enclosed in a sealed envelope(s) with postage fully prepaid and placed for collection and mailing on this date, following standard Court practices, in the United States mail at Bakersfield California addressed as indicated on the attached mailing list.

Date of Mailing:        August 26, 2021

Place of Mailing:       Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Tamarah Harber-Pickens**
CLERK OF THE SUPERIOR COURT

Date: August 26, 2021

By:    _____*Stephanie Lockhart*_____
       Stephanie Lockhart, Deputy Clerk

## MAILING LIST

ROBERT L SANFORD
CDCR#V-25176 BH 20L
CALIFORNIA CORRECTIONAL INSTITUTION
PO BOX 107
TEHACHAPI CA 93581

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA 90013-1256

CALIFORNIA CORRECTIONAL INSTITUTION CCI
ATTN LITIGATION COORDINATOR
PO BOX 1031
TEHACHAPI CA 93581

RECEIVED

2021 SEP -3  AM 10: 44

ATTORNEY GENERAL
LOS ANGELES

DOCKETING
RECEIVING

2021 SEP -3  AM 11: 30

ATTORNEY GENERAL
LOS ANGELES

SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN
METROPOLITAN DIVISION
1415 TRUXTUN AVENUE
BAKERSFIELD, CA 93301-5215

RETURN SERVICE REQUESTED

SANTA CLARITA CA 913

neopost

1 SEP 2021  PM 7 L

09/01/2021
US POSTAGE $000.53

FIRST-CLASS MAIL



ZIP 93301
041L12205143

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA  90013-1256

c1

BCV-21-100477

90013-125627

# EXHIBIT H



**Superior Court of California**
**County of Kern**
**Bakersfield Department 10**

Date:    09/07/2021                                                    Time:  8:30 AM - 12:00 PM

                                                                              BCV-21-100477
                              SANFORD VS NEWSOM

                              ***Courtroom Staff***

Honorable:    Bernard C. Barmann, Jr.                  Clerk:       Linda K. Hall

Court reporter:   . None                               Bailiff:     Deputy Sheriff
Interpreter:                                           Language of:

**Court Call**

NATURE OF PROCEEDINGS:  CASE MANAGEMENT CONFERENCE & ORDER TO SHOW CAUSE RE: SERVICE

Hearing Start Time: 9:15 AM

The above entitled cause came on regularly on this date and time with parties and/or counsel appearing as reflected.

Plaintiff Robert L. Sanford appeared via Court Call in Pro Per.

Counsel Colin A. Shaff appeared via court call on behalf of Defendant(s).

The Court makes the following findings and orders:

Order to Show Cause RE: Service - Dropped.  Should have been vacated California Correctional Institution was served May 2022 and proof of service filed on 07/07/2021.

Counsel for Defendant(s) states he'll be representing that Defendant as well.

Case management conference continued to 11/08/2021, at 8:30 a.m., in Department 17.

Copy of clerk's minutes mailed to all parties as stated on the attached declaration.

Minute order notice.
**FUTURE HEARINGS:**
November 08, 2021 8:30 AM Case Management Conference

---

*MINUTES FINALIZED BY:*    LINDA HALL                          *ON:*   SEPTEMBER 08, 2021

MINUTES
Page 1 of 3

## CERTIFICATE OF MAILING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the *Minutes dated September 08, 2021* attached hereto on all interested parties and any respective counsel of record in the within action by depositing true copies thereof, enclosed in a sealed envelope(s) with postage fully prepaid and placed for collection and mailing on this date, following standard Court practices, in the United States mail at Bakersfield California addressed as indicated on the attached mailing list.

Date of Mailing:      September 08, 2021

Place of Mailing:     Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                        **Tamarah Harber-Pickens**
                                        CLERK OF THE SUPERIOR COURT
Date:  September 08, 2021


                              By:     _____Linda Hall_____  _____

                                        Linda Hall, Deputy Clerk

                                        Signed: 9/8/2021 11:10 AM

Certificate of Mailing

SANFORD VS NEWSOM
BCV-21-100477

## MAILING LIST

ROBERT L SANFORD
CDCR#V-25176 BH 20L
CALIFORNIA CORRECTIONAL INSTITUTION
PO BOX 107
TEHACHAPI CA  93581

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA  90013-1256

CALIFORNIA CORRECTIONAL INSTITUTION CCI
ATTN LITIGATION COORDINATOR
PO BOX 1031
TEHACHAPI CA  93581

# EXHIBIT I

U.S. POSTAGE >> PITNEY BOWES

ZIP 93561 $ 000.53°
02 1W
0001384585 OCT. 25. 2021

To: Office of Attorney General
ATTN: Colt Shaff, Deputy Attorney General
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013

5000138425 C013

**California Correctional Institution**

Name: Robert L. Sanford

CDC #: V75176

Facility D Building B Bed 34L

P.O. Box 608

Tehachapi, CA 93581

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION INDIGENT INMATE MAIL**

Facility Post Office Boxes
Facility A - P.O. Box 1902
Facility B - P.O. Box 1906
Facility C - P.O. Box 1905
Facility D - P.O. Box 608
Facility E - P.O. Box 107
Administration – P.O. Box 1031

Robert L. Sanford
V-25176 D-#3=34L
California Correctional Institution
P.O. Box 608
Tehachapi, CA 93581
     In Propria Persona

SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN

Robert L. Sanford
          Plaintiff

          vs.

     Gavin Newsom, et al.,
          Defendant

Case No.: BCV-21-100477-BCB

EX PARTE MOTION REQUESTING A TEN (10)
Day EXTENTION OF TIME TO FILE OBJECTION
TO DEFENDANTS DEMUR OF PLAINTIFF'S
FIRST AMENDED COMPLAINT

Now Comes Robert L. Sanford, Plaintiff in above Case No: BCV-21-100477
BCB, submitting this instant motion Requesting that Plaintiff be given a
additional Ten (10) days to file an Objection to Defebndants Deemur of
Plaintiff's first amended Complaint, whereas, plaintiff received the Deemur
here at CCI on October 18, 2021, and now ask for this extention for good
cause, where  Plaintiff is currently being housed here at CCI-D-facility  for
temporary housing, as this places plaintiff in transitional placement pending
transfer to appropriate housing in accordance to his custody level (I),
Plaintiff is also seeking Third Party information regarding substantial facts
related to the issues involved in this First Amended Complaint, as this will
take approximately (4) days for the information to be received and another (5)
five days to mail the information back to Plaintiff here at CCI, that don't
deliver legal mail to inmates the same day its received from the Postal
Delivery, therefore, giving [us] mail later than actuall recorded on delivery
log here at CCI.

     Plaintiff is requesting for a 10 day exte..ion for good cause in Order.

to adequately address the demur with varifiable facts and information from the third party agency involved, and with Plaintiff being held in temporary housing out of his custody level here at CCI-D-yard Plaintiff is unable to access library and research due to the excessive overcrowded conditions that ultimately forced Plaintiff into Temporary housing out of custody level by CCI- Facility adminstrators, that are responsible for the injury that brought rise to this civil action, primarily from the lack of social distancing and their failure to comply with Covid protocols, and refusal to place "partitions between the bunks has led to Plaintiff being injured and for the reasons stated herein this motion Plaintiff shows good cause for ten day extension of time granting this request. That this Objection will Be filed on or before November 8th, 2021.

Date: October 24,2021

Respectfully Submitted,

By:

Robert L. Sanford,   In Propria Persona

CERTIFICATE OF SERVICE

I, Robert L. Sanford, deposited a copy of Exparte Motion Requesting Ten (10) Day Extention of Time To File an Objection To Defendants Demur Regarding Plaintiff's First Amended Complaint,in the United States Mail at: California Correctional Institution, Po. Box 608, Tehachapi, CA 93581, Pre Paid postage. To the following Person[s] listed below. On this 24 day, of October 2021.

By: _____

Robert L. Sanford

OFFICE OF THE ATTORNEY GENERAL
Attn: Deputy Attorney General
Colin Shaff
300 S. Spring Street, Suite 1702
Los, Angeles, CA 90013

3

# EXHIBIT J

MC-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert L. Sanford CDCR # V-25776 <br> California Correctional Institution <br> P.O. Box 608 <br> Tehachapi, CA 93581 <br> TELEPHONE NO.:                    FAX NO. *(Optional):* <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* IN Propria Persona | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Kern
STREET ADDRESS:  1415 Truxtun Ave
MAILING ADDRESS:  Bakersfield, CA  93301
CITY AND ZIP CODE:
BRANCH NAME:  Superior Court

| PLAINTIFF/PETITIONER: Robert L. Sanford | CASE NUMBER: <br> BCV-21-100477 |
|---|---|
| DEFENDANT/RESPONDENT: Gavin Newson, et al, | JUDICIAL OFFICER: <br> Hon. B. Barham |
| **NOTICE OF CHANGE OF ADDRESS OR OTHER** <br> **CONTACT INFORMATION** | DEPT.: <br> 10 |

1. **Please take notice** that, as of *(date):*

   [X] the following self-represented party or

   [ ] the attorney for:

   a. [X] plaintiff *(name):* Robert L Sanford

   b. [ ] defendant *(name):*

   c. [ ] petitioner *(name):*

   d. [ ] respondent *(name):*

   e. [ ] other *(describe):*

   has **changed his or her address** for service of notices and documents or other contact information in the above-captioned action.

   [X] A list of additional parties represented is provided in Attachment 1.

2. The **new address** or other contact information for *(name):* Robert L. Sanford

   is as follows: Sierra Conservation Center

   a. Street:  5150 O'Byrnes Ferry Rd

   b. City:  Jamestown, CA 95327

   c. Mailing address *(if different from above):*

   d. State and zip code:

   e. Telephone number:

   f. Fax number (if available):

   g. E-mail address (if available):

3. **All notices and documents** regarding the action should be sent to the above address.

   Date:  11-08-2021

   Robert L Sanford.
   (TYPE OR PRINT NAME)                                          ▶ _____
                                                                        (SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 2

Form Approved for Optional Use <br> Judicial Council of California <br> MC-040 [Rev. January 1, 2013]

**NOTICE OF CHANGE OF ADDRESS OR OTHER**
**CONTACT INFORMATION**

Cal. Rules of Court, rules 2.200 and 8.816
*www.courts.ca.gov*

MC-040

| PLAINTIFF/PETITIONER: Robert L. Sanford | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Gavin Newsun, et al. | BCV-21-100477 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF CHANGE OF ADDRESS OR OTHER CONTACT INFORMATION

*(NOTE: This page may be used for proof of service by first-class mail of the Notice of Change of Address or Other Contact Information. Please use a different proof of service, such as Proof of Service—Civil (form POS-040), if you serve this notice by a method other than first class-mail, such as by fax or electronic service. You cannot serve the Notice of Change of Address or Other Contact Information if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. At the time of service, I was at least 18 years old and **not a party to this action.**

2. I am a resident of or employed in the county where the mailing took place. My residence or business address is *(specify):*
   CCI P. O Box 608, Tehachapi, CA 93581

3. I served a copy of the *Notice of Change of Address or Other Contact Information* by enclosing it in a sealed envelope addressed to the persons at the addresses listed in item 5 and *(check one):*
   a. [X] deposited the sealed envelope with the United States Postal Service with postage fully prepaid.
   b. [ ] placed the sealed envelope for collection and for mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

4. The *Notice of Change of Address or Other Contact Information* was placed in the mail:
   a. on *(date):* 11-08- 2021
   b. at *(city and state):*

5. The envelope was addressed and mailed as follows:
   a. Name of person served: Colin A. Shaff         c. Name of person served:
      Attorney General Office
      Street address: 300 S. Spring St. Suite 1702   Street address:
      City: Los Angeles  90013                       City:
      State and zip code: CA 92                       State and zip code:

   b. Name of person served:                         d. Name of person served:

      Street address:                                Street address:
      City:                                          City:
      State and zip code:                            State and zip code:

   [ ] Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 11-08-2021

Robert L. Sanford                          ▶ By _____
(TYPE OR PRINT NAME OF DECLARANT)              (SIGNATURE OF DECLARANT)

---

MC-040 [Rev. January 1, 2013]

**NOTICE OF CHANGE OF ADDRESS
OR OTHER CONTACT INFORMATION**

Page 2 of 2

DOCKETING OUTGOING
2021 NOV 12  PH 3: 32
ATTORNEY GENERAL
LOS ANGELES

DOCKETING
RECEIVING
2021 NOV 12  AM 11: 50
ATTORNEY GEN.
LOS ANGELES

2021 NOV 12  AM 10: 58

**California Correctional Institution**

Name: _Robert L Sanford_

CDC #: _V-28776_

Facility _D_ Building _3_ Bed _34_

P.O. Box _618_

Tehachapi, CA 93581

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION INDIGENT INMATE MAIL**

<u>Facility Post Office Boxes</u>
Facility A - P.O. Box 1902
Facility B - P.O. Box 1906
Facility C - P.O. Box 1905
Facility D - P.O. Box 608
Facility E - P.O. Box 107
Administration - P.O. Box 1031

SANTA CLARITA CA
9 NOV 2021 PM 7 L



U.S. POSTAGE >> PITNEY BOWES

ZIP 93561   $ 000.53⁰
02 1W
0001384585 NOV. 09. 2021

To: Attorney Generals Office
Attn: Colin A. Shaff. Deputy Attorney Gen.
300 S. Spring Street, suite 1702
Los Angeles, CA 90013-

90013-125627



Clo... [handwritten]

**FREE MAIL**

Form 1819 Notification of Disapproval

This envelope is sent as Uncensored, Privileged, and Confidential mail. If the contents do not pertain to the addressee or is not of a privileged or confidential nature, please return to:

California Correctional Institution
P.O. Box 1031
Tehachapi, CA 93561
ATT: Mailroom Sergeant

11/8/21 [handwritten]

## UNAUTHORIZED ITEMS WITHIN INMATE MAIL

If mail contains these items, it will result in an issuance of a CDC.

- No padded envelopes, cardboard, bubble wrap.
- No musical greeting cards, video's, CD's, or cassette tapes.
- No cash, No pens, pencils, or markers.
- No identification cards, credit cards, bank cards, phone cards, etc.
- No polaroid photographs, negatives, slides, or photo albums. No photos depicting drugs and/or drug paraphernalia, No photos drawings, magazines, and/or pictorials displaying frontal nudity of either genoe... Nothing which depicts, displays or describes sexual penetration or sexual acts.
- No gang affiliated material, hand gestures, or signs.
- No items of clothing, food, hard plastic, metal, wood items, magnets, rubber, glue and/or glitter.
- No tattoo patterns or tracing patterns. No jewelry.
- No mail containing unknown substance, any powder, liquid and/or solids.
- No unauthorized correspondence between inmates/parolees.
- No lipstick, perfume, cologne, and scents on the contents or envelope.
- No items which may be deemed a threat to the safety and security of the institution, or any correspondence deemed circumvention of the mail policies and procedures.
- All incoming mail must have full return address.

## AUTHORIZED ITEMS WITHIN INMATE MAIL

- 40 postage stamps/40 envelopes
- Letters/greeting cards
- 10 photographs
- Checks/money order with Inmate's name and CDC#
- Writing paper (white/yellow lined only)
- Publications (books, magazines, newspapers) **MUST** come directly from vendor
- For funds to be mailed directly to Inmates account, send through www.jpay.com or (800) 574-5729

# EXHIBIT K

1  Robert L. Sanford
   V-25176 D-3-34L
   California Correctional Institution
2  P.o. Box 608
   Tehachapi, CA 93581
          In Propria Persona

3

4

5                    SUPERIOR COURT OF CALIFORNIA
                           COUNTY OF KERN
6

7  B Robert L. Sanford              Case No: BCV-21-100477 BCB
          Plaintiff,
8  vs.                              PLAINTIFF'SS OBJECTION TO DEFENDANTS
                                    DEMURRER TO COMPLAINT; MEMORANDUM
9  Gavin Newsom, et al.,            OF POINTS AND AUTHORITIES

10

11     Now comes Robert L. Sanford, Objecting to Defendants Demurrer to Complaint

12  ; and Memorandum of Points and Authorities in its entirety outlined in the

13  following:

                    PLAINTIFF OBJECTS TO DEMURRER REGARDING
14                  DEFENDANTS ALLEGATIONS THAT PLAINTIFF DID
                    NOT COMPLY WITH THE GOVERNMENT CLAIMS ACT.
15

16  (1) Plaintiff Robert L. Sanford now objects to defendants demur, regarding

17  allegations-that Plaintiff failed to comply with government Claims,

18  2) as Plaintiff can clearly show in evidence code §664 that, on July 10, 2021

19  Plaintiff corrected the Government Claims complaint, by filing a correction

20  complaint; statinting

21  £3) "Due to Appellant (plaintiff) being forced to live in unsafe condition [I]

22  contracted Covid-19 at California Correctional Institution where I can no longer

23  smell or taste, due to the Covid-19 infection from the lack of social distance

24  and "partitions' between buks in dorm area...."

25  (4) Plaintiff further outlined in Government Claim that "CCI" refused to place

26  "Partitions" between bunk s - to-prevent-the-spread of-Covid-19, along with being

27  forced 'mass movements' without properly cleaning dorms, led to Plaintiff beigg

1  infected"

2  (5) These facts are supported by the Gov. Comp Claim, submitted by Plaintiff

3  on July 10,2021, in order to cure in-advertent mix-up of using SCC appeal

4  that was filed prior toPlaintiff arriving at CCI on June 28, 2020,; this fact

5  shows Defendants [Demurer] fails as to Plaintiff filing a Government Claim

6  sent along with fee waiver on July 12, 2021 as Plaintiff did submitt this claim

7  claim. See Exhibit"A" (Gov. Claim, Inmate Statement Report)

8  (6) Whereas, the Gov. Claim addresses the same set facts, clearly outlining

9  the social distance and lack of Partitions that ultimately caused Plaintiff

10  irreparable harm from a known dangerous condition that Defendant[s] (A)

11  Warden at CCI Brian Cates,willfully and deliberately ignored and was aware

12  of the danger the Covid-19 virus placed Plaintiff in, without acting and

13  ordering the installation of Partitions that was imolemented by the Department

14  CDCR Policy under Covid-19 Protocol";

15  (7) Whereas,Cates failed to have these partitions placed in dorms with more

16  ten (10)a beds or more id. in Complaint at;PP. 2,3, paragraphs 11,12, and

17  also see supporting Exhibits "A" "B" "C".

18                    PLAINTIFF REQUEST THIS COURT TAKE JUDICIAL NOTICE

19  (8) Of Sworn Affidavits in First Amended Complaint,from the Chairperson of

20  the Inmate Advisory Council (IAC) whereas, this inmate council; meets with

21  the warden, Captain and all administrators once amonth to get updates and

22  advisory notes regarding policy, conditions, and changes to regulations rules

23  etc. The affidavits that Plaintiff is requesting this Court take Judicial

24  Notice of,are addressing the facts of the protocols regarding  the specific

25  and direct eye-witnesses to statements made by Defendant Brian Cates (A)

26  Warden CCI, claiming CCI is no longer under Covid-19 protocols.";

27  (9) this question was asked during a IAC meeting, as this Defendant's willfull

1   neglect of the positioning of the bunks at CCI, where a direct eyewitness has

2   now sworn under penalty of perjury to the fact Brian Cates statements during

3   a wardenns meeting with the IAC at CCI- E-Facity, regarding conditions and

4   circumstances directly related to the Covid-19 issues that injured this person

5   on the two different dates of July 2020, amd October 2020, as its a fact the

6   Warden was clearly and absolutely awrae of the dangerous condition that was

7   infecting inmates along with the fact he wass not going to combkl with tyhe

8   Covid-19 Protocols,regardless of how many inmates were injured due to his not

9   acting with placing "partitions" between the bunks in order to prevent the

10  speead of Vovid-19atat- CCI. His failure to act and his wilful neglect not

11  to do so is beyond dispute regarding this matter, where he directed and placed

12  plaintiff in a known unreasonable risk of danger and harm, whereas,Plaintiff

13  being a dependent adult under his custodial care had no way of protecting his

14  self from this condition, that has now injured him with irreparable injury.

15  These facts now being submitted for this Court to take "Judicial Notice"

16  as supporting facts in regards to known danger that B. Cates wasáwrae of and

17  willfully neglected his duties as custodian of dependent adult under his care

18  refusing to act and comply with Covid-19 protocols, therefore with his deliberate

19  refusal to act, should not allow defendants demur to stand, and now have

20  this complaint and first amended complaint to proceed for trial on the  facts

21  now being submitted regarding the Defendant[s] in this amended complaint.

22  10.)    Plaintiff also addresses deefendants demur where Plaibtiff objects to

23  defendants demur in its entirety, whereas Plaintiff has brought facts to the

24  attention of this Court in the original complaint and the amended complaint

25  regarding the named deefendant[s] B. Cates regarding his direct involvemnet

26  with the mass movement of dependent adults under his custodial care at CCI

27  where he autorized more than 100 inmates at time be moved from one dorm to

1  another, however, before moving inmates [dependent adults] into these dorms that

2  housed over 100 dependent adults there was now cleaning protocols done or taken

3  care of, where its a known dangerous condition to CDCR and its protocols to

4  prevent the spread of Covid-19 by first sterilizing and sanitizing the previous

5  areas that were being used by dependent adults (inmates) before allowing other

6  dependent adults with known pre-existing medical conditions to be placed in

7  a contaminated area that creates another dangerous condition, where this is

8  a fact that happened on July 10, 2020, that injured Plaintiff when they moved

9  more than 100 inmates on July 10, 2020, at approximately 9 a.m. until about

10  3 p.m, and on trhis same day they moved Plaintiff from Clark Hall low to

11  Rex Deal dorm this same day that they (CCI staff under direction of B. Cates

12  and his staff administrators) moved 100 inmates from Rex-Deal dorm to Davis

13  Hall dorm, and at approximately 3:30 p.m that same day Plaintiff was forced

14  ~~Hall~~ to move from Clark Hall low dorm to the containimatfed Rex deal dorm

15  that was not sterilized, sanitized, and cleaned at no point before forcing

16  dependent adults into a known dangerous and contaminated infected area, goes

17  beyond any reasonable persons actions with, placing dependent adults with pre

18  existing medical conditions such as Plaintiff, having ashma, anemia, alpha

19  thalasemia, whereas, now plaintiff is suffering from "longhaulers effect"

20  from the infection he contracted on july 10-12, 2020, in rex Deal Dorm see

21  supporting facts to plaintiff's medical reports confirming this infection

22  occurred and now continues to injre plaintiff. See Exhibit "   ",

23  For the reasons statedherein  , thifis] set of facts, defendants demur fails

24  also, regarding known dangerous condition, where defendants demur does not

25  stand, and Plaintiff objects to their demur in its entirety.

26  11.)    Whereas, the facts that caused the injury to Plaintiff, with the

27  ignored protocols of CDCR, and the Governor of California who is the leader

COURT PAPER
STATE OF CALIFORNIA
STD 113 (REV 3-95)

CSP 1511394

the Department and its directives, Agents of the department failed to comply

with these protocols, while knowing this placed defendent adults in their care

in serious and known dangerous condition, and Defendant Newom , and his

appointed agents failed to act, therfore causing plaintiff's injury as a result

for failing to uphold fiduciary duties, to comply with Covid-19 protocols,

As this also demonstrates how Defendants demur fails to Plaintiff's amended

Complaint, and should be allowed to proceed on facts and supporting evidence

being submitted in Plaintiff's objection to Defendants[s] Demurer of Plaintiff's

first amended Complaint, Plaintiff Objects to any and all allegations in its e

entirety and this matter should be set for trial.

12.) Plaintiff has raised cognizable issues showing why these Defendant[s]

should are held responsible for the injuries that Plaintiff now suffers from

regarding their failure to act with following Covid-19 protocols,that could

have prevented the spread of Covid-19 that caused plaintiff this injury at

CCI,where Plaintiff has now addressed every defect regarding the matter of

Gov. Claim being filed against SCC, instead of CCI, although the institutions

both are under CDCR directives and failed to comply with protocols, and the

defendants are relying on technical defects in teir demurrer instead of

defending the facts that caused plaintiff his injuries, as the defendants are

c;learly at fault for the injury and should be held accountable in a trial of

the facts regarding this matter, as to why they refused to place "partitions"

between the Bunks, that CDCR relied upon as policy to help stop the spread of

Covid-19, while allowing the positioning of beds policy to be ignored by CDCR

and its appointed agents to act with reckless dis -regard and wilful neglect

with addressing a known dangerous condition that is ultra-hazardous and caused

injury to the Plaintiff. Where Defendants demurrer should fail at this point

in its entirety, allowing Plaintiff to continue withg trial proceedongs.

13.)  Plaintiff has been injured due to the Covid-19 infection, that was suppose to be prevented from spreading within the institution at CCI but there was not protective measures taken when Plaintiff was forced to move into dorms that were not in compliance with the Covid-19 protocol regulations issued by the CDCR administrators regarding "Bed positioning" and "partitions" between the bunks that had more than 10 beds in a room/dorm, the dorms that Plaintiff was forced to move in on July 10, 2020, was not even properly cleaned in accordance to cleaning protocols that were implemented by the Department and Center of Disease Control (CDC), where Defendant B. Cates was aware of and knew this was a dangerous condition that ultimately injured Plaintiff where he now suffers from the Long Haulers Effect of Covid-19, where now Defendants Demurrer to Plaintiff's First Amended Complaint should Fail with Defendants attempting to claim Plaintiff failed to sate a cognizable claim, as its clear Plaintiff is a dependent adult and has a right to reasonable protection from aknown dangerous condition of Covid-19 when CDCR the agency that makes policy for CCI to follow regarding "Bed positioning" and "Partitions" and where Defendant B. Cates knowingly and willfully ignored the the risk of this deadly virus and failed to act in compliance with having partitions placed in the dorms to help prevent the spread of Covid-19 is policy within the Department and Cates allowed Plaintiff to be injured in this known dangerous condition, Demurrer fails, and Plaintiff should be allowed to continue with trial on the facts of his ongoing injuries, that have no cure.

14.) The Covid-19 Protocols were not complied with at all during the time this Plaintiff was housed at E-Facility at CCIunder the custodial care of Brian Cates where CDC on its web site Prevention, Prevent Getting Sick, https//www.cdc.gov / coronavirus/2019-nconv/ prevent-getting-sick/how-covid-spreads.html This Defendant was well aware of all the CDC and CDCR policies that involved

1    this prevention and the implemented policy of CDCR on Bed positioning, and

2    partitions see amended complaint reagrding this at Exhibit "A"

3    Defendants demurrer to Plaintiff's first amended complaint should fail in its

4    entirety, because Plaintiff has raised a cognizable claim showing with clear

5    facts that CCI under the direction of B. Cates as Warden did not act with a

6    reasonable act to prevent the spread of a known dangerous condition of Covid-19

7    that injured Plaintiff. Demurrer fails and this case should be allowed to have

8    facts presented at trial.

9

10                      CONCLUSION

11

12        Plaintiff has plead sufficient facts in his Objection to Ddefendants

   demurrer to Plaintiff's first amended complaint where now this objection to

13    the allegation presented by defendants should fail in its entirety because

14    Plaintiff has a cognizable claim  that is ready for trial

15

16    December 28, 2021

17

18                            Respectfully Submitted,

19                            Robert L. Sanford, In Pro Pria Persona

20

21

22

23

24

25

26

27

POINTS AND AUTHORITIES

Plaintiff now brings to the attention of this Court pursuant to Civil Code and procedure § 473 (a)(1) "the court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party; or by correcting a mistake in the name of the party, or a mistake in any other respect; and may, upon like terms, enlarge the time to answer the demurrer...."

Whereas, Plaintifff inadvertently made a mistake on the original Government Claims form by putting SCC instead of CCI as the the place of injury; here Plaintiff files another Government Claims form addressing the exact cause of action as to the place of the injury, and how the injury was caused to the Government Claims, since CCI is a state agency and Plaintiff is in Propria persona as a incarcerated person bringing this civil action against the CDCR subsidiary agency CCI, regarding its failure to comply with Covid-19 protocols within a detention facility, where Defendant Brian Cates the (A) Warden at CCI had first hand knowledge of a known dangerous condition and policy that was in place to prevent the spread of this known dangerous condition of Covid-19 at the prison under his custodial care and jurisdiction, where in Phillins vs. Desert Hospital Dist, 49 Cal. 3d 699 (1989)"...the court considered whether a notice of intention to commence an action activated the notice and defense waiver provision. It held that a public entity had to treat such notice that alerted it to the existence of a claim for monetary damages and an impending lawsuit, but failed to comply substantially with the claim presentation requirements of the act, as a defective claim that triggered the operation of the torts claim provisions..." , in addition, [unless] inexcusable neglect is clear the policy favoring trial on the merits prevails see Elston v. City of Turlock 38 Cal. 3d 235

1   Defendants demurrer alleging the inadvertent mistake of filing the wrong prison

2   on the Gov. Claims form, has now been corrected with a new filing by Plaintiff

3   naming CCI in the claim, therefore satisfying the defect. As to the actual

4   cause of Plaintiff's injury rgarding the defendant's failure to act"and that

5   Defendan[s] chose this course in conscious disregard of an excessive risk to

6   [prisoner's] health." see jackson vs. McIntosh, (9th Cir. 1996) 90 F.3d. 330, 332

7   ; see also Valentine vs. Collier 455 F. Supp. 3d 308 "The enviornment is a

8   dormitory, making social distancing in the living quarters impossible. And the

9   conditions are now eceptionally dire, in that Covid-19 is known to have already

10  entered the facility...", as this fact directly relates to this ameded  complaint

11  where Defendant B. Cates chose to ignore Covid-19 protocols of having "partitions"

12  placed btween beds, regarding the CDCR policy protocols implemented regarding

13  the positioning of the beds in dorms. See Exhibit "A", and "C" regarding

14  the direct eyewitnesses in their own affidavit who witnessed B. Cates wilfully

15  ignoring Covid-19 protocols. CCI was and is still under Covid-19 protocols with

16  procedures that should were suppose to be adherd to in accordance to Kern County

17  Health, and California Health Care Services. Whereas, in Plata v. Newsom 4:01

18  CV-01351-JST "Joint Management Conference Statement"  clearly outlined the

19  institutions dangers with overcrowding dorms that would result in inmates being

20  infected with Covid-19, where this update and information was certainly made

21  available to (A) Warden B. Cates, where he was fully aware of the dangers of

22  Covid-19 when Plaintiff was transferred to CCI on June 18, 2020, and not even

23  quarantined for 14 days before B. Cates ordered institutional transfers and

24  increased movement that elevated the risk of transmission of Covid-19, the

25  defendant was also aware that inmates were not cohorted as the defendants had

26  claimed in Case No.: 01-1351-JST, including the fact no social distancing was

27  at all available and B. Cates refused to act on positioning the beds as the

1  management safety protocols called for, with having "Partitions" placed in
2  between the bunk beds in (dorms) or room with ten (10) beds or more, as this
3  Plaintiff pointed out in both dorms at CCI, Clark Hall Lower, and Rex Deal,
4  both have over 10 beds, along with the fact Rex Deal dorm was not sanitized or
5  cleaned earlier that day on July 10, 2020 by the first mass movement of inmates
6  that were moved out earlier that day to Davis Hall on CCI- E- Facility, the
7  protocols were ignored with the cleaning and Covid-19 protocols, on this day
8  and resulted with the transmission of Covid-19 that injured Plaintiff that
9  he was unable to smell or taste the following day, the defendants in this case
10  knowingly ignored the safety protocols, of bed positioning and, stated openly
11  to the I.A.C. Chairman and his Seargeant of Arms, during a Wardens meeting his
12  exact intentions and denial as to not adhearing to protocols regarding the
13  implemented bed policy by CDCR See Exhibit "A".and supporting facts in eye
14  witness accounts of I.A. C. in affidavit see amended complaint at Exhibit"C"
15  "Due to CCI population increase in June 2020, where there was an increase in
16  stress, tension, communicable diseases, and a high increase in confrontations
17  between inmates" as this was the case in CCI Clark Hall low, where a situation
18  was decided by "Toussaint v. Yockey (9th Cir. 1984) 722 F.2d 1490, in which
19  the court affirmed a determination of an eighth amendment violation due to
20  overcrowding when it " endangers violence, tension, and psychiatric problems"
21  i.d at Toussaint v. Yockey 1492. See also Akao v. Shimoda(1987) 832 F.2d 119
22  At all times during the forced movement of Plaintiff the defendant[s] were
23  absolutely aware of the dangerous ultra hazardous condition that ultimately
24  injured Plaintiff with contracting Covid-19 , where itsb no doubt that this
25  defendant B. Cates failed to act and place "partitions" in the dorms, while
26  knowing this was implemented to help stop the spread of Covid-19 within the
27  facility, where at this time was running rampant throughout the dorms at CCI.

1  As the question of qualified immunity was raised by Defendants,where this

2  question must answer two (2) questions by the court,:(1) was the law governing

3  the state official conduct clearly established; : (2) Under the law couldaa

4  reasonable state official have believed his conduct wsa lawful? To determine

5  whether the law is clearly established the court cannot look at general

6  principles of law, but must under take ,an inquiry in light of the specific

7  context of the case. The relevant dispositive inquiry is , whether it would

8  be clear to a reasonable official that the conduct was unlawful in the situtua-

9  tion  being confronted, if the law did not put officials on notice  that their

10  conduct would be clearly unlawful, summary judgement based on qualified

11  immunity is appropriate. However, this is not the case in this instant matter

12  concerning the failure to act to a known dangerous condition of Covid-19 that

13  was injuring inmates at CCI in accordance to ' Saucier v. Katz 533 U.S. 194, 201

14  150 LEd. 2d 272, 121 S. Ct. 2151 (2001) ""The relevant dispositive imquiry...

15  is whether, if be clear to a reasonable [official] that hisconduct was unlawful

16  in the the sitituation he confronted." Starr v. Baca 652 F.3d 1202, 1207

17  (9th Cir 1989) "Rather the requisite causal connection is established when a

18  supervisor set[‡] in motion a series of acts by otheres ' or knowingly refuses

19  to terminate a series of acts by others which [the supervisor] may also be

20  held liable for his own culpable action or inaction in the training, supervision

21  or controlof his subordinates..." The existence of actual injury is indisputable,

22  where CDCR/CCI continues to operate a ultra-hazardous condition, where the

23  doctrine of the ultrahazardous activity provides that one who undertakes  an

24  ultrahazardous activity is liable toevery person whois injured as a proximate

25  result of that activity, regardless of the amount of care he uses." see

26  Pierce v. Pacific  Gas & Electric Co (1985) 166 Cal. App 3d. 68, 85. CCI and

27  Defendant B. Cates was at all times aware of this dangerous ultrahazrdous condition.

1  California Executive Branch , who implements and authorizes policy and

2  protocols, over CDCR and its 34 other agencies, that are under custodial care

3  of dependent adults and elderly (inmates) in their care, as this is and was the

4  case with Plaintiff on June 18, 2020, at the immediate height of the pandemic

5  that is killing inmates "dependent adults" in the case and jurisdiction of CDCR,

6  who have been entrusted with the policy and authority to adhere to any and all

7  protocols that put dependent adults at any unreasonable risk of danger of harm

8  Defendant gavin Newsom was awrare, of these facts during and at the time of the

9  violations of his authorized policy and preventive protocols for detention

10 centers (prisons) of Covid-19 spreading within the prison system, where it was

11 clearly advised and agreed upon by the California Health Caree Services were a

12 aware of the dangers  of "mass movements of high risk inmates (dependent adults)

13 btween institutions with outbreaks,aswell as those with outbreaks  was certainly

14 placing dependent adults in a significant risk of danger of transmitting or being

15 infected with the transmission of Covid -19 between institutions,as Plaintiff

16 was deliberately placed in a known dangerous condfition when he was transferred

17 from SCC to CCI on June 18, 2020,and was then infected with Covid19 within the

18 first 23 days of being housed in a contaminated outbreak situation at CCI that

19 was allowed to happen by the Governor now named in this amended complaint as

20 Defendant Gavin Newsom, where he failed to act a reasonable person in his same

21 position  and act with not allowing "mass movement" within institutions, and

22 between institutions,where he was fully aware of the significant risk of danger

23 that this presented regarding the outbreaks of Covid-19, that ultimately caused

24 Plaintiff irreparable injury from "long haulers effect".

25 With these facts clearly supported by the record and policy of CDCR,where these

26 implementations regarding Covid-19 were never adherd to by Agents/Custodians

27 appointed by Governor and its control of the Executive Branch where policy of

1  the Department was absolutely refused to be complied with in reagrds to the

2  positioning of beds, and partitions, inorder to prevent the spread of the

3  Covid-19 within the institution at CCI, that injured Plaintiff on July 10, 2020,

4  and again on October 2nd 2020, due to the failure to act of defendan[s].

5  Based upon the foregoing points and authorities in this objection to

6  defendants deurrer of Plaintiff's first amended complaint, defendants demurrer

7  fails, and should be dissmissed in its entirety.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## DECLARATION

I, Robert L. Sanford, the Plaintiff in this instant civil action due declare under the penalty of perjury under the United States Constitution and its laws, and the California Constitution and its laws that the following is true and correct, whereas, Plaintiff was injured with Covid-19 during the months of July and October 2020, while under the custodial care of Defendant Brian Cates Warden(A) at California Correctional Institution (CCI), in the city of Tehachapi, in the county of Kern, where Plaintiff had been forced to mass movements into dorm that were not properly sanitized under Covid-19 protocols in order to prevent the spread of the deadly virus during the height of the Covid Pandemic, where dependent adult Sanford with known pre-existing medical conditions was forced into a known dangerous condition by B. Cates, and injured to the point he will never regain the quality of life he once had before being placed in this known dangerous condition by B, Cates and his agents does 1 through 5, and Governor Newsom, where its a known fact B.Cates refused to act in accordance to CDCR Covid-19 protocols with "bed positioning" and "partitions" between bunks with 10 beds or more in a room/dorm inorder to prevent the spread of Covid-19 from spreading from dorm to dorm,,in which it ultimately did and injured this dependent adult under the custodial care of B. Cates and his agents at CCI, where he now suffers from the "Long Haulers Effect" of Covid-19 with constant headaches, lack of smell and taste, joint pain, and fatigue, his quality of life a greatly diminished since contracting Covid-19 at CCI, under the un- safe conditions, that B. Cates failed to implement inorder to prevent the spread of Covid-19 at CCI- E- facility. I declare under the penalty of perjury that I have read the foregoing and declare under penalty of perjury that the statements made are true and correct.

Robert L. Sanford, Declarant

1     CERTIFICATE OF SERVICE

2          I, Robert L. Sanford, deposited a original copy of Plaintiff's Objection

3     to Defendants Demurrer to First Amended Complaint; Memorandum of Points and

4     Authorities in the United States Mail at: Sierra Conservation Center (SCC),

5     5150 O'Byrnes Ferry Road, Jamestown, CA 95327, Pre-Paid Postage to the following

6     person[s] listed below. On this 28th day, of December 2021.

7

8                                         Robert L. Sanford

9

10

11

12

13      Office of the Attorney General

14     ATTN: Colin A. Shaff

15     300 S. Spring Street, Suite 172

16     Los Angeles, CA 90013

17

18

19

20

21

22

23

24

25

26

27



Robert
P2507
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

SIERRA CONSERVATION CENTER
CA STATE PRISON GENERATED MAIL

US POSTAGE
$ 001.76°

To Office of the Attorney General
Attn Colin A Shaff
300 South Spring Street.
Los Angeles, CA 90013

al Mail

# EXHIBIT L



**Superior Court of California**
**County of Kern**
**Bakersfield Division H**

Date:    **03/28/2022**                                    Time:   **8:30 AM - 12:00 PM**

                                                              **BCV-21-100477**

SANFORD VS NEWSOM

***Courtroom Staff***

**Honorable:**    Bernard C. Barmann, Jr.              **Clerk:**    Vanessa Cofield

**Court reporter:**    . None                          **Bailiff:**    Deputy Sheriff

**PARTIES:**

**Present:**
SANFORD, ROBERT L  Plaintiff, Present

**Not Present:**
ALLISON, KATHLEEN  Defendant                 SHAFF, COLIN A  Attorney
BANICA, U  Defendant                         SHAFF, COLIN A  Attorney
CALIFORNIA CORRECTIONAL INSTITUTION  Defendant
CATES, B.  Defendant                         SHAFF, COLIN A  Attorney
DIAZ, RALPH M  Defendant                     SHAFF, COLIN A  Attorney
NEWSOM, GAVIN  Defendant                     SHAFF, COLIN A  Attorney
SANDERS, B.  Defendant                       SHAFF, COLIN A  Attorney
SCHUYLER, C.  Defendant                      SHAFF, COLIN A  Attorney
SHIESHA, S  Defendant                        SHAFF, COLIN A  Attorney
CALIFORNIA CORRECTIONAL INSTITUTION (CCI)  CDCR
Litigation Coordinator

**NATURE OF PROCEEDINGS:  FURTHER CASE MANAGEMENT CONFERENCE**

**Hearing Start Time: 8:30 AM**

The above-entitled cause came on regularly on this date and time with parties and/or counsel appearing as reflected above.

Appearance telephonically by courtcall by·Robert L Sanford on behalf of himself.

The Court orders as follows:

Upon the Court's own motion cause is continued to 05/26/22 at 8:30 a.m. in Division H.

The Court authorizes telephonic appearance by courtcall by plaintiff on 0S/26/22 at 8:30 a.m.

The civil fast track clerk to notify courtcall re: authorization of the Court for plaintiff to appear telephonically.

A certified copy of minutes mailed to California Correctional Institution, Attention Litigation Coordinator as stated

MINUTES
Page 1 of 3

on the attached declaration of mailing.

Copy of minutes mailed to all parties as stated on the attached certificate of mailing.

- Audio streaming announced.

**FUTURE HEARINGS:**
May 26, 2022 8:30 AM Further Case Management Conference
Bakersfield Division H
Sheriff, Deputy
Barmann, Bernard C., Jr.

MINUTES FINALIZED BY:        VANESSA COFIELD                                                              ON:      MARCH 28, 2022

MINUTES
Page 2 of 3

SANFORD VS NEWSOM                                                                                  BCV-21-100477

## CERTIFICATE OF MAILING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Minutes dated  March 28, 2022*** attached hereto on all interested parties and any respective counsel of record in the within action by depositing true copies thereof, enclosed in a sealed envelope(s) with postage fully prepaid and placed for collection and mailing on this date, following standard Court practices, in the United States mail at  Bakersfield California addressed as indicated on the attached mailing list.

Date of Mailing:        March 28, 2022

Place of Mailing:        Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                        **Tamarah Harber-Pickens**
                                        CLERK OF THE SUPERIOR COURT
Date:  March 28, 2022


                        By:        *Vanessa Cofield*
                                   Vanessa Cofield, Deputy Clerk


## MAILING LIST

ROBERT L SANFORD
SIERRA CONSERVATION CENTER
INMATE # V- 25176
5150 OBYRNES·FERRY ROAD
JAMESTOWN CA  95327

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA  90013-1256

CALIFORNIA CORRECTIONAL INSTITUTION CCI
ATTN LITIGATION COORDINATOR
PO BOX 1031
TEHACHAPI CA  93581

DOCKETING
RECEIVING

2022 APR -1  PM 12: 14

ATTORNEY GENERAL
LOS ANGELES

RECEIVED

2022 APR -1  AM 10: 32

ATTORNEY GENERAL
LOS ANGELES

SUPERIOR COURT OF CALIFORNIA
    COUNTY OF KERN
    JUSTICE BUILDING
    1215 TRUXTUN AVENUE
··· BAKERSFIELD, CA 93301-4619

FIRST-CLASS MAIL
03/29/2022
US POSTAGE $000.53⁰



ZIP 93301
041L12205143

RETURN SERVICE REQUESTED

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA  90013-1256

BCV-21-100477

9001381256 C013

# EXHIBIT M

Robert L. Sanford
V-25176 Bed #55

Growlersburg Conservation Camp #33
5440 Longview Lane
Georgetown, CA 95634-9318

      In Propria Persona,


SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN


Robert L. Sanford
    Plaintiff,

  vs.

Newsom, et al.,

Case No.:BCV-21-100477 BCB

NOTICE OF CHANGE OF ADDRESS


    plaintiff, Robert L. Sanford, now gives this Court notice of change of address from Sierra Conservation Center, 5150 O'Byrnes ferry Rd, Jamestown, CA 95327, to my new address at: Growlersburg Conservation Camp #33, 5440 Lonview Lane, Georgetown, CA 95634-9318

    This now serves as notice to my address change regarding any matters regarding the civil action case  Case No: BCV-21-100477

Date: April 12, 2022


            Respectfully Submitted

            Robert L. Sanford, In Proria persona

CERTIFICATE OF SERVICE

    I, Robert l. Sanford, deposited in the united States Mail one copy,
of Notice of Change of Address at: Growlersburg Conservation Camp #33,
5440 Longview Lane, Georgetown, CA 95634-9318, Pre-Paid postage to the following
parties/person[s] listed below. On this 12th day of April 2022.

                                        Robert L. Sanford

Office of the Attorney General
Attn: Colin A. Shaff, Deputy Attorney General
300 S. Spring Street, Suite 172
Los Angeles, CA 90013



Robert C. Seaford
V-25176 / Bed # 5=
Growlersburg Conservation Camp #33
5440 Longview. Lane.
Georgetown, CA 95634-9318

SACRAMENTO CA 957
GROWLERSBURG CONS. CA
5440 LONGVIEW LANE
GEORGETOWN, CA 95634
STATE PRISON

To Office of the Attorney General,
Attn: Colin A. Shaff,
300 S. Spring Street #12
Los Angeles, CA 90013

90013-123055

# EXHIBIT N

1  Robert L. Sanford
   V-25176 #55
   Growlersburg Conservation Camp#33
2  5440 Longview Lane
   Georgetown, CA 95634-9318
3           In Propria Persona

4

5

6

7

8                              SUPERIOR COURT OF CALIFORNIA
    Ñ                              COUNTY OF KERN
9

10  Robert L. Sanford                Case No.:BCV-21-100477-BCB
            Plaintiff,            PLAINTIFF'S  OBJECTION TO DEFENDANTS DEMURRER
                                 TO PLAINTIFF SECOND AMENDED COMPLAINT:
11   vs.                         MEMORANDUM OF POINTS AND AUTHORITIES

12  Gavin Newsom, etaal.,        Date: May 26, 2022
                                 Time : 8:30 a.m.
13                               Dept : 10
                                 Judge: The Honorable Bernard C. Barman Jr.
14

15  Now comes Robert L. Sanford, Objecting to Defendants Demurrer to Complaint; and

16  Memorandum of Points and Authorities in its entirety outlined in the following:

17              PLAINTIFF OBJECTS TO DEMURRERE REGARDING DEFENDANTS
                ALLEGATIONS THAT PLAINTIFF DID NOT COMPLY WITH THE
18                            GOVERNMENTS CLAIMS ACT.

19  (1) Plaintiff Robert L. Sanford now objects to defendants demur, regarding all

20  allegations -that Plaintiff failed to comply with Government Claims Act,

21  (2) Plaintiff filed a 602 fully exhausting on August 20, 2021 log #CCI-HC-2100699

22  and filed a Government Claim on October 14, 2021, that has not been answered

23  within 45 working days, therefore, now giving Plaintiff 2 years to file .

24  (3) Furthermore, Plaintiff has excercised due diligence, regarding the exhaustion

25  of Government Claims Act at every turn in this process, whereas, plaintiff has

26  been injured by - the acts of-defendants failing to comply with Covid-19 safety

27  protocols within a prison setting that has resulted in injuring Plaintiff, the

                                        1

1 next, week, the next month or year.

2 (4) Due to Plaintiff being forced to be subjected to a known dangerous condition
3 that exixsted at the California Correctional Institution where absolutely no
4 social distancing was ever made available in the dorm (sleeping areas) and CCI
5 refused to comply with Bed Positioning Policies and "partitions" between bunks
6 to prevent the spreading of Covid-19,

7 (5) Where Plaintiff was infected with Covid-19 after waking up in a over-crowded
8 dorm (Rex-Deal) on July 11, 2020, where Plaintiff was unable to smell or taste,
9 after being forced in a mass movement to the Rex Deal dorm that was not pre-
10 cleaned in accordance to Covid-19 protocols resulted in injury to Plaintiff were
11 he now suffers the next, week, the next month or year.

12 These facts have been out-lined in the Governmnet Complaint form that was submitted
13 July 21, 2021, and again in greivance complaint reagarding unsafe work enviornment
14 log # CCI-HC-21000699, See also supporting Evidence at: Exhibit "A" in Objection
15 to Defendants Demurrer (Document 21007825 Received 9/27/2021).

16 (6) The foregoing facts in support of Plaintiff's objecting to defendants demurrer
17 now negates and dismisses their allegations completely and entirely with any and
18 all allegations of failure to comply with Government Claims Act.

19 (7) Furthermore, plaintiff clearly and concisely outlined the same set of facts
20 regarding the lack of social distancing , the lack of bed positioning and
21 partitions in bed areas that ultimately caused Plaintiff irreparable injury the
22 next, week, the next month or year, form this known dangerous condition that
23 is airborne-from- person-to-person, in any enviornment where no social distance is
24 avilable, therfore, for these reasons defendants demurrer fails in its entirety
25 and defendants should now have to defend the facts of this iisuse before a jury
26 for the fact they deliberately and willfully ignored policies and mandated
27 protocols set in palce in accordance to Covid-19 safety procedures pursuant to

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

PLAINTIFF'S OBJECTION TO DEFENDANTS DEMURRER

1  Center of Disease Control (CDC), and mandated procedures issued by the Three

2  Panel Judges plan of action regarding the overcrowding and known dangers of dorms

3  within CDCR institutions, where this has put Plaintiff in a unreasonable risk of

4  harm and danger with being subjected to a known dangerous person-to-person air-

5  borne diseaes (Covid-19), where plaintiff is now suffering next, week, next month

6  or year, from this deadly disease, that injured Plaintiff two differnt times at:

7  CCI. Where Defendant B. Cates the warden at CCI, and C. Schuyler the Associate

8  warden were absolutely aware of these known dangerous conditions that existed

9  at CCI and they failed to act with providing Covid-Safety protection, and or

10  preventive measures that would have prevented the spraeding of this disease

11  within the facility, however, they contributed to the spreading with there

12  failure to act and comply with procols that could have prevented Plaintiff

13  from now suffering the next, week, the next month or year.

14              PLAINTIFF REQUEST THIS COURT TAKE JUDICIAL NOTICE

15  (8) Attached to this Objection at Exhibit "A" Plaintiff is now submitting a copy

16  of Document 21007825 received 9/27/2021, now showing Plaintiff has completed

17  Government Complaint Act. Plaintiff, further request this Court take Judicial

18  Notice of Declaration of Robert L. Sanford executed on March 21, 2022.

19  (9) Plaintiff request this court take notice of sworn affidavits of Inmate

20  advisory Council (IAC) whereas, this council meets with CCI Warden, and Captain

21  and all administrators once a month, to get updates and  advisory notes regarding

22  policy, conditions, and cahanges to regulations rules etc. Plaintiff request this

23  Court take judicial notice of the facts regarding protocols and policy that these

24  two IAC members are direct -eye-witnesses to statements made by Defendant Brian

25  Cates (A) warden CCI, claiming CCI is no longer under mandated Covid-19 Protocols

26  whereas, this question was raised during a IAC meeting.  Defendant Cates willfull

27  and deliberate neglect of denying to comply with the bed positioning of the

1   bunks at CCI where there was no possible way of social distancing, where under

2   this policy the mandate called for partitions to be placed between bunks that

3   had ten (10) beds in a room or (dorm), in order to prevent the spreading of the

4   deadly Covid-19 virus.

5   (10) For the fact Defendant[s] Cates and Schuyler were directly aware of the

6   known dangerous conditions that were ongoing at CCI-E-Facility and willfully and

7   deliberately ignored the dangers of what was causing the spreading of this

8   virus, due to the fact Cates had decided to save money with closing the E-facility

9   ahead of the sc heduled  closure of this facility in June 2022, therefore not

10   adhearing to safety mandated protocols that required spending of funds taht were

11   allocated to Covid-19 mandated policies, and court orders issued by the three

12   pannel Judges regarding the emergency protocols that were implemented in order

13   to prevent the spreading of Covid-19 and its varients.

14   (11) Defendant[s] failure to act to a known dangerous condition that has caused

15   the injury of this Plaintiff was above and beyond negligent, with their failure

16   to use skill and care that a reasonably careful professional operating in the

17   field would have used in similar circumstances regarding the mandated emergency

18   protocols, where the proximately causes were plaintiff now having to be damaged

19   and injured due to this failure, were plaintiff suffers from a diminished quality

20   of life , the next, week, the next month or year.

21   (12) Plaintiff refutes, rebuts, and objects to Defendants demurrer in its

22   entirety, whereas, Plaintiff has brought sufficient facts to the attention of

23   this Court in the orriginal compalint, the amneded complaint, and now this

24   second amended complaint regarding the named defendant[s] B. Cates, and C.

25   Schuyler, whos direct involvement with failing to comply to mandated Covid-19

26   procedures and protocols, that resulted in contributing to spreading the virus

27   at CCI and injuring Plaintiff on two differnt occassions at this facility

1  (13) The fact defendant(s] acted with reckless and deliberate disregard to the

2  known dangers of Covid-19, where they totally ignored the CDC Guidelines for

3  Detention Centers and Prisons, including the fact they did not adhere to policy

4  issued by the Three Panel Judges, regarding the Bed Positioning when social

5  distancing wadsimpossible, in which it was at _- Facility-E-CCI, partitions

6  were required to help prevent the spread, along with CCI following the mandated

7  disenfecting procedures and safety prodocols, in which they failed to follow

8  that ultimately resulted in injuring Plaintiff, the next, week, the next month

9  or year.

10  (14) Defendant[s] allegations at (pp. 10 and 11) alledging Plaintiff has not filed

11  his Gov. Claims with DGS is untrue, and now defendants demurrer fails, as

12  Plaintiff objects to their allegation and now presents evidence that refutes

13  this allegation, and Plaintiff should be able to be herd on the merits of

14  this second amended complaint before a jury.

15  15. Defendants are more concerned with attempting to dissmiss this complaint

16  on a error of a Gov. claim instead of facing the facts as to what they failed

17  to comply with that caused Plaintiff intentional harm where they were  aware

18  of the dangerous conditions surrounding the Covid-19 airborne person-to- person

19  virus that clearly existed within the E-facility at CCI in July 2020, and

20  October 2020, that infected Plaintiff on two separate times, once in the over-

21  crowded dorm Rex Deal after being forced to move into it by orders of Cates,

22  and Schuyler, where they were aware of the known dangerous conditions, along

23  with the dangers of unsanitized dorm conditions not in compliance with Covid-19

24  safety protocols, where if they did not know they should have been made aware.

25  (16) Defendants are not immune from  liability at pp.13 L.9-13, as defendants

26  were aware of the known hazardous dangerous conditions that existed from the

27  deadly Covid-19 virus, and failed to take reasonable action to abate the known

PLAINTIFF'S OBJECTIOIN TO DEFENDANTS DEMURRER

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1 dangerous ultra hazardous condition that was allowed to exist and continue the
2 spreading of Covid-19 within this facility, and now defendants are assuming
3 immune liability in their response to plaintiff's second-amended complaint,
4 their demurrer at:p(See pp. 14-15.) asserts that Covid-19 mandated protocols
5 with cleaning and diseenfecting, along with housing inmates in worms with poor
6 ventilation, dorms that are severely overcrowded, are all discretionary acts
7 of Defendants Cates and Schuyler, their discretionary policy-making was allowed
8 under immune liability to continue operating these known dangerous and ultra -
9 hazardous conditions even with the emergency mandated Covid-19 procedures that
10 were mandated to create six feet of social distancing, the three panel Judges
11 implemented policy where when it is impossible to social distance (See SAC at:
12 Exhibit "A") "partitions" are to be placed between bunks that have 10 beds or
13 more, C. Schuyler was aware of this fact on July 5, 2020, when plaintiff con-
14 fronted him to the known dangerous condition that obviously existed in CHL dorm.
15 (17) The fact that defendants refused to comply with implementing protective
16 safety procedures with protecting Plaintiff from the dangerous condition that
17 they were aware of concerning how the spreading of Covid-19 was injuring inmates
18 in the overcrowded dorms that provided no safety Bed Positioning, or Partitions
19 when social distancing was not available, Defendant Cates, is liable for his
20 deliberate willfull acts, where he was aware that Covid-19 was and is a virus
21 that is airborne from Person-to-person, there are no discretionary acts to how
22 Covid-19 safety protocols can or should be ignored, especially in a over-crowded
23 ]dorm setting that has more than 100 inmates sleeping less than 3 feet apart,
24 and doubled bunked to make matters even worse, Plaintiff was deliberately put
25 in this known dangerous condition, on July 10, 2020, where the cleaning protocols
26 where absolutely violated by CCI, under the direct orders of Cates, and Schuyler
27 and injured this Plaintiff where they allowed cross contamination and contibuted

PLAINTIFF's OBJECTION TO DEFENDANTS DEMURRER

1  contributed to the spreading of the Covid-19 disease within the CCI-E-Faciliy

2  that resulted in injuring Plaintiff with infection, the next, week, the next

3  month or year.

4  (18) Plaintiff absolutely refutes, rebuts, and objects to Defendants contention

5  that Plaintiff has failed to allege any facts sufficient to establish the elem-

6  ents of any cause of action, at pp.15-16. The elements that Plaintiff has es-

7  tablished, where Defendants deliberate negligence and willfull neglect of doing

8  what could be considered the a responsible act with providing the necessary

9  safety protections against the spreading of this virus; their failure to cat to

10  a known ultra hazardous condition, was and is a willful negligent act that has

11  resulted in causing Plaintiff unnecessary pain and suffering, of not being able

12  to smell or taste, headaches, coughing of blood, joint pain, and a on going

13  health concern that has diminished Plaintiff's quality of life, the next, week,

14  the next month or year.

15  (19) The element of negligence, certainly accounts for a relevant dispositive

16  inquiry as to what dangers are associated with the deadly Covid-19 virus, and

17  its varients, and to whether any reasonable [official] would identify that the

18  conduct was unlawful in the situation Plaintiff has described in this second

19  amended complaint, that clearly shows the negligence on part of Defendants,

20  placed Plaintiff at an unraesonable risk of harm and danger inrelations to the

21  the Covid-19 Pandemic. The negligent response of Defendants regarding the

22  policies implemented from the CDC, and Three panel Judges, in response to

23  the Covid-19 pandemic, were guidelines that were in place to prevent the spread-

24  ing of the virus, due to the failure of Defendants, to comply with these safety

25  mandated protocols, has caused Plaintiff irreparable injury to the point his

26  quality of life has greatly been diminished, the next, week, the next month or

27  year. Due to the negligent acts of defendants Cates, Schyler, Newsom who allowed

7

PLAINTIFF'S OBJECTION TO DEFENDANTS DEMURRER

1   on going deliberate acts to go on within the CDCR dorm settings, where the
2   Governor Gavin Newsom was certainly made aware that these dangerous conditions
3   existed due to the deadly virus Civid-19, this is why he issued a mandatory
4   emergency order in the State of California that also included CCI/CDCR to comply
5   with the social distancing order, and mandated safety protocols that included
6   mandated masks wearing, mandated social distancing, mandated pre-Covid-19 cleaning
7   policies, that CCI deliberately violated where they never had a pre-cleaning of
8   dorms in accordance Covid-19 safety protocols, they never had wrtten job descrip-
9   for assigned porters in dorms where they followed these guidelines of CDC, or
10  CDCR.
11  (20) Moreover, defendants claim that these were discretionary with following the
12  safety protocols when social distancing was not possible in rooms with 10 beds
13  or more in detention  centers or prisons, Bed Positioning is required including
14  partitions between bunks. These are not discretinary policies issued by the CDC,
15   The Three panel Jugdes where this Court noted that Covid-19 poses  a substantial
16  risk of serious harm" to prisoners See Plata v. Newsom, 445 F. Supp.3d 557,559
17  (N.D. Cal Apr.17 2020), and with defendant's in this matter ignoring these risk
18  constitutes negligence that is now a cause to action regarding the injury it has
19  now caused Plaintiff the next, week, the next month or year.
20  (21) As for the discretionary act that was made available for the defendants to
21  act upon, they failed to act, with removing Plainiff from the known dangerous
22  condition that continued to put Plaintiff at an unreasonable risk of harm,
23  whereas, defendants had available specific authorities at their disposal to have
24   Plaintiff either removed from the dangerous condition or released on early pa
25   role due to his pre-existing medical conditions that placed him at a higher rrisk
26  of harm or danger due to the Covid-19, Plaintiff made this request  in a 602
27  directed to Cates, where Plaintiff was arbitrarily denied early parole under

8

1  Cal. Penal. Code §1170(d), where Plaintiff actually qualifies for, after fully
2  completing his primary term offense, as Plaintiff has no security or unnecessary
3  risk factors where he posess any unreasonable risk to society, as Plaintiff has
4  certainly complied with all the rehabilitation requirements of the Department,
5  including with participating in on going rehabilitation throughout his entire
6  term of incarceration, however, even with Plaintiff having a "Development of the
7  California Static Risk Assessment (CSRA): As Plaintiff risk is 1/low the lowest
8  under this Policy, where this policy is supposed to be used by CDCR with utilizing
9  the CSRA in several key intiatives. In response to prison overcrowding..."
10  This was a discretionary act available for defendant[s] to use but was ignored
11  as their negligence, with utilizing reasonable means of  protecting  high risk
12  inmates from this known deadly virus, by removing them from known dangerous
13  conditions, as  Plaintiff now brings a  current fact to light regarding the same
14  factors that brought rise to this complaint: " Plaintiff was recently infected
15  with Covid-19 for a third time on February 14, 2022 at SCC, from where Plaintiff
16  was sent from to CCI, on June 18, 2020, and then ping ponged back to the same
17  known ongoing dangerous conditions, the reasonable act that defendant[s] at both
18  both facilities are failing to use their discretionary authority with removing
19  plaintiff from this known dangerous condition, the P.C. 1170(d) was and still
20  is available for Defendants to act upon, but due to Plaintiff being a person
21  that speaks or advocates his legal rights regarding the known dangers of this
22  deadly virus Covid-19 that has resulted in injuring plaintiff with ongoing pain
23  and suffering, the next, week, the next month or year. (See attached letters
24  requesting 1170(d) to the Warden Cates at CCI, the Warden Eaton at SCC, and
25  request to The Secretary of CDCR, including their response, and Plaintiff's
26  reply and supporting documents proving Plaintiff has ongoing rehabilitation
27  programing including College that he is still currently enrolled at Exhibit" B " .

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

PLAINTIFF'S OBJECTION TO DEFENDANTS DEMURRER

1  (21) Here the elements of a cause of action regarding the negligence, where

2  defendants failure to use skill and/or care that a reasonable careful professional

3  operating in the field would have used in similar circumstances, which failure

4  Proximately causes damage to the plaintiff: Their failure to comply with mandated

5  policies, that were implemented around the emergency Covid-19 pandemic, and the

6  the ones that were discretionary such as the removal of Plaintiff with early

7  parole under §1170(d), clearly amounts to negligence in this civil action, where

8  Plaintiff now refutes, rebuts, and objects to Defendants Demurrer in its entirety

9  as due to Defendants negligence plaintiff is suffering, the next, week, the next

10  month or year.

11  (22) Defendants  Allegations that Plaintff did not state sufficient facts to

12  bring a cause of action for violation of California Penal Code section 368(b),

13  are hereby rebutted, refuted, and objected to in its entirety, because its a fact

14  a fiduciary relationship existed between the Plaintiff and Defendant[s] Cates,

15  Schuyler, and Newsom, whereas, civil penalties do exist under the Dependent

16  Adult Abuse Theory, pursuant to "Violation of §201 (a) The Civil Rights Act

17  of 1964, 78 Stat. 241; Section 202 of Title 11 of the Civil Rights Act of 1964

18  "affirmatively declares that all person[s] shall be entitled to be free, at any

19  establishment or place, from discrimination or segregation of "any" kind. On the

20  ground of race, color, religion , or national orgin, if such discrimination is

21  or purports to be required by any, law, statute, ordinance, regulation, rule,

22  and/or order of [a] State --including any agency (CDCR) or political subdivision

23  thereof (CCI) in this case. Finally §203 of the Act prohibits the withholding

24  or denial, etc, of any person with the purpose of interfering with any such

25  right or the punishing, etc, of any person excercising or attempting to exercise

26  any such right. Cal. Const. Article I, §31"

27  (23) Plaintiff has been dependent upon Defendants with providing Plaintiff with

10

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1  reasonable protection from any known dangerous condition, that can cause him

2  an ureasonable risk of harm such as Covid-19. Plaintiff was not afforded any

3  reasonable protection from a known dangerous condition that existed on E- facility

4  at CCI under the custodial care of B. Cates, C. Schuyler, and Gavin Newsom the

5  defendants named in this civil action, Plaintiff's sconded amended complaint

6  clearly presents sufficient facts to support a cause of action for Defendants

7  named in this action to be held liable for their deliberate and willfull acts

8  of failing to comply with protocols to abate a known dangerous condition that

9  resulted in injuring Plaintiff a "depeendent adult" th next, week, the next month

10 or year, with a diminished quality of life LONG HAULERS EFFECT.

11 (24) Plaintiff has plead sufficient facts to overcome any and all alleagtions

12 of defendants demurrer to Plaintiff's second Amended Complaint, that now should

13 be granted without further delay, because the injury is ongoing  and plaintiff

14 has submitted supporting facts and evidence that can and should be presented

15 before a jury. Plaintiff objects to defendants demurrer in its entirety.

16

17 //

18

19

20

21

22

23 /

24

25

26

27

POINTS AND AUTHORITIES

(25) Plaintiff brings this civil action agisnt CDCR employees, B. Cates, C. Schyuler, and the executive branch Governor Gavin Newsom. Whereas Warden of CCI B. Cates, and Associate warden CCI, C. Schuyler, both had first hand knowledge of a known dangerous condition and both failed to comply with policy that was mandated protocols that were implemented by Government agencies Guidelines the CDC, and the Three Panel Judges implementations to the known substantial risk of serious harm that the Covid-19 virus was causing injury to inmates, ; See Plata v. newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17 2020)

(26) Defendants were aware that the transmissibility of Covid-19 virus especially in conjuntion with the known dangerous conditions that Plaintiff was forced to be subjected to, where these known dangerous conditions put Plaintiff at substantial risk of suffering serious harm, combined with the deliberate acts of severe over-crowded dorms, that was well known throughout the Department (CDCR) that social distancing was (absolutely) not available, therefore rooms with 10 beds or more were to have Bed Positioning and partitions between bunks, where defendants in this facility failed to comply with, due to their budget concerns, as stated by staff C/O Bliss who was plaintiff's direct supervisor, whom comfirmed the Warden Cates was refusing to spend money on safety protocols such as partitions between bunks, because he refused to do patch work at the E-facility due to the imminent closure of this facility tha that was scheduled for June 2022, this defendant decided to close this facility 10 months ahead of schedule, while the known dangerous condition was ongoing he failed to act with implementing safety protocols to the known dangerous conditions putting Plaintiff in a substantial risk of harm that resulted in Plaintiff being infected with Covid-19 two different times where plaintiff now suffers from Long Haulers Effect the next, week, next month or year.

11

(27) Plaintiff has complied with Gov. Claims Act See Supporting Documents, at Exhibit "A", therefore Defendants claim that alleges plaintiff failed to comply with this fails, and Plaintiff should be allowed to have these facts in the Second Amended Complaint presented before a jury.

(28) Plaintiff has presented cognizable claim to a cause of action, where Plaintiff was deliberately subjected to aknown dangerous Condition that resulted in him being injured is a constitutional violation that rises to a Eighth Amendment violation pursuant to Estelle v. Gamble ¨429 U.S. 97, where defendants deliberate in difference to a known dagerous condition that existed within CCI-E-Facility where Plaintiff was subjected to unwanton pain and suffering, whereas, defenad-ants failure to respond to a known dangerous condition, where defendants in this Second Amended Compalint intentionally interferred with safety protocols that could have prevented the spreading of Covid-19, where there failure to act has resulted in Plaintiff being infected with this known deadly disease, Supra, at PLata v. Newsom  445 F. Supp. 3d 557, 559¡: Regardless of how evidenced, deliberate ind-ifference to a prisoner's serious illness or injury states a cause of action.

(29) Furthermore, the negligence that Plaintiff has objected to regarding the defendants claim that Plaintiff did not provide elements to support a claim of negligence also fails in its entirety, where defendants failure to act to a known dangerous condition that they knew to exist  that was injuring prisoners in their care where they chose this course in conscious disregard of an excessive risk to (Plaintiff's) health." See Jackson v. McIntosh (9th Cir. 1996) 90 F.3d, 330 , 332; See also valentine v. Collier 455 F. Supp. 3d 308; "Thje enviornment is a dormitory, making social distancing in living quarters impossible. And now the conditions are exceptionally dire to the Covid-19 virus transmissibility in conjuntion with overcrowded dorms, and un-sanitized or disenfected areas

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1  and dorms that plaintiff was forced to be subjected to under direct and clear

2  orders of Warden Cates on July 10, 2020, that after waking the following  morning

3  in this known dangerous condition Plaintiff was infected with the Covid-19

4  virus. The defendant[s] failed to follow CDC Guidelines (4) with not allowing

5  mass movement within a known infected facility inorder to prevent the spreading

6  of Covid-19 within the facility- including the pre-cleaning of any living areas

7  with disinfecting in accordance to Covid-19 protocols... Defendants failed to

8  follow theses guidelines that resulted in harming Plaintiff from this known

9  dangerous condition, where he is unable to smell, taste, joint pain, coughing

10  of blood, headaches (Long Haulers Effect) ; Defendants failure to act to this

11  known dangerous condition constitutes a unnecessary and wanton infliction of

12  Pain proscribed by U.S. Const. amend VIII... Estelle v Gamble  429 U.S. 97

13  Defendant Cates, even admitted that he was not following Bed Positioning policies

14  during a IAC meeting  where IAC Chairman Richard Broussard, and Parvin Tanner

15  where direct eyewtnesses to this fact and both submitted sworn affidavits, See

16  Second Amended Complaint at Exhibit "C".

17  (30)  As the question of qualified immunity was raised by defendants, as to their

18  deliberate and willful acts with failing to act to a known dangerous condition is

19  excused because their acts where discretionary fail, because the emergency Covid-

20  19 protocols were and are mandatory due to the serious dangers the deadly disease

21  causes harm and imminent death, this matter was clearly outlined by Plata v.

22  Newsom 4:01-CV-01351-JST " Joint Management Conference Statement" declaring the

23  institutions dangers with-overcrowding dorms, results with inmates being infected

24  with Covid-19, Plaintiff was able to directly express these dangerous conditions

25  to Defendant Schuyler on July 5, 2020, explaining that Plaintiff wsa mixed in  with

26  known infected inmates, and was not quarantined for the st[andard ] 14 day

27  mandated quarantine called for at CCI, Plaintiff has pre-existing medical isssues

13

1    that placed him at a higher risk of imminent danger from the Covid-19 virus

2    where defendants claim they created cohorts to separate inmates  is greatly

3    exaggerated and untrue, because even with the beds that were suppose to separate

4    these so called 8 man cohorts were being used to house inmates on these bunks,

5    where, this Plaintiff was assigned to Clark Hall Upper 114L a bed that was listed

6    as a Covid-19 separation bed, but I was housed less than 3feet feet away from

7    another cohort, defendants were aware of the impossible fact they could not

8    create social distancing, and this does not qualify for immunity when they were

9    aware  these dangers existed and did nothing to abate it with equipment that was

10   available to prevent the spreading of the Covid-19 within the CCI-E-facility

11   "Bed Positioning" and "Partitions"  Due to population increase that also was

12   another contributing vector to the rapid spreading of Covid-19 at CCI, where

13   there was an increase in stress, tension, communicable diseases, and a high in-

14   crease in confrontations between inmates at CCI: see Toussaint v. Yockey (9th Cir

15   1984) 722 F.2d 1490, " Where the court affirmed a determination of an eighth

16   amendment violation due to overcrowding when ' it endangers violence, tension,

17   and psychiatric problems" I.d. at Toussaint v. Yockey 1492, See also Akao v

18   Shimoda (1987) 832 F. 2d 119, whereas, this question of qualified immunity must

19   answer two questions(2) by the court,: (1) was the law governing the state official

20   conduct clearly established;,: (2) Under the law could a reasonable state official

21   have believed his conduct was lawful? to determine whether the law is clearly

22   established, the court cannot look at general principles of law, but must under

23   take, an inquiry in light of the specific context of the case. The relevant

24   dispositive inquiry is whether it would be clear to a raesonable official that

25   the conduct was unlawful in the situation being confronted, if the law did not

26   put officials on notice that their conduct would be clearly unlawful, summary

27   judgement based on qualified immunity is appropriate. However, this is not the

14

=PLAINTIFF'S OBJECTION TO DEFENDANTS DEMURRER

1  case in this instant matter concerning defendants Cates, Schuyler to act to a

2  known dangerous condition of Covid-19 that was injuring inmates (Plaintiff)

3  at CCI-E-facility in accordance to Saucier v. Katz 533 U.S. 194, 201, 150 LEd.2

4  d 272, 121, S. Ct. 2151 (2001) " The relevant dispositive inquiry... is whether

5  it be clear to a reasonable [official] that his conduct was unlawful in the sit-

6  uation he confronted. "Starr v. Baca 652 F.3d 1202, 1207 (9th Cir. 1989)""Rather

7  the requisite causal connection is established when a supervisor set]s] in motion

8  a series of cats by others, or knowingly refuses to terminate a series of acts

9  by others which [the supervisor] may also be held liable for his culpable action

10  or inaction in the training, supervision or control of his subordinates..." The

11  existence of actual injury is indisputable, where CDCDR/CCI continues to operate

12  a ultra-hazardous activity, which, provides that one who under takes an ultra

13  hazardous activity, regardless of the amount of care he uses. see Pierce v.

14  Pacific Gas& Electric Co. (1985) 166 Cal. App. 3d. 68, 85, Defendants Cates

15  and Schuyler were at all times aware of this dangerous ultra-hazrdous condition.

16  (31) Due to the negligence of defendants failing to act to this known dangerous

17  condition that resulted in injuring and causing Plaintiff serious medical harm,

18  they failed to comply with Covid-19 prevention 8 CCR 3205(F)(G)(H)(3),

19  the negligence facts stated in the Second Amended Complaint should be accepted

20  as true, and allowed to be presented before a jury, in accordance to Estelle

21  y. Gamble Supra .

22                                  CONCLUSION

23  Plaintiff has plead sufficient facts in his Objection to Defendants demurrer

24  to Plaintiff's second amended complaint where now this objection to the allegations

25  presented by defendants should fail absolutely and in its entirety because

26  Plaintiff has made a cognizable claim to have the facts and elements of his

27  ongoing injury that was caused by the willful and deliberate acts of defendants

15

1   resulting in Plaintiff suffering injury , the next, week, the next month or

2   year. Plaintiff is ready to proceed to trial with this civil action that has

3   caused irreparable damage.

4   May 07, 2022

5

6

7                                Respectfully Submitted,

8

9

10                            Robert L. Sanford, In Pro Pria Persona

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

PLAINTIFF'S OBJECTION TO DEFENDANTS DEMURRER

PROOF OF SERVICE
(Cal. Rules of Court, Rule 1,210.50)

I, Robert L. Sanford , declare that I am over the age of 18 years of age and the party Plaintiff in this civil action tort claim, at all times; I am a inmate prisoner in the Growlersburg Conservation Camp#33, 5440 Longview Lane, Georgetown, CA 95634-9318, in the County of El Dorado, where the mailing occurs; and Plaintiff's address is: Growlersburg Conservation Camp #33, 5440 Longview Lane, Georgetown, CA 09634-9318

I, further declare that I am really and readily familiar with the business practices for collection and processing of correspondences for mailing with the United States Postal Service, this same day in the ordinary course of business

On this 07 day, of May 2022, the Plaintiff in the above mentioned complaint caused to be served the following document[s]; Plaintiff's Objection To Defendants Demurrer to Plaintiff's Second Amended Complaint, that incorporates paragraphs 1-31, Memorandum of Points and Autorities, in this civil tort action, by placing a true copy of each document; in a separate envelope addressed respectfully, as follows:

OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA,Attn: Colin A. Shaff 300 S. Spring Street, Suite 1702, Los Angeles, CA 90013

I, Declare under the penalty of perjury under the laws of the United States Constitution and of the State of California Constitution that the foregoing is true and correct to the best of my knowledge. Executed on this 8th day of May, 2022.

Robert L. Sanford

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

EXHIBIT "A"

DGS

GENERAL SERVICES

Governor Gavin Newsom

03/09/2022

Robert L. Sanford V25176
PO Box 608
Tehachapi, CA 93581

RE: Document 21007825 Received 9/27/2021 for Robert L. Sanford V25176

Dear Robert L. Sanford,

The documents you submitted on 9/27/2021, failed to comply with Government Code section 905.2(c). If you wish to file a claim with the Government Claims Program (GCP), please submit the $25 filing fee by check or money order made payable to the Government Claims Program (GCP). If you are unable to pay the filing fee, you may provide a Filing Fee Waiver Request. The Filing Fee Waiver Request form can be downloaded from www.dgs.ca.gov/orim/Forms.aspx

IMPORTANT NOTICE:
In order for tort claims to be considered timely, they must comply with the requirements of Government Code sections 905.2(c), 910 and 910.2, and be presented within six months of the original date of incident (see Government Code Section 901 and 911.2). If you respond later than six months, but prior to one year from the original date of incident, you must apply without delay for leave to present a late claim (Government Code Sections 911.2 through 911.4, inclusive, 946.6).

In order for contract claims to be considered timely, they must comply with the requirements of Government Code sections 905.2(c), 910, and 910.2, and be presented within one year of the original date of incident (see Government Code Section 901 and 911.2).

The GCP has no jurisdiction over tort or contract claims presented more than one year from the date of incident.

If you are an inmate, we must receive the $25 filing fee or Filing Fee Waiver Request with a certified copy of your inmate trust fund account, before we can process your originally submitted documents.

If you have questions about this matter, please feel free to contact GCP by phone, mail, or email using the contact information below. Please remember to reference the assigned claim number (21007825) in your communication.

Sincerely,

Government Claims Program
gcinfo@dgs.ca.gov

Office of Risk and Insurance Management | State of California | Government Operations Agency
707 3rd Street, 1st Floor | West Sacramento, CA 95605 | t 800-955-0045 f 916-376-6387

Robert L. Sanford
V-25176 A-15-12L
Sierra Conservation Center
5150 O'Byrnes Ferry Rd.
Jamestown, CA 95327


March, 23, 2022


Office Of Risk and Insurance Management
Department of General Services
707 Third Street, First Floor
West Sacramento, CA 95605


RE: Document 21007825, Received 9/27/2021 for Robert L. Sanford V-25176


Dear Risk and Insurance Management Representative,

In response to your latest letter, explaining that I failed to comply with

the Government Code section 905(c).

Please Note: I am now complying timely to the Gov. Code. sec 910 and 910.2

where I have submitted this document in accordance to inmate prison "Mail

Box Rule" with submitting the fee waiver for the filing fee of $25.00 with

FEE WAIVER REQUEST. I now have meet the requirements with processing this

matter timely.


Sincerley,

Robert L. Sanford
/cc/ Government Claims Program

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

EXHIBIT "A"

EXHIBIT "B"

Robert L. Sanford
V-25176 A-15-12L
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA 95327


March 11, 2022


Attn: Warden, Mr. Patrick Eaton
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA 95327


RE: Reply to your Letter Dated February 17, 2022 regarding Cal. PC1170(d)(1)

Mr. Eaton:


I, am now responding to your letter dated February 17, 2022, requesting con-
sideration of PC 1170(d)(1) "Recall of Commitment".

Whereas, you said you contacted Classification Services Unit (CSU) whom is
responsible for reviewing criteria for referral pursuant to PC 1170(d), in
accordance to California Code of Regulations (CCR), Title 15,§ 3076.1(a)(1)
"Recommendations for Exceptional Conduct".

However, you also stated in your response, that this unit forwarded this
criteria for potential referral to this unit to review exceptional conduct....
;you then stated in your last paragraph, you reviewed the Strategic Offender
Management System (SOMS) and (ERMS) in regards to my request, stating: "un-
fortunately, there is no documentation of any prolonged participation in
rehabilitative programming."

Mr. Eaton I find this statement to be in error regarding "there is no documen-
tation of any prolonged participation in rehabilitative programming"; there
must be a possible misplacing of these documents in my ERMS and SOMS file
(Please see attached documentation of my prolonged participation in Rehabilit-
ative programming).

Including the fact I have been a active college student participant, in Coast-
line Distant Learning earning educational milestone credits, and I currently
enroled into Lake Tahoe College here at SCC.

Moreover, before I was transferred to CCI, from SCC on June 18, 2020, I was
then a active participant in SCC DRP Program (Al-anon, and was on waiting
list for AA/NA).

Due to the early closing of CCI-E-Facility, and my custody level now Minimum
-B,; I was transferred back to SCC on November 9, 2021, pending camp placement

I was told before leaving CCI, by my Correctional Counselor I, J. Clayborn, that he sent a e-mail to Correctional Counselor III, Welch who forwards the file Sacramento for "Recall of Commitment". I was told by CC-I Clayborn that he sent this e-mail on June 28, 2021, because I met all the criteria for referral for PC 1170(d) no RVR within the last five years, including the fact I have served more than 10 years of my sentence, whre this qualified me under CCR §3076.1(a)(1).

Since arriving here at SCC pending camp placement, I have been actively doing my programming, with obtaining employment at SCC-Library as a clerk. I was recently informed by my counselor CC-I, Shottegen, my transfer to camp was stopped due to a medical hold, regarding a cancer screening test; that is now scheduled for surgery (colonoscopy) inorder to clear me to be housed at camp Full Duty.

I would also like to bring to your attention that I have pre-existing medical issues due to contracting Covid-19 due to the unsafe dorm conditions, that are on going "Long Haulers Effect" where I contracted this virus twice at CCI, and now on February 14, 2022 I was diagnosed again. For the fact I am 58 years old, and High Risk for Covid where I am already suffering the next ,week, the next month or year.

Although I do my best to maintain a positive and optimistic mind set, my circumstances surrounding my deteriorating health weighs heavily, where I beleive, for the reasons described herein should warrant a consideration for PC 1170(d).

Following the fact my CSRA score is 1/low, and I pose no unnecessary risk to public safety.

Furthermore, I have family and community support, and upon release viable employment opportunities awaiting, along with the fact I plan to continue participating in rehabilitative programs with attending AA/NA meetings.

Mr. Eaton I hope I have now provided you with enough information that would now allow you to recommend my case before the Secretary of CDCR Kathleen Allison for final approval for "Recall of Commitment" PC 1170(d) (Please see recent correspondence letter from January 12, 2022, regarding my request to see if my referral from CCI was on the exceptional conduct list,...however, it does appear on the 667(a) log...).

Thank you, for your time with this matter Mr. Eaton

Sincerely,

Robert L. Sanford
/cc/Sec. CDCR K. Allison

2

NAME and NUMBER        **SANFORD    V-25176    D3-201L**        CDC-128-B REV4/74

On 8 April 2010 inmate **SANFORD, R., V-25176, D3-201L** completed his **thirteenth (13th)** week of **NA Close Custody Program.** Inmate **SANFORD** has been a very active member of the NA Group. I recommend that he continues with his participation in this group. Please keep up the good work and KEEP COMING BACK!

Orig:        C-File
    cc:        CCII
               CCI        **E. PRIDE**
               Inmate     Sponsor – Facility 'D' AA/NA
               File       Close Custody Groups
                          Ironwood State Prison

8 April 2010        Ironwood State Prison                    **GENERAL CHRONO**

# Hacienda La Puente Adult Education

Year-to-Date Student Report
For the period 1 Jul 1996 through 18 Apr 2004

| Student Name | DOB | Type | Gender | Ethnicity | First Att. Date | Last Att. Date | Hours |
|---|---|---|---|---|---|---|---|
| Sanford, Robert | 11/29/63 | CE | M | Black | | | |
| NCCF Drug Education Mulkey, Dennis MTWThF   12:30 PM-3:30 PM 42233 | | | | | 10/22/2003 | 02/13/2004 | 77 |
| NCCF Drug Education Mulkey, Dennis MTWThF   8:30 AM-11:30 AM 42232 | | | | | 10/24/2003 | 01/16/2004 | 22 |
| NCCF Parenting/Child Development Ferguson, Geraldine MTWThF   8:30 AM-11:30 AM 76046 | | | | | 12/30/2003 | 02/11/2004 | 20 |
| NCCF Job Skills Training Espinoza, Yolanda Tuesday  6:00 PM-8:00 PM 76237 | | | | | 01/06/2004 | 02/10/2004 | 10 |
| NCCF Personal Relationships Ferguson, Geraldine MTWThF   8:30 AM-11:30 AM 76494 | | | | | 01/06/2004 | 02/12/2004 | 29 |
| NCCF High School Subjects Cerna, Marco WedThu   6:00 PM-9:00 PM 23733 | | | | | 01/07/2004 | 02/12/2004 | 36 |

194

1 students                                                                                   194

May 1, 2018

Re: Robert L. Sanford

CDC#: V-25176

To the Parole Board:

Robert has been an active participant in our Red Ladder Theatre Company workshops at Soledad for over six months. We use improvisational theatre as a means of developing positive life skills. He has had an important role in creating a short play regarding self-esteem, peer pressure and bullying for middle school students, which we plan on taking into schools this spring.

He has been a leader by example in the Red Ladder process. Robert is always ready to jump in wherever he's needed, and his quiet, kind demeanor affords others an opportunity to join in the collaboration. We have all benefited from his participation.

If you have any questions, please don't hesitate to contact me. Thank you for your time.

Sincerely,

John McCluggage

Director, Red Ladder Theatre Company

Johnm1492@live.com

# Certificate of Graduation

*Awarded to*

## Robert Sanford

Peacemaker

For the successful completion of the year long
## GRIP Program

### 'Guiding Rage Into Power'

GRIP is a one year, Comprehensive Offender Accountability Program that teaches participants how to stop and transform their violence, develop emotional intelligence, cultivate mindfulness, and understand victim impact. Students learn to master the skills to commit to maintaining a lifelong pledge of nonviolence and peacekeeping.

 INSIGHT-OUT

**Granted on June 8, 2018**

*In Witness:*

George Luna, GRIP Facilitator

Erica Forbes, GRIP Facilitator

Ayla Benjamin, GRIP Facilitator

Koren Eloul, GRIP Facilitator

Jacques Verduin, Director and Founder, Insight-Out

6/8/18
Date



**Red Ladder Theatre Company**

*This is to certify that*

# Robert Lionel Sanford

*has successfully completed a series of*

## WORKSHOPS in the CREATIVE PROCESS

*Red Ladder Theatre Company*

Powered by
SVCREATES

**Red Ladder Theatre Company**

George Luna Sr.

The Grip Training Institute

Lead Facilitator/Consultant



George Luna Sr.
Lead Facilitator/Consultant
georgeluna141@gmail.com
(408) 843-0628                     www.insight-out.org

To: Whom It May Concern;

Greetings and salutations are extended your way and allow me to express my deep appreciation for you taking time in your busy day to address this letter. Allow me to introduce myself and inform you as to why am writing you. My name is George Luna Sr. and I work for *The Insight-Out Organization* who has worked at numerous of California's State Prisons teaching a selected few of individuals the **GRIP** (Guiding Rage into Power) curriculum for **The Grip Training Institute**; which was developed by Mr. Jacques Verduin Founder/Dir. of the before mentioned. Our curriculum focuses on four main components in transforming an individual's way of responding…instead of reacting. 1) Stop and Transform Their Violence. 2) Cultivate Mindfulness. 3) Develop Emotional Intelligence.4) Understand Victim Impact. These are the components that will aid in transforming a former incarcerated man into a once again productive part of, and citizen back in our society.

This letter is on behalf of an individual who is now in the participation phase of our highly successful curriculum and will soon be **A Proud Graduate** as of June 8, 2018. Mr. Robert L. Sanford CDCR#V-25176, who resides at CPF Soledad State Prison housing number D-6-32 low. Robert has been a member of our first selected "Tribe of 25 Motivated Inmates" there on *S*- yard working towards a change in their life for the better. Robert has actively taken part in all group discussions, as well as he is always contributing within his small breakaway group (which I personally facilitate) and also always actively participates in our large group discussions. Mr. Sanford has been an absolute asset to our group, and very willing to participate in putting into practice our curriculum in his everyday life. Our ultimate goal is for a **Successful Transition** and a **Well-Earned Graduation**. It is of my opinion that Mr. Robert Sanford is a forthright and determined individual who wants to make a positive impact and difference in the world for the better good of his fellow citizens. In my view, Robert is a very caring hearted man who has taking full responsibility for his actions and is ready to move on with new beginning and start giving back for any harm that he may have caused or may have brought to his community. Mr. Sanford was a very strong and engaging member of our tribe; who was always willing to share and help others so they too can make a positive transition.

It is of my professional opinion that Mr. Robert Sanford would be a suitable candidate to be released back into society, and I would have no qualms with a man like Mr. Sanford living within my community, and he would be most welcomed in my neighborhood as well. I totally support Mr. Sanford upon his path and am very proud of the hard work that he has put forth. Mr. Sanford has my full support; a strong support system is paramount and one of the most valuable aspects of re-assimilating and to rehabilitate an individual. Robert has my personal information and can call upon me at any time; whether it be for counsel, or guidance, or whether it be just to be heard… I stand shoulder to shoulder with Mr. Sanford, thank you for taking this time in your busy day, and I pray that your decision may look favorably upon this good man.**" Success is only obtained through hard work".** Mr. Sanford has put forth the hard work, and in my view is now a man of peace and deserves an opportunity to show his value and worth to his community, and our world. Any questions please do not hesitate to contact me for further information.

Respectfully: *George Luna*                                    Dated: *5-10-18*

George Luna Sr./ email: georgeluna141@Gmail.com  / PO Box 771, Hollister, CA 95023 / (408) 843-0628

*Guiding Rage into Power*

INSIGHT-OUT

*"Leaving Prison before you get out."*

Dear GRIP CTF Graduate:

Attached is the letter regarding Domestic Violence qualification that we promised. We understand from the CRM's office that they cannot put them into your C-file. However, we wanted to make sure you had a copy of the information for your own files. Thank you!

August 20, 2018

To Whom it May Concern:

Insight-Out, as the organization that runs the GRIP Program (Guiding Rage into Power), is certified through the Marin County Probation Department as a Batterers' Prevention Program Provider. This means that in Marin County, by successfully completing the GRIP curriculum for 52 consecutive weeks (104 hours), class attendees legally satisfy the obligations of an anger management or domestic violence program, as ordered by the court or as requested at the behest of a parole agent's stipulations.

Currently, Insight-Out's GRIP Program is only registered at Marin County as a DV program provider. Though technically a GRIP graduate outside Marin County has completed the same program, we wish to be transparent that we are certified only in Marin.

Inmate Robert Sanford CDCR# V15176 has graduated from the GRIP Program at Correctional Training Facility, in June 2018. Santa yand

For the GRIP Program,

Kim Moore
GRIP/CTF Prison Coordinator and Facilitator
GRIP Training Institute

P.O. Box 888
Woodacre, CA 94973
(415) 488-1348



# Coastline Community College

## OFFICE OF THE REGISTRAR

# Student Grade Mailer

| Student Name: Sanford, Robert L. | Student ID: C02110696 | Messages: |
|---|---|---|

Sanford, Robert L.
INMATE V-25176 (FAC 3 113L)
CCI TEHACHAPI
PO Box 107
Tehachapi, CA 93581-0107

Message 1: The student bears responsibility to contact the instructor regarding grade issues.

RETURN SERVICE REQUESTED

| Course Name | Course Number | Section | Campus | Course Title | Grade | Credit Hours | Earned Hours | GPA Hours | Grade Points | Term GPA |
|---|---|---|---|---|---|---|---|---|---|---|
| BUS | C110 | 001 | C | Bus Law/Legal Environment | C | 3.00 | 3.00 | 3.00 | 6.00 | |
| BUS | C120 | 002 | C | Personal Finance | I | 3.00 | 0.00 | 0.00 | 0.00 | |
| BUS | C222 | 002 | C | Entrepreneur & Sm Bus Ops/Mgt | D | 3.00 | 3.00 | 3.00 | 3.00 | |
| | | | | Total | | 6.00 | 6.00 | 9.00 | | 1.50 |

| Major | Academic Standing |
|---|---|
| LibArts: Social&Behavio | CCC Probation by Cum GPA |
| **Level** | **Term** |
| Coastline Undergraduate | CCC Intersession/Spring 2020 |

| | Credit Hours | Earned Hours | GPA Hours | Grade Points |
|---|---|---|---|---|
| Cumulative | 9.00 | 9.00 | 15.00 | 1.67 |
| Transfer | | | | |
| Overall | 9.00 | 9.00 | 15.00 | 1.67 |

| EXPLANATION OF GRADES | |
|---|---|
| **A** -- Outstanding | **L** -- Listener/Auditor |
| **B** -- Good | **O** -- Official Withdrawal |
| **C** -- Average | *AE |
| **D** -- Deficient | *BE |
| **F** -- Failed | *CE |
| **W** --Withdawal | *SE |
| **I** -- Incomplete | *RE |
| In order to become passing grades, incompletes must be fully satisfied by the end of the next semester. | (*Not included in GPA) |



December 11, 2018

Re: Mr. Robert Sanford, Correctional Training Facility – Inmate #V25176

Dear Parole Board Members:

We hope you find this letter helpful in answering an important question: *Is Mr. Sanford ready to reenter society and function as a law-abiding citizen?* We are proud to report that Mr. Sanford has successfully completed Defy Ventures' rigorous reentry preparation program, CEO of Your New Life ("CEO YNL").

Through CEO YNL, Mr. Sanford built employment readiness skills, engaged in character development and personal wellness introspection, planned for viable reentry, and learned fundamental entrepreneurial concepts. CEO YNL training, used nationally in prisons, specifically addresses criminal thinking errors such as lack of effort and responsibility through courses such as "Developing a Career Plan" and "Self-Limiting Beliefs," and combats closed channel thinking by building in repeated opportunities for feedback and revision. Notably, Mr. Sanford developed a resume, learned how to write a cover letter, and engaged with our diverse and influential group of regular volunteers in preparation for re-entering society and the workforce.

By taking the initiative to participate in Defy Ventures' CEO YNL program, Mr. Sanford will establish his credibility with potential employers and be supported in successful reentry. Defy's curriculum includes 100 courses taught by some of the country's leading experts.

Mr. Sanford is invited to apply to Defy Ventures' post-release program, which will provide:

- Strong **accountability** through continued online training and assignments
- Connection to **pro-social activities**
- **Employment assistance and job placement**
- Executive **mentoring and coaching** from business professionals, invitations to events, and a **dedicated support network**

We stand proudly behind the accomplishments of our participants. Defy's post-release recidivism rate of less than 5% demonstrates that our participants are committed to pursuing brighter futures and equipped with the tools to do so. We have high expectations for Mr. Sanford's success. Not everyone has the perseverance, discipline, and courage to engage in the deep self-reflection required to participate in CEO of Your New Life and continue to engage upon release. We know these traits will serve Mr. Sanford well.

We look forward to continuing Mr. Sanford's training and support. Defy Ventures will be there with encouragement and actionable advice from staff members and our post-release community of Executive Mentors whenever it is needed.

Thank you very much for your consideration. Please contact me directly with questions.

Sincerely,

Carrie Simon
Executive Director, Defy of Northern California





# Baylor University

Waco, Texas

## Hankamer School of Business

### Certificate in Career Readiness

Presented to

**Robert Sanford**

This First Day of October in the year
Two Thousand Eighteen



Andrew Glazier, President & CEO, Defy Ventures

Timothy R. Kayworth, PhD. Associate Dean

# DEFY

UPON THE RECOMMENDATION OF THE STAFF AND BY AUTHORITY OF THE
GOVERNING BOARD, THIS

## CERTIFICATE OF COMPLETION

IS CONFERRED UPON

## ROBERT SANFORD

FOR SATISFACTORILY COMPLETING THE REQUIREMENTS AS PRESCRIBED FOR
INTRO TRAINING OF THE CEO OF YOUR NEW LIFE PROGRAM FROM DEFY VENTURES
AND AWARDED WITH ALL THE RIGHTS AND PRIVILEGES PERTAINING THERETO.

13TH OF SEPTEMBER, TWO THOUSAND AND EIGHTEEN

_____
Carrie Simon
Executive Director, Northern California

# DEFY

UPON THE RECOMMENDATION OF THE STAFF AND BY AUTHORITY OF THE GOVERNING BOARD, THIS

## CERTIFICATE OF COMPLETION

IS CONFERRED UPON

## ROBERT SANFORD

FOR SATISFACTORILY COMPLETING THE REQUIREMENTS AS PRESCRIBED FOR WHITE BELT OF THE CEO OF YOUR NEW LIFE PROGRAM FROM DEFY VENTURES AND AWARDED WITH ALL THE RIGHTS AND PRIVILEGES PERTAINING THERETO.

7TH OF NOVEMBER, TWO THOUSAND AND EIGHTEEN

Andrew Glazier
CEO, Defy Ventures

20160202-5026-9156

# State of California

## High School Equivalency Certificate

This is to certify that

# ROBERT L SANFORD

has met the standard of performance established by the California State Board of Education for successful completion of the High School Equivalency Tests and is, therefore, entitled to this High School Equivalency Certificate.



June 05, 2017

_Tom Torlakson_
State Superintendent of Public Instruction

_Michael W. Kirst_
President of the
California State Board of Education



# OFFICIAL GED® TRANSCRIPT

TESTING SERVICE® Issued by the GED Testing Service as of **06/05/2017**

*Martin D. Keh*
Martin Kehe
Vice President, Assessment Services

## CANDIDATE INFORMATION

**LAST NAME:** SANFORD

**ADDRESS:** PO Box 686

**ADDRESS2:**

**CITY:** Soledad

**ID NUMBER:** 20160202-5026-9156

**TESTING JURISDICTION:** California

**FIRST NAME:** ROBERT

**STATE OF BIRTH:** 11/29/1963

**DATE OF BIRTH:** 11/29/1963

**PASS DATE:** 06/05/2017

**MIDDLE:** L

**STATE:** CA    **POSTAL CODE:** 93960    **COUNTRY:** US

**PHONE:** 909971821

## TEST RESULTS

Click on a test subject area or performance level for more detailed information

| | LANGUAGE | DATE | SCORE* | PERFORMANCE LEVEL | STATUS | PERCENTILE RANK |
|---|---|---|---|---|---|---|
| Mathematical Reasoning | English | 05/16/2016 | 147 | GED® | PASS | 22 |
| Social Studies | English | 02/10/2016 | 151 | GED® | PASS | 31 |
| Reasoning Through Language Arts | English | 06/05/2017 | 150 | GED® | PASS | 30 |
| Science | English | 06/08/2016 | 150 | GED® | PASS | 28 |
| | | TOTAL | 598 | | OVERALL PASS | |

The scores on the report are the highest scores achieved by the candidate and not necessarily the most recent. If retest scores are lower than scores previously achieved, the retest scores are not reported.

To learn more about score scales and content descriptions please visit www.GEDtestingservice.com/transcriptinfo

## Order additional transcripts from www.GED.com

Official transcript issued under the auspices of GED Testing Service.

GED® and GED Testing Service® are registered trademarks of the American Council on Education.
They may not be used or reproduced with the express written permission of ACE or GED Testing Service.
The GED® and GED Testing Service® brands are administered by GED Testing Service LLC under license from the American Council on Education.

Copyright © 2013 GED Testing Service LLC. All rights reserved.

Columbia College
Twyla Olsen, M.A.

Argumentation and Debate CSPCOM-2 4284
Spring Semester 2020

**Sanford, Robert**          **Final Grade = B**

Progress and Feedback:

**Argumentative Essay** –Your work demonstrated outstanding research to support your logic on the selected topic. You investigated the subject matter and demonstrated a good understanding of your topic. I'm enjoyed watching your academic growth in class. I hope you continue to develop your communication skills both orally and written. You speaking and debating skills really put you in the top of the class.

**Debate and Brief;** Keep practicing your skills.

**Chapters and Questions** – answered adequately.

Continue practicing public speaking and debate. I enjoyed your enthusiasm in class. I also saw skill development and you were beginning to really understand debate skills and their dynamics. Keep the good work going!

Good work this semester.

Professor Olsen

# Assessment Summary & Scores

Course: **BUS110-92578**
Student Name: **Robert Sanford**
Student ID: **C02110696**
Final Grade: **C**

**Robert Sanford**
INMATE V-25176
SIERRA CONSERVATION CENTER
5150 O'byrnes FERRY ROAD
JAMESTOWN, CA 95327

\* Please be aware that scores are subject to change pending incoming assignments.
\*\* **Refer to the Course Grade Scale in the Student Handbook to determine the final letter grade.**

| Assignments & Exams | Points Earned | Points Possible |
|---|---|---|
| SLC1 | 0 | 0 |
| Quiz1 | 27 | 40 |
| Quiz2 | 28 | 40 |
| Quiz3 | 25 | 40 |
| Quiz4 | 26 | 40 |
| Midterm1 | 120 | 160 |
| MTEssay1 | 36 | 40 |
| Final1 | 142 | 200 |
| Xtra1 | 0 | 0 |
| **Points Total** | **404** | 560 |

Printed on Wednesday, July 1, 2020

INMATE COPY



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

09/29/2021

# RELEASE DATE CHANGE NOTICE

| INMATE NAME: SANFORD, ROBERT LIONEL | CDC #: V25176 |
|---|---|
| FACILITY: CCI-Facility D | HOUSING: D 00132 - 000034L |
| ASSIGNED CASE RECORDS ANALYST:<br>A. Castaneda<br>ASSIGNED CORRECTIONAL COUNSELOR:<br>J. Gonzalez | REASON FOR RELEASE DATE CHANGE:<br>Not available<br><br>MSCs |
| CONTROLLING RELEASE DATE | TYPE OF DATE |
| BEFORE: | |
| AFTER:      10/13/2025 | EPRD |

# CERTIFICATE OF PARTICIPATION

THIS CERTIFICATE IS PRESENTED TO

## R. SANFORD, V25176

FOR PARTICIPATION AND COMPLETION OF

FRESH START'S RE-ENTRY WORKSHOP'S.

February 07, 2017

A. Little
Chairperson

A. Davila
Group Sponsor

Name and Number    Sanford                       V25176                                    CDC-128-B

**The GRIP Program Facilitators** commends inmate Robert Sanford for the achievement of graduating from the GRIP Program on June 2, 2018. The GRIP program is a one year intensive that functions as a Comprehensive Offender Accountability Program. The Program consists of a transformational re-education modality that commits the participants to a process of deep self-inquiry and healing. The program examines the origins of criminogenic conduct and undoes the characteristic destructive behavioral patterns (including addiction) that lead to transgressions. The 4 elements of the program are: 1. Stopping and transforming my violence. 2. Developing Emotional Intelligence. 3. Cultivating mindfulness. 4. Understanding Victim Impact. Participants talk about their commitment offense and investigate exactly which behavioral factors led to the crime. This cognitive-behavioral intervention leads to students learning how to take full responsibility for both their past and current behaviors.

**INMATE COPY**

_Jacques Verduin_

Jacques Verduin, GRIP Facilitator and Director

Date:    July 12, 2018                    (Graduate Chrono GRIP Program)                    **General Chrono**

Department of Corrections
CDC-128-B (8-87)

NAME and NUMBER:        SANFORD   V25176                            D5-62L

Inmate **SANFORD** has been actively participated in the CTF-Facility D FRESH START inmate Leisure Time Activity Group program. He has completed the **FRESH START** "Curriculum of community resources that will assist inmates with the challenges of reintegrating back into mainstream of society." **FRESH START** is an 8 week self-help program that stresses the use of **"Transitional Re-Entry Programs."** Completion of this program demonstrates, Inmate **SANFORD** has the desire and ability to learn and gain skills that will be of benefit to him, to have a successful re-entry, and stability in the community.

cc:   C-file
      Inmate
      Group File

A. Dávila
Primary Sponsor
Correctional Training Facility

Date: 02/07/2017

                                                                                General Chrono

NAME: SANFORD, ROBERT LIONEL          CDC#: V25176          HOUSING: <u>A-15-12L</u>          128C (Rev 3/01)

## PROCEDURE / SURGERY

### COLONOSCOPY

In preparation for an upcoming medical procedure, your physician would like you to stop taking any of these medications on **March 7, 2022. Continue taking any medications not listed below.** You may resume these medications after your procedure is completed unless you are told differently by an MD.

    1) Do not take **ASPIRIN, IBUPROFEN (MOTRIN), NAPROSYN**, or any anti-inflammatories, including **INDOMETHACIN**
    2) It is okay to take plain ACETAMINOPHEN (TYLENOL)
    3) Do not take **PLAVIX** or **COUMADIN / WARFARIN**

_____
SANFORD, ROBERT LIONEL

Orig:    MED-File

cc:    Inmate

**DATE: 3/7/2022**                  **SIERRA CONSERVATION CENTER**

_____
**RN/LVN Signature**

| EFFECTIVE COMMUNICATION WAS ACCOMPLISHED BY: | | |
|---|---|---|
| Disability Code: | Accommodations: | Effective Communication: |
| ☐TABE≤4.0 ☐LD | ☐Additional Time | ☐ Reached  *☐Not Reached |
| ☐DPH ☐DNH | ☐Equipment ☐SLI | ☐ P/I asked questions |
| ☐DPS ☐DNS | ☐Louder ☐Slower | ☐ P/I summed questions |
| ☐DPV ☐DDP | ☐Basic ☐Transcribe ☐Other | *SEE NOTES |
| Comments: | | |
| *Tabe 11.3 (9/19/17)* | | |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                                    GAVIN NEWSOM, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
CALIFORNIA CORRECTIONAL INSTITUTION
P.O. Box 1031
Tehachapi, CA 93581-1031



August 31, 2021

Inmate Sanford, V25176
California Correctional Institution
Facility E, BH-20L
P.O. Box 107
Tehachapi, CA 93581

Mr. R. L. Sanford:

This letter is in response to your correspondence addressed to California Department of Corrections and Rehabilitation (CDCR) Secretary Kathleen Allison, Division of Adult Institutions (DAI) Director Connie Gipson, and California Correctional Institution (CCI) Warden (A) Brian Cates in regards to the closure of Secure Level I, Facility E at CCI. Your letter states your due process is being violated by Warden (A) Cates as he is implementing forced transfers of Facility E.

Your letter expresses concern over due process violations, as it pertains to the closure of Facility E at CCI. Specifically, you state inmates are not receiving a 72 hour notice prior to the Classification Committee when the committee pertains to a review for placement into Level II as a Level I inmate. You state this is a violation of California Code of Regulations (CCR), Title 15, Sections 3375, Classification Process and Section 3375.2(a)(15) Administrative Determinants and Department Operations Manual 62010.4.2 Inmate Notices. You also add that there has been no implementation of the closure of Facility E at CCI by the Senate Select Committee and as such, Warden (A) Cates is circumventing policy by adversely placing inmates out of level, without adequate notice or reason.

Per DAI Population Management Unit, the directive was given to CCI for the closure of Secure Level I, Facility E by September 26, 2021. In order to meet the deadline established by this directive, inmates currently housed on Level I are being moved to Level II pending committee review for appropriate transfer recommendation. Upon review of your last committee dated May 27, 2021, a discrepancy was identified in which you were incorrectly referred to the General Population Institution Classification Committee for gate pass and fire camp approval. Therefore, you have been scheduled for Unit Classification Committee (UCC) on September 2, 2021, for a Program/Transfer Review. You were served your Notice of Classification Hearing on August 27, 2021. You are currently still housed on Facility E, Secure Level I. However, you will be temporarily housed at Level II, pending transfer review and endorsement by the Classification Staff Representative (CSR).

CDCR houses inmates in accordance with California Penal Code (PC) 5068. PC 5068 notes that a prisoner shall be assigned to an institution of the appropriate security level, unless other classification factors make such a placement unreasonable. PC 5068 states "reasonable" includes the availability of institutional programs and housing. As a result of the closure of Facility E, housing will no longer be available, resulting in your temporary move to Level II.

The CDCR classifies inmates by reviewing their case factors, which are based on: length of term, classification score, commitment offense, medical needs, psychiatric needs, and appropriateness of current housing and availability of housing at other institutions. The classification process was established to house inmates in a security level facility consistent with their points and one best suited to protect the inmates, staff and the public. A CSR will make the

Sanford, V25176
Page 2

final determination regarding the transfer recommendation made by the UCC. In an effort to meet population management needs, CDCR may be required to deny transfer requests and/or cause the involuntary transfer of an inmate.

You state in your letter that you are being placed in a dangerous condition by being placed out of level. Your UCC will make the appropriate recommendation for transfer based on your case factors. In the interim, should you have any safety concerns, please advise staff immediately. You have attached a copy of a CDCR 602 form dated August 12, 2021. The Office of Grievances at CCI, sent you an OOG Acknowledgement of Receipt and Closure of Grievance dated August 13, 2021, rejecting your claim due to the claim being anticipatory as you are still housed on Facility E.

If you have any further questions or concerns, please contact L. Lantz, Correctional Counselor II.

B. CATES
Warden (A)
California Correctional Institution

cc: P. Horn, Chief Deputy Warden
    B. Sanders, Associate Warden, Facilities D and E
    R. Lesina, Captain, Facility E
    Electronic Record Management System/Central File
    Tic: 21-186

SANFORD  V25176                                                    CDC 128-B

This chrono is submitted to give recognition to inmate Sanford (V25176).
Inmate Sanford has demonstrated an exemplary work as Law Library Clerk
in the Main Law Library since January 2019 - up to present. Inmate Sanford
has proven to be a hard worker and can do a multi-task job while helping
inmates who need help in their legal matters. He's always keen to learn new
things and unselfishly share new knowledge to everybody. His experience,
knowledge, cooperation and willingness have been extremely helpful in
maintaining an effective and efficient library environment rendering quality
services to staff, workers and users. Inmate Sanford is a valuable asset in
the Main Law Library, and in my opinion, will be so in whatever he chooses
to do in the future.

M. PATDU
Librarian-Main Library
Sierra Conservation Center
Ext. 5306

December 28, 2019                              Laudatory Chrono

OFFICE OF THE SECRETARY
PO Box 942883
Sacramento, CA 94283-0001



January 12, 2022

Inmate Name: Sanford                    CDCR NUMBER: V25176
Institution/Facility:
                SCC-Facility A 001C1-036011L

Re: Penal Code (PC) Section 1170(d)(1) Criteria and Review

The California Department of Corrections and Rehabilitation (CDCR) recognizes that the Agency Secretary may recommend to a sentencing court that an inmate's current commitment be recalled and the court resentence the inmate pursuant to PC 1170(d)(1).

The CDCR Recall and Resentence Recommendation Program (RRRP) will only accept and review referrals based upon exceptional conduct from institutional Wardens. The RRRP does not accept self-referrals or referrals from inmate family, friends, or attorneys. The decision to initiate a referral is discretionary, and any questions or concerns should be addressed through local resources at your assigned institution. You are encouraged to remain disciplinary-free and continue progressing in your rehabilitative journey, should your case be referred by a Warden in the future.

If your case was previously submitted by the institution for an exceptional conduct review, please be patient with the process as the list is extensive. Once your case is reviewed by the RRRP, you will receive only one status update from our office through institutional mail, to advise you that your case has either been denied or approved by the Secretary. Please keep in mind, that if your case is approved and referred to the court for resentencing, the court is under no obligation to respond to or initiate any court action related to the recommendation.

If your inquiry is related to your case being affected by a recent change in the law, such as Senate Bill (SB) 620 or SB 1393, know that your name has been automatically generated on a list for review. As every eligible inmate in the state is on the list, an expected timeline for review is impossible to predict.

In either of the above circumstances, there is no need to send duplicate letters. I hope this information is of assistance to you. If you have any further questions, please contact your assigned Correctional Counselor during open line hours.

Associate Governmental Program Analyst
Recall and Resentence Recommendation Program
Division of Adult Institutions

*Your name does not appear on our exceptional conduct log however, it does appear on the cci(a) log. You will be notified if/when your case is referred to the courts.*

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF THE SECRETARY**

P.O. Box 942883
Sacramento, CA 94283-0001

February 25, 2021

Robert L. Sanford
CDC#:  V25176
California Correctional Institution BH-20L
P. O. Box 107
Tehachapi, CA  93581

Dear Mr. Sanford:

I am writing on behalf of the California Department of Corrections and Rehabilitation 1170(d)(1) unit in response to your letter dated January 18, 2021, in which you request that the Department recommend the recall of previously ordered sentence and commitment pursuant to Penal Code section 1170, subdivision (d)[1] (hereinafter 1170(d)(1)).

The Department is currently reviewing cases to recommend for recall of sentence pursuant to 1170(d)(1) to address Penal Code section 667, subdivision (a)(1). The selection of candidate cases and order of review is based on legislative time frames, case law, departmental resources, and is at the discretion of the Secretary.

While your suggestion that an 1170(d)(1) recommendation be issued is appreciated, the Department will select cases for review and prioritize those reviews based on the factors above. The Department will not be accepting individual requests for review at this time. Again, thank you for your correspondence.

Sincerely,

K. Harris
Correctional Case Records Analyst
1170(d)(1) Unit

---

[1] Providing that, upon recommendation of the Secretary of the Department, a court may recall a previously ordered sentence and commitment, and resentence a defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence is no greater than the initial sentence.

DIVISION OF ADULT INSTITUTIONS
**SIERRA CONSERVATION CENTER**
5100 O'Byrnes Ferry Road
Jamestown, CA 95327

February 17, 2022

Sierra Conservation Center
Robert Sanford, V25176
Facility C Gym, 13L
Jamestown, Ca 95327

Mr. Sanford:

I am in receipt of your letter dated February 10, 2022, requesting consideration of PC1170 (D) "Recall of Commitment".

It should be noted, the Recall and Resentence Recommendation Program (RRRP) does not accept self-referrals or referrals from inmate family, friends, self-help sponsors or attorneys at this time.

Nevertheless, I have contacted Classification Services Unit (CSU) whom is responsible for review of criteria for referral pursuant to PC 1170(d). They forwarded me the criteria for a referral to this unit to review for potential exceptional conduct, and the memorandum states in part;

Recommendations for Exceptional Conduct may be considered for referral pursuant to the California Code of Regulations (CCR), Title 15, Section 3076.l(a)(l), if an inmate's behavior, while incarcerated, demonstrates sustained compliance with departmental rules, regulations, and policies as well as documented evidence of prolonged participation in Self-Help, Vocational, and Educational Programming.

Pursuant to CCR, Title 15, Section 3076.1(2) inmates who meet the following criteria shall be **excluded** from consideration under this section:

- Required to register pursuant to PC 290
- Have served less than 10 continuous years of their current commitment from the time of reception to CDCR
- Found guilty of a serious rules violation (Divisions A – D only) within the last five years or has a serious rules violation pending adjudication
- A conviction of a single offense and is serving the low (mitigated) term for which there is no lesser-included offense, sentence enhancement, or alternative sentencing scheme (such as striking a strike) which might result in a shorter sentence if the court legally resentenced the inmate
- Determinate sentences scheduled for release within the next 18 months

Sanford V25176
Pg.2

- Determinate sentences eligible for parole consideration (YPED, EPED, NPED) within the next 18 months or have already been afforded parole consideration regardless of the BPH's decision
- Indeterminate sentences that have already been afforded a parole suitability hearing, regardless of the BPH's decision or those that are scheduled for an initial parole suitability hearing within the next 18 months
- Condemned sentences
- Life Without the Possibility of Parole sentences
- No prolonged participation in rehabilitative programming

I have reviewed the Strategic Offender Management System (SOMS) and Electronic Records Management System (ERMS) in regards to your request. Unfortunately, during review of your ERMS and SOMS, there is no documentation of any prolonged participation in rehabilitative programming. I encourage you to sign up for voluntary classes at Sierra Conservation Center by contacting our Community Resources Manager and DRP Program ISUDT Nurse for enrollment. I have attached a list of available classes at Sierra Conservation Center. Therefore, taking into account the criteria noted above you are currently not a candidate for recommendation. I encourage you to remain disciplinary free and continue on your path of rehabilitation.

PATRICK EATON
Warden

Attachment

DIVISION OF ADULT INSTITUTIONS
**SIERRA CONSERVATION CENTER**
5100 O'Byrnes Ferry Road
Jamestown, CA 95327



March 25, 2022

Sierra Conservation Center
Robert Sanford, V25176
Facility A 15-12L
Jamestown, Ca 95327

Mr. Sanford:

I am in receipt of your letter dated March 11, 2022, in response to Warden's letter dated February 17, 2022, regarding Penal Code 1170 (D) "Recall of Commitment."

I again reviewed the Strategic Offender Management System (SOMS), Electronic Records Management System (ERMS) and the copies of letters and certificates you have provided. Unfortunately, I can only utilize the documents that are scanned in your ERMS and SOMS files. I previously provided a list of available voluntary classes and encouraged you to reach out to our Community Resources Manager (CRM) and Division of Rehabilitative Program (DRP) Integrated Substance Use Disorder Treatment (ISUDT) Nurse for enrollment. I confirmed with the E. Dickson, CRM (A) and she received your request dated March 4, 2022, for enrollment in Alcoholics Anonymous, Narcotics Anonymous, Anger Management, Responsible Fatherhood, Art, Mental Health and Physical Health cases. You are now on their wait lists and will be assigned when it becomes available. I also confirmed with T. Roberge, DRP ISUDT Nurse, and she did not receive your request for enrollment. She requested you fill out a CDCR Form 7362, Sick Call Slip so you can be evaluated for enrollment.

Thank you for following my recommendations and signing up for rehabilitation classes offered at Sierra Conservation Center. I reaffirm my previous decision dated February 17, 2022, due to the lack of prolonged participation of rehabilitative programming and encourage you to remain disciplinary free and continue on your path of rehabilitation.

PATRICK EATON
Warden
Sierra Conservation Center

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



November 5, 2018

Robert Sanford/V25176
CTF Soledad
PO BOX 689 (D6-32L)
Soledad, CA 93960

RE: 1170(d) Criteria and Review

To inmate Sanford,

This is in response to your letter requesting you be considered for a Penal Code 1170(d) Recall and Resentence consideration.

The Department of Corrections and Rehabilitation recognizes the Agency Secretary may recommend to a sentencing court that the sentence and commitment previously imposed on an inmate be recalled and that the court resentence the inmate.

Currently, the department receives referrals from the institution directly via the Classification and Parole Representative. We are not accepting self-referrals or referrals from friends or family at this time, but encourage you to remain disciplinary-free, and continue your rehabilitative journey should your case be referred to us in the future.

I hope this information is of assistance to you. If you have any further questions please feel free to contact Captain M. Masters, at CDCR-DAI-1170-D-Recall-of-Sentence@CDCR.CA.GOV.

STEPHANIE LACY
Correctional Counselor III
1170(d) Project Unit
Division of Adult Institutions

Robert L. Sanford
V25176 #55
Growlersburg Conservation Camp #33
5440 Longview Lane
Georgetown, CA 95634-9312

MAIL NOT SUBMITTED, PROCESSED
OR VERIFIED AS LEGAL MAIL –
PROCESSED AS REGULAR MAIL

To:
Office of the Attorney General For
The State of California
Attn: Colin A. Shaff
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013

SIERRA CONSERVATION CENTER
CA STATE PRISON GENERATED MAIL

US POSTAGE
ZIP 95327
02 4W
0000595843
$ 002.96°
MAY 11 2022

# EXHIBIT O



**Superior Court of California**
**County of Kern**
**Bakersfield Division H**

Date:    05/26/2022                                                    Time:   8:30 AM - 12:00 PM

                                                                                      BCV-21-100477

SANFORD VS NEWSOM

### *Courtroom Staff*

| Honorable: | Bernard C. Barmann, Jr. | Clerk: | Vanessa Cofield |
|---|---|---|---|
| Court reporter: | . None | Bailiff: | Deputy Sheriff |

PARTIES:

Present:

| | |
|---|---|
| SANFORD, ROBERT L  Plaintiff, Present | Pro Per |
| ALLISON, KATHLEEN  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| BANICA, U  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| CATES, B.  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| DIAZ, RALPH M  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| NEWSOM, GAVIN  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| SANDERS, B.  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| SCHUYLER, C.  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |
| SHIESHA, S  Defendant, Not Present | SHAFF, COLIN A  Attorney, Present |

Not Present:
WARDEN BRIAN CATES  Defendant
CALIFORNIA CORRECTIONAL INSTITUTION (CCI)  CDCR
Litigation Coordinator

Appearance telephonically by courtcall by Robert L Sanford in propria persona.
Appearance telephonically by courtcall by Colin A Shaff on behalf of defendants C. Schuyler and Gavin Newsom.

### NATURE OF PROCEEDINGS: DEMURRER / FURTHER CASE MANAGEMENT CONFERENCE

**Hearing Start Time: 8:30 AM**

The above-entitled cause came on regularly on this date and time with parties and/or counsel appearing as reflected above.

Tentative announced in open court.

Matter argued by counsel and submitted.

The Court makes the following findings and orders:

The clerk's minutes will memorialize the fact that both counsel received verbal notice of the Court's ruling.

Defendants Demurrer to Second Amended Complaint is sustained without leave as to the first and second causes

MINUTES
Page 1 of 3

of action. Demurrer is sustained to the Federal Claims with 90 days leave to amend as to the first cause of action only.

Case Management Conference is continued to 09/27/22 at 8:30 a.m. in Division H.

The Court authorizes telephonic appearance by courtcall by plaintiff on 09/27/22 at 8:30 a.m.

The civil fast track clerk to notify courtcall re: authorization of the Court for plaintiff to appear telephonically.

A certified copy of minutes mailed to California Correctional Institution, Attention Litigation Coordinator as stated on the attached declaration of mailing.

Counsel for defense to prepare an order pursuant to CRC Rule 3.1312.

Copy of minutes are mailed to all parties as stated on the attached certificate of mailing.


**FUTURE HEARINGS:**
September 27, 2022 8:30 AM Further Case Management Conference
Bakersfield Division H
Sheriff, Deputy
Barmann, Bernard C., Jr.

---

*MINUTES FINALIZED BY:*    VANESSA COFIELD                                                    *ON:*    MAY 27, 2022

MINUTES
Page **2** of **3**

SANFORD VS NEWSOM                                                                          BCV-21-100477

**SANFORD VS NEWSOM**
BCV-21-100477

### CERTIFICATE OF MAILING

The undersigned, of said Kern County, certify: That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Minutes dated May 27, 2022*** attached hereto on all interested parties and any respective counsel of record in the within action by depositing true copies thereof, enclosed in a sealed envelope(s) with postage fully prepaid and placed for collection and mailing on this date, following standard Court practices, in the United States mail at Bakersfield California addressed as indicated on the attached mailing list.

Date of Mailing:      May 27, 2022

Place of Mailing:     Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Tamarah Harber-Pickens**
CLERK OF THE SUPERIOR COURT

Date: May 27, 2022

By:      _Vanessa Cofield_
         Vanessa Cofield, Deputy Clerk

### MAILING LIST

ROBERT L SANFORD
GROWLERSBURG CONSERCATION CAMP #33
5440 LONEVIEW LANE
GEORGETOWN CA 95634-9318

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA 90013-1256

CALIFORNIA CORRECTIONAL INSTITUTION CCI
ATTN LITIGATION COORDINATOR
PO BOX 1031
TEHACHAPI CA 93581

Certificate of Mailing

FIRST-CLASS MAIL

$000.53

neopost
05/31/2022
US POSTAGE

ZIP 93305
041L12205103

SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN
JUSTICE BUILDING
1215 TRUXTUN AVENUE
BAKERSFIELD, CA 93301-4619

RETURN SERVICE REQUESTED

COLIN A SHAFF
OFC ATTORNEY GENERAL
300 S SPRING ST #1702
LOS ANGELES CA 90013-1256

300138125G C013

BCV-22-100477

# CERTIFICATE OF SERVICE

Case Name: **Sanford, Robert L. v. Gavin
Newsom, et al.**                            Case No.  **BCV-21-100477-BCB**

I hereby certify that on <u>August 29, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION) AND DEMAND FOR JURY TRIAL**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On <u>August 29, 2022</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Robert L. Sanford, CDCR No. V-25176
Growlersburg Conservation Camp Program
Camp No. 33
5440 Longview Lane
Georgetown, CA 95634-9318

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 29, 2022</u>, at Los Angeles, California.

| R. Velasco | /s/ R. Velasco |
|:---:|:---:|
| Declarant | Signature |

LA2021601470
65384651.docx